Devin Bolton (SBN 290037)
  dbolton@weitzlux.com
**WEITZ & LUXENBERG, PC**
1880 Century Park East, Suite 700
Los Angeles, CA 90067
Phone: (212) 558-5552
Fax:    (212) 344-5461

[Additional Attorneys for Plaintiff Listed on Back Cover]

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHELLE COLVIN, individually and as next friend of minor Plaintiff, G.D., and DANIELLE SASS, individually and as next friend of minor plaintiff, L.C., and on behalf of all others similarly situated, | **Civil Action No.:** |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| v. | |
| ROBLOX CORPORATION, SATOZUKI LIMITED B.V., STUDS ENTERTAINMENT LTD., and RBLXWILD ENTERTAINMENT LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiffs Rachelle Colvin, individually and as next friend of minor Plaintiff, G.D., and Danielle Sass, individually and as next friend of minor Plaintiff, L.C., bring this Class Action Complaint against Defendants Roblox Corporation ("Roblox"), Satozuki Limited B.V. ("Satozuki"), Studs Entertainment Ltd. ("Studs"), and RBLXWild Entertainment LLC ("RBLXWild"), and make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a case concerning an illegal gambling operation that is preying on children nationwide. As described herein, Plaintiffs bring this action on behalf of themselves, their minor children, and proposed classes of all those similarly situated against Roblox and its co-conspirators,

Satozuki, Studs, and RBLXWild. Together, these entities maintain and facilitate an illegal gambling ecosystem, targeted at children, through Roblox's online gaming platform and digital currency.

2.       Defendant Roblox is one of the largest and fastest growing gaming platforms in the world, designed to bring users together in a virtual universe, or "metaverse." It is a free online gaming platform that allows users to interact with one another, play games, and purchase items inside the Roblox virtual universe.

3.       Indeed, Roblox is the largest entertainment website in the world for kids, with over 60 million daily active users. The vast majority of Roblox's users are children under the age of 18. In fact, at least 70% of Roblox's users are under the age of 18, with more than half of all users being under the age of 13.

4.       Roblox's market dominance in the children's video game sector is so large that Roblox itself claims that more than 75% of the kids aged 9-12 in the United States use Roblox on a monthly basis.[1]

5.       These children spend an enormous amount of time and money exploring the Roblox world day in and day out.

6.       However, even though these children have made Roblox extremely successful, Roblox systematically takes advantage of them.

7.       In its relatively short existence, Roblox has been surrounded by a deluge of negative attention as a dangerous space for children. Multiple child advocacy agencies and consumer protection groups have spoken out about Roblox's targeting of children with deceptive commercial advertising and addictive content.[2]

---

[1] Roblox, YOUTUBE (July 31, 2020, 3:45), https://www.youtube.com/watch?v=G00GlCJc0mU.

[2] *See, e.g.,* https://www.newsnationnow.com/investigation/roblox-advertising-practices/.

8.      Roblox has also been the subject of countless press articles describing how Roblox's child users are exposed to predatory conduct from other—primarily adult—users on the platform, including "simulated violence, simulated sex, [and] simulated rape."[3]

9.      Roblox, along with its co-Defendants, is behind another growing problem that has ensnared hundreds of thousands of its adolescent and teenage users, causing substantial financial loss—illegal online gambling.

10.     Roblox allows users to make purchases of virtual items to be used in games or apps within the Roblox ecosystem. These purchases can be made with Roblox's digital currency, called Robux, which are exclusively created by and "only sold by the Roblox company."[4]

11.     Robux are purchased using a credit card or digital payment service and users then use this digital currency to buy items within the various games hosted in the Roblox universe.

12.     Because most of Roblox's users are minors, Roblox allows adults, such as a user's parents, to purchase Robux for their children to use on the Roblox ecosystem. Roblox also sells gift cards that permit the user—often a minor child—to make purchases of Robux.

13.     In its Terms of Service, Roblox misleadingly represents to parents and other users that its platform and digital currency are safe. Further, Roblox explicitly represents that "***experiences that include simulated gambling, including playing with virtual chips, simulated betting, or exchanging real money, Robux, or in-experience items of value are not allowed***."[5]

14.     But this representation is false, or misleading at best. In fact, Roblox allows third-party gambling websites, including the highly popular online casinos operated by Defendants Satozuki, Studs, and RBLXWild (collectively, the "Gambling Website Defendants"), to use the Roblox website to accept online bets using Robux, to be placed on games at the Gambling Website

---

[3] James Crummel, *Roblox risks: hidden dangers in your child's favorite games*, ABC27.COM (Feb. 25, 2020), https://www.abc27.com/local-news/roblox-risks-hidden-dangers-in-your-childs-favorite-games/.

[4] https://en.help.roblox.com/hc/en-us/articles/203313200-Ways-to-Get-Robux

[5] https://en.help.roblox.com/hc/en-us/articles/203313410-Roblox-Community-Standards (emphasis added)

Defendants' virtual casinos. Roblox also facilitates the Gambling Website Defendants' efforts to track bets, complete transactions, wager Robux, and satisfy wagers in their digital casinos.

15.     All of the gambling transactions take place on Roblox's website under Roblox's virtual roof and are monitored by Roblox.

16.     Roblox maintains an internal ledger or other recording system whereby it tracks both the flow and/or exchange of Robux on its platform, as well as the individuals and organizations involved in such transactions.

17.     Roblox registers each and every exchange of Robux for gambling credits and allows illicit gambling, by minors, using the Roblox website. All of the gambling transactions require Roblox's affirmative support to continue. Roblox profits from these transactions to the detriment of its users, including its minor, adolescent, and teenage users.

18.     Here is how the process works: Roblox's minor users first purchase Robux through the Roblox website, using either their own money, a parent's credit card, or gift cards they possess. Next, the minor user navigates to one of the Gambling Website Defendants' virtual casinos that exist outside the Roblox ecosystem. Then, the user links their Robux wallet on Roblox's website to the gambling website. And finally, once the minor-user's wallet is linked, the gambling website converts the minor user's Robux into credits that can only be wagered in their virtual casinos. Throughout this process, Roblox keeps track of all of these electronic transfers and has knowledge of each transfer that occurs in its ecosystem.

19.     Importantly, while a minor user must navigate off Roblox's website to access the online casino and their new digital gambling credits, in reality the minor user's Robux have not been converted to another currency and they never leave Roblox's website. Instead, the Gambling Website Defendant merely take control of the Robux, while providing a corresponding number of "credits" (which are also called Robux) on their third-party gambling websites.

20.     Further, because the exchange of Robux must occur within the Roblox website, Roblox allows the Gambling Website Defendants to establish a Robux exchange within the Roblox ecosystem.

COMPLAINT FOR DAMAGES

21.     If a user happens to win at Defendants' casino games, thereby increasing their total credits, the Gambling Website Defendants transfer back to the user the additional value in Robux. If, as is more likely and common, a minor user loses their credits in the Gambling Website Defendants' virtual casino, those Defendants retain the user's Robux. The gambling credits function just like chips in a brick and mortar casino; users "buy in" using their Robux, obtain chips, gamble until they lose their money or wish to cash out and, if they increase their credits, they cash those credits out in exchange for Robux.

22.     This entire exchange of Robux occurs on the Roblox platform with Roblox's knowledge and active support, and Robux never leave the Roblox ecosystem unless and until they are cashed out for fiat currency.

23.     Roblox works with and facilitates the Gambling Website Defendants' use of its website to offer illegal gambling opportunities to minor users.

24.     Roblox could, of course, prohibit and/or stop the Gambling Website Defendants from utilizing the Roblox ecosystem and digital currency to facilitate illegal gambling but it does not.

25.     This is because Roblox is significantly enriched by this illegal scheme. After the Gambling Website Defendants take Robux from adolescent and teenage users and ultimately convert the Robux into cash, Roblox charges a 30% fee on this transaction, which amounts to millions in annual cash fees.

26.     Roblox and the Gambling Website Defendants have concocted an illegal gambling ring to target the adolescents and teenagers who comprise the majority of Roblox's users. Roblox knows its Robux are being used to place bets in illegal virtual casinos, directly facilitates this transfer within the Roblox ecosystem, then imposes a fee on the ill-gotten gains accrued by the Gambling Website Defendants when they seek to convert Robux to cash.

27.     Plaintiffs' minor children—like hundreds of thousands of others across the United States—fell prey to this illegal scheme and were victimized out of real money. As a result, the Gambling Website Defendants have earned millions off the backs of those too young to legally gamble, all the while providing Roblox with a sizable cut of the money they've illegally obtained.

28. Accordingly, this is a civil action seeking to put an end to this illegal scheme. Through this class action lawsuit, Plaintiffs seek monetary damages, restitution, and declaratory and injunctive relief on behalf of proposed Classes of minor victims.

**PARTIES**

29. Minor Plaintiff G.D. and his mother and next friend, RACHELLE COLVIN, are citizens and residents of the State of CALIFORNIA.

30. Minor Plaintiff L.C. and his mother and next friend, DANIELLE SASS, are citizens and residents of the State of NEW YORK.

31. Defendant Roblox Corporation is a corporation existing under the laws of the State of Delaware, with its principal place of business located at 970 Park Place, San Mateo, California 94403. Roblox regularly conducts and transacts business in this District and throughout the United States.

32. Defendant Satozuki Limited B.V. is a foreign company registered in accordance with the laws of Curaçao, with its principal office at Abraham de Veerstraat 9, Willemstad, Curaçao. Satozuki owns and operates the popular gambling website RBXFlip.

33. Defendant Studs Entertainment Ltd. is a foreign company purportedly registered to do business in Cyprus. Studs owns and operates the popular gambling website Bloxflip.

34. Defendant RBLXWild Entertainment LLC is a domestic corporation existing under the laws of Delaware. RBLXWild owns and operates the popular gambling website RBLXWild. RBLXWild regularly conducts and transacts business throughout the United States.

**JURISDICTION AND VENUE**

35. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and Plaintiffs and members of the putative Classes are citizens of a state that is different from the states in which Defendants are citizens. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiffs' RICO claims arise under federal law and this Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

36.     This Court has personal jurisdiction over Defendants because they have their principal place of business in California, and/or because they have contacts with California that are so continuous and systematic that they are essentially at home in this state. All Defendants regularly conduct and solicit business in California, provide products and/or services by or to persons in the State of California, and derive substantial revenue from the same.

37.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' and the Class Members' claims occurred in this District, and Defendants are subject to the Court's personal jurisdiction.

## BACKGROUND FACTS

38.     Rampant fraud and predatory behavior have been reported on Roblox for years. According to multiple reports and investigations, Roblox has failed to properly deal with fraud on the platform, wage disputes, sexual content, and abusive and predatory behavior displayed by some users and developers.[6]

39.     Unfortunately, the users most often victimized by these practices are those that are the most vulnerable. Younger users, many of whom are under the age of 16, and who make up the majority of the users on the Roblox platform, are more likely to be targets of predatory or sexual behavior and more likely to be tricked, scammed, or defrauded out of their money or items.

40.     Furthermore, these users are most at risk in the illegal gambling enterprise facilitated by Roblox. In 2022, between 60% and 80% of high school students reported that they had gambled

---

[6] Simon Parkin, *The trouble with Roblox, the video game empire built on child labour*, The Guardian (Jan. 9, 2022), https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour; Burt Helm, *Sex, lies, and video games: Inside Roblox's war on porn*, FASTCOMPANY (Aug. 19, 2021), https://www.fastcompany.com/90539906/sex-lies-and-video-games-inside-roblox-war-on-porn.

for money in the past year.[7] According to the Massachusetts Department of Public Health, problem gambling impacts 4-8% of youth, compared to just 1% of adults.[8]

41.    Roblox and the Gambling Website Defendants act in concert to profit from gambling games meant to attract kids. The interface of these websites is more like a mix between a video game and a casino, and as a result, is more attractive to underage users.

42.    And further, because of the creation of Robux, a digital currency with real-world value in a children's game, the child users on Roblox have become targets of sophisticated gambling operations without their parents' knowledge of such dangers.

43.    As a result of the illegal gambling enterprise, Roblox has made substantial revenue via its transaction fees and Robux sales to the tune of tens of millions of dollars, seeking to turn its minor customers' gambling struggles into revenue. The Gambling Website Defendants, in turn, have unlawfully enticed Roblox's minor users to wager Robux in their online casinos, manipulating adolescents and teenagers out of digital currency worth tens of millions of dollars.

### I. The Roblox Platform

**A. Overview**

44.    Roblox was created in 2004 by David Baszukci and Erik Cassel, and it was released in 2006. Roblox is a 3D digital world that is entirely user generated, built by a community of nearly 7 million developers. Most of the users on Roblox are kids, with estimates showing that more than half of all U.S. kids under the age of 16 are active on Roblox.[9]

---

[7] Allie Weintraub et al., *Online gambling among youth worries experts, one teen says sports betting was an 'escape,'* ABC News (Dec. 8, 2022), *available at* https://abcnews.go.com/US/online-gambling-youth-worries-experts-teen-sports-betting/story?id=94577595 (last visited June 13, 2023).

[8] *See* Dept. of Public Health, *Teens gambling. It's a risk.* Mass.gov (visited on May 1, 2023), https://www.mass.gov/service-details/teens-gambling-its-a-risk.

[9] Taylor Lyles, "Over half of US kids are playing Roblox, and it's about to host Fortnite-esque virtual parties too", The Verge (July 21, 2020), https://www.theverge.com/2020/7/21/21333431/roblox-over-half-of-us-kids-playing-virtual-parties-fortnite.

45.     The Roblox platform consists of two primary layers: the Roblox Client and the Roblox Studio. The Roblox Client is the application that allows users to explore 3D digital worlds through the eyes of an avatar, which each user customizes with clothing, gear, animations, simulated gestures, emotes, and other objects. The Roblox Studio is the toolkit developers and creators use to build, publish, and operate 3D experiences and content for the Roblox Client. These developers build games and objects that can be sold to users on the platform. Purchases can be made in the Avatar Shop using Robux, the digital currency created for the platform.

46.     Underlying everything on the Roblox platform is its digital currency—Robux. Although the platform is free, nearly all experiences require the user to spend Robux in order to participate in the activities on the platform.

47.     As set forth in more detail below, Robux is sold on the Roblox platform in various quantities. Robux can then be spent on the platform to purchase various items and/or pay for in-game experiences. Robux can also be converted back into real-world currency via the Developer Exchange Program.

48.     Roblox earns revenue by, *inter alia*, selling Robux to users so that they can make in-game purchases. Additionally, Roblox benefits financially from every transaction made on its platform by taking a 30% commission fee on all user-to-user transactions.

**B.  Roblox's In-Game Currency—Robux.**

49.     Robux are the foundation of the entire Roblox platform. Roblox states in its March 2022 Quarterly Report that "[w]e generate substantially all of our revenue through the sales of our virtual currency, 'Robux,' which players can use to purchase virtual items sold by our developer and creator community on the platform."[10]

50.     The Robux currency is not a cryptocurrency, but a digital currency. This means transactions are not publicly recorded on a blockchain and Robux are not transferrable off platform.

---

[10]  *See* Roblox Corporation, Form 10-Q, March 31, 2022, *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001315098/ea0f0408-7ea4-48f8-a127-fef1fdb69aa3.pdf, at 59.

Roblox, however, knows and keeps track of the acquisition and transfer of its digital currency on its platform.

51.     Although it is a digital currency, Robux have actual monetary value. One Robux is currently equal to $0.0125. Users can purchase Robux on Roblox at any time using a credit or debit card. For instance, Roblox sells 400 Robux for $4.99 and 800 Robux for $9.99. Additionally, users may subscribe to Robux Premium and receive a monthly allowance of Robux.

52.     All transactions on Roblox are executed using Robux. Robux can also be exchanged for real dollars.

53.     Until 2013, Roblox did not allow Robux to be exchanged for real dollars. Then in 2013, Roblox implemented the Developer Exchange Program, through which developers on the platform may exchange Robux for real world currencies.

54.     Roblox requires developers that wish to exchange Robux for cash to join the Developer Exchange Program so that Roblox can control the manner in which those developers utilize and interact with the Roblox ecosystem, and so Roblox can more easily monitor Robux exchanges.

55.     The advent of the Developer Exchange Program has attracted an enormous amount of users to the platform in search of riches in exchange for developing experiences or items on Roblox. The yearly payout to developers on the platform has continued to increase year over year, with Roblox paying out $500 million to developers in 2021.

56.     With that kind of money being exchanged for Robux, it's no surprise the platform has also been overrun with predatory behavior, fraud, and gambling.

### II.   *Roblox's Illegal Gambling Enterprise*

57.     Roblox, in conjunction with the Gambling Website Defendants, has directly assisted in creating the unregulated market of virtual casino games that run adjacent to and rely on the Roblox platform.

58.     The extreme pace of growth of Roblox use among children has opened up a whole new market to online gambling enterprises. Children, who previously could not access the funds to participate in online gambling, now have, collectively, billions of Robux at their disposal.

59.     Many times, children are able to gamble money on these virtual casinos without their parents' knowledge because they use Robux to facilitate the gambling transactions. Parents unwittingly provide the gambling funds to their children under the mistaken belief that their children are using Robux to purchase items that will enhance or accessorize a legitimate and/or harmless gaming experience.

60.     As set forth herein, however, Roblox and the Gambling Website Defendants work together to divert adolescent and teenage users to third-party gambling websites where Robux can be gambled away on virtual games of chance, enriching both Roblox and the Gambling Website Defendants.

### A.  The Illegal Gambling Websites

61.     A growing secondary market for gambling is present on Roblox. This system is comprised of three primary third-party gambling websites (the "Illegal Gambling Websites") that feature games of chance such as coin flips, roulette, slot machines, treasure chests, as well as other pure gambling games like blackjack and dice.

62.     The three primary Illegal Gambling Websites are RBXFlip, which is operated by Satozuki; Bloxflip, which is operated by Studs; and RBLXWild, which is operated by RBLXWild. The Illegal Gambling Websites are each part of Roblox's Developer Exchange Program, allowing them to exchange Robux acquired from Roblox's minor users for real-world currency.

63.     Each of the Illegal Gambling Websites operates on or in concert with Roblox and the Gambling Website Defendants, facilitating an exchange of Robux for gambling credits that occurs on the Roblox platform. Indeed, Robux never leave the Roblox platform until they are exchanged for cash. Once a minor user's credits are exhausted, the Gambling Website Defendants cash out their newly-acquired Robux and provide Roblox with its 30% transaction fee.

64.     These websites all have substantially similar interfaces, which make it easy for a Roblox user to sign up, link their Roblox account, and begin gambling. The interface from Bloxflip and RBXFlip are set forth below:





65.     The Illegal Gambling Websites are not registered with any state or licensed to operate a casino or online gambling operation.

66.     Users of the Illegal Gambling Websites can deposit funds onto the website by linking their Roblox account and depositing Robux.

67.     Prior to Roblox attaining popularity, these types of gambling websites did not have access to a vast underage online audience with funds to gamble.

68.     However, because of the Roblox ecosystem, millions of children now have transferrable funds in the form of Robux that they can gamble with.

69.     As a result, most of the Illegal Gambling Websites' audience is children who use Roblox. The Illegal Gambling Websites do not engage in any kind of age verification or identification processes to prevent underage users from participating.

70.     Furthermore, although many of the games on the Illegal Gambling Websites are traditional gambling games, some are newer betting games such as "flip" and "crash," which are more like video games where bets are made, making them more appealing to a younger audience.

71.     Because the exchange of Robux for gambling credits occurs on the Roblox platform, using Roblox's technology and digital currency, Roblox has knowledge of these exchanges and facilitates them. When the Gambling Website Defendants cash out their ill-gotten gains, Roblox also earns money on the cash-out fees. In short, all Defendants work together to enrich themselves and each other at the expense of their adolescent and teenage users.

### *1.     RBXFlip*

72.     RBXFlip was the first major third-party gambling website to operate with Roblox, launching in approximately 2019. As its name suggests—"RBX" is short for Robux—the site was designed for and dependent upon Roblox's legions of minor users gambling away Robux purchased through Roblox's ecosystem.

73.     RBXFlip describes itself as "the leading peer 2 peer marketplace with fun & fair games" where users can bet Robux to play casino-style games.[11]

---

[11] https://rbxflip.com/coinflip?modal=FAQ

74.   RBXFlip expressly acknowledges that it operates as a gambling website, stating in section 1.6 of its terms of service that the "games" contained on its website "shall mean Casino, Live Casino, Sportsbook, cards, and other games."[12]

75.   Before even signing in, RBXFlip prominently displays two casino "games" on its homepage: Coinflip and Roulette. Both "games" allow players to bet Robux:



76.   RBXFlip's homepage further acknowledges, "Gambling means for the majority of our Users, entertainment, fun and excitement. But we also know that for some of our Users gambling has negative side effects."[13]

77.   But yet, RBXFlip incentivizes problematic gambling by offering "bonuses, coupons, loyalty points [and] prizes."[14] To obtain these benefits, users must satisfy RBXFlip's "wagering

_____

[12] *Id.*

[13] https://rbxflip.com/coinflip?modal=responsible-gambling

[14] https://rbxflip.com/coinflip?modal=ToS, at 16.7

requirements," which are "the total amount of bets you must stake before the bonus and any accrued winnings are transferred into your cash balance and can be withdrawn."[15]

78.    Although RBXFlip's terms of service state that "Persons who are under age of 18 years are not allowed to use the Website and/or any services available on it," the site's own promotional material contradicts its claim. In a video entitled, "RBXFlip Login Tutorial And How to Win Roblox Gambling," which has thousands of views, an RBXFlip spokesperson states that the first "Requirement to Gamble" on "our" website is that the Roblox user has an "Account age 13+."[16]

79.    The RBXFlip spokesperson continues by demonstrating how any user can connect their Roblox account to RBXFlip and how, when gambling on its website, the user's Robux are "sent to one of our storage bots for it to hold for the duration of the game." This storage bot is located on Roblox's website and uses Roblox's technology to exchange Robux for gambling credits, with Roblox's knowledge. The storage bot, or RBXFlip itself, is also part of Roblox's Developer Exchange, allowing RBXFlip to cash out its ill-gotten Robux for real-world currency. All participants in the Developer Exchange must register with Roblox, meaning Roblox has a full understanding of the entities that participate through its Developer Exchange.

80.    Minor users are easily able to create an account by copy and pasting their Roblox "cookie"—their unique security code—when prompted. This "cookie" is information Roblox generates on its website and tracks, thus providing it with knowledge of when a Roblox user's "cookie" is linked to another website such as RBXFlip and facilitating the transfer of Robux to this illegal online casino.

81.    RBXFlip also fails to utilize any age verification measures, meaning that any user, regardless of their actual age, can access the site and place bets using their Robux.

82.    While RBXFlip states that its casino games are not accessible "from the United States," this warning does not actually prohibit users in the United States from gambling on the

---

[15] https://rbxflip.com/coinflip?modal=ToS, at 16.10.2.11.

[16] https://www.youtube.com/watch?v=2jwhcFgmB6Q

1
2
3
4
5
6
7
8
9
10
11



12  website and is easily bypassed by pressing a bright blue "continue" button that appears on the

13  website's entry screen, as shown below:

14

15      83.    Roblox has never attempted to prevent RBXFlip from operating its online casino

16  using Robux. Indeed, Roblox has only tried to curtail RBXFlip's conduct in one instance: in 2019,

17  Roblox demanded that RBXFlip stop using its copyrights on the RBXFlip website. Roblox did not,

18  at this time or any other, demand that RBXFlip cease operating a gambling operation dependent

19  upon the Roblox ecosystem and the Robux digital currency.

20      84.    RBXFlip does an enormous amount of its business in Robux. In December 2021,

21  RBXFlip's owner claimed that the platform generated upwards of 10 million Robux on a daily basis.

22      **2.  *Bloxflip***

23      85.    Bloxflip, like RBXFlip, is an online casino catering to Roblox's adolescent and

24  teenage users. As of 2022, it was one of the most visited websites in the world with over 5.7 million

25  monthly visitors.

26
27
28

COMPLAINT FOR DAMAGES

86.     Bloxflip describes itself as a "betting service that allows users to play a variety of chance-based games ('Games') using . . . the virtual in-game currency used by players of Roblox ('Robux')."[17]



87.     The site further declares that it is "the #1 social casino for wagering ROBUX!"[18]

88.     When a user navigates to Bloxflip's page, they are encouraged to "Deposit . . . ROBUX . . . to receive a balance on the site to start playing!"[19]

89.     Bloxflip's homepage features several ways to gamble a user's Robux, with games like "Crash," "Blackjack," "Slots," "Plinko," and "Slide (Roulette)," and includes a live feed of each "bet" and the current "payout" from each of these casino games.[20]

---

[17] https://bloxflip.com/terms

[18] https://bloxflip.com/, at FAQ

[19] https://bloxflip.com/, at FAQ

[20] A tutorial for how to play each game can be found on Youtube in the video entitled, "A Beginners Guide to BloxFlip." *See* https://www.youtube.com/watch?v=35Lkf3SBwJU&t=7s.



90.     Although Bloxflip claims that users must be over eighteen to gamble, the website does not use any age verification software and users under the age of eighteen are freely able to access the website and gamble. All that is needed to log in to Bloxflip is a "Roblox username."

91.     Further, Bloxflip encourages minor users to promote its illegal gambling website by offering free Robux to users who promote Bloxflip on the popular social media product TikTok.

92.     For example, Bloxflip entered into a paid partnership with TikTok influencer RizJhadan_roblox, who has over 250,000 followers, to advertise its illegal gambling website to children. One video, entitled, "Finding Roblox Games, So you Don't Have Too!!! Check Our

BloxFlip in Bio!!!" is marked as a "paid partnership," and has been viewed over 1.7 million times and "liked" over 113,000 times.[21] In this sponsored post, the TikTok influencer tells his adolescent audience that in just "10 minutes" he was able to win "over 100k plus" worth of Robux, and states that "you guys can too."

93.     As the above example demonstrates, Bloxflip was designed to attract Roblox's minor users who could illegally gamble on the site using their Robux. For this reason, Bloxflip entered a paid partnership with an influencer whose name incorporates the word "roblox," and the illegal gambling website's name itself is a reference to the Roblox gaming platform.

94.     Although Bloxflip's website states that "Robux have no cash value and are for entertainment purposes only," its terms of service describe the process by which a user can "Cashout your ROBUX into your account."[22]

95.     When a user attempts to withdraw Robux from Bloxflip's casino website, Bloxflip notifies the user that "ROBLOX imposes a **30% marketplace fee** on all withdraws and the ROBUX will go into your pending balance for 3-7 days."[23]

---

[21] https://www.tiktok.com/@rizjhadn_roblox/video/7144340043300097281?lang=en
[22] https://bloxflip.com/terms
[23] *Id.* (emphasis in original)

96.     Bloxflip, like RBXFlip, uses a storage bot to accept and hold minor users' Robux on the Roblox platform. This storage bot is located on Roblox's website and uses Roblox's technology to exchange Robux for gambling credits, with Roblox's knowledge. The storage bot, or Bloxflip itself, is also part of Roblox's Developer Exchange, allowing Bloxflip to cash out its ill-gotten Robux for real-world currency. All participants in the Developer Exchange must register with Roblox, meaning Roblox has a full understanding of the entities that participate through its Developer Exchange.

97.     In a 2022 interview, Bloxflip's founder stated that he was "inspired" to create Bloxflip when he "saw the success of RBXFlip."[24] He further claimed that he designed the website to offer "PvP gambling" that focused on betting with Robux, which "open[ed] [the site] to more people." The Bloxflip founder also proclaimed that Bloxflip was the "#1 Roblox gambling site." Again, Bloxflip, like RBXFlip, is intended to capture Roblox's audience of minors, all while enriching both the operators of the website and their collaborators at Roblox.

        **3.      *RBLXWild***

_____

[24] https://www.youtube.com/watch?v=yFaR33G5yhQ

COMPLAINT FOR DAMAGES



98.     RBLXWild opens to a homepage that features many games in which minors may gamble, including "BlackJack," "Coinflip," "Plinko," and more.

99.     RBLXWild's homepage is designed to appeal to children and resemble a virtual arcade, with the website featuring cartoonish images to advertise each casino game.

100.    RBLXWild exchanges Robux for gambling credits on the Roblox platform using a storage bot, just like the other Gambling Website Defendants. This storage bot is located on Roblox's website and uses Roblox's technology to exchange Robux for gambling credits, with Roblox's knowledge. The storage bot, or RBLXWild itself, is also part of Roblox's Developer Exchange, allowing RBLXWild to cash out its ill-gotten Robux for real-world currency. All participants in the Developer Exchange must register with Roblox, meaning Roblox has a full understanding of the entities that participate through its Developer Exchange.

101.    The site explains that users can increase their "site balance," and thereby continue to gamble, "by depositing more . . . Robux."[25]

---

[25] https://rblxwild.com/?modal=general-tos

102.    RBLXWild, like the other Illegal Gambling Websites, also allows users to withdraw Robux from their accounts, explaining that any amount withdrawn will be reduced by the "30% fee that Roblox charges."

103.    Although RBLXWild claims that users must be over eighteen to access the site, it employs no age verification mechanisms to prohibit those under the age of eighteen from accessing the website and placing bets.

104.    Further, RBLXWild pays social media influencers to advertise and promote RBLXWild to children.[26] Several videos available on YouTube, for example, suggest that minor users can make enormous profits by gambling on RBLXWild. These videos have titles such as "I won over 5 million R$ In this Battle! (RBLXWild),"[27] and "I Won R$50,000 On RBLXWild! (Real Balance)."[28] The use of "R$" in these titles and others is a reference to Robux.

105.    Indeed, the name RBLXWild is itself a reference to Roblox and its digital currency, Robux, and the site is designed to attract Roblox's minor uses who will wager the ecosystem's digital currency, all while RBLXWild and Roblox share the profits.

106.    As set forth herein, each of the Illegal Gambling Websites works closely with Roblox and is intended to attract Roblox's minor users, who can freely wager their Robux.

### B. Roblox's Facilitation, Control, and Profit Sharing with the Illegal Gambling Websites

107.    Roblox knowingly and intentionally allows the Illegal Gambling Websites to operate in the Roblox ecosystem, access the Roblox platform, and facilitates the accessibility of illegal online casinos to its minor users. Further, because each of the Gambling Website Defendants must register themselves, or through a proxy, in Roblox's Developer Exchange Program, Roblox knows and understands that these entities move large quantities of Robux through the Roblox platform and in exchange for real-world currency.

---

[26] https://www.youtube.com/watch?v=2OPF9PWvi8A (stating that this video, with over 60,000 views, is sponsored by "Wild").

[27] https://www.youtube.com/watch?v=LzVi8Rd-99E

[28] https://www.youtube.com/watch?v=Odf3I9X3nZM

108.    Because Robux is not a cryptocurrency, but merely a digital currency, it cannot be removed from the Roblox platform. This means that when a user "deposits" Robux onto an Illegal Gambling Website, something else is really going on. The user's Robux do not leave the Roblox platform, but instead are transferred to another Roblox account controlled by a Gambling Website Defendant. Meanwhile, the user's Illegal Gambling Website account shows that it holds the equivalent amount of gambling credits, which are also called "Robux" by each of the Gambling Website Defendants.

109.    Roblox monitors and records each of these illegal transactions, yet does nothing to prevent them from happening.

110.    Here is how the practice works. When a Roblox user visits an Illegal Gambling Website, the user links their Roblox account to the gambling website by providing their login credentials or Roblox Security Token. Once the Illegal Gambling Website has this information, the user enters the amount of Robux they wish to deposit. The Illegal Gambling Website, now having control of the user's account, automatically initiates a removal of Robux from the user's account without any additional input from the user and then credits the user's gambling account with the equal amount of Robux.

111.    However, the Illegal Gambling Website is not actually transferring Robux from the Roblox platform to the Illegal Gambling Website. Instead, the Gambling Website initiates a transaction on Roblox between the user and a "stock" Roblox account (the "Stock Account") controlled by the Illegal Gambling Website. Because Roblox does not allow users to gift Robux to each other, the Illegal Gambling Website initiates a sale of a worthless item or experience from the Stock Account to the user for the amount of Robux the user wishes to deposit on the gambling website.

112.    The Illegal Gambling Website now holds the user's Robux in their Stock Account on the Roblox system, and the user's account on the Illegal Gambling Website is credited with a digital credit also labeled "Robux," with which the user can now gamble.

113.    Upon conclusion of gambling, a user may wish to withdraw their Robux from the Illegal Gambling Website. Just like the initial deposit process, the withdrawal process is not an

actual withdrawal, but merely a subtraction of the "Robux" on the gambling account and transfer of actual Robux back to the user's Roblox account by one of the Illegal Gambling Website's Stock Accounts.

114.    For instance, after the withdrawal of Robux, a user can see that their account now contains the Robux withdrawn from the Illegal Gambling Website. If the user reviews their "Sale of Items" page on their Roblox account, they can see that they received those Robux in exchange for the sale of a useless, or dummy, item or experience.

115.    However, the user will notice that after the withdrawal, their balance of Robux will be less than the amount they had on the Illegal Gambling Website. This is because Roblox takes a 30% fee on all transactions on the platform.

116.    For example, if the user withdrew 1000 Robux from an Illegal Gambling Website, they would only receive 700 Robux after the transfer from the Stock Account and Roblox will take the other 300 as a transaction fee.

117.    Roblox also takes a 30% fee on the original "deposit" transaction that occurs as a result of the user "depositing" Robux onto the Gambling Website.

118.    Therefore, Roblox collects a 30% fee off every transaction that deposits or withdraws funds on the Illegal Gambling Websites, earning Roblox millions in real-world revenue.

119.    As described above, Roblox earns nearly all of its $2 billion in annual revenue from selling users Robux and charging transaction fees on all transactions on the platform.

120.    Robux are an item of value equal to real-world currency. As described above, they have an exchange rate with the dollar and Roblox regularly pays out hundreds of millions of dollars to developers on its Robux exchange.

121.    As a result, Roblox profits from the gambling losses incurred by its users on the Illegal Gambling Websites and even charges fees on the transactions that facilitate the gambling.

122.    Furthermore, Roblox monitors and facilitates these exchanges of Robux, and tacitly approves the Illegal Gambling Websites' use of Stock Accounts to "hold" Robux in exchange for gambling credits that Roblox's minor users can utilize to place bets on the Illegal Gambling Websites.

**C.  Roblox Knows These Transactions are Facilitating Illegal Gambling but Continues to Allow the Transactions and Collect Fees Anyway.**

123.    Roblox knows that the Gambling Website Defendants use these Stock Accounts to facilitate transactions on the platform and that they are accessing Roblox servers in order to facilitate Illegal Gambling Website user transactions. Indeed, all such Accounts are required to register with Roblox through its Developer Exchange Program.

124.    Indeed, Roblox monitors each and every transaction for Robux on its website.

125.    Roblox has acknowledged in court filings that it can identify, track, and disable accounts using the Roblox platform for illegal purposes. For example, in a March 28, 2023, filing in the Northern District Court of California, Roblox and the plaintiffs filed a Notice of Motion and Motion in Support of Class Settlement as part of *Jane Doe v. Roblox Corporation*, Case 3:21-cv-03943-WHO (N.D. Cal. March 28, 2023). The filings stated that as part of the settlement terms, Roblox and the plaintiff had identified 311 accounts on its platform that spent over 80,000 Robux (equaling over $1000) engaging in suspicious behavior like purchasing the same virtual item from the same seller multiple times and creating and purchasing their own virtual item, which is exactly the procedure the Gambling Website Defendants utilize to exchange Robux for gambling credits. Roblox excluded these accounts from the settlement class and named them the "laundering exclusion" because it suspected they were engaged in money laundering or other suspicious activities.

126.    The "laundering exclusion" class in Roblox's settlement statements describes the type of transactions that the owners of the Illegal Gambling Websites use to facilitate the transfer of Robux on and off of the gambling platforms.

127.    Roblox admits that it can identify such suspicious activity and even labels it as so but refuses to ban these accounts. Furthermore, Roblox continues to earn a 30% commission on each of these suspicious transactions, reaping extraordinary profits.

128.    Roblox can also monitor and identify third-party websites, such as the Illegal Gambling Websites, that access its computers and servers in order to facilitate the gambling

transactions. Indeed, Roblox actively monitors these websites and keeps track of their exchange of Robux for gambling credits.

129.    Many of the Illegal Gambling Websites claim to have had millions of dollars' worth of Robux wagered on their platforms. For example, RBXFlip's owner shared a screenshot in a 2020 interview showing that over 7 billion Robux (equal to over $70 million) had been wagered on the platform:[29]

130.    Further, the owner stated in 2021, that RBXFlip made ten times as much revenue that year as it had previously, indicating the amount of Robux bet on that one platform is likely in the hundreds of millions.[30]

_____

[29] RoZone,"Interviewing The FOUNDER Of RBXFlip!," YouTube (Dec. 28, 2020, at 1:08), https://www.youtube.com/watch?v=J88I7Y3JF-s.

[30] RoZone, "Interviewing The FOUNDER Of RBXFlip | 2021," YouTube (Dec. 5. 2021), https://www.google.com/search?q=Interviewing+The+FOUNDER+Of+RBXFlip+%7C+2021&oq=Interviewing+The+FOUNDER+Of+RBXFlip+%7C+2021&aqs=chrome..69i57j69i61.453j0j7&sourceid=chrome&ie=UTF-8#fpstate=ive&vld=cid:88c7b884,vid:ELeXsMr2wco.

131.    Roblox cannot credibly claim it is unaware of the Illegal Gambling Websites since numerous Roblox-affiliated social media influencers have gone public about their concerns that the site is permitting children to be preyed upon.

132.    As far back as at least 2019, Roblox social media celebrity "KreekCraft" (@KreekCraft), who has 1.3 million followers, tweeted that he "Heard a lot about rbxflip today. For the people unaware it's a Roblox robux gambling site. 1. It is ILLEGAL for anyone not an adult to gamble. 2. Don't use it. You'll be banned." Roblox frequently interacts with "KreekCraft" on social media and monitors his Twitter account. As but one example:



COMPLAINT FOR DAMAGES

133.     Accordingly, Roblox knew or should have known that one of its primary social media personalities was raising alarms about RBXFlip. But Roblox did nothing because, unbeknownst to "KreekCraft" and his followers, Roblox was making significant profit off RBXFlip's gambling operation.

134.     Further, in a January 2019 tweet sent to its more than 95,000 followers, the popular Twitter account "Roblox Trading News" tweeted that it "Got into an argument with the owner of the Roblox gambling site @rbxflip in which he bragged about how he was a 'multi-millionaire' off his site only to edit that portion out after I replied, 'You made all your money off the backs of children losing thousands of dollars.'"[31] "Roblox Trading News" is a social media personality followed and monitored by Roblox.

135.     Another popular Roblox social media personality, "SharkBlox" (@SharkBloxYT), with over 196,000 followers, replied to this tweet and stated that these sites [the Illegal Gambling Websites] were "Also probably gonna get kids addicted to gambling. Sites like these suck. No body wins at gambling except the website owners, I just wish more people realized that."[32]

136.     Additionally, both BloxFlip and RBLXWild have mounted social media ad campaigns with several videos totaling over one million views:



---

[31] https://twitter.com/SharkBloxYT/status/1616172836736876552

[32] *Id.*

COMPLAINT FOR DAMAGES



137.    Roblox is well aware of these highly visible campaigns to entice Roblox's minor users to gamble and, although certain social media personalities may not know it, Roblox has been greatly enriched by these campaigns.

138.    Roblox is complicit in this illegal gambling scheme because it works in concert with, and continues to allow, the Illegal Gambling Websites to operate on its platform and assesses a 30% fee on all transactions of Robux to and from the Illegal Gambling Websites. This means Roblox has likely earned hundreds of millions in fees charged on transactions related to illegal gambling.

139.    Furthermore, Roblox executives are personally aware of the Illegal Gambling Websites' existence and Roblox knows that the Websites do nothing to prevent its minor users from gambling on the Websites with Robux.

140.    Roblox understands the ease with which minor users are able to link their Robux wallet to the Illegal Gambling Websites and begin illegally gambling, but has failed for years to prevent such transactions.

   ***III. Plaintiffs' Experiences***

### A.  Rachelle Colvin

141.    Plaintiff Rachelle Colvin is the parent and next friend of G.D. G.D. is a minor who plays Roblox using his own user-created account. Minor Plaintiff G.D. is a resident of California and is represented in this action by his mother and next friend, Plaintiff Rachelle Colvin.

142.    Minor Plaintiff G.D. has purchased thousands of Robux through the use of Roblox gift cards that were under his complete ownership and control.

143.    Minor Plaintiff G.D. utilized his in-game currency to gamble on the Illegal Gambling Websites.

144.    Specifically, Minor Plaintiff G.D. has paid money to RBLXWild and other Illegal Gambling Websites through Defendant Roblox.

145.    Minor Plaintiff G.D. has lost thousands of Robux playing gambling games on RBLXWild and other Illegal Gambling Websites.

146.    At the time that Minor Plaintiff G.D. was wagering Robux on RBLXWild and other Illegal Gambling Websites, Plaintiff Rachelle Colvin was not aware that her son was using Robux to engage in gambling activities.

### B.  Danielle Sass

147.    Plaintiff Danielle Sass is the parent and next friend of L.C. L.C. is a minor who plays Roblox using his own user-created account. Minor Plaintiff L.C. is a resident of New York and is represented by his mother and next friend, Plaintiff Danielle Sass.

148.    Minor Plaintiff L.C. has purchased thousands of Robux through the use of Roblox gift cards that were under his complete ownership and control and through a monthly subscription to Roblox.

149.    Minor Plaintiff L.C. utilized his in-game currency to gamble on the Illegal Gambling Websites.

150.    Specifically, Minor Plaintiff L.C. has paid money to Bloxflip and other Illegal Gambling Websites through Defendant Roblox.

151.    Minor Plaintiff L.C. has lost thousands of Robux playing gambling games on Bloxflip and other Illegal Gambling Websites.

152.    At the time Minor Plaintiff L.C. was wagering Robux on Bloxflip and other Illegal Gambling Website, Plaintiff Danielle Sass was not aware that her son was using Robux to engage in gambling activities.

**CLASS ALLEGATIONS**

153.    Plaintiffs bring this action individually and on behalf of all others similarly situated. The proposed classes are defined as:

**Nationwide Class:**

All adult persons in the United States who, during the applicable limitations period, are or were the parent and/or legal guardian of a minor who acquired Robux through the Roblox platform and subsequently wagered and lost some or all of those Robux on any of the Illegal Gambling Websites.

**California Class:**

All adult persons residing in the State of California who, during the applicable limitations period, are or were the parent and/or legal guardian of a minor who acquired Robux through the Roblox platform and subsequently wagered and lost some or all of those Robux on any of the Illegal Gambling Websites.

**New York Class:**

All adult persons residing in the State of New York who, during the applicable limitations period, are or were the parent and/or legal guardian of a minor who acquired Robux through the Roblox platform and subsequently wagered and lost some or all of those Robux on any of the Illegal Gambling Websites.

154.    The Nationwide Class, California Class, and New York Class are collectively referred to herein as the "Classes."

155.    Excluded from the Classes are Defendants, their subsidiaries and affiliates, officers, directors, the members of their immediate families, and any entity in which any Defendant has a

controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

156.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes if necessary, before this Court determines whether certification is appropriate.

157.     This case is properly brought as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3) and all requirements are met for the reasons set forth in the following paragraphs.

158.     *Numerosity*. The members of the Classes are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to discovery, the Classes consist of many thousands of members, the identity of whom are within the exclusive knowledge of Defendants and can be ascertained only by resorting to Defendants' records, discovery, and other third-party sources.

159.     *Commonality*. There are numerous questions of law and fact common to the Classes relating to Defendants' business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

- o Whether the Defendants formed an Enterprise engaged in illegal gambling activity in violation of the federal RICO statute;
- o Whether each Defendant and/or the Enterprise engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962;
- o Whether one or more Defendants engaged in unlawful or unfair conduct prohibited by the California UCL;
- o Whether Defendants, individually or collectively, maintained, owned, operated, or managed gambling websites prohibited by California Penal Code §§ 330a, 330b, and 330.1 *et seq*.;
- o Whether Defendants, individually or collectively, violated 18 U.S.C. § 1955 by operating the gambling businesses described herein;

COMPLAINT FOR DAMAGES

○ Whether Defendant Roblox accepted payments in connection with unlawful internet gambling in violation of 31 U.S.C. § 5633;

○ Whether Defendants, individually or collectively, violated the CLRA's prohibition on unfair methods of competition and/or unfair and deceptive practices;

○ Whether Defendants engaged in deceptive acts or practices prohibited by the New York GBL;

○ Whether Defendants collectively engaged in a civil conspiracy to violate the New York GBL, or to conduct themselves negligently under New York law;

○ Whether Defendants' actions, individually or collectively, constitute negligence per se;

○ Whether Defendants unjustly enriched themselves to the detriment of Plaintiffs and members of the Class;

○ Whether Defendants' collective conduct constitutes a civil conspiracy to violate the UCL, CLRA, and/or commit negligence per in violation of California law;

○ the proper measure of damages; and

○ the declaratory and injunctive relief to which the Class is entitled.

160. *Typicality.* Plaintiffs' claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practices engaged in by Defendants, as described herein.

161. *Adequacy of Representation.* Plaintiffs are adequate representatives of the Classes because Plaintiffs, both individually and on behalf of their minor children, have sustained damage as a result of Defendants' uniform conduct. In addition:

○ Plaintiffs are committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

1    o   There is no hostility of interest between Plaintiffs and the unnamed Class
2        members;

3    o   Plaintiffs anticipate no difficulty in the management of this litigation as a class
4        action; and

5    o   Plaintiffs' legal counsel has the financial and legal resources to meet the
6        substantial costs and legal work associated with this type of litigation.

7    162.    *Predominance.* The questions of law and fact common to the Classes as set forth in
8    the "commonality" allegation above predominate over any individual issues. As such, the
9    "commonality" allegations are restated and incorporated herein by reference.

10   163.    *Superiority.* A class action is superior to other available methods and highly desirable
11   for the fair and efficient adjudication of this controversy. Since the amount of each individual Class
12   member's claim is very small relative to the complexity of the litigation and since the financial
13   resources of Defendants are significant, no Class member could afford to seek legal redress
14   individually for the claims alleged herein. Therefore, absent a class action, the Class members will
15   continue to suffer losses and Defendants' misconduct will proceed without remedy. In addition,
16   even if Class members themselves could afford such individual litigation, the court system could
17   not. Given the complex legal and factual issues involved, individualized litigation would
18   significantly increase the delay and expense to all parties and to the Court. Individualized litigation
19   would also create the potential for inconsistent or contradictory rulings. By contrast, a class action
20   presents far fewer management difficulties, allows claims to be heard which might otherwise go
21   unheard because of the relative expense of bringing individual lawsuits, and provides the benefits
22   of adjudication, economies of scale and comprehensive supervision by a single court.

23   164.    All conditions precedent to bringing this action have been satisfied and/or waived.

24   **FIRST CAUSE OF ACTION**

25   **VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS**

26   **ACT ("RICO"), 18 U.S.C. § 1961 *et seq*.**

27   165.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding
28   paragraphs of this Complaint.

166.    This Claim is brought on behalf of the Nationwide Class for actual and treble damages and equitable relief under 18 U.S.C. § 1964. Members of the Nationwide Class are referred to herein collectively as "Class Members."

167.    Plaintiffs, Class Members, Roblox, and each of the Illegal Gambling Website Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

**A.   The Roblox RICO Enterprise**

168.    Since at least 2019, Roblox, along with an enterprise of associated-in-fact entities that controlled the Illegal Gambling Websites (the "Enterprise"), operated an unlawful online gambling ring that preyed on children, adolescents, and teenagers. The Enterprise targeted Roblox's prime users—those under the age of eighteen—and encouraged them to wager Robux on virtual games of chance, depriving these users of millions of Robux. As set forth herein, Robux have cash value and, after the Enterprise acquired the sought-after digital currency from its victims, it converted Robux to cash. The exchange of Robux for gambling credits occurred entirely on Roblox's platform, with Roblox's knowledge and active engagement.

169.    Roblox was associated with the illegal Enterprise and conducted and participated in the Enterprise's affairs through a pattern of racketeering activity including gambling, illegal gambling businesses, and laundering of monetary instruments, all in violation of 18 U.S.C. § 1962.

170.    The RICO Enterprise that engaged in, and whose activities affected, interstate commerce, is an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for the common purpose of employing the multiple deceptive, abusive, and fraudulent acts described herein.

171.    At all times, the Enterprise consisted of at least Roblox and the owners and operators of the Illegal Gambling Websites—Satuzoki, Studs, and RBLXWild. Each of these entities was at all times aware that they were engaged in illegal gambling operations that relied on and was facilitated by Roblox's digital currency, Robux. Further, each of these entities knew that the primary users of Roblox—children, adolescents, and teenagers under the age of eighteen—were wagering Robux on the Illegal Gambling Websites.

172.    The RICO Enterprise is an ongoing organization with an ascertainable structure and a framework for making and carrying out decisions, that functions as a continuing unit with established duties, and that is separate and distinct from the pattern of racketeering activity in which Enterprise members have engaged and are engaging. The Enterprise was and is used by Roblox as a tool to effectuate the pattern of racketeering activity.

173.    Roblox, Satozuki, Studs, and RBLXWild were and are entities separate and distinct from each other and from the Enterprise. All of the Enterprise constituents are independent legal entities with the authority and responsibility to act independently of the Enterprise and of the other Enterprise members.

174.    The members of the Enterprise all had a common purpose: to facilitate and promote an illegal gambling operation that preyed upon minor victims and thereby enrich themselves.

175.    Each member of the Enterprise benefited from the common purpose: the Illegal Gambling Websites acquired Robux wagered by minor users and thereafter converted those Robux to cash. Roblox took a 30% fee each time the Illegal Gambling Websites made such a transfer.

**B.  Pattern of Racketeering Activity**

176.    As set forth herein, Roblox conducted and participated in the affairs of the Enterprise through a pattern of racketeering activity that lasted several years, beginning in at least 2019 and continuing to the present day. This pattern consisted of continuous acts involving conducting, financing, managing, supervising, directing, or owning all or part of an illegal gambling business, in violation of 18 U.S.C. § 1955.

177.    Since at least 2019, Roblox and the Gambling Website Defendants have engaged in numerous, continuous predicate acts that constitute racketeering activity, including its known facilitation of illegal gambling websites that cater to, and prey upon, Roblox's minor users. During the class period, Roblox has facilitated numerous exchanges of Robux for gambling credits on its platform and thereafter permitted the Gambling Website Defendants to cash those illegally-acquired Robux out in exchange for real-world currency, all while Roblox takes a 30% fee from each transaction.

178.    During the entirety of this period, and as set forth herein, Roblox knowingly facilitated this racketeering activity; indeed, every exchange of Robux took place entirely on Roblox's platform, using Roblox's technology, with Roblox's knowledge, and resulted in Roblox's enrichment.

179.    Furthermore, Roblox required each of the Gambling Website Defendants to register in its Developer Exchange program, or to register a proxy or agent in the program, so that the Gambling Website Defendants could exchange ill-gotten Robux for real-world currency. Because they were registered in its Developer Exchange, Roblox knew and understood that the Gambling Website Defendants and their agents were not selling goods to minors in exchange for Robux, but were instead using the Roblox platform to exchange Robux for gambling credits. Roblox has in the past identified such exchanges and characterized them as laundering fronts, demonstrating that it knows full well when such sham exchanges are occurring.

**C. Plaintiffs' Injuries**

180.    Plaintiffs and members of the Classes were injured and lost money or property, including but not limited to money paid for Roblox's in-game currency, Robux, as a result of the illegal practices of the RICO Enterprise.

181.    Among other things, Plaintiffs would not have lost money playing illegal gambling games if not for the illegal acts and practices of the RICO Enterprise.

182.    The wrongful conduct of the RICO Enterprise has been and remains part of the RICO Enterprise's ongoing way of doing business and constitutes a threat to the Plaintiffs' and the Classes' property. Without the repeated illegal acts and intentional coordination between all participants, the RICO Enterprise's scheme would not have succeeded and would not pose a threat to Plaintiffs and the Classes into the future.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE "UNLAWFUL PRONG" OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

183.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

184.   This Claim is brought on behalf of the Nationwide Class and the California Class, referred to in this section collectively as the "Class."

185.   Plaintiffs and Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

186.   As a result of engaging in the conduct alleged in this Complaint, Defendants have violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the following laws:

   a.   **California Penal Code § 330a**: Section 330a states that "[e]very person, who has in his or her possession or under his or her control . . . or who permits to be placed, maintained, or kept in any room, space, inclosure, or building owned, leased, or occupied by him or her, or under his or her management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by mean whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from the machine, when the result of action or operation of the machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance . . . is guilty of a misdemeanor." Defendants, individually and collectively, violate section 330a because they operate illegal gambling websites upon which minors are able to, and do, gamble Robux, which have real-world cash value, in virtual games of chance.

   b.   **California Penal Code § 330b**: Section 330b states that "[i]t is unlawful for any persons to manufacture, repair, own, store, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to repair, sell, rent, lease, let on shares, lend or give away, or permit the operation, placement, maintenance, or keeping of, in any place, room, space, or building owned, leased, or occupied, managed, or controlled by that person, any slot machine or device, as defined in this

section." Defendants, individually and collectively, violate section 330b because they operate illegal gambling websites upon which minors are able to, and do, gamble Robux, which have real-world cash value, in virtual games of chance, including virtual slot machines and other gambling devices defined as illegal under this section.

c.    **California Penal Code § 330.1 *et seq*.**: Section 330.1(a) states that "[e]very person who manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends or gives away, transports, or exposes for sale or lease, or offers to sell, rent, lease, let on shares, lend or give away or who permits the operation of or permits to be placed, maintained, used, or kept in any room, space, or building owned, leased, or occupied by him or her or under his or her management or control, any slot machine or device as hereinafter defined, and every person who makes or permits to be made with any person any agreement with reference to any slot machine or device as hereinafter defined, pursuant to which agreement the user thereof, as a result of any element of hazard or chance, may become entitled to receive anything of value or additional chance or right to use that slot machine or device, or to receive any check, slug, token, or memorandum, whether of value or otherwise, entitling the holder to receive anything of value, is guilty of a misdemeanor." Defendants, individually and collectively, violate section 330.1 because they operate illegal gambling websites upon which minors are able to, and do, gamble Robux, which have real-world cash value, in virtual games of chance, including virtual slot machines and other gambling games defined as illegal under this section.

d.    **California Penal Code § 337j(a)(1)**: By "operat[ing], carry[ing] on, conduct[ing], maintain[ing], or expos[ing] for play" unlicensed gambling in the state, Defendants, individually and collectively, violate section 337j(a)(1).

e.    **California Penal Code § 337j(a)(2)**: By "receiv[ing], directly or indirectly, any compensation or reward or any percentage or share of the revenue, for keeping, running, or carrying on any controlled game," Defendants, individually and collectively, violate section 337j(a)(2).

f.      **The Illegal Gambling Business Act of 1970 (18 U.S.C. § 1955) (the "IGBA")**: The IGBA makes it a crime to "conduct, finance, manage, supervise, direct, or own all or part" of an illegal gambling business. Defendants, both individually and collectively, violate the IGBA because their respective businesses involve five or more persons, have been in continuous operation for more than thirty days, and violate California's gambling laws as alleged herein.

g.      **The Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§ 5361-5367) (the "UIGEA")**: The UIGEA makes it illegal for a "person engaged in the business of betting or wagering" to knowingly accept payments "in connection with the participation of another person in unlawful Internet gambling." 31 U.S.C. § 5633. "Unlawful Internet Gambling" is placing, receiving, or transmitting a bet or wager through, at least in part, the Internet where such bet or wager "is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 15 U.S.C. § 5362(10)(a). Defendants, individually and collectively, violate the UIGEA because they operate the illegal gambling websites upon which minors are able to, and do, gamble Robux, which have real-world cash value, in virtual games of chance.

h.      **Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)(14)**: As alleged below, Defendants' conduct, individually and collectively, violates section 1770(a)(14) of the CLRA. Therefore, Defendants have also violated the UCL's "unlawful" provision.

187.    Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendants will continue to engage in the unlawful conduct described herein.

188.    Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the Class. As described herein, Defendants facilitate and profit from the Robux acquired through the Illegal Gambling Websites. Roblox not only hosts and facilitates the exchange of Robux for

gambling credits, but it takes a fee each time the Gambling Website Defendants cash out Robux acquired from Roblox's minor users. But for Defendants' unlawful and unfair conduct, Plaintiffs and Class members would not and could not have lost Robux, which were purchased with real-world currency, and could not have engaged in illegal gambling on the Illegal Gambling Websites. Plaintiffs have suffered injury in fact and have lost money and property as a result of Defendants' conduct.

189.    Accordingly, Plaintiffs, individually and on behalf of G.D. and L.C., as well as all others similarly situated, seek restitution from Defendants of all money obtained from Plaintiffs and the Class as a result of Defendants' unfair competition.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE "UNFAIR" PRONG OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

190.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

191.    This Claim is brought on behalf of the Nationwide Class and the California Class, referred to in this section collectively as the "Class."

192.    Plaintiffs and Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

193.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

194.    As a result of engaging in the conduct alleged herein, Defendants, both individually and collectively, have violated the UCL's proscription against "unfair" business practices.

195.    Defendants' unfair conduct alleged in the Complaint is illegal, immoral and unscrupulous. Under federal and state law, as well as under prevailing ethical principles, establishing a website on which adolescents and teenagers are able to gamble digital currency with real-world value violates the UCL. The conduct is illegal not only because it deprives children of money and property, but also because it fosters highly addictive behavior in a population that is ill-equipped to deal with the psychological and cognitive impacts. However, because Defendants

prioritized profits over legality and morality, they have constructed an ecosystem in which Roblox's adolescent and teenage users can easily and manipulatively fall prey to the Illegal Gambling Websites' harms.

196.    This conduct also violates legislatively declared policies articulated in, *inter alia*, California and federal statutory provisions, as set forth above.

197.    Indeed, California's legislature has declared that "[g]ambling can become addictive and is not an activity to be promoted or legitimized as entertainment for children or families." Cal. Bus. & Prof. Code § 19801(c). In violation of this public policy, Defendants' conduct promotes, facilitates, and profits from addictive gambling websites that are marketed, sold, and made available to children.

198.    California's legislature has also declared that "[u]nregulated gambling enterprises are inimical to the public health, safety, welfare, and good order. Accordingly, no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state and by the ordinances of local governmental bodies." Cal. Bus. & Prof. Code § 19801(d). In violation of this public policy, Defendants, individually and collectively, operate unregulated gambling enterprises that are inimical to the public health, safety, and welfare, and that prey on adolescents and teenagers. Defendants have not been permitted by the State of California or any local governmental bodies to engage and operate the gambling enterprise as described herein.

199.    California's legislature has also found and declared that "[p]ublic trust that permissible gambling will not endanger public health, safety, or welfare requires that comprehensive measures be enacted to ensure that gambling is free from criminal and corruptive elements, that it is conducted honestly and competitively, and that it is conducted in suitable locations." Cal. Bus. & Prof. Code § 19801(g). In violation of this public policy, and in contravention of the "public trust," Defendants, individually and collectively, have brought unregulated gambling into the homes of millions of underage consumers, often without their parents' knowledge or consent.

200.    Defendants' unfair conduct also includes and arises from their operation of the gambling operation as described herein, which is designed to exploit addictive and/or compulsive

tendencies in vulnerable youth to thereby ensure that these addictive and compulsive behaviors will continue.

201.    There is, simply put, no societal benefit to Defendants' conduct, which is illegal and violates the public policy of the State of California. Defendants' conduct causes only harm, which enriches Defendants at the expense of Roblox's minor users.

202.    Defendants' violations of the UCL, both individually and collectively, continue to this day. Unless restrained and enjoined, Defendants will continue to engage in the unfair conduct described herein.

203.    Defendants' conduct caused and continues to cause substantial injury to Plaintiffs, both individually and on behalf of L.C. and G.D., as well as the Class members. As described herein, Defendants facilitate and profit from the Robux acquired through the Illegal Gambling Websites, which are cashed out for real-world currency. Roblox not only hosts and facilitates the exchange of Robux for gambling credits, but it takes a fee each time the Gambling Website Defendants cash out Robux acquired from Roblox's minor users. But for Defendants' unlawful and unfair conduct, Plaintiffs and Class members would not and could not have lost Robux, which were purchased with real-world currency, and could not have engaged in illegal gambling on the Illegal Gambling Websites. Plaintiffs have suffered injury in fact and have lost money and property as a result of Defendants' conduct.

204.    Accordingly, Plaintiffs and the Class seek restitution from Defendants of all money obtained from Plaintiffs and the Class members as a result of Defendants' unfair competition.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")**

**(Cal. Civ. Code §§ 1750, *et seq.*)**

205.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

206.    This Claim is brought on behalf of the Nationwide Class and the California Class, referred to in this section collectively as the "Class."

207.   Plaintiffs and members of the Class are "consumers," as that term is defined by Civil Code § 1761(d), because they purchased Robux for personal, family, or household purposes.

208.   Plaintiffs and Class members have engaged in a "transaction" with Roblox, as well as the Gambling Website Defendants, as that term is defined by Civil Code § 1761(e).

209.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for purposes of the CLRA, and was undertaken by Defendants, individually and collectively, in transactions intended to result in, and which resulted in, the sale of goods or services to consumers—namely, the sale of Robux, as well as Roblox's associated services in facilitating access to virtual gambling offered by the Gambling Website Defendants. In addition, Roblox provides users, including Class members, access to a gaming platform, which is itself a good or service, as those terms are defined by the CLRA, and this platform serves to direct minor users to the Illegal Gambling Websites, on which users can participate in illegal gambling activities.

210.   As a result of Defendants' conduct, Plaintiffs and Class members purchased Roblox's goods and/or services for use by their minor children, and Defendant Roblox then facilitated those children to exchange Robux for gambling credits on the Roblox ecosystem and ultimately to participate in illegal gambling on the Illegal Gambling Websites.

211.   By engaging in the conduct described herein, Defendants, individually and collectively, have violated subdivision (a)(14) of California Code § 1770 by "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Under this provision, omissions are actionable.

212.   Defendants, individually and collectively, violated the CLRA by representing to Plaintiffs and their minor children that none of the developers that operate in the Roblox ecosystem host games that constitute illegal gambling and that Robux could not be used to engage in illegal gambling when, in fact, Defendants set up and collectively facilitated an illegal gambling enterprise in which adolescents and teenagers exchange Robux in the Roblox ecosystem for gambling credits for the express purpose of gambling. Moreover, Defendant Roblox publicly claimed, both in its terms of service and in public representations, that it actively monitored its platform to prohibit its

minor users from engaging in illegal gambling when, in fact, it knowingly facilitated such illegal activities. Defendants further violated the CLRA by failing to disclose to Plaintiffs and their children that Roblox supported and facilitated an illegal gambling enterprise that minors could engage in using Robux.

213.    Defendants' violations of the CLRA proximately caused injury in fact to Plaintiffs, their minor children, and the Class.

214.    Pursuant to Cal. Civ. Code § 1782(d), Plaintiffs, individually and on behalf of the Class, seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

215.    Pursuant to Cal. Civ. Code § 1782(a), Defendant Roblox was notified in writing by certified mail of the particular violations of Section 1770 of the CLRA, which notification demanded that Defendant Roblox rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

216.    Undersigned counsel conferred with counsel for Defendant Roblox, and Roblox indicated it would not rectify or agree to rectify the problems associated with the actions detailed above or give notice to all affected consumers. Accordingly, Plaintiffs further seek claims for actual, punitive, and statutory damages, as appropriate.

217.    Defendants' conduct, individually and collectively, is wanton and malicious.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**

218.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

219.    This Claim is brought on behalf of the New York Class, referred to in this section collectively as the "Class."

220.    New York General Business Law § 349 ("GBL 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service" in the State of New York.

221. Defendants engaged in "business," "trade," or "commerce" within the meaning of N.Y. Gen. Bus. Law § 349(a).

222. Plaintiffs and Class Members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

223. By reason of the conduct alleged herein, Defendants engaged in unlawful practices within the meaning of GBL 349. The conduct alleged herein is a "business practice" within the meaning of GBL 349, and the deception occurred within the State of New York.

224. Defendant Roblox transmitted false and misleading information to Class members in the State of New York. In particular, Roblox represented to Plaintiffs and Class members that gambling was not permitted on its platform, yet facilitated the illegal gambling enterprise through the exchange of Robux that occurred entirely within Roblox's platform, with Roblox's knowledge and support.

225. Most, if not all, of the alleged misrepresentations and omissions made by Defendants were transmitted to members of the Class residing in the State of New York.

226. Defendant Roblox expressly represented that it did not permit gambling to occur on its platform, that Robux cannot be used for gambling purposes, and that it monitored third parties to ensure that its platform was not used to facilitate illegal gambling using Robux. None of these representations are true or accurate, as set forth above.

227. Defendant Roblox further omitted material information from its users, including its minor users, failing to inform them that it was facilitating an illegal gambling enterprise along with the Gambling Website Defendants. Roblox also failed to inform its users that they could, in fact, use their Robux to engage in gambling activities, which were facilitated through the Roblox platform.

228. The misrepresentations and omissions for which Defendant Roblox is responsible constitute representations as to the particular standard, quality, or grade of goods and/or services that such goods and/or services did not actually have, in violation of GBL 349.

229. Further, the misrepresentations and omissions for which Defendant Roblox is responsible relate to unlawful practices—namely, illegal gambling by minors, which is illegal in the

State of New York. Accordingly, Roblox's misrepresentations and omissions violate N.Y. Gen. Bus. Law § 349(g).

230.    Defendant Roblox knew or should have known that its minor users could and were likely to engage in illegal gambling using the Roblox platform, and therefore Roblox's representations that such activities were prohibited were misleading and/or false.

231.    Defendant Roblox did not disclose to Plaintiffs or the Class members that Roblox users, including minors, could use Robux to engage in illegal gambling on the Illegal Gambling Websites, and that Roblox facilitated such gambling by supporting the exchange of Robux for gambling credits on its platform.

232.    Defendant Roblox also did not disclose to Plaintiff or the Class members that it knew that the Gambling Website Defendants were operating the Illegal Gambling Websites, or that Roblox was facilitating the operation of these websites and profiting from their operation.

233.    Defendant Roblox's misrepresentations and omissions were material because they were likely to deceive reasonable consumers, including both parents and Roblox's minor users, about whether Roblox facilitated illegal gambling using Robux.

234.    Such acts by Defendant Roblox are and were deceptive acts or practices that were likely to mislead a reasonable consumer, including Roblox's minor consumers, using the Roblox platform in a reasonable manner.

235.    The misrepresentations and omissions described herein that were transmitted to consumers, including minors, residing in New York, were consumer-oriented acts and thereby fall under the protection of GBL 349.

236.    Defendant Roblox's violations of GBL 349 have an impact and general importance to the public, including the people of New York. Conservatively, thousands of minors residing in New York have fallen victim to Roblox's misrepresentations and omissions and, in turn, the illegal gambling scheme in which Roblox participates. In addition, New York residents have a strong interest in regulating the conduct of companies that provide services to minors residing in the state, to ensure those minors are protected from harm and deception.

237.    As a direct and proximate result of the deceptive practices alleged herein, Plaintiff and members of the Class have suffered (and will continue to suffer) the predatory harms inflicted by Defendants' illegal gambling scheme. Minor Plaintiff L.C., as well as other minor members of the Class, has lost Robux, with monetary value, as a result of Defendants' deceptive conduct.

238.    Further, although Defendant Roblox has engaged in material misrepresentations and omissions, as set forth herein, it has also participated in a civil conspiracy to violate GBL 349 along with the Gambling Website Defendants. To accomplish their objectives, Defendants agreed to create an illegal gambling environment that would cater to Roblox's minor users. The Gambling Website Defendants created gambling websites that would accept Robux in exchange for gambling credits, Roblox would facilitate the exchange of Robux for gambling credits on the Roblox platform, and Roblox would charge a 30% fee when the Gambling Website Defendants cashed out the Robux obtained from minor users like L.C. and other minor members of the Class. Each participant in this conspiracy understood that Roblox was deceiving its minor users and their parents or guardians when it claimed that Robux could not be used on its platform to engage in illegal gambling when, in fact, Roblox was working with the Gambling Website Defendants to achieve exactly this purpose.

239.    Minor Plaintiff L.C. and members of the Class lost Robux as a result of the violations described herein, and these Robux have real-world monetary value.

240.    Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff, on behalf of herself, her minor child, L.C., and all others similarly situated, seeks all monetary and non-monetary relief allowed by law, including damages in the amount of actual damages or $50, whichever is greater, for each violation of GBL 349, injunctive relief, and attorneys' fees and costs, as well as all damages permitted as a result of Defendants' civil conspiracy, including damages inflicted due to unlawful acts taken in furtherance of the conspiracy. Because Defendants' conduct was committed willfully and knowingly, Plaintiff and Class Members are entitled to recover up to three times their actual damages.

## SIXTH CAUSE OF ACTION

## NEGLIGENCE PER SE

241.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

242.    This Claim is brought on behalf of the California and New York Class, respectively, referred to in this section collectively as the "Class."

243.    Under federal law, California law, and New York law, it is illegal for those under the age of 18 to patronize a gambling business of any kind.

244.    At all times relevant hereto, Defendants had a duty to comply with federal law, as well as the laws of California and New York.

245.    Pursuant to the IGBA (18 U.S.C. § 1955), Defendants are prohibited by federal law from conducting, financing, managing, supervising, directing, or owning all or part of an illegal gambling business.

246.    Pursuant to the UIGEA (31 U.S.C. § 5363), Defendants are prohibited by federal law from knowingly accepting payments in connection with unlawful Internet gambling.

247.    Pursuant to the following laws of California and New York, Defendants are prohibited from operating, managing, financing, directing, facilitating, and/or profiting from illegal gambling websites that cater to and permit those under the age of eighteen to place wagers on games of chance:

    a.   California Penal Code § 330a;

    b.   California Penal Code § 330b;

    c.   California Penal Code § 330.1;

    d.   California Penal Code § 337j(a)(1);

    e.   California Penal Code § 337j(a)(2);

    f.   New York Penal Law § 225.05;

    g.   New York Penal Law § 225.10;

    h.   New York Penal Law § 225.30; and

    i.   New York Penal Law § 225.95.

248.    Further, the New York State Constitution prohibits gambling unless expressly permitted by law. Both California and New York prohibit gambling by those under the age of eighteen.

249.    The above-referenced laws and legal prohibitions imposed a duty upon Defendants to ensure Plaintiffs and Class members were not able to engage in illegal gambling activities using the Roblox platform, as well as a duty not to promote and provide access to the Illegal Gambling Websites through the Roblox platform, using Robux digital currency.

250.    Defendants breached their duties to Plaintiffs and Class members under the aforementioned statutes and laws by providing Roblox's minor users with access to—and facilitating—illegal gambling through the Illegal Gambling Websites.

251.    Defendants further breached their duties by representing that minor users could not use the Roblox platform or Robux digital currency to engage in illegal gambling activities when, in fact, Defendants had constructed an illegal gambling scheme to accomplish just such a purpose.

252.    Defendants' failure to comply with applicable laws constitutes negligence per se.

253.    But for Defendants' wrongful and negligent breach of their duties owed to Plaintiffs and Class members, Plaintiffs and Class members would not have been injured.

254.    The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, either knowingly or negligently, and that Defendants' breach would cause Plaintiffs and Class members to experience the foreseeable harms the above-referenced statutes were enacted to prevent.

255.    Further, not only does Defendants' conduct constitute negligence per se, Defendants have also participated in a civil conspiracy under New York law to engage in negligence per se. To accomplish their objectives, Defendants agreed to create an illegal gambling environment that would cater to Roblox's minor users. The Gambling Website Defendants created gambling websites that would accept Robux in exchange for gambling credits, Robux facilitated the exchange of Robux for gambling credits on the Roblox platform, and Roblox charged a 30% fee when the Gambling Website Defendants cashed out the Robux obtained from minor users like L.C. and other minor

members of the Class. These actions, collectively, violated New York's constitutional and statutory prohibitions on underage gambling.

256.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

257.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

258.    This Claim is brought on behalf of the California and New York Class under the respective state law of each Class.

259.    Plaintiffs and Class members conferred a monetary benefit on Defendants when they purchased Robux from Defendant Roblox, then wagered those Robux in the virtual casinos operated by the Gambling Website Defendants.

260.    Defendants appreciated or had knowledge of the benefits conferred upon them by Plaintiffs and Class members.

261.    As a result of Defendants' conduct, Plaintiffs and Class members suffered actual damages in an amount equal to the monies paid to obtain Robux that were subsequently wagered and lost on the Gambling Website Defendants' virtual casinos.

262.    Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiffs and Class members because Defendants have obtained that money through misrepresentations and omissions, and by facilitating illegal gambling by Roblox's minor users, which is illegal in both California and New York.

263.    Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class members all unlawful or inequitable proceeds received through the illegal gambling scheme described herein.

**EIGHTH CAUSE OF ACTION**

**CIVIL CONSPIRACY**

COMPLAINT FOR DAMAGES

264.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

265.     This Claim is brought on behalf of the California, which is referred to in this section as the "Class."

266.     At all times relevant hereto, Defendant Roblox was aware that the Gambling Website Defendants had operationalized illegal gambling websites that catered to Roblox's minor users and allowed minors to place wagers after exchanging Robux for gambling credits on the Roblox platform.

267.     The Gambling Website Defendants, in turn, were aware that Roblox made representations stating that it did not permit gambling on its platform and that Robux could not be used to engage in illegal gambling. The Gambling Website Defendants understood that these were misrepresentations and/or material omissions, as Roblox knew about the Illegal Gambling Websites and facilitated the exchange of Robux for gambling credits.

268.     Defendant Roblox actively facilitated the illegal gambling scheme by knowingly permitting the exchange of Robux for gambling credits on its platform and profiting from this exchange.

269.     Each time the Gambling Website Defendants cashed out the Robux obtained from Roblox's minor users, a 30% fee was paid to Roblox, thus enriching all parties to the conspiracy.

270.     Defendants jointly conspired to violate the California UCL, CLRA, to commit negligence per se, and to defraud Roblox's minor users by conducting their illegal gambling scheme targeted at those users.

271.     Minor Plaintiff G.D. and other minor Class members were harmed by Defendants' unlawful conspiracy, losing Robux digital currency as a result of Defendants' misconduct.

272.     As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**

**NEGLIGENCE**

COMPLAINT FOR DAMAGES

273. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of the Complaint.

274. This Claim is brought on behalf of the California and New York Class under the respective state law of each Class.

275. Under California and New York law, Defendant Roblox undertook a duty of care when it provided a gaming platform that catered to, and was designed for, children and teenagers.

276. This duty included, at a minimum, a responsibility not to allow minors on its platform to engage in illegal behaviors, including gambling, that Roblox was actively facilitating.

277. Roblox also had a duty not to misrepresent, both to parents and to children themselves, the dangers faced by children on its platform, including the dangers of illegal gambling schemes in which Roblox was actively participating.

278. Roblox breached its duties to Plaintiffs, their minor children, and members of the Class, by permitting its minor users to wager Robux on the Illegal Gambling Websites, exchanging Robux for gambling credits on the Roblox platform.

279. Roblox's breach of its duties caused harm to its minor users, including G.D. and L.C., who lost Robux participating in the illegal gambling scheme perpetrated by the Gambling Website Defendants with Roblox's active participation.

280. As a result of this misconduct, Plaintiffs and Class members have been injured and seek damages in an amount to be proven at trial

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the minor children and members of the Classes, respectfully request that the Court:

    a. Certify this case as a class action, designating Plaintiffs as class representatives and designating the undersigned as Class Counsel;

    b. Declaring that Defendants' conduct violates the statutes set forth above;

    c. Declaring that Defendants' conduct, as set out above, constitutes unlawful racketeering activities, and conspiracy to engage in the same;

    d. Award Plaintiffs and the Classes actual damages in amount according to proof;

e.  Award Plaintiffs and the Classes restitution in an amount to be proven at trial;

f.  Award Plaintiffs and the Classes pre-judgment interest in the amount permitted by law;

g.  Award Plaintiffs and their attorneys fees and costs as permitted by law;

h.  Declare Defendants' practices outlined herein to be unlawful;

i.  Enjoin Defendant from engaging in the practices outlined herein;

j.  Grant Plaintiffs and the Classes a trial by jury;

k.  Grant leave to amend these pleadings to conform to evidence produced at trial; and

l.  Grant such other relief as the Court deems just and proper, including all forms of relief provided for under the UCL, CLRA, GBL, and RICO.

**JURY DEMAND**

Plaintiffs, by counsel, demand trial by jury.

Dated: August 15, 2023                    Respectfully submitted,

        */s/ Devin Bolton*
Devin Bolton (SBN 290037)
James Bilsborrow*
Aaron Freedman*
**WEITZ & LUXENBERG, PC**
1880 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 247-0921
dbolton@weitzlux.com
jbilsborrow@weitzlux.com
afreedman@weitzlux.com

**JOHNSON FIRM**
Christopher D. Jennings*
Tyler B. Ewigleben*
Winston S. Hudson*
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com
winston@yourattorney.com

COMPLAINT FOR DAMAGES

* *Pro Hac Vice* applications to be submitted

*Counsel for Plaintiff and the Proposed Class*

COMPLAINT FOR DAMAGES