COOLEY LLP
TIANA DEMAS*
(tdemas@cooley.com)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
+1 312 881 6500 phone
+1 312 881 6598 fax

KYLE C. WONG (224021)
(kwong@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California  94111-4004
Telephone:     +1 415 693 2000
Facsimile:     +1 415 693 2222

ROBBY L.R. SALDAÑA* (DC Bar No. 1034981)
(rsaldana@cooley.com)
1299 Pennsylvania Avenue, NW, Suite 700
Washington, D.C. 20004-2400
Telephone:     +1 202 842 7800
Facsimile:     +1 202 842 7899

*Attorneys for Defendant*
*Roblox Corporation*

(*Admitted *Pro Hac Vice*)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RACHELLE COLVIN, individually and as next friend of minor Plaintiff, G.D., and DANIELLE SASS, individually and as next friend of minor plaintiff, L.C., and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>        v.<br><br>ROBLOX CORPORATION, SATOZUKI LIMITED B.V., STUDS ENTERTAINMENT LTD., and RBLXWILD ENTERTAINMENT LLC,<br><br>    Defendants. | Case No. 3:23-cv-04146-VC<br><br>**DEFENDANT ROBLOX CORPORATION'S MOTION TO DISMISS THE COMPLAINT**<br><br>Judge: Hon. Vince Chhabria<br>Hearing Date: January 25, 2024 at 10:00 am |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     RELEVANT BACKGROUND ...................................................................................... 3

III.    LEGAL STANDARDS .................................................................................................. 5

IV.     ARGUMENT .................................................................................................................. 5

        A.      Section 230 Bars All Claims ............................................................................. 5

        B.      Plaintiffs Fail to State a RICO Claim (Count I). .............................................. 9

        C.      Plaintiffs Lack An Injury Under the UCL, CLRA, and GBL (Counts II-V). ....... 13

        D.      Plaintiffs' UCL Claims Are Defective (Counts II and III). ................................. 16

        E.      Plaintiffs Fail to Plead Misrepresentations or Omissions (Counts II, IV-IX). ....... 17

        F.      Plaintiffs' Negligence Claims (Counts VI and IX) Fail. ...................................... 18

        G.      Plaintiffs' Civil Conspiracy Claim is Defective (Count VIII). ............................ 19

        H.      Plaintiffs' Requests for Relief Are Defective. ...................................................... 20

V.      CONCLUSION .............................................................................................................. 20

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abhari v. Victory Park Cap. Advisors*,
  2020 WL 7346676 (C.D. Cal. Nov. 16, 2020) ........................................................ 11

*Alce v. Wise Foods, Inc.*,
  2018 WL 1737750 (S.D.N.Y. Mar. 27, 2018) ........................................................ 20

*Almeida v. Apple, Inc.*,
  2022 WL 1514665 (N.D. Cal. May 13, 2022) ........................................................ 20

*In re Apple Inc., Litig.*,
  625 F. Supp. 3d 971 (N.D. Cal. 2022) ...................................................................... 9

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................................................................... 15

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) .............................................................................. 6, 7

*Barrett v. Apple Inc.*,
  523 F.Supp.3d 1132 (N.D. Cal. 2021) .................................................................... 15

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993) ..................................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 5

*Bily v. Arthur Young & Co.*,
  3 Cal. 4th 370 (1992) .............................................................................................. 18

*Boyle v. U.S.*,
  556 U.S. 938 (2009) ................................................................................................ 11

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) .................................................................................... 9

*Chaset v. Fleer/Skybox Int'l, LP*,
  300 F.3d 1083 (9th Cir. 2002) ................................................................................ 10

*Chen v. U.S.*,
  854 F.2d 622 (2nd Cir. 1988) ................................................................................. 19

*Coffee v. Google, LLC*,
  2021 WL 493387 (N.D. Cal. Feb.10, 2021) ......................................................... 6, 8

*Coffee v. Google, LLC*,
  2022 WL 94986 (N.D. Cal. Jan. 10, 2022) .............................................................. 9

**TABLE OF AUTHORITIES**
continued

**Page(s)**

*Coppola v. Smith*,
935 F.Supp.2d 993 (E.D. Cal. 2013) ....................................................................... 19

*Doe v. MySpace Inc.*,
528 F.3d 413 (5th Cir. 2008) .................................................................................... 7

*Dyroff v. Ultimate Software Grp., Inc.*,
934 F.3d 1093 (9th Cir. 2019) ............................................................................ 8, 18

*In re Ethereummax Inv'r Litig.*,
2022 U.S. Dist. LEXIS 220968 (C.D. Cal. Dec. 6, 2022) ..................................... 19

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .............................................................................. 6, 8

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ................................................................................... 20

*Gale v. Int'l Bus. Machines Corp.*,
781 N.Y.S.2d 45 (2004) ........................................................................................... 16

*Ginsberg v. Google Inc.*,
586 F.Supp.3d 998 (N.D. Cal. 2022) ......................................................................... 7

*In re Glenfed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ................................................................................... 17

*Goddard v. Google, Inc.*,
2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) .......................................................... 8

*Gomez v. Guthy-Renker*,
LLC, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ................................................ 11

*Gonzales v. Lloyds TSB Bank*,
532 F.Supp.2d 1200 (C.D. Cal. 2006) ..................................................................... 12

*Graf v. Peoples*,
2008 WL 4189657 (C.D. Cal. Sept. 4, 2008) ......................................................... 13

*Hamilton v. Beretta U.S.A. Corp.*,
96 N.Y.2d 222 (2001) .............................................................................................. 19

*Estate of Harmon v. Cty. of San Mateo*,
2021 WL 5071831 (N.D. Cal. Oct. 26, 2021) .......................................................... 19

*Hartwich v. Kroger Co.*,
2021 WL 4519019 (C.D. Cal. Sept. 20, 2021) ........................................................ 18

*Holmes v. Sec. Investor Protection Corp.*,
503 U.S. 258 (1992) ................................................................................................. 10

Cooley LLP
Attorneys at Law
San Francisco

*Horti v. Nestle HealthCare Nutrition, Inc.*,
  2022 WL 2441560 (N.D. Cal. July 5, 2022) ........................................................ 18

*In re iPhone Application Litig.*,
  844 F.Supp.2d 1040 (N.D. Cal. 2012) ................................................................ 18

*Johnson v. AFNI, Inc.*,
  2023 WL 2970919 (S.D.N.Y. Apr. 15, 2023) ...................................................... 19

*Jones v. Micron Tech. Inc.*,
  400 F.Supp.3d 897 (N.D. Cal. 2019) .................................................................. 13

*Jubelirer v. Mastercard Int'l*,
  68 F.Supp.2d 1049 (W.D. Wis. 1999) ................................................................. 12

*Kater v. Churchill Downs Inc.*,
  886 F.3d 784 (9th Cir. 2018) .............................................................................. 16

*Kelly v. First Astri Corp.*,
  72 Cal.App.4th 462 (1999) ................................................................................. 20

*Kennedy v. Full Tilt Poker*,
  2010 WL 1710006 (C.D. Cal. Apr. 26, 2010) ..................................................... 12

*Kidron v. Movie Acquisition Corp.*,
  40 Cal. App. 4th 1571 (1995) ........................................................................ 19, 20

*Knuttel v. Omaze, Inc.*,
  2022 WL 1843138 (C.D. Cal. Feb. 22, 2022) ..................................................... 17

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ....................................................................................... 14

*Lancaster v. Alphabet Inc.*,
  2016 WL 3648608 (N.D. Cal. July 8, 2016) ......................................................... 9

*Lee v. Toyota Motor Sales*, *U.S.A.*,
  992 F.Supp.2d 962 (C.D. Cal. 2014) ................................................................. 14

*Levitt v. Yelp! Inc.*,
  2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ....................................................... 9

*Lozano v. AT&T Wireless Servs. Inc.*,
  504 F.3d 718 (9th Cir. 2007) .............................................................................. 17

*Lumbra v. Suja Life, LLC*,
  2023 WL 3687425 (N.D.N.Y. May 26, 2023) ..................................................... 18

*Mai v. Supercell Oy*,
  2021 WL 4267487 (N.D. Cal. Sept. 20, 2021) ................................................... 14

**TABLE OF AUTHORITIES**
continued

Page(s)

*Markowitz v. Diversified Lending Grp., Inc.*,
2010 WL 11507662 (C.D. Cal. Feb. 26, 2010) ...................................................... 20

*Mason v. Mach. Zone, Inc.*,
140 F.Supp.3d 457 (D. Md. 2015) ........................................................................ 14

*In re Mastercard Int'l Internet Gambling Litig.*,
313 F.3d 257 (5th Cir. 2002) ................................................................................ 11

*Medina v. Newfold Digital, Inc.*,
2022 WL 2517247 (N.D. Cal. July 7, 2022) .......................................................... 6

*Mueller v. San Diego Ent. Partners, LLC*,
260 F.Supp.3d 1283 (S.D. Cal. 2017) ................................................................... 16

*Neilson v. Union Bank of California, N.A.*,
290 F.Supp.2d 1101 (C.D. Cal. 2003) ................................................................... 20

*In re NJOY, Inc. Consumer Class Action Litig.*,
2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ..................................................... 17

*Ochoa v. Zeroo Gravity Games LLC*,
2023 WL 4291650 (C.D. Cal. May 24, 2023) ....................................................... 20

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ................................................................................ 11

*Parker v. Hey, Inc.*,
2017 Cal. Super. LEXIS 609 (Cal. Super. Ct. Apr. 14, 2017) ............................... 7

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) ........................................................................... 6, 8

*Preira v. Bancorp Bank*,
885 F.Supp.2d 672 (S.D.N.Y. 2012) ..................................................................... 15

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) .............................................................................................. 12

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ................................................................................ 5

*Sanabria v. United States*,
437 U.S. 54 (1978) ................................................................................................ 13

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012) ................................................................................ 15

*Scoggins v. HSBC Bank USA*,
2015 WL 12670410 (C.D. Cal. Oct. 8, 2015) ....................................................... 11

**TABLE OF AUTHORITIES**
continued

Page(s)

*Shaw v. Nissan N. Am., Inc.*,
220 F.Supp.3d 1046 (C.D. Cal. 2016) ............................................................ 11, 12

*Smith v. Wachovia*,
2009 WL 1948829 (N.D. Cal. July 6, 2009) ......................................................... 19

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ................................................................................. 20

*Taylor v. Apple, Inc.*,
2021 WL 11559513 (N.D. Cal. Mar. 19, 2021) ...................................... 14, 15, 16

*In re Tether & Bitfinex Crypto Asset Litig.*,
576 F.Supp.3d 55 (S.D.N.Y. 2021) ....................................................................... 15

*Twitter, Inc. v. Taamneh*,
143 S. Ct. 1206 (2023) .......................................................................................... 18

*United Bhd. of Carpenters & Joiners of Am. Bldg. v. Constr. Trades Dep't, AFL-CIO*,
770 F.3d 834 (9th Cir. 2014) ................................................................................... 9

*Walker v. Equity 1 Lenders Grp.*,
2009 WL 1364430 (S.D. Cal. May 14, 2009) ....................................................... 20

*Ward v. Crow Vote LLC*,
634 F.Supp.3d 800 (C.D. Cal. 2022) .............................................................. 10, 13

*In re Wells Fargo Forbearance Litig.*,
2023 WL 3237501 (N.D. Cal. May 2, 2023) ........................................................ 12

*Yagman v. Allianz Ins.*,
2015 WL 5553460 (C.D. Cal. May 11, 2015) ...................................................... 13

*Ziencik v. Snap, Inc.*,
2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ........................................................ 18

**Statutes**

18 U.S.C.
§ 1955 ....................................................................................................... 12, 13, 16
§ 1964(c) .................................................................................................................. 9

31 U.S.C.
§ 5362(1) ................................................................................................................ 17
§ 5362(2) ................................................................................................................ 17
§ 5362(6) ................................................................................................................ 17
§ 5363 ..................................................................................................................... 17

47 U.S.C. § 230 .............................................................................................. *passim*

**TABLE OF AUTHORITIES**
continued

**Page(s)**

Cal. Pen. Code

    § 330.1 ................................................................................................................ 16

    § 330a ................................................................................................................. 16

    § 330b ................................................................................................................. 16

    § 337j(a)(1) .......................................................................................................... 16

    § 337j(a)(2) .......................................................................................................... 16

New York General Business Law § 349 ........................................................... *passim*

**Other Authorities**

Federal Rules of Civil Procedure

    8 ......................................................................................................................... 13

    9(b) ..................................................................................................... 1, 5, 17, 18

    12(b)(6) ........................................................................................................... 1, 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE THAT**, on January 25, 2024, at 10:00 a.m., Defendant Roblox Corporation ("Roblox"), will and does hereby move this Court for an Order dismissing the Complaint ("Compl.") (Dkt. 1).

Roblox requests that the Court dismiss the Complaint in its entirety because it fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and fails to plead fraud with particularity under Rule 9(b). These are the issues to be decided. The Motion is based on this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the pleadings, any oral argument, and any other materials properly presented with this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Through this lawsuit, Plaintiffs seek to hold Roblox liable for content created by third-parties Satozuki Limited, B.V., Studs Entertainment Ltd., and RBLXWild Entertainment LLC ("Third-Party Defendants"), who allegedly operate their own "virtual casino" sites ("Virtual Casinos" or "VCs"). On these separate sites, users can play "games of chance such as coin flips, roulette, slot machines [and] treasure chests." Plaintiffs assert the VCs "offer illegal gambling" to minors, in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act and other laws. At bottom, Plaintiffs' claims hinge on the VCs' allegedly objectionable content—their "gambling" games and virtual "credits." As Plaintiffs concede, Roblox does not allow gambling on its platform for real money or Robux, and the Virtual Casinos are not on Roblox.

Although the Third-Party Defendants own, create, and operate the Virtual Casinos, Plaintiffs have sued Roblox for providing neutral tools to them, just as Roblox does for millions of users and developers who publish content that no one contends is illegal. Specifically, Plaintiffs claim that Roblox allows developers associated with the VCs (allegedly Roblox developers) to sell

virtual "experiences or items" to other Roblox users for Robux, Roblox's digital currency, and to exchange earned Robux for real currency through Roblox's Developer Exchange ("DevEx") program. Plaintiffs do not explain what these "experiences or items" are; they do not claim the VCs are creating virtual gambling games on Roblox or selling virtual chips on Roblox. Instead, Plaintiffs allege that Roblox knows the sales of "dummy" items for Robux are a way of exchanging Robux for virtual "chips" for use on the Virtual Casinos. And by failing to "prohibit" the Third-Party Defendants from using Roblox's services, Plaintiffs argue, Roblox should be held liable for the VCs' content. Plaintiffs' claims fail for multiple independent reasons.

*First*, Plaintiffs' claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), which prevents interactive computer services like Roblox from being held liable for claims related to the publication of allegedly harmful third-party content, including failing to remove or block content and providing neutral tools related to the content. *Second*, Plaintiffs fail to plead a civil RICO claim (Count I), because they do not plead any injury to their business or property proximately caused by any purported RICO violation, a cognizable RICO enterprise, or the required predicate acts. *Third*, Plaintiffs fail to state a claim under California's Unfair Competition Law ("UCL"), California's Consumer Legal Remedies Act ("CLRA"), or New York's General Business Law ("GBL") § 349, (Counts II-V) because, among other things, Plaintiffs lack a cognizable injury. *Fourth*, Plaintiffs' claims based on misrepresentations and omissions (Counts II, IV-IX) are contradicted on the face of the pleadings and the incorporated documents. *Fifth*, Plaintiffs' negligence claims (Counts VI and IX) fail because Plaintiffs do not and cannot allege a cognizable legal duty of care to protect against allegedly harmful content posted by third parties on separate platforms. *Sixth*, Plaintiffs' civil conspiracy claim (Count VIII) fails because it does not plead an independent civil wrong, agreement, or actual knowledge by Roblox of alleged illegal gambling.

The Court should dismiss the Complaint with prejudice because the legal defenses and defects apparent from the face of the pleading cannot be cured through amendment.

## II.   RELEVANT BACKGROUND

Roblox is an immersive free online gaming platform that is "entirely user generated, built by a community of nearly 7 million developers." Compl. ¶¶ 2-3, 44. By "bring[ing] users together in a virtual universe," Roblox "allows users to interact with one another, play games," and buy "virtual items to be used in games or apps within the Roblox ecosystem." *Id.* ¶¶ 2-3, 10. Purchases of virtual items and experiences are made using Robux, Roblox's virtual currency. *Id.* ¶¶ 10, n.4, 12, 51, 119. Roblox receives a 30% commission on all user-to-user Robux transactions. *Id.* ¶ 48. Robux "are not a substitute for real currency, do not earn interest, and have no equivalent value in real currency." *Id.* ¶¶ 10, 13.[1] Users can buy Robux (or gift cards) with a credit card or digital payment service, and they can earn Robux by creating and selling virtual content, such as games and clothing. *Id.* ¶¶ 10, n.4, 11, 12. Only developers who have qualified for Roblox's DevEx program can exchange earned Robux for real-world currency. *Id.* ¶ 10, n.4.[2] Robux cannot be transferred off-platform, and users cannot exchange Robux for real currency. *Id.* ¶¶ 50, 53-55.

As the Complaint makes clear, Plaintiffs' claims, brought individually and as next friends of their minor children, are inextricably intertwined with allegedly harmful third-party content the VCs provide.[3] *Id.* ¶¶ 14, 32-34. Existing "outside the Roblox ecosystem," ¶¶ 18-19, the VCs feature "coin flips, roulette, slot machines, treasure chests," which Plaintiffs describe as "games of chance." *Id.* ¶¶ 60-61. Plaintiffs' minor children allegedly navigated to the VCs "gamble[d]" there, and "lost thousands of Robux." *Id.* ¶¶ 141-51. Plaintiffs do not claim Roblox had a role in creating the VCs'

---

[1] *See* Declaration of Kyle C. Wong ¶ 2 ("Wong Decl."), Ex. 1 at 3 (Roblox Terms of Use).)

[2] *See* https://en.help.roblox.com/hc/en-us/articles/203313180 (cited in ¶ 10, n.4). DevEx developers must be 13 or older and have a valid IRS form W-9 or W-8 on file with Roblox. *Id.*

[3] Defendant Satozuki Limited B.V., a foreign company, operates RBXFlip. Compl. ¶ 32. Defendant Studs Entertainment Ltd., a foreign company, operates Bloxflip. *Id.* ¶ 33. Defendant RBLXWild Entertainment LLC operates RBLX Wild. *Id.* ¶ 34.

content, including the "gambling" games or "chips." Instead, Plaintiffs assert that Roblox should be held responsible for the VCs' content because Roblox provides services to unidentified VC developers who allegedly participate in DevEx ("VC Developers"). *Id.* ¶¶ 123, 179. Plaintiffs argue that by allowing the VC Developers to use Roblox (whether to sell unspecified "items or experiences," or exchange Robux for real currency), Roblox has violated RICO, consumer protection laws, and state common-law. *Id.* ¶¶ 62, 71, 79, 96, 100.

Plaintiffs do not challenge Roblox's DevEx tools writ large. They do not claim that Roblox should stop developers of games where users can care for virtual pets from exchanging Robux for dollars. Only by considering the underling content—the "gambling" games and "credits"—for which the VC Developers receive Robux, do Roblox's services become illegal, in Plaintiffs' view.

Plaintiffs describe a convoluted process by which the VCs allegedly exchange Robux for virtual "chips." First, a user navigates to a Virtual Casino site. *Id.* ¶ 110. Second, the user provides their Roblox "login credentials" to the VC and "enters the amount of Robux" they wish to use. *Id.* Next, "having control of the user's [Roblox] account," a VC Developer "initiates a sale of a worthless item or experience" on Roblox with the user. *Id.* This exchange is necessary because "Roblox does not allow users to gift Robux to each other." *Id.* ¶ 111. Then, on the separate Virtual Casino site, the VC gives the user an "equivalent amount of gambling credits." *Id.* ¶¶ 108-112. If the user wins, they get more credits, which can be transferred back to Robux. *Id.* ¶ 21. If the user loses, they lose their credits. *Id.*

Plaintiffs assert Roblox knows of and facilitates "illegal gambling" because the VC Developers, like all DevEx developers, can convert Robux to real currency, and Roblox charges a 30% fee on Robux transactions.[4] Plaintiffs contend that Roblox monitors Robux transactions, can identify accounts engaging in "suspicious behavior like purchasing the same virtual item from the

---

[4] *E.g., id.* ¶¶ 1, 47-48, 50, 53.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

same seller," but "refuses to ban" the VC Developers' accounts. *Id.* ¶¶ 125-27. They claim Roblox falsely represents that it does "not allow[]" "simulated gambling, including playing with virtual chips, simulated betting, or exchanging real money, Robux, or in-experience items." *Id.* ¶ 13.

On August 15, 2023, Plaintiffs filed this lawsuit, raising a civil RICO claim and eight other claims arising from Defendants' alleged facilitation of "illegal gambling" on the VCs. *Id.* ¶¶ 165-280. G.D. and L.C. are minors who "purchased" Robux using gift cards or a monthly subscription and "lost thousands of Robux"[5] playing "gambling games" on the VCs. *Id.* ¶¶ 121, 141-51. Colvin, G.D.'s parent, and Sass, L.C.'s parent, represent the minors as next friends and also purport to bring individual claims. *Id.* ¶¶ 141, 147. Neither parent alleges purchasing Robux, paying any money to Roblox, or visiting a VC.

## III.   LEGAL STANDARDS

To survive a Rule 12(b)(6) challenge, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[L]abels and conclusions, and a formulaic recitation of the elements" are insufficient. *Id.* at 555. For claims sounding in fraud, like Counts II and IV-IX, Rule 9(b) requires a plaintiff to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading ... and why[.]" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

## IV.   ARGUMENT

### A.   Section 230 Bars All Claims.

Plaintiffs' claims—all premised on the theory that Roblox failed to ban the VC Developers from using the platform due to their publication of "gambling games" and virtual "chips"—are precluded by Section 230, which bars claims against "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat ... as a publisher or speaker (3) of information

---

[5] 800 Robux cost $9.99, *id.* ¶ 51, which means 1,000 Robux would cost roughly $12.48.

provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009). Section 230 establishes "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (quotations and citation omitted), and bars all claims that seek to impose liability for decisions to publish (or not remove) content posted by others. *Barnes*, 570 F.3d at 1102 ("publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content.") Indeed, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc) ("*Roommates*"). The provision of "*neutral* tools to carry out what may be unlawful or illicit [conduct] ... does not amount to [content] 'development' for purposes of the immunity exception." *Id.* at 1169 (emphasis in original). Such neutral tools include, for example, processing payments for allegedly harmful or illegal third-party online content, *see Perfect 10,* 488 F.3d at 1118-19, and providing web hosting and email services to third-parties "despite knowing of or negligently failing to discover their [criminal] scheme." *Medina v. Newfold Digital, Inc.*, 2022 WL 2517247 (N.D. Cal. July 7, 2022).

There is no serious dispute about the first and third prongs. Roblox is an "online gaming platform," Compl. ¶¶ 2-3, and "[w]ebsites are the most common interactive computer services." *Coffee v. Google, LLC*, 2021 WL 493387, at *5 (N.D. Cal. Feb.10, 2021). And all claims concern content created by other providers (the Virtual Casinos), whether it is their "gambling games," "chips," "gambling credits," or virtual "item(s) or experience(s)." *E.g.*, Compl. ¶¶ 6164, 70; *see also Coffee*, 2021 WL 493387, at *7 ("Loot Box" apps "created by third party developers" were "provided by another content provider").

Plaintiffs' claims also "inherently require[] the court to treat" Roblox as the publisher of

"content provided by another." *Barnes*, 570 F.3d at 1102. Indeed, Plaintiffs fault Roblox for permitting the VC Developers to "operate in the Roblox ecosystem," Compl. ¶ 107, *because of* the content they publish on the Virtual Casinos. *E.g., id.* ¶ 41 (describing the VCs' "interface" as "more like a mix between a video game and a casino"), ¶ 21 (the VCs' "gambling credits function just like chips in a brick and mortar casino; users 'buy in' using their Robux [and] obtain chips"); ¶ 61 (describing "games of chance such as coin flips"). Put differently, had Roblox prevented the VC Developers from using Roblox's services to facilitate the Virtual Casinos' content, Plaintiffs would have no claim. Plaintiffs concede as much. They allege Roblox "could ... prohibit ... the Gambling Website Defendants from utilizing the Roblox ecosystem and digital currency to facilitate illegal gambling, but it does not." *Id.* ¶¶ 24, 127 (Roblox "refuses to ban" the VC Developers).

The theory that Roblox should have prevented the VC Defendants from using Roblox due to their published content would require treating Roblox as the publisher of information, which Section 230 prohibits. *See Doe v. MySpace Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (allegations "seek[ing] to hold MySpace liable for its failure to implement measures that would have prevented Julie Doe from communicating with Solis ... are merely another way of claiming that MySpace was liable for publishing the communications"); *Ginsberg v. Google Inc.*, 586 F.Supp.3d 998, 1004-05 (N.D. Cal. 2022) ("Google's alleged activity boils down to deciding whether to exclude material (Telegram) that a third party seeks to place in the online Play Store."); *Parker v. Hey, Inc.*, 2017 Cal. Super. LEXIS 609, at *6 (Cal. Super. Ct. Apr. 14, 2017) (Section 230 bars claims where "the[] allegations essentially amount to a claim that Twitter did not sufficiently regulate who was making use of its API, not that the offensive conduct was placed directly" on Twitter).

Nor can Plaintiffs evade Section 230 by suggesting that the neutral tools Roblox provides to all DevEx developers makes Roblox the creator of the VCs' alleged "gambling" content. "A website does not become a developer of content when it provides neutral tools that a user exploits."

*Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019); *see also Roommates*, 521 F.3d at 1168 (only by "edit[ing] in a manner that contributes to the alleged illegality," does a provider lose immunity). Plaintiffs do not allege that Roblox contributes in any way to the creation of the VCs' allegedly illegal "gambling" content. They merely point to content-neutral tools that all DevEx developers may use: the VC Developers' ability to "cash out" earned Robux through DevEx, and their "use [of] Roblox's technology" to sell what Plaintiffs subjectively deem to be "worthless items or experiences." *E.g.*, Compl. ¶¶ 53-55, 62, 110-11. Roblox does not become responsible for the VCs' content under Section 230 by providing functionality that helps their developers create content, whether by allowing them to exchange Robux for real currency or to use Roblox to sell unspecified virtual items. Plaintiffs "cannot plead around Section 230 immunity by framing these website features as content." *Dyroff*, 934 F.3d at 1098. Like the website functions in *Dyroff*, Roblox's services "are tools meant to facilitate the communication and content of others. They are not content in and of themselves." *Id.*; *Coffee*, 2021 WL 493387, at *8 (no liability where Google "merely allow[ed] video game developers to provide apps to users through the Google Play store"). Plaintiffs' allegations that Roblox is "aware of" and "tacitly approves" purportedly "illegal gambling" content, *e.g.*, Compl. ¶¶ 122, 133, 139, does not change the outcome. *See Roommates*, 521 F.3d at 1174 (Section 230 bars claims that website "tacitly assented to … the illegality of third parties"); *Goddard v. Google, Inc.*, 2008 WL 5245490, at *3 (N.D. Cal. Dec. 17, 2008) ("[E]ven if a service provider knows that third parties are using such tools to create illegal content, the service's provider's failure to intervene is immunized.").

The same analysis applies to Roblox's 30% commission on user-to-user transactions. Compl. ¶ 48; *see Perfect 10*, 488 F.3d at 1118-19 (Section 230 bars claims related to platform's processing of payments for third-party sites hosting copyright-infringing material). Plaintiffs take issue with this fee *only* if it relates to content created by the VCs, *i.e.*, the "useless, or dummy, item"

the VC Developers allegedly sell *on* Roblox for Robux, Compl. ¶ 114, which they then convert to virtual "chips" *on their own sites. E.g.*, *id.* ¶¶ 111-12. In essence, Plaintiffs ask the Court to consider Roblox's *motive* in assessing the 30% fee if the underlying content that generated the fee relates to allegedly illegal gambling. However, Section 230 "contains no explicit exception for impermissible editorial motive," *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *7 (N.D. Cal. Oct. 26, 2011) (Yelp was immune from claims related to its publication, removal, and ordering of user-generated reviews in alleged effort to "extort" the plaintiff into subscribing). And even assuming that the sale of "gambling credits" could be illegal, there is no allegation that Roblox creates or sells that content. *Coffee v. Google, LLC*, 2022 WL 94986, at *6 (N.D. Cal. Jan. 10, 2022) ("If indeed the sale of Loot Boxes is illegal ... such illegality is committed by the developer who sells the Loot Box for virtual currency, not by Google.").[6] Section 230 bars Plaintiffs' claims, and the Court should dismiss with prejudice because amendment would be futile. *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) (dismissing claims barred by Section 230 with prejudice).

## B.      Plaintiffs Fail to State a RICO Claim (Count I).

Plaintiffs' RICO claims are defective because Plaintiffs fail to plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity ... (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. Bldg. v. Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014).

***No RICO Standing***. Plaintiffs lack RICO standing because they do not and cannot allege (1) an injury to business or property (2) by reason of the RICO violation. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008); 18 U.S.C. § 1964(c). *First*, Plaintiffs did not suffer

---

[6] This case is distinguishable from *In re Apple Inc., Litigation*, 625 F.Supp.3d 971, 994-96 (N.D. Cal. 2022), where the court *sua sponte* certified an interlocutory appeal on whether Section 230 applies to certain platforms' "sale of virtual chips" for use in third-party "casino apps." The court noted that "Plaintiffs seek[] … to hold the Platforms responsible for their own illegal conduct—the sale of gambling chips." *Id.* at 994. Here, there is no allegation that Roblox does this; the VCs create the credits on their own separate sites, which can only be accessed there. *E.g.*, Compl. ¶¶ 18-19.

any property injury. While Colvin and Sass seek to bring claims individually and on behalf of their minor children, the parents do not allege they purchased Robux, used the VCs, or had any financial loss. Compl. ¶¶ 141, 146-47, 152. The minor plaintiffs, who allegedly bought Robux, *id.* ¶¶ 142, 148, "received what they bargained for"—Robux, which they could (and did) use as they wished. *Ward v. Crow Vote LLC*, 634 F.Supp.3d 800, 826 (C.D. Cal. 2022) (no RICO injury where plaintiffs received what they bargained for). The minors' subsequent "exchange" of Robux for unspecified virtual "item[s] or experience[s]," Compl. ¶ 114—the only other exchange that allegedly occurred on Roblox—does not confer RICO standing either. There, too, the minors received what they bargained for: the virtual items. *Id.* at 826.

And even if the Court considers the VCs' alleged conversion of Robux to "credits," which does not occur on Roblox, *e.g.*, *id.* ¶¶ 18-19, 110-11, the minors received what they bargained for: an "equal amount" of credits. *Id.* ¶¶ 110. Their disappointment in later losing those credits is not a cognizable RICO injury, as is clear from *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002). There, the plaintiffs claimed they had been injured when they bought trading card packs that might contain a more valuable insert card, which they did not receive. The Ninth Circuit dismissed the RICO claim because the plaintiffs "received value—eight or ten cards, one of which might be an insert card—for what they paid," and their "disappointment upon not finding an insert card in the package is not an injury to property." *Id.* at 1087.

*Second*, Plaintiffs do not (and cannot) allege that Roblox proximately caused any hypothetical injury. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992) (RICO standing requires "but for" and "proximate" causation). Following the convoluted process described in the Complaint to "convert" Robux to "gambling credits," Roblox did not proximately cause Plaintiffs to lose anything, let alone "thousands of Robux." Compl. ¶¶ 145, 151. Plaintiffs allegedly chose to "exchange" Robux for an unspecified Roblox "item or experience," which they

received. *Id.* ¶ 114. Then, on the separate VCs, Plaintiffs received an "equivalent amount" of "digital currency," which they presumably could use to play any number of games. *Id.* ¶¶ 108, 110-11. There is no allegation that Roblox has any role in determining the amount of "digital currency" the VCs provide, designing the games, or setting the odds of winning or losing. Thus, Roblox cannot proximately cause any alleged loss of virtual credits (or the Robux exchanged for them). *See In re Mastercard Int'l Internet Gambling Litig.*, 313 F.3d 257, 262 (5th Cir. 2002) (affirming dismissal of RICO claims against banks that processed transactions for online gambling sites because banks "completed their transactions with the Plaintiffs before any gambling occurred"); *Scoggins v. HSBC Bank USA*, 2015 WL 12670410, at *2 (C.D. Cal. Oct. 8, 2015) (direct cause of the plaintiffs' alleged losses were the gang members who allegedly stole plaintiffs' money and property, not the bank where they deposited the money).

*No RICO Enterprise*. Plaintiffs also fail to plead a RICO enterprise. An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc) (associated-in-fact enterprise requires common purpose, ongoing organization, and a continuing unit). "Allegations that are consistent with ordinary business activities or purposes are insufficient when pleading an association-in-fact RICO enterprise." *Abhari v. Victory Park Cap. Advisors*, 2020 WL 7346676, at *4 (C.D. Cal. Nov. 16, 2020); *Gomez v. Guthy-Renker*, LLC, 2015 WL 4270042, at *10 (C.D. Cal. July 13, 2015) (collecting cases addressing "the lack of organization and structure underlying a routine contractual relationship").

Stripped of legal conclusions, the Complaint "only demonstrate[s] that the parties are associated in a manner directly related to their own primary business activities," which is insufficient to plead an enterprise. *Shaw v. Nissan N. Am., Inc.*, 220 F.Supp.3d 1046, 1057 (C.D. Cal. 2016) (quotations and citations omitted). Plaintiffs allege that Roblox: (1) allows the VC

Developers to sell unspecified virtual content on Roblox; (2) allows the VC Developers, as DevEx developers, to convert Robux to real currency; and (3) takes a 30% fee on each transaction. *E.g.*, Compl. ¶¶ 53, 63. These allegations describe Roblox's business relationship with millions of developers who sell virtual content and qualify for DevEx.[7] *Id.* ¶¶ 10, 44, 53-55. And Plaintiffs concede the 30% fee applies to "all user-to-user transactions" by any of Roblox's 60 million users. *Compare* Compl. ¶¶ 3, 46, *with e.g., id.* ¶¶ 117-19. Plaintiffs do not otherwise plead facts "tending to exclude the possibility" that Roblox's conduct was merely "part of its routine business dealings." *In re Wells Fargo Forbearance Litig.*, 2023 WL 3237501, at *3 (N.D. Cal. May 2, 2023) (dismissing RICO claim); *Shaw*, 220 F.Supp.3d at 1056 ("[P]laintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.").

Plaintiffs' bare assertion that Roblox conducted and participated in the purported enterprise's affairs is not enough. Compl. ¶ 169. A plaintiff must allege facts "showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis in original); *Gonzales v. Lloyds TSB Bank*, 532 F.Supp.2d 1200, 1210 (C.D. Cal. 2006) (same). Again, Plaintiffs do no more than identify services Roblox provides to all DevEx developers. *See Baumer v. Pachl,* 8 F.3d 1341, 1344-45 (9th Cir. 1993) (provision of "services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result").

**No Pattern of Racketeering Activity**. The RICO claim also fails because Plaintiffs do not "clearly identify the predicate acts alleged to constitute racketeering activity." *Kennedy v. Full Tilt Poker*, 2010 WL 1710006, at *5 (C.D. Cal. Apr. 26, 2010). The only predicate act Plaintiffs attempt to plead is an "illegal gambling business" under 18 U.S.C. § 1955, which criminalizes:

---

[7] Treating Roblox's relationship with DevEx developers as sufficient to establish a RICO enterprise would be particularly troubling given the number of Roblox developers. *Jubelirer v. Mastercard Int'l*, 68 F.Supp.2d 1049, 1053 (W.D. Wis. 1999) (rejecting RICO enterprise predicated on Mastercard's business relationships, which would sweep in "many millions of combinations").

a gambling operation which (1) is a violation of the law of a State or political subdivision in which it is conducted; (2) involves five or more persons who conduct, finance, manage, supervise, direct or own all or part of such business; and (3) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

*Ward*, 634 F.Supp.3d at 822-23. The Complaint does not allege how these elements are met, Compl. ¶¶ 176-78, which alone requires dismissal. *See Yagman v. Allianz Ins*., 2015 WL 5553460, at *6 (C.D. Cal. May 11, 2015) (boilerplate allegation of RICO predicates violates Rule 8). The § 1955 predicate also fails because Plaintiffs plead no facts that any Defendant operates a gambling business that violates "the law of a State ... in which it is conducted." 18 U.S.C. § 1955(b)(1)(i); *Sanabria v. United States*, 437 U.S. 54, 70 (1978) ("[T]he gambling business [] must violate state law."). The RICO claim does not cite a single state gambling law. Compl. ¶¶ 165-82. And if Plaintiffs intended to incorporate the state gambling laws scattered elsewhere in the Complaint, such a "shotgun pleading is insufficient to plead a RICO claim." *Graf v. Peoples*, 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008). The elsewhere-cited California laws cannot give rise to a § 1955 violation because virtual currency is not a thing of value. *See infra* Part IV.C. Plaintiffs also fail to plead facts plausibly showing that Roblox conducted, financed, supervised, directed or owned all or part of an "illegal gambling business." *See Sanabria*, 437 U.S. at 70 ("It is participation in the gambling business that is a federal offense."). The Third-Party Defendants own and operate the Virtual Casinos, not Roblox. Compl. ¶¶ 32-34. The alleged provision of legitimate (and neutral) services to the VC Developers—services Roblox provides to all DevEx developers, *id.* ¶¶ 54-55—does not state a RICO claim.

**C.      Plaintiffs Lack An Injury Under the UCL, CLRA, and GBL (Counts II-V).**

Plaintiffs[8] cannot pursue UCL, CLRA, or GBL claims against Roblox because they cannot

---

[8] Plaintiffs cannot pursue UCL and CLRA claims on behalf of non-California plaintiffs like Sass and L.C., who do not allege injury in California. Compl. ¶¶ 141-52; *see Jones v. Micron Tech. Inc.*, 400 F.Supp.3d 897, 908-11 (N.D. Cal. 2019) ("[A] plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured.").

plead any cognizable injury from purchasing Robux. *First,* the Complaint does not plead facts showing a deprivation of money or property required by the UCL and CLRA. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011); *Lee v. Toyota Motor Sales, U.S.A.*, 992 F. Supp. 2d 962, 972-973 (C.D. Cal. 2014) (CLRA standing requires economic injury). Plaintiffs cannot premise UCL or CLRA economic injury on the alleged loss of Robux or virtual credits. Both are virtual currencies that lack real-world transferable value because they are not freely convertible to cash. *See Taylor v. Apple, Inc.*, 2021 WL 11559513, at *5 (N.D. Cal. Mar. 19, 2021) ("[G]ambling chips are freely convertible back into cash. Virtual currency is not."); *Mason v. Mach. Zone, Inc.*, 140 F.Supp.3d 457, 465 (D. Md. 2015) (dismissing UCL unlawful claim for lack of economic injury because Plaintiff's "loss, if any, was complete" when she "swapped something of value (real money) for something of whimsy (pretend 'gold')"). Here, the credits "can only be wagered in" the VCs, which merely offer the chance to win more credits. Compl. ¶¶ 18, 21. Plaintiffs cannot save these claims with bare, contradicted assertions that Robux have "monetary value" and are "transferrable funds." *Id.* ¶¶ 21, 51, 68. As Roblox users, Plaintiffs cannot "freely convert[]" Robux back into cash. *Taylor*, 2021 WL 11559513, at *5; *see also* Compl. ¶¶ 52-55.[9] For users like G.D. and L.C., neither the "loss" of Robux nor virtual credits is a cognizable economic injury.

*Second*, Plaintiffs cannot salvage the UCL and CLRA claims by asserting they lost money by purchasing Robux. Colvin and Sass do not allege they bought Robux. The minors, who allegedly obtained Robux through gift cards or subscriptions, "obtained exactly what [they] paid for—virtual currency," which they could "use as [they] wished," including "to purchase virtual items." *Taylor*, 2021 WL 11559513, at *5 (no "economic injury" under UCL or CLRA from purchasing virtual currency); *Mai v. Supercell Oy*, 2021 WL 4267487, at *3 (N.D. Cal. Sept. 20, 2021) (similar). And

---

[9] Roblox's Terms of Use ("Terms"), which Plaintiffs cite (Compl. ¶ 13), clearly state that "Robux are not a substitute for real currency, do not earn interest, and have no value in real currency." Wong Decl. ¶ 2, Ex 1 at 3. The only exception is outlined in the incorporated DevEx Terms, solely applicable to DevEx developers, which Plaintiffs are not. *Id.* ¶ 5, Ex. 3 at 1-2.

even if Robux had monetary value for users, G.D. and L.C.'s alleged losses did not result from Roblox's conduct; they "lost" Robux the moment they exchanged them for "credits" with the VCs, and they cannot recover under the UCL or CLRA. *Taylor*, 2021 WL 11559513, at *5 ("C.T. bought the 'chips' from Apple, but lost the 'chips' when he chose to purchase loot boxes inside the virtual world of the game. That was not a transaction with Apple.")

*Third*, Plaintiffs fail to plead actual reliance, as required for the UCL and CLRA misrepresentation claims. Compl. ¶¶ 186(h), 212; *see Backhaut v. Apple, Inc.*, 74 F.Supp.3d 1033, 1048 (N.D. Cal. 2014) (CLRA and UCL claims based on alleged misrepresentations or omissions require actual reliance). The only alleged misrepresentation is a statement from Roblox's Community Standards ("Standards") about "experiences" it does "not allow[]." Compl. ¶ 13; *see infra* Part IV.E. No Plaintiff alleges they read this statement before purchasing Robux, much less relied on it. Compl. ¶¶ 141-52; *see Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793-94 (9th Cir. 2012) (dismissing UCL and CLRA claims for failure to allege actual reliance); *Barrett v. Apple Inc.*, 523 F.Supp.3d 1132, 1150 (N.D. Cal. 2021) (dismissing UCL claims because plaintiffs did "not allege that they … read the disclaimer … either before or after they purchased").

*Fourth*, Sass and L.C. fail to plead "actual injury" or causation required by the GBL.[10] *See Preira v. Bancorp Bank*, 885 F.Supp.2d 672, 676 (S.D.N.Y. 2012) (plaintiffs must "allege that the defendant's consumer-oriented deceptive acts or practices 'resulted in actual injury to [the] plaintiff'"). L.C.'s purchases of Robux are insufficient because they are merely "pecuniary loss arising solely from the purchase of the defendant's product." *Id.* at 676-77; *see supra* Part IV.B. To the extent L.C. claims injury from later losing "gambling credits," Roblox did not cause that injury because it did not issue those credits. *See supra* Part IV.B. Further, Sass and L.C. do not allege

---

[10] Sass cannot pursue an individual GBL claim because she was neither a Roblox customer nor competitor. *Id*. ¶ 152; *see In re Tether & Bitfinex Crypto Asset Litig.*, 576 F.Supp.3d 55, 131 (S.D.N.Y. 2021) (no GBL violation where plaintiffs were not consumers or competitors).

1    seeing any purported statements by Roblox at issue in the GBL claim. Compl. ¶¶ 147-52; *Gale v.*

2    *Int'l Bus. Machines Corp.*, 781 N.Y.S.2d 45, 47 (2004) (under GBL, "[i]f the plaintiff did not see

3    any of the[] statements, they could not have been the cause of his injury.")

4           **D.      Plaintiffs' UCL Claims Are Defective (Counts II and III).**

5           ***No unlawful conduct***. Plaintiffs do not plead violations of the eight gambling laws cited in

6    the UCL unlawful claim, Compl. ¶ 186, requiring dismissal of Count II. *See Mueller v. San Diego*

7    *Ent. Partners, LLC*, 260 F.Supp.3d 1283, 1299 (S.D. Cal. 2017) ("conclusory" allegations did not

8    "provid[e] facts as to how Defendants violated each prong."). As detailed above, Plaintiffs fail to

9    plead violations of § 1955 and the CLRA. *See supra* Parts IV.B, C, E. The remaining statutes apply

10   only to "games of chance" that offer a "thing of value," *see, e.g.*, Cal. Pen. Code §§ 330a, 330b,

11   330.1, 337j(a)(1), 337j(a)(2), and generally apply to only those entities that exercise control over a

12   "slot machine" or similar device.[11] Plaintiffs do not identify any specific game they played;

13   conclusory allegations about unspecified "gambling games," Compl. ¶¶ 145, 151, do not suffice to

14   plead a game of chance subject to these laws. In any event, Plaintiffs concede that Roblox does not

15   create, control, or operate the VCs. Compl. ¶ 62.

16          Furthermore, both the virtual credits (which Roblox neither creates nor sells) and Robux are

17   virtual currencies, which are not a "thing of value." *Taylor*, 2021 WL 11559513, at *6 ("the lack of

18   any real-world transferable value to [virtual loot boxes] takes them outside the meaning of"

19   §§ 330a, 330b and 330.1). The Complaint alleges the credits only can be converted to Robux, and

20   Plaintiffs, as Robux users, cannot convert Robux to real currency. Roblox's Terms prohibit this.

21   Compl. ¶¶ 113; Wong Decl. ¶ 2 Ex. 1. *See Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 n.2

22   (9th Cir. 2018) ("virtual chips cannot constitute a 'thing of value'" if their conversion to real

---

[11] Cal. Penal Code §§ 337j(a)(1) and (a)(2) apply only to a "controlled game," which California law defines, in relevant part, as "any game of chance … played for … any other thing of value that is not prohibited and made unlawful by statute or local ordinance."

currency violates platform's terms of use). The UIGEA-predicated claim fails for the same reason, as it applies only to persons "engaged in the business of betting or wagering," 31 U.S.C. § 5363,[12] and defines "bet or wager" as "the staking or risking ... of something of value." *Id.* 5362(1)(A). Plaintiffs cannot state an "unlawful" claim based on any of these statutes.

**No unfair conduct**. Where, as here, the alleged conduct underpinning the unlawful and unfair prongs is the same, failure to plead an unlawful claim is fatal to the unfair claim. *Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022) (dismissal of unfair prong is appropriate "where the practice alleged to be unfair overlaps entirely with the practices addressed under the ... unlawful" claim). Plaintiffs' claims under both prongs are identical, and the unfair claim falls with the unlawful claim. *Compare* Compl. ¶ 186 *with id.* ¶ 198.[13]

### E.    Plaintiffs Fail to Plead Misrepresentations or Omissions (Counts II, IV-IX).

Claims based on alleged misrepresentations (Counts II, IV-IX) must meet Rule 9(b)'s heightened pleading standard by identifying "the time, place, and content of [the] alleged misrepresentation[s]," and "set[ting] forth an explanation as to why the statement or omission complained of was false or misleading." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994); *In re NJOY, Inc. Consumer Class Action Litig.*, 2014 WL 12586074, at *10-15 (C.D. Cal. Oct. 20, 2014) (applying Rule 9(b) to UCL, CLRA, and GBL claims based on misrepresentations and dismissing same). The Complaint does not meet this standard.

The misrepresentation claims are based on a single statement in the Standards: "experiences that include simulated gambling, including playing with virtual chips, simulated betting, or exchanging real money, Robux, or in-experience items of value are not allowed." Compl. ¶¶ 13,

---

[12] Roblox is not subject to the UIGEA, which specifically excludes an "interactive computer service,'" 31 U.S.C. § 5362(2), which has the same meaning as under Section 230, *id.* § 5362(6).
[13] Plaintiffs do not state an unfair claim under the balancing test because they do not show the required substantial consumer injury, as discussed above in Parts IV.B, C. *See Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 736 (9th Cir. 2007).

267.[14] This statement is not false, as Plaintiffs' allegations show. The Standards cover "your actions on Roblox and with other Robloxians," not third-party sites owned by separate entities like the Virtual Casinos. *E.g.*, Compl. ¶¶ 14, 19, 32-34, 212. Thus, all purported misrepresentation claims fail. *See Lumbra v. Suja Life, LLC*, 2023 WL 3687425, at *5 (N.D.N.Y. May 26, 2023) (no GBL claim where statement was "factually accurate" and plaintiffs' allegations were "plainly inconsistent with common sense"); *Hartwich v. Kroger Co.,* 2021 WL 4519019, at *6 (C.D. Cal. Sept. 20, 2021) (dismissing CLRA claims). Moreover, Plaintiffs do not plead when Roblox made the purported representation, or that Plaintiffs saw it, which requires dismissal under Rule 9(b). *See Horti v. Nestle HealthCare Nutrition, Inc.*, 2022 WL 2441560, at *9 (N.D. Cal. July 5, 2022).

### F.    Plaintiffs' Negligence Claims (Counts VI and IX) Fail.

Plaintiffs' negligence and negligence *per se* claims also fail. Plaintiffs' bare assertion that "Roblox undertook a duty of care when it provided" an online platform, including a "responsibility not to allow minors on its platform to engage in illegal behavior" on the separate VCs, Compl. ¶¶ 250, 275-76, is unsupported by law. Courts have consistently held that merely operating an online platform does not create such a duty. *See Dyroff*, 934 F.3d at 1101 ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *Ziencik v. Snap, Inc*., 2023 WL 2638314, at *5 (C.D. Cal. Feb. 3, 2023) (no duty based on "Defendant's creation and operation of the Snapchat platform"). Nor do Plaintiffs identify any duty requiring Roblox to ban users or developers. *See Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1227 (2023) ("[P]laintiffs identify no duty that would require…communication-providing services to terminate customers after discovering that the customers were using the service for illicit ends."). The absence of a legal duty is fatal to the negligence claims.[15] *See Bily v. Arthur Young &*

---

[14] *See* Wong Decl. ¶ 3 Ex. 2 at 3.

[15] Assuming Plaintiffs suffered economic damages (they did not), California and New York law would bar Plaintiffs' negligence (per se) claims for purely economic damages from "gambling losses." *See In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1064 (N.D. Cal. 2012) ("Purely

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Co.*, 3 Cal. 4th 370, 397 (1992) ("threshold element" of negligence is "a duty to use due care.");

*Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001) (same).

Plaintiffs' negligence *per se* claims fails because "there is no 'negligence per se' [claim] under California law." *Estate of Harmon v. Cty. of San Mateo*, 2021 WL 5071831, at *1 (N.D. Cal. Oct. 26, 2021). Although "the 'unexcused omission' or violation of a duty imposed by statute for the benefit of a particular class is negligence itself," under New York law, *Chen v. U.S.*, 854 F.2d 622, 627 (2nd Cir. 1988), the cited New York gambling statutes do not impose a duty on Roblox to prevent access to separate platforms operated by third parties. Compl. ¶¶ 242-49; *Johnson v. AFNI, Inc.*, 2023 WL 2970919, at *2 (S.D.N.Y. Apr. 15, 2023) (dismissing negligence per se claim for failure to plead any elements). "Bare allegations" that Roblox violated these statutes does not state a negligence per se claim. *Coppola v. Smith*, 935 F.Supp.2d 993, 1032-33 (E.D. Cal. 2013).

### G.    Plaintiffs' Civil Conspiracy Claim is Defective (Count VIII).

Plaintiffs' California civil conspiracy claim is defective because Plaintiffs fail to allege UCL, CLRA, or negligence per se claims—the only laws Roblox allegedly conspired to violate. Compl. ¶ 270; *see Smith v. Wachovia*, 2009 WL 1948829, at *5 (N.D. Cal. July 6, 2009) (dismissing civil conspiracy for failure to plead "independent civil wrongs"). Plaintiffs also fail to plead facts showing that Roblox "agreed to a common plan or design to commit a tortious act," *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995), and simply plead ordinary business conduct, which does not suffice. *See supra* Part IV.B; *In re Ethereummax Inv'r Litig.*, 2022 U.S. Dist. LEXIS 220968 (C.D. Cal. Dec. 6, 2022) ("Plaintiffs' conspiracy claim fails for much of the same reasons [as] their RICO and aiding and abetting claims…the allegations are equally, if not more, consistent with allegations that Defendants were each acting in their own self-interest."). Plaintiffs also do not show that Roblox had "actual knowledge" that the VCs used Roblox to purportedly "exchange"

---

economic damages to a plaintiff which stem from disappointed expectations from a commercial transaction must be addressed through contract law; negligence is not a viable cause of action…").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Robux for credits to use in "illegal gambling games." *Kidron*, 40 Cal. App. 4th at 1582. Plaintiffs' allegations that Roblox "knew or should have known" of the alleged wrongdoing due to a handful of third-party social media posts, Compl. ¶¶ 132-36, "does not plead actual knowledge." *Neilson v. Union Bank of Cal., N.A*., 290 F.Supp.2d 1101, 1118-19 (C.D. Cal. 2003); *Markowitz v. Div. Lending Grp., Inc*., 2010 WL 11507662, at *9 (C.D. Cal. Feb. 26, 2010) (constructive knowledge does not show actual knowledge). Allegations that Roblox monitors Robux transactions are insufficient to plead civil conspiracy because they show nothing more than a "vague suspicion of wrongdoing." *In re First All. Mortg. Co.*, 471 F.3d 977, 993 n.4 (9th Cir. 2006); *e.g.*, Compl. ¶¶ 109, 122-24, 128.

### H.    Plaintiffs' Requests for Relief Are Defective.

Plaintiffs' requests for relief are defective. *First*, their requests for monetary relief (Counts II-IV, VI-IX) to recover for "gambling losses" are barred by California's strong "public policy against judicial resolution of civil disputes arising out of gambling contracts or transactions." *Kelly v. First Astri Corp*., 72 Cal.App.4th 462, 477 (1999); *see also Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650, at *4 (C.D. Cal. May 24, 2023) (dismissing monetary claims arising from alleged "illegal gambling"). *Second*, Plaintiffs' requests for the equitable relief (Counts II-V, VII) fail because they do not allege they lack an adequate remedy at law.[16] *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 843-44 (9th Cir. 2020); *Almeida v. Apple, Inc*., 2022 WL 1514665, at *1 (N.D. Cal. May 13, 2022) (Chhabria, J.) (dismissing claims for equitable relief because "[t]he complaint does not attempt to allege that the plaintiffs lack an adequate remedy at law").

### V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

---

[16] Plaintiffs' unjust enrichment claim (Count VII) under California law also fails because "there is no such claim in California." *Walker v. Equity 1 Lenders Grp.*, 2009 WL 1364430, at *9 (S.D. Cal. May 14, 2009). The claim is also deficient under New York law because it is "a mere regurgitation" of Plaintiffs' § 349 and negligence claims. *Alce v. Wise Foods, Inc.*, 2018 WL 1737750, at *12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative).

1    Dated: October 24, 2023                    Respectfully submitted,

2

3                                               COOLEY LLP
                                                TIANA DEMAS*
                                                KYLE C. WONG (224021)
4                                               ROBBY L.R. SALDAÑA* (1034981)

5

6                                               _/s/ Tiana Demas_

7                                               Tiana Demas
                                                Attorneys for Defendant
8                                               ROBLOX CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28