UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHELLE COLVIN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ROBLOX CORPORATION, et al.,<br><br>    Defendants. | Case No. 23-cv-04146-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS**<br><br>Re: Dkt. No. 31 |

    The motion to dismiss is granted with regard to the RICO, CLRA, and New York GBL claims. The motion to dismiss is denied with regard to the California UCL and negligence claims. This ruling assumes that the reader is familiar with the facts, the applicable law, and the arguments made by both parties.

    *RICO*. The RICO claims are dismissed because the plaintiffs have failed to plead sufficient facts to establish the existence of a RICO enterprise. The complaint does allege this much: Roblox has a virtual currency designed for use on its platform called "Robux." Users can buy Robux and exchange them on the platform for in-game experiences. Developers create in-game experiences, and when they make Robux selling those experiences on the platform, Roblox will let them cash out. But, outside the Roblox platform, there are a number of online casinos that take wagers in Robux. Those online casinos entice minors to come gamble away their Robux. To make the Robux available for gambling, an online casino representative engages in a dummy transaction on the Roblox platform that gives the casino access to the minor's Robux while the minor gambles. Roblox processes that transaction, and it takes a cut. Then, when the minor loses Robux in the online casino, the casino exchanges those Robux with Roblox for cash. Again, Roblox processes that transaction and takes a cut. And Roblox is perfectly aware that all

of this is going on. In other words, the complaint sufficiently alleges that Roblox's normal processes are being used to facilitate illegal activity, and that Roblox knows all about it.

But to establish the existence of a RICO enterprise, it seems that something more is needed. The complaint alleges only that Roblox is engaged in its "own primary business activities." *Shaw v. Nissan North America, Inc.*, 220 F. Supp. 3d 1046, 1056 (C.D. Cal. 2016); *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("Liability depends on showing that the defendants conducted or participated in the *enterprise's* affairs, not just their *own* affairs."). There are no allegations of a "common purpose or of organized conduct separate and apart from [Roblox's] ordinary affairs." *Shaw*, 220 F. Supp. 3d at 1057 (quoting *In re General Motors LLC Ignition Switch Litigation*, No. 14-MD-2543, 2016 WL 3920353, at *14 (S.D.N.Y. July 15, 2016)); *see also In re Wells Fargo Forbearance Litigation*, No. 20-cv-06009, 2023 WL 3237501, at *2 (N.D. Cal. May 2, 2023). The plaintiffs have alleged that Roblox interacts with the representatives of the online casinos the same way that it interacts with other users and developers on its platform. The only difference alleged is that Roblox knows that the casinos are engaged in illegal gambling activity. If there is a case that stands for the proposition that knowledge is enough to transform ordinary business activities into a portion of a RICO enterprise, the plaintiffs have not provided it.[1] Thus, the question is whether the plaintiffs have alleged "something more" than mere knowledge combined with "routine business dealings." *Shaw*, 220 F. Supp. 3d at 1056.

The plaintiffs point to two things. First, they mentioned at the motion to dismiss hearing that there were some communications that Roblox apparently had with the gambling websites. But these communications are not sufficiently alleged in the complaint to demonstrate that the RICO requirements are met. Second, the plaintiffs point to their allegation that the online casinos demand the use of the "Roblox security cookie," which other developers do not ask users for.

---

[1] This section discusses the routine business activity issue with reference to the "enterprise" factor, but it seems equally applicable to the question of whether Roblox engaged in "conduct" of the enterprise's affairs. Since, either way, the plaintiffs have not alleged enough to plead a viable RICO claim, this ruling does not parse the matter further.

But *Roblox* makes the security cookie available to all users. And the complaint says it is the minor *users* who access the cookie and provide it to the online casinos. *See, e.g.*, Dkt. No. 1 ¶ 15. Moreover, the complaint alleges that the cookie is only one option that minors can use to give the casinos access to their Roblox accounts; they can also just provide their login credentials.[2]

*Statutory standing*. Roblox argues that the plaintiffs have not suffered an economic injury sufficient to establish statutory standing to sue under California's UCL or CLRA or under New York's GBL. It makes two arguments to this effect based on prior cases grappling with a similar question.

First, Roblox argues that because users cannot exchange the virtual currency (Robux) for fiat currency, the economic loss occurs and is complete at the time when the Robux are purchased. It cites several cases that use language to that effect. *See Mason v. Machine Zone, Inc.*, 140 F. Supp. 3d 457, 465 (D. Md. 2015) ("Plaintiff's loss, if any, was complete: then and there she had swapped something of value (real money) for something of whimsy (pretend gold)."); *Taylor v. Apple*, No. 20-cv-03906-RS, 2021 WL 11559513, at *5 (N.D. Cal. Mar. 19, 2021) (quoting *Mason*, 140 F. Supp. 3d at 465). Thus, Roblox argues, there is no economic loss resulting from the subsequent gambling away of Roblox.

But those cases cannot be understood to stand for the general principle that non-redeemable virtual currency is never of economic value, and thus that its loss never amounts to lost money or property. Roblox is right that the purchase of virtual currency for use in an online world is "akin to purchasing cinema or amusement park tickets," in that "consumers of such services pay for the pleasure of entertainment *per se*, not for the prospect of economic gain."

---

[2] In their opposition brief, the plaintiffs pivot toward arguing that Roblox can be held liable "as a facilitating co-conspirator" of the gambling websites' RICO enterprise under 18 U.S.C. § 1962(d) even if the elements of 18 U.S.C. § 1962(c) are not met with regard to Roblox's involvement. But this theory is not in the complaint. With the exception of a single bullet point in the request for relief, there is no mention of 18 U.S.C. § 1962(d) or co-conspirator RICO liability until the opposition to the motion to dismiss. And the theory is barely elaborated on in the opposition. To state a RICO conspiracy claim, the plaintiffs would need to more clearly articulate allegations that Roblox "intended to further an endeavor, which, if completed, would satisfy all the elements of the substantive criminal offense." *Shaw*, 220 F. Supp. 3d at 1058.

*Mason*, 140 F. Supp. 3d at 465. But movie or amusement park tickets do not lose their economic value once you purchase them. If someone walked up to a moviegoer outside the theater and took the ticket from their hand, it would be wrong say that the moviegoer did not suffer an economic loss simply because they had already exchanged their money for the ticket. The moviegoer has lost their ability to see the movie without spending additional money. When someone buys tickets at an amusement park—tickets that can be used for rides or games—those tickets can be exchanged for something that the owner values. Those tickets do have economic value, even if they cannot be exchanged for cash. Similarly, when someone purchases Robux on the Roblox platform, they do so because they can exchange the Robux for in-game experiences that are of value to them. There is no reason to distinguish the movie or the roller coaster ride in the real world from an in-game experience in the virtual world.

        This leads to Roblox's second argument: even if Robux are of economic value, there was no economic loss here, because the children got what they bargained for when they exchanged their Robux for entertainment in the online casinos. In other words, drawing on *Mason* and *Taylor*, Roblox says that since the Robux were purchased for entertainment and spent on entertainment, there was no loss—regardless of whether the entertainment turned out to be illegal. But these are children we're talking about. There is a reason that children are not allowed to gamble, even if they think it will be entertaining: they cannot meaningfully consent to such games, or to the losses that occur as a result. Thus, in the context of this case, it misses the point to say that the children got what they bargained for. *But see generally Rodriguez v. Topps Company, Inc.*, 104 F. Supp. 2d 1224 (S.D Cal. 2000).

        Moreover, the online casinos were outside of the realm of the games that the Robux were purchased for. And the parents whose money purchased the Robux allege that they had no idea this virtual currency could be used off-platform for gambling. Thus, this is less like a parent buying their child tickets for an amusement park, knowing that there are games of chance available, and letting their child run free to play those games because of their entertainment value. It is more like a casino setting up shop outside an amusement park and luring a child away

4

to wager and lose the tickets to an illegal gambling operation—tickets that the casino can then exchange for cash. The parents did not consent to this deprivation of their child's ability to play in the amusement park, and the child was not legally capable of doing so.

Finally, Roblox says that if the economic loss was the exchange with the online casinos, not the exchange of money for Robux with Roblox, then that only provides the plaintiffs with economic standing to sue the casinos. *See Taylor*, 2021 WL 11559513, at *5. But that misunderstands the nature of the complaint. The plaintiffs have alleged that Roblox is knowingly and improperly facilitating and profiting from these online casinos—that forms the basis of the UCL claims against Roblox. Thus, the plaintiffs have alleged that Roblox (as well as the casinos) caused their economic loss.[3]

*UCL, unlawful prong*. The complaint asserts that the defendants (that is, Roblox and the casinos) have violated eight different statutes. Roblox makes three arguments in response. First, it argues that the gambling statutes apply only where a "thing of value" is wagered, but that non-redeemable currency (like Robux) cannot be a thing of value. But as already explained, Robux are things of value. The Ninth Circuit case that Roblox cites does not help. It involved Washington and not California law. *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 (9th Cir. 2018). And it held that virtual gambling chips are indeed a "thing of value" under Washington law. *Id.* The court reasoned that the virtual chips were things of value because they enabled the holder to play the game without incurring additional costs. *Id.* at 787–88.

Second, Roblox argues that the minor plaintiffs have not sufficiently alleged that they played any games of chance. But the complaint provides detailed factual allegations about the games of chance offered by the online casinos. The complaint also alleges that the minor

---

[3] The plaintiffs also point to the allegation that Robux *are* redeemable for real-world currency—not by the users who suffered the economic loss, but by the developers (including the online casinos) who engaged in transactions with them. That allegation is not enough to create statutory standing. For a party to have suffered an economic loss, they must have lost something of economic value to them; it is not enough that the item be economically valuable to someone else. *See In re Facebook Inc., Consumer Privacy Litigation*, 402 F. Supp. 3d 767, 784–87 (N.D. Cal. 2019). Of course, that allegation does help explain why parties like the online casinos would be incentivized to find ways to take the Robux off of the users, including by illegal means.

plaintiffs were "wagering Robux" and using Robux to "gamble" on the websites. While the complaint is not a model of clarity on this point, the allegations are sufficient to create an inference that the plaintiffs played illegal games of chance on the online casinos.

Third, Roblox argues that the allegations only go to unlawful conduct by the casinos, not by Roblox. Once again, the complaint could and should have been clearer. It merely says that the defendants violate eight different laws, "individually and collectively." Ultimately, because the complaint has not alleged that Roblox is involved in operating a gambling ring—only that it knowingly profits from one—many of these statutes do not seem to apply. That said, the plain language of some of the laws clearly applies to Roblox's alleged role. For example, California Penal Code § 337j(a)(2) applies to receiving compensation or a share of the revenue. And the Unlawful Internet Gambling Enforcement Act refers to knowingly accepting payments. 31 U.S.C. § 5633. If these laws are inapplicable for some reason, then Roblox has not explained how.

*UCL, unfair-practices prong*. The plaintiffs have also adequately alleged a violation of the unfair-practices prong of the UCL. The complaint explains how the alleged conduct violates tests applied by California courts for determining whether there is liability under the unfair-practices prong. *See Torres v. Botanic Tonics, LLC*, No. 23-cv-01460-VC, 2023 WL 8852754, *4 (N.D. Cal. Dec. 21, 2023). Those alleged violations do not depend on the plaintiffs winning their claim under the unlawful prong, since liability under the unfair-practices prong can exist even where no other, pre-existing law is violated. *Id.* at *3.

*Negligence*. Under California law, everyone has a baseline duty to exercise reasonable care in conducting their activities to prevent causing harm that can be reasonably anticipated. *Social Media Cases*, JCCP No. 5255, 2023 WL 6847378, at *23–24 (Cal. Super. Ct. Oct. 13, 2023); *see also Hughes v. Apple, Inc.*, No. 22-cv-07668-VC, 2024 WL 1141751, at *4–9 (N.D. Cal. Mar. 15, 2024). Sometimes, courts will find that there is an exception to that baseline duty rule—courts apply the *Rowland* factors to determine whether an exception is appropriate. *Social Media Cases*, 2023 WL 6847378 at *24. Roblox asserts that the negligence claim fails because it

is not subject to a duty under California tort law. But Roblox does not mention or apply the *Rowland* factors. And Roblox does not grapple at all with a recent California case that thoughtfully analyzed the *Rowland* factors as applied to a social media company allegedly creating a risk of harm for its users. *Id*. at *24–28. The court in that case found that social media companies do have a duty to exercise due care in managing their platforms. *Id.* The same principles apply here. The baseline rule is that Roblox had a duty to use reasonable care in its conduct, the creation and management of its platform, to avoid creating an unreasonable risk of harm to others. The plaintiffs argue that Roblox violated that duty to use reasonable care by allegedly engaging in these currency exchanges with online casinos and by failing to warn parents about the online casinos. Roblox does not argue that it did, in fact, use reasonable care. Instead, Roblox contests only the existence of a duty. But since Roblox has not shown that it would be appropriate to create a carve-out to the general duty rule, the motion to dismiss the negligence claims is denied. *See id.* at *23.[4]

In a footnote, Roblox also asserts that the negligence claims are barred by the economic loss rule, since the gambling losses are purely economic damages. There are a few issues with that. First, as the plaintiffs point out, Roblox makes the argument in passing in a footnote, cites no New York law, and cites an inapplicable case for California law. Second, as Roblox repeatedly points out, what was taken was virtual currency and not money. So, it is not clear whether this should be considered a pure financial loss as opposed to harm to property. Third, Roblox drops its economic-loss rule argument in its reply brief. Thus, the Court cannot conclude at this point that the economic-loss rule bars the plaintiffs' negligence claims.[5]

---

[4] To be clear, the plaintiffs also have language in their complaint that could be read to suggest that the duty of care hinges on the fact that the Roblox platform caters to children. That might suggest that the plaintiffs are asserting that Roblox is subject to a "heightened duty of care" given its relationship to minors. *Cf. id.* at *23. But Roblox's motion to dismiss does not argue about the proper standard of care. And the plaintiffs have not cited any authority to support a heightened standard of care under these circumstances. So the question of the proper standard of care cannot be decided now.

[5] Finally, as previously noted, it is not proper to view the alleged losses merely as a matter of the plaintiffs failing to receive the benefit of the bargain—the harm in this case is more akin to theft than a breach of a warranty. Given that, the Court is likely to view any future application of the

*Negligence per se*. There is no standalone cause of action for negligence per se under California law. The parties agree that, in California, negligence per se is an "evidentiary doctrine" that operates by creating a "presumption of negligence" that can be rebutted. *Quiroz v. Seventh Avenue Ctr.*, 140 Cal. App. 4th 1256, 1284–85 (2006). The parties also agree that New York law does recognize negligence per se where there is an "unexcused omission or violation of a duty imposed by statute for the benefit of a particular class." *Chen v. U.S.*, 854 F.2d 622, 627 (1988). Under New York law, the breach of such a statutory duty is enough to establish a claim for damages. *Doe v. U.S.*, 520 F. Supp. 1200, 1202 (Sept. 3, 1981). The complaint sufficiently alleges negligence per se based on the violation of laws related to accepting payments in connection with unlawful gambling. And, for the New York and California plaintiffs, negligence per se will operate according to the laws of their state.

*Misrepresentation-based claims*. The complaint advances a series of claims premised on allegations that Roblox misrepresented its platform to consumers as free from gambling. But fraud-based claims must be pled with particularity. The only allegation that specifically identifies a representation from Roblox is a sentence from Roblox's terms of service, which states that "experiences that include simulated gambling, including playing with virtual chips, simulated betting, or exchanging real money, Robux, or in-experience items of value are not allowed." The complaint's allegations do not squarely contradict the statement. The plaintiffs do not allege that there are any gambling-like experiences on Roblox's site itself. They allege that Roblox knows about and facilitates transactions involving offsite gambling. Moreover, the plaintiffs do not allege that they ever saw this sentence in the terms of service, let alone that they relied on it in making their purchases. Perhaps for these reasons, the plaintiffs pivot in the opposition to an omission theory for their consumer protection claims. But that theory is not the focus of the complaint, and the allegations needed to demonstrate an actionable omission are not present, let alone developed enough to meet the heightened pleading requirements of Rule 9(b). Thus, the

---

economic-loss rule to this case through that lens.

CLRA and GBL claims must be dismissed.

*Section 230*. The plaintiffs' claims are not barred by Section 230 because they do not treat Roblox as a publisher or speaker. 47 U.S.C. § 230. Roblox is not facing liability for the content posted on its platform. It is facing liability for allegedly facilitating transactions between minors and online casinos that enable illegal gambling, and for allegedly failing to take sufficient steps to warn minors and their parents about those casinos. *See HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 684 (9th Cir. 2019) ("The platforms face no liability for the content of the bookings; rather, any liability arises only from unlicensed bookings.); *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 851 (9th Cir. 2016) ("The duty to warn allegedly imposed by California law would not require Internet Brands to remove any user content or otherwise affect how it publishes or monitors such content."); *see also Taylor v. Apple, Inc.*, 2021 WL 11559513, at *4 (N.D. Cal. Mar. 19, 2021). Section 230 immunity does not "attach any time a legal duty might lead a company to respond with monitoring or other publication activities," and "it is not enough that third-party content is involved" in the theory of liability. *Id.* at 682.

\*\*\*

Discovery may move forward immediately on the surviving claims. All dismissals are with leave to amend. If the plaintiffs wish to file an amended complaint to attempt to cure the defects in the claims that have been dismissed, they must do so within 14 days. However, if the plaintiffs wish to simply proceed on the surviving claims, and if discovery on the surviving claims reveals a good-faith basis to reassert the dismissed claims, then they are free to seek leave to amend the complaint at that time.

**IT IS SO ORDERED.**

Dated: March 26, 2024

VINCE CHHABRIA
United States District Judge