Andre M. Mura (SBN 298541)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Tel: (510) 350-9700
amm@classlawgroup.com

[Additional Attorneys for Plaintiffs
Listed on Back Cover]

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| RACHELLE COLVIN, individually and as next friend of minor Plaintiff, G.D., and DANIELLE SASS, individually and as next friend of minor Plaintiff, L.C., DAVID L. GENTRY, individually and as next friend of minor Plaintiff, L.G., OSMANY RODRIGUEZ, individually and as next friend of minor Plaintiff, O.R., JOSHUA R. MUNSON, individually and as next friend of minor Plaintiffs, D.C., J.M., T.T., and R.T., and LAVINA GANN , individually and as next friend of minor Plaintiff, S.J., and on behalf of all others similarly situated, | Case No. 3:23-cv-04146-VC (RI) |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANT ROBLOX'S MOTION TO DISMISS THE CONSOLIDATED COMPLAINT** |
| Plaintiffs, | |
| v. | Date: June 20, 2024<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria |
| ROBLOX COROPORATION, SATOZUKI LIMITED B.V., STUDS ENTERTAINMENT LTD., and RBLXWILD ENTERTAINMENT LLC, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION AND BACKGROUND ........................................................1

LEGAL STANDARD..........................................................................................3

ARGUMENT .......................................................................................................3

I.   Roblox's Second Motion to Dismiss Raises Arguments
     Prohibited by Rule 12(g)(2). ......................................................................3

II.  Plaintiffs' Claims are Adequately Pled............................................................4

     A.  Certain Claim Are Not Subject to Rule 9(b)............................................4

     B.  Plaintiffs' Omissions-Based Claims Satisfy Rule 9(b).............................5

     C.  Roblox's Omissions are Material..............................................................8

     D.  Plaintiffs' Omissions-Based Claims Adequately Plead Reliance and Causation. .12

         1.   Plaintiffs Adequately Plead Reliance.............................................12

         2.   Plaintiffs Adequately Plead Causation.............................................14

III. California Public Policy Does Not Bar Plaintiffs' Claims for Monetary Relief..........15

IV.  Plaintiffs Have Standing to Seek Injunctive Relief. ...................................16

V.   Plaintiffs Claims are Viable Under the CLRA. .........................................17

VI.  Plaintiffs' Negligence Claims Are Well-Pled............................................18

CONCLUSION....................................................................................................20

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Anderson v. Apple, Inc.*,
5
   500 F. Supp. 3d 993 (N.D. Cal. 2020) ...................................................................................7

6

*In re Apple Processor Litig.*,
7
   2022 WL 2064975 (N.D. Cal. June 8, 2022) ......................................................................13

8

*In re Arby's Rest. Grp. Inc. Litig.*,
   317 F. Supp. 3d 1222 (N.D. Ga. 2018) ..........................................................................12, 14
9

*Barrett v. Apple Inc.*,
10
   523 F. Supp. 3d 1132 (N.D. Cal. 2021) ...............................................................................13

11

*Boeh v. Dial*,
12
   2022 WL 2678594 (Tenn. Ct. App. July 22, 2022) ..............................................................9

13

*Bowe v. Public Storage*,
14
   318 F.R.D. 160 (S.D. Fla. 2015) ..........................................................................................14

15

*Bradley v. Doherty*,
16
   106 Cal.Rptr. 725 (Cal. Ct. App. 1973) ..............................................................................15

17

*Brown v. USA Taekwondo*,
   483 P.3d 159 (Cal. 2021) ......................................................................................................19
18

*Brown v. Van's Int'l Foods, Inc.*,
19
   622 F. Supp. 3d 817 (N.D. Cal. 2022) .................................................................................13

20

*Browning v. Am. Honda Motor Co., Inc.*,
21
   2022 WL 824106 (N.D. Cal. Mar. 18, 2022)................................................................5, 7, 8

22

*Bryde v. Gen. Motors, LLC*,
23
   2016 WL 6804584 (N.D. Cal. Nov. 17, 2016) ...................................................................10

24

*Cho v. Hyundai Motor Co., Ltd.*,
25
   636 F. Supp. 3d 1149 (C.D. Cal. 2022) .................................................................................5

26

*City of Charleston, SC v. Hotels.com, LP*,
   487 F. Supp. 2d 676 (D.S.C. 2007)......................................................................................12
27

*CMR Constr. & Roofing, LLC v. UCMS, LLC*,
28
   2022 WL 3012298 (11th Cir. July 29, 2022)........................................................................5

*Crockford's Club Ltd. v. Si-Ahmed*,
  250 Cal.Rptr. 728 (Cal. Ct. App. 1988) ................................................................15

*C.W. v. Epic Games, Inc.*,
  2020 WL 5257572 (N.D. Cal. Sept. 3, 2020) ........................................................10

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ...............................................................6, 7, 8, 13

*Davidson v. Apple, Inc.*,
  2017 WL 3149305 (N.D. Cal. July 25, 2017)...........................................................6

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .................................................................................17

*Davis v. Powertel, Inc.*,
  776 So.2d 971 (Fla. Dist. Ct. App. 2000) ...............................................................9

*Doe v. Roblox Corp.*,
  602 F. Supp. 3d 1243 (N.D. Cal. 2022) .................................................................18

*Doe9 v. Varsity Brands, LLC*,
  2023 WL 4113198 (D.S.C. June 21, 2023)...............................................................9

*Eiess v. USAA Fed. Savings Bank*,
  404 F. Supp. 3d 1240 (N.D. Cal. 2019) .................................................................17

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
  91 F.4th 511 (1st Cir. 2024)...................................................................................20

*Fayne v. Vincent*,
  301 S.W.3d 162 (Tenn. 2009) ...................................................................................9

*Fishon v. Peloton Interactive, Inc.*,
  620 F. Supp. 3d 80 (S.D.N.Y. 2022)......................................................................12

*Goshen v. Mut. Life Ins. Co. of New York*,
  774 N.E.2d 1190 (N.Y. 2002).................................................................................5

*Greenwood v. F.A.A.*,
  28 F.3d 971 (9th Cir. 1994) ...................................................................................14

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ............................................................9, 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Herron v. Best Buy Co., Inc.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)..................................................................11

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ..........................................................................9

*Hughes v. Apple, Inc.*,
    2024 WL 1141751 (N.D. Cal. Mar. 15, 2024)..............................................19

*In re JUUL Labs, Inc. Mktg, Sales Pracs., and Prods. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ............................................................10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................3, 4, 5

*Keegan v. Am. Honda Motor Co., Inc.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) ...........................................................14

*Kelly v. First Astri Corp.*,
    84 Cal.Rptr.2d 810 (Cal. Ct. App. 1999 ........................................................15

*Kemp v. Wells Fargo Bank, N.A.*,
    2017 WL 4805567 (N.D. Cal. Oct. 25, 2017).................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ..........................................................................2

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ................................................................................16

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) .........................................................................3

*LiMandri v. Judkins*,
    60 Cal.Rptr.2d 539 (Cal. Ct. App. 1997) .........................................................9

*Lusson v. Apple, Inc.*,
    2016 WL 10932723 (N.D. Cal. June 20, 2016)...............................................3

*Lytle v. Nutramax Lab'ys, Inc.*,
    99 F.4th 557 (9th Cir. 2024) .........................................................................12

*MacDonald v. Ford Motor Co.*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014) .............................................................6

*Madani v. Volkswagen Grp. of America, Inc.*,

2019 WL 3753433 (N.D. Cal. Aug. 8, 2019) ........................................................12

*McGill v. Citibank, N.A.*,
216 Cal.Rptr.3d 627 (2017) ................................................................................17

*Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*,
131 S.W.3d 457 (Tenn. Ct. App. 2003) ..............................................................12

*Metropolitan Creditors Service v. Sadri*,
19 Cal.Rptr.2d 646 (Cal. Ct. App. 1993) ...........................................................15

*Miller v. Ford Motor Co.*,
2024 WL 1344597 (E.D. Cal. Mar. 29, 2024) ...................................................11

*Nalley v. Gen. Motors LLC*,
2022 WL 18459646 (N.D. Ga. Aug. 30, 2022) ..................................................12

*New York v. Arm or Ally, LLC*,
2024 WL 756474 (S.D.N.Y. 2024)......................................................................20

*Oswego Lab. Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
647 N.E.2d 741 (N.Y. 1995) ................................................................................9

*Patterson v. RW Direct, Inc.*,
382 F. Supp. 3d 938 (N.D. Cal. 2019) ...............................................................10

*Reeves v. Niantic, Inc.*,
2022 WL 1769119 (N.D. Cal. May 31, 2022) ....................................................18

*Regency Nissan, Inc. v. Taylor*,
391 S.E.2d 467 (Ga. Ct. App. 1990)............................................................5, 9, 14

*RFT Mgmt. Co., LLC v. Powell*,
607 Fed. Appx. 238 (4th Cir. 2015) ....................................................................14

*Rodriguez v. It's Just Lunch, Intern.*,
300 F.R.D. 125 (S.D.N.Y. 2014) ........................................................................14

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012) ..............................................................................13

*Shah v. Gen. Motors LLC*,
2023 WL 8852491 (N.D. Cal. 2023) ....................................................................3

*Simon v. SeaWorld Parks & Ent., Inc.*,
2022 WL 1594338 (S.D. Cal. May 19, 2022)......................................................8

*Sloan v. Gen. Motors LLC,*
    287 F. Supp. 3d 840 (N.D. Cal. 2018) ................................................................ passim

*Social Media Cases,*
    2023 WL 1141751 (N.D. Cal. Mar. 15, 2024).........................................18, 19, 20

*State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.,*
    777 S.E.2d 176 (S.C. 2015) ...................................................................5, 15

*State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC,*
    278 F. Supp. 3d 1307 (S.D. Fla. 2017) ...................................................................9

*Sumer v. Carrier Corp.,*
    2015 WL 3630972 (N.D. Cal. June 10, 2015) ...................................................10, 11

*Taleshpour v. Apple, Inc.,*
    2022 WL 1577802 (9th Cir. May 19, 2022) ...................................................9, 10

*Tennessee ex rel. Skrmetti v. Ideal Horizon Benefits, LLC,*
    2023 WL 2299570 (E.D. Tenn. Feb. 28, 2023) ...................................................5

*Tershakovec v. Ford Motor Co., Inc.,*
    79 F.4th 1299 (11th Cir. 2023) ...................................................................12

*Thunder Marine, Inc. v. Brunswick Corp.,*
    2007 WL 2302196 (M.D. Fla. Aug. 8, 2007) ...................................................14

*In re Tobacco II,*
    207 P.3d 20 (Cal. 2009) ...................................................................13, 16

*In re Toyota RAV4 Hybrid Fuel Tank Litig.,*
    534 F. Supp. 3d 1067 (N.D. Cal. 2021) ...................................................9

*Tucker v. Sierra Builders,*
    180 S.W.3d 109 (Tenn. Ct. App. 2005) ...................................................15

*Vasquez v. Cebridge Telecom CA, LLC,*
    569 F. Supp. 3d 1016 (N.D. Cal. 2021) ...................................................17

*Velasco v. Chrysler Grp. LLC,*
    2014 WL 4187796 (C.D. Cal. Aug. 22, 2014)...................................................7

*In re Vizio, Inc. Consumer Priv. Litig.,*
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...................................................6, 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*,
    2023 WL 5062065 (M.D. Tenn. Aug. 8, 2023) ...........................................................14

**Statutes and Rules**

California Unfair Competition Law (UCL)
    Cal. Bus. & Prof. Code §§ 17200 et seq. ...........................................................13, 16

Consumer Legal Remedies Act (CLRA)
    Cal. Civ. Code §§ 1750 et seq. ...........................................................5, 13, 17, 18

Fed. R. Civ. P. 8 ...........................................................................................................3

Fed. R. Civ. P. 9(b) ........................................................................................... passim

Fed. R. Civ. P. 12(b)(6) ...........................................................................................4

Fed. R. Civ. P. 12(g)(2) ...........................................................................................3, 4

Florida Deceptive and Unfair Trade Practices Act (FDUTPA)
    Fla. Stat. § 501.201 et seq. ...........................................................5, 8, 9, 12, 14

Georgia Fair Businesses Practices Act of 1975 (GFBPA)
    Ga. Code § 10-1-390 et seq. ...........................................................5, 9, 13, 14

New York General Business Law § 349 (GBL) ...........................................................5, 8, 12, 14

South Carolina Unfair Trade Practices Act (SCUTPA)
    S.C. Code Laws § 39-5-10 et seq. ...........................................................5, 8, 14, 15

Tennessee Consumer Protection Act (TCPA)
    Tenn. Code § 47-18-101 et seq. ...........................................................5, 8, 9, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION AND BACKGROUND

Roblox is an interactive gaming platform, used predominantly by adolescents, that knowingly facilitates and profits from gambling losses incurred by children at virtual casinos ("VCs") operated by Defendants Satozuki Limited B.V., Studs Entertainment Ltd., and RBLXWild Entertainment LLC (collectively, the "Gambling Website Defendants"). This Court previously described how this illegal child gambling enterprise works:

> Roblox has a virtual currency designed for use on its platform called "Robux." Users can buy Robux and exchange them on the platform for in-game experiences. Developers create in-game experiences, and when they make Robux selling those experiences on the platform, Roblox will let them cash out. But, outside the Roblox platform, there are a number of online casinos that take wagers in Robux. Those online casinos entice minors to come gamble away their Robux. To make the Robux available for gambling, an online casino representative engages in a dummy transaction on the Roblox platform that gives the casino access to the minor's Robux while the minor gambles. Roblox processes the transaction, and it takes a cut. Then, when the minor loses Robux in the online casino, the casino exchanges those Robux with Roblox for cash. Again, Roblox processes that transaction and takes a cut. And Roblox is perfectly aware that all of this is going on. In other words, the complaint sufficiently alleges that Roblox's normal processes are being used to facilitate illegal activity, and that Roblox knows all about it.

ECF No. 65 at 1-2.

Any developer that wishes to sell items or in-game experiences on the Roblox platform must register with Roblox through its Developer Exchange Program ("DevEx"). ECF No. 79 (Consolidated Class Action Complaint) ("CCAC") ¶¶ 63, 105, 109. The Gambling Website Defendants are each part of the DevEx.[1] *Id.* ¶ 71. Through the DevEx, Roblox controls the manner in which each developer utilizes and

---

[1] Roblox asserts that the complaint "does not allege that the VCs use Roblox accounts that are linked in any obvious way to the VCs," Mot. at 4, but the complaint pleads that each Gambling Website Defendant has registered with Roblox through the DevEx and that Roblox has knowledge of the entities that participate through the DevEx. CCAC ¶¶ 71, 105, 109. Roblox cites to an ambiguous quotation from a YouTube interview to support its contention that one Gambling Website Defendant attempts to "avoid detection on Roblox." Mot. at 4. This quotation is not part of the pleading and should be disregarded.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

interacts with the Roblox ecosystem, allowing Roblox to monitor and track each exchange of Robux. *Id.* ¶¶ 18, 20, 63, 132-133. Roblox is thus fully aware that the Gambling Website Defendants are moving large quantities of Robux through their developer accounts. *Id.* ¶ 116.

Roblox permits the VCs to temporarily take control of minor users' Robux wallets and exchange their Robux for gambling credits (also called Robux) on the casino websites. *Id.* ¶¶ 20-21. To access a user's account, VCs obtain the minor's unique security cookie; Roblox does not restrict the ability of its minor users to provide this information and is aware whenever a third-party website obtains access to its user's accounts. *Id.* ¶¶ 20, 89, 105, 149. Roblox can track and disable developers from using its platform for illegal purposes, but it has elected not to take action against the Gambling Website Defendants. *Id.* ¶¶ 134-40, 146-49. The reason is simple: it is enormously profitable. Each time a child transfers Robux to the VCs, and each time the Gambling Website Defendants cash out Robux illegally obtained from an adolescent, Roblox takes a 30% fee. *Id.* ¶¶ 124-27.

Although Roblox is fully aware of, and profits from, the VCs, it does not warn or advise its minor users or their parents or guardians that children may use Robux to illegally gamble in online casinos. *Id.* ¶¶ 14-16. In fact, Roblox maintains multiple channels of communication with both its minor users and their parents, including by obtaining parents' credit card information and email addresses, a Parental Control hub on minors' accounts, through promotional and marketing materials, and via terms and FAQs on its website. *Id.* ¶ 15. Roblox has never warned or advised parents or guardians via any of these communication channels that children may use Robux to illegally gamble on the VCs linked to the Roblox platform. *Id.* ¶¶ 14-16. Further, Roblox's Terms of Service convey the opposite message, stating that "experiences that include simulated gambling, including playing with virtual chips, simulated

---

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Roblox's request for the Court to take judicial notice of the YouTube website should be denied. *See id.* at 998-1001.

betting, or exchanging real money, Robux, or in-experience items of value are not allowed." *Id.* ¶ 13. But Roblox does allow its minor users to exchange Robux for VC gambling credits and thus its Terms of Service are misleading at best.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual allegations, which must be construed in the light most favorable to the plaintiff, need only "suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (internal quotation marks omitted). Facts surrounding claims that sound in fraud (other than facts concerning state of mind), however, must be pled with particularity under Federal Rule of Civil Procedure 9(b). *Lusson v. Apple, Inc.*, 2016 WL 10932723, at *2 (N.D. Cal. June 20, 2016). Relevant here, omissions-based fraud allegations need only be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up).

## ARGUMENT

### I.  Roblox's Second Motion to Dismiss Raises Arguments Prohibited by Rule 12(g)(2).

This Court should decline to consider Roblox's second motion to dismiss insofar as it raises arguments that could have been raised in its first motion. *See Shah v. Gen. Motors LLC*, 2023 WL 8852491, at *9 (N.D. Cal. 2023) (declining to consider successive dismissal arguments per Rule 12(g)).

Roblox previously moved to dismiss Plaintiffs' UCL, negligence, negligence per se, and unjust enrichment claims. ECF No. 31. The Court denied Roblox's motion as to these claims, ECF Nos. 65, 66, and Plaintiffs filed an amended complaint that did not revise these particular claims. ECF No. 79. Now, Roblox has again moved to dismiss these unchanged claims with arguments that it could have raised in

its first motion to dismiss. Rule 12(g)(2) forbids successive motions to dismiss such as this. *See Shah*, 2023 WL 8852491, at *9. What's more, Roblox (seemingly oblivious to Rule 12(g)(2)) has failed to explain why the circumstances of this case warrant excusing Roblox's late-filed Rule 12(b)(6) motion, and thus it has waived any argument that an exception is warranted here.[2]

## II. Plaintiffs' Claims are Adequately Pled.

### A. Certain Claims Are Not Subject to Rule 9(b).

Roblox argues that Plaintiffs' claims are subject to and fail to meet Rule 9(b)'s pleading standards. To the contrary, Plaintiffs' UCL, unjust enrichment, negligence per se, and negligence claims (Counts 1, 9-11) are not subject to Rule 9(b) because "fraud is not an essential element" of these claims, nor do they sound in fraud. *Kearns*, 567 F.3d at 1124. Rather, "the harm in this case" centers on illegal gambling that preys on children, which "is more akin to theft than a breach of warranty." ECF No. 65 at 5-8 & n.5 (denying motion to dismiss UCL, negligence, and negligence per se claims). These claims, including the UCL "unlawful" claim, turn on Roblox's facilitation of an illegal child gambling scheme on its website and are actionable independent of any fraudulent conduct. *See id.* at 8 ("The complaint sufficiently alleges negligence per se based on *the violation of laws* related to accepting payments in connection with unlawful gambling.") (emphasis added); CCAC ¶¶ 225-31, 364, 377, 382, 384; *see also Kemp v. Wells Fargo Bank, N.A.*, 2017 WL 4805567, at *14-16 (N.D. Cal. Oct. 25, 2017) (applying Rule 9(b) to claims sounding in or premised on fraud but not UCL "unlawful" claims premised on statutory violations).

---

[2] Roblox has not been transparent and has multiplied proceedings unnecessarily. Roblox obtained Plaintiffs' consent and moved to exceed the Court's page limits for this motion on the grounds that "the CAC adds eleven new plaintiffs, [and] raises eleven new claims including statutory and common law claims under the laws of four new states." ECF No. 84 at 2. Almost all of the five additional pages that Roblox obtained are dedicated to relitigating the viability of Plaintiffs' negligence claim under California law—a claim that this Court already found to be well-pled. ECF No. 65 at 6-7.

---

Because these claims center on the fact that Roblox facilitates illegal child gambling on its platform, regardless of its failure to disclose that fact, Rule 9(b) is not a basis to dismiss these claims.

### B. Plaintiffs' Omissions-Based Claims Satisfy Rule 9(b).

By contrast, certain of Plaintiffs' state consumer-protection claims are subject to Rule 9(b) because they concern Roblox's deceptive omissions. CCAC ¶¶ 254 (CLRA); 267-76 (GBL); 286-93 (FDUTPA); 304-11 (GFBPA); 322-29 (SCUTPA); 340-49 (TCPA).[3] Even so, Roblox exaggerates the pleading requirements applicable to omissions. Rule 9(b)'s inquiry is relaxed in omissions cases because "requiring a plaintiff to identify . . . the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission." *Cho v. Hyundai Motor Co., Ltd.*, 636 F.Supp.3d 1149, 1165-66 (C.D. Cal. 2022) (internal quotation omitted). Thus, "[i]n an affirmative misrepresentation case, a plaintiff obviously must plead that they in fact viewed or were exposed to the misleading misrepresentation . . . In contrast, the very premise of an omissions case is that the plaintiff was never exposed to certain information that should have been disclosed." *Sloan v. Gen. Motors LLC*, 287 F.Supp.3d 840, 874 (N.D. Cal. 2018). Accordingly, "an omissions case does not necessarily require a plaintiff to have viewed" any specific representation by the defendant to satisfy Rule 9(b). *Id.* Rather, "plaintiffs only need[] to allege that they would have received the information in some way had [d]efendant exercised reasonable care." *Browning v. Am. Honda Motor Co, Inc.*, 2022 WL 824106, at *13 (N.D. Cal. Mar. 18, 2022) (internal quotation marks omitted).

Here, Plaintiffs' omissions-based claims are sufficiently detailed to give Roblox "notice of the particular misconduct" that "constitute[s] the fraud charged." *Kearns*, 567 F.3d at 1124 (cleaned up). The

---

[3] Omissions are actionable under each statute. *CMR Constr. & Roofing, LLC v. UCMS, LLC*, 2022 WL 3012298, at *4 (11th Cir. July 29, 2022); *Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467, 470 (Ga. Ct. App. 1990); *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 195-96 (S.C. 2015); *Tennessee ex rel. Skrmetti v. Ideal Horizon Benefits, LLC*, 2023 WL 2299570, at *6 (E.D. Tenn. Feb. 28, 2023); *Goshen v. Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 (N.Y. 2002).

---

1  operative complaint alleges that Roblox maintains multiple channels of communications with its users

2  and their parents through which it failed to disclose its facilitation of gambling. CCAC ¶¶ 15-16. For

3  instance, Roblox requires parents' email addresses and/or credit card information to take various actions

4  on minors' accounts, including the purchase of Robux that is central to the claims in this case. *Id.* Each

5  Plaintiff, who purchased Robux through a credit card, gift card, or Roblox premium subscription, thus

6  alleges that they had an opportunity to receive disclosures through these channels (in addition to Roblox's

7  Terms of Service, other pages on its website, and advertising, promotional, and marketing materials),

8  from which the court can reasonably infer that they would have been aware of this information if

9  disclosed. CCAC ¶¶ 151, 158, 165, 172, 179, 186, 193, 200, 207. Despite these allegations, Roblox

10  asserts that "Plaintiffs do not claim they saw or relied on" any of Roblox's channels of communications.

11  Mot. at 6. That argument fails because it ignores that Plaintiffs communicated with Roblox when they

12  purchased Robux and necessarily would have seen disclosures through that channel. *See Daniel v. Ford*

13  *Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015) (reliance adequately pled even though plaintiffs had not

14  viewed any advertisements, where they had interacted with sales representative).

15      Plaintiffs also plead reasonable reliance on these material omissions. *See infra* I.D. These allegations

16  suffice under Rule 9(b). *Sloan*, 287 F.Supp.3d at 878 (Rule 9(b) satisfied where "plausible inference" can

17  be drawn that plaintiffs "would have received the material information" during purchase through

18  defendant's authorized channels); *MacDonald v. Ford Motor Co.*, 37 F.Supp.3d 1087, 1096 (N.D. Cal.

19  2014) (same, via omissions plaintiffs would have encountered through "various channels of information

20  through which" defendant sold product at issue); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F.Supp.3d

21  1204, 1229 (C.D. Cal. 2017) (same, via omissions plaintiffs would have encountered on defendant's TV

22  packaging, policies, or webpages "while they used their Smart TV's capabilities") *Davidson v. Apple,*

23  *Inc.*, 2017 WL 3149305, at *14 (N.D. Cal. July 25, 2017) (same, via "the channels through which Apple

1   communicated to consumers through the iPhone"); *Anderson v. Apple Inc.*, 500 F.Supp.3d 993, 1018 &

2   n.7 (N.D. Cal. 2020) (same, where "it is plausible that the information would have been disclosed to

3   [plaintiff] when 'he purchased a new iPhone XR from the AT&T store'").

4         Roblox's claim that "Plaintiffs do not allege any document or communication" that failed to disclose

5   the reality of gambling misses the mark. Mot. at 6. Ninth Circuit law "makes clear that the actual viewing

6

7   of advertisements is not required in an omission case." *Sloan*, 287 F.Supp.3d at 875 (citing *Daniel*, 806

8   F.3d at 1225). Instead, "[t]he proper focus in an omission case" is "what channels of information

9   customers depend upon and whether the defendant could have taken action to disseminate information

10

11   through those channels" because "what matters in an omission case under *Daniel* is whether the plaintiff

12   had an *opportunity* to receive and therefore rely on the omitted information." *Id.*; *see also id.* at 877

13   (rejecting defendant's argument that "Plaintiffs [must] allege with specificity in what particular

14   advertisements the omitted information should have been included").

15         Accordingly, Plaintiffs need not allege that they received or reviewed specific information to plead

16

17   omissions that satisfy Rule 9(b). *See, e.g.*, *Velasco v. Chrysler Grp. LLC*, 2014 WL 4187796, at *4-5

18   (C.D. Cal. Aug. 22, 2014) (Rule 9(b) satisfied where complaint allowed defendant "to prepare an

19   adequate answer" to omissions-based allegations, even without reference to any representations

20

21   "reviewed by Plaintiffs that omitted the allegedly sought-after information"). Instead, they can satisfy

22   Rule 9(b) by alleging that Roblox maintained channels of communication through which it could have

23   disseminated the omitted information, including channels that were available due to plaintiff's use of the

24

25   product. *Browning*, 2022 WL 824106, at *14; *Sloan*, 287 F.Supp.3d at 875-76; *In re Vizio*, 238 F.Supp.3d

    at 1229; *Anderson*, 500 F.Supp.3d at 1018 & n.7.

26         Roblox relies on pre-*Daniel* cases that ignore the critical distinction between omissions-based claims

27   and those founded on misrepresentations in specific advertisements. Mot. at 5-6. Courts in this district

28

---

have roundly rejected this reasoning after *Daniel* clarified that the omissions analysis focuses "on the defendant's opportunity to disseminate the information to plaintiffs, *not* whether plaintiff[s] ha[ve] in fact viewed any advertisements." *Browning*, 2022 WL 824106, at * 14 (quoting *Sloan*, 287 F.Supp.3d at 878) (alterations in original).[4] Under *Daniel*, "plaintiffs only need[] to allege that they would have received the information in some way had [d]efendant exercised reasonable care." *Id.* (internal quotation marks omitted). Plaintiffs here have done so, satisfying Rule 9(b).

### C. Roblox's Omissions are Material.

Roblox mechanically recites case law on materiality but barely applies it to the facts of this case, perhaps because the materiality of its omissions is self-evident. Mot. at 8-10. Any reasonable consumer in this context—here, parents assessing the safety of a child-centered website for their children—would assume, using common sense and common knowledge, that a website catering to children would not violate myriad civil and criminal laws by facilitating the gambling of its proprietary currency in online casinos. Accordingly, reasonable consumers—parents of child gamers—would be deceived by the omission of this information, and would find disclosure of that information at or before the point of sale vitally important to their decision whether to purchase Robux. *Daniel*, 806 F.3d at 1225-26.

Roblox disagrees and has moved to dismiss Plaintiffs' claims under Florida, Georgia, New York, South Carolina, and Tennessee law. Mot. at 8-10. But its motion does not explain how materiality is inadequately pled under these laws. *See* Mot. at 9-10. Under FDUTPA, GBL, SCUTPA, and TCPA, whether an omission is likely to deceive is judged objectively from the perspective of a reasonable

---

[4] Despite this being an omissions case, Roblox relies on inapposite cases that concerned representations and omissions. *See, e.g.*, *Simon v. SeaWorld Parks & Ent., Inc.*, 2022 WL 1594338, at *4 (S.D. Cal. May 19, 2022) (dismissing insufficiently pled claims to have viewed and relied on "representations (or related omissions)" when purchasing tickets to SeaWorld).

consumer. *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000); *Oswego Lab. Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995); *Doe 9 v. Varsity Brands, LLC*, 2023 WL 4113198, at *11 (D.S.C. June 21, 2023); *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009). Under the GFBPA, TCPA, and FDUTPA, an omission's deceptiveness is a factual question not appropriate for resolution as a matter of law. *Taylor*, 391 S.E.2d at 470; *Boeh v. Dial*, 2022 WL 2678594, at *11 (Tenn. Ct. App. July 12, 2022); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F.Supp.3d 1307, 1316 (S.D. Fla. 2017). Here, these standards are easily met.

Roblox instead focuses almost entirely on California law. Mot. at 9-12. These arguments provide no basis to dismiss Plaintiffs' omissions claims under *other* state laws. Nor do these arguments show any flaw in Plaintiffs' California claims. California law imposes a duty to disclose a safety issue with a product. *Taleshpour v. Apple, Inc.*, 2022 WL 1577802, at *1 (9th Cir. May 19, 2022) (omission concerning "either physical injury *or a* 'safety concern' posed by the defect" is actionable) (emphasis added). It also imposes a duty to disclose information regarding a defect that goes to a product's central function. *Hodsdon v. Mars, Inc*., 891 F.3d 857, 862 (9th Cir. 2018). And some courts hold that California law imposes an independent duty to disclose in four other circumstances identified in *LiMandri v. Judkins*, 60 Cal.Rptr.2d 539, 543 (Cal. Ct. App. 1997), only two of which are relevant here: the defendant has exclusive knowledge of material facts not known to the plaintiff, and the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.Supp.3d 1067, 1102-03 (N.D. Cal. 2021) (Chen, J.). *But see Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1085 (N.D. Cal. 2022) (Breyer, J.) (requiring plaintiffs

to satisfy both central function test and *LiMandri* factors if a safety concern is not alleged).[5] Any way you slice it, there is a duty to disclose here.

First, the complaint alleges a safety concern: the omitted information goes to "the dangers of illegal gambling schemes" that make the Roblox platform "a dangerous space for [the] children" who comprise the vast majority of Roblox users. CCAC ¶¶ 3-5, 7-9, 13, 383. That this particular safety concern does not involve personal injury or the threat of physical injury is of no moment. *Taleshpour*, 2022 WL 1577802, at *1; *In re JUUL Labs, Inc., Mktg, Sales Pracs., and Prods. Liab. Litig.*, 497 F.Supp.3d 552, 628 n.54 (N.D. Cal. 2020) ("a plaintiff proceeding under a safety-based omissions theory need not plead personal injury"). A safety-based omissions theory may be sufficiently alleged even where the injury is "out-of-pocket expenses." *In re JUUL Labs*, 497 F.Supp.3d at 628 n.54 (quoting *Bryde v. Gen. Motors, LLC*, 2016 WL 6804584, at *13 (N.D. Cal. Nov. 17, 2016)).

Second, these omissions are central to the functioning of Roblox as safe space for children to game online. Roblox touts itself as a safe gaming playground for children—in its words, a "safe civil, and diverse community" that "inspires . . . positive relationships" and has "a zero-tolerance policy for endangering minors," including through "exploit[ation]." ECF No. 88-3 at 2-3 (Roblox's Community Standards). Its failure to disclose its facilitation of gambling that exploits its child userbase runs counter to the central function of its website as safe and non-exploitative space for children, even if that function does not have a physical manifestation. *See Hammerling*, 615 F.Supp.3d at 1085 (applying test to Google's data collection practices); *C.W. v. Epic Games, Inc.*, 2020 WL 5257572, at *5 (N.D. Cal. Sept. 3, 2020) (applying test to online terms and conditions).

---

[5] This Court, too, has indicated that a plaintiff may plead an actionable omission simply by alleging either of these two *LiMandri* factors, without alleging that the omitted information concerns a safety issue or central function defect. *Patterson v. RW Direct, Inc.*, 382 F.Supp.3d 938, 942 (N.D. Cal. 2019); *see also Sumer v. Carrier Corp.*, 2015 WL 3630972, at *1 (N.D. Cal. June 10, 2015).

Third, Plaintiffs' allegations also satisfy two *LiMandri* factors. For one, the reality of Roblox's involvement in gambling is within Roblox's superior knowledge. Contrary to Roblox's assertions, Mot. at 12, satisfying this standard neither requires pleading that actionable information about Roblox gambling was known only to Roblox, nor that such information was completely unavailable online. *Sumer*, 2015 WL 3630972, at *2 ("the fact that customers might, with some effort, be able to learn of a problem with a product would not preclude a plaintiff from plausibly alleging that the company was aware of additional information about the defect that should be disclosed"); *Miller v. Ford Motor Co.*, 2024 WL 1344597, at *31 (E.D. Cal. Mar. 29, 2024) (collecting cases). Roblox's claim that this factor is not satisfied because the gambling websites hold themselves out as casinos and are discussed as such by some influencers, Mot. at 12, misses the point, as none of those sources mention Roblox's active role in facilitating and profiting from these casinos. Here, Plaintiffs allege that Roblox had superior knowledge of the reality of gambling using its platform and proprietary concurrency, including the nature and extent of its profiteering from this scheme, and that such information was not reasonably discoverable by Plaintiffs. *Miller*, 2024 WL 1344597, at *31; *see* CCAC ¶¶ 13-18, 68, 116, 130, 146-49, 155, 162, 169, 176, 183, 190, 197, 204, 211, 254, 267, 273, 287-96, 304-14, 322-332, 340-50.

For another, Roblox's representation that "experiences that include simulated gambling . . . are not allowed," in light of its failure to disclose the fact that it makes gambling transactions with Robux easily available to minors and facilitates illegal child gambling with virtual casinos, CCAC ¶¶ 13-16, 24-28, "render[s its] disclosure likely to mislead" Plaintiffs into inaccurately believing that gambling through Roblox is not possible. *Herron v. Best Buy Co., Inc.*, 924 F.Supp.2d 1161, 1177 (E.D. Cal. 2013). The omitted information about Roblox's involvement in gambling that "take[s] place on Roblox's website under Roblox's virtual roof," CCAC ¶ 17, would "materially qualify the facts" about gambling that Roblox does disclose. *Herron*, 924 F.Supp.2d at 1177. Thus, Plaintiffs have pled actionable omissions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D.  Plaintiffs' Omissions-Based Claims Adequately Plead Reliance and Causation.

Plaintiffs have also adequately pled reliance and causation. In the Ninth Circuit, "[t]he standard for pleading reliance on account of an omission is low." *Madani v. Volkswagen Grp. of America, Inc.*, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019). Contrary to Roblox's assertions, Mot. at 7-8, "an omissions case does not necessarily require a plaintiff to" allege viewing a communication from defendant "at all" to plead reliance or causation. *Sloan*, 287 F.Supp.3d at 874; *see also Fishon v. Peloton Interactive, Inc.*, 620 F.Supp.3d 80, 102 (S.D.N.Y. 2022) (rejecting requirement of exposure to a particular representation as "impermissibly read[ing] a seeing and a reliance requirement" into GBL); *Nalley v. Gen. Motors LLC*, 2022 WL 18459646, at *5 (N.D. Ga. Aug. 30, 2022) (causation and reliance on omission adequately pled where plaintiffs "allege that a fact was material and that it could have, and should have, been disclosed prior to the time plaintiffs acted upon the omission").

#### 1.  Plaintiffs Adequately Plead Reliance.

Roblox appears to fault Plaintiffs for not adequately pleading reliance under Florida, New York, South Carolina, or Tennessee law. *See* Mot. at 6-8. But reliance is *not* an element of these state consumer protection laws. *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1311 (11th Cir. 2023) (FDUTPA, GBL); *City of Charleston, SC v. Hotels.com, LP*, 487 F.Supp.2d 676, 679-80 (D. S.C. 2007); *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 469 (Tenn. Ct. App. 2003).

The two California and Georgia laws at issue require reliance, but Roblox fails to show that the complaint inadequately pleads this element. Under the CLRA, reliance and causation may be inferred when an omission is material. *Lytle v. Nutramax Lab'ys, Inc.*, 99 F.4th 557, 580 (9th Cir. 2024). Similarly, under the GFBPA reliance and causation may be shown by plaintiffs' exposure to omissions that would have impacted their purchase decisions. *Nalley*, 2022 WL 18459646, at *7 (citing *In re Arby's Rest. Grp. Inc. Litig.*, 317 F.Supp.3d 1222, 1224-28 (N.D. Ga. 2018)).

---

As explained above, Roblox's omissions were material, so Plaintiffs have adequately alleged reliance under the CLRA and GFBPA.[6]  Plaintiffs have pled reliance by alleging that they were not aware that their children could spend Robux on illegal gambling, that Roblox did not disclose material information about the reality of Robux gambling through channels that Plaintiffs would have encountered, and that had Plaintiffs known of the illegal gambling facilitated by Roblox, they would have behaved differently. *Brown v. Van's Int'l Foods, Inc.*, 622 F.Supp.3d 817, 826 (N.D. Cal. 2022) (quoting *Daniel*, 806 F.3d at 1225); CCAC ¶¶ 154-56, 161-63, 168-70, 175-77, 182-84, 189-91, 196-98, 203-05, 210-12, 254.

Roblox's reliance argument focuses almost exclusively on California law, thereby waiving its undeveloped argument as to the other state statutes at issue. *See* Mot. at 7-8. In any case, its authority is distinguishable. The plaintiffs in *Sateriale v. R.J. Reynolds Tobacco Co.* did not plead an omissions theory, 697 F.3d 777, 793-94 (9th Cir. 2012), and the *Barrett v. Apple Inc.* court failed to apply *Daniel* to plaintiffs' omission claims. *See* 523 F.Supp.3d 1132, 1151-52 (N.D. Cal. 2021). The *In re Apple Processor Litigation* plaintiffs, on the other hand, failed to "allege any facts from which the Court can reasonably infer that Plaintiffs *would have* been aware of the disclosed information" because they merely alleged exposure to defendant's marketing. 2022 WL 2064975, at *10 (N.D. Cal. June 8, 2022) (emphasis in original). Here, Plaintiffs' allegations enable that reasonable inference. *Sloan*, 287 F.Supp.3d at 876 ("plausible to infer" that plaintiffs would have received disclosure through channel that they necessarily interacted with). Similarly, Roblox's attempt to hem Plaintiffs' allegations into the *Tobacco II* reliance

---

[6] Roblox contends that this Court should dismiss Plaintiffs' "omission-based" UCL "unlawful" claim for lack of reliance because one of its predicates is an allegedly defective CLRA violation. Mot. at 6 n.7. But as explained above, Plaintiffs' showing of reliance satisfies the CLRA. Furthermore, Plaintiffs plead eight predicate UCL violations, several of which this Court has already found "clearly appl[y]" to Roblox's conduct. ECF No. 65 at 6. Thus, even if the Court finds Plaintiffs' CLRA claim defective, dismissal of their UCL "unlawful" claim on this basis would be unwarranted. Similarly, Roblox's renewed attack on Plaintiffs' unjust enrichment claim, *see* Mot. at 8, fails because that claim does not necessarily turn on omissions. *See supra* I.A.

---

framework predicated on years of deceptive advertising misses the mark. Mot. at 8. Plaintiffs' reliance is not predicated solely on an advertising campaign, but rather material disclosures that Roblox failed to make through specific communication channels.

### 2.  Plaintiffs Adequately Plead Causation.

Again, Roblox fails to adequately apply the law on causation for any of the statutes, merely reciting law that names causation as an element and returning to their mistaken California reliance argument that Plaintiffs did not interact with Roblox's channels of communication. *See* Mot. at 6-7. Accordingly, these undeveloped arguments are waived. *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (argument waived due to "failure to present a specific, cogent argument for [court's] consideration"). Furthermore, causation under the GFBPA, TCPA, FDUTPA, and SCUTPA is generally a question of fact for a jury. *Taylor*, 391 S.E.2d at 470; *Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, 2023 WL 5062065, at *17 (M.D. Tenn. Aug. 8, 2023); *Thunder Marine, Inc. v. Brunswick Corp.*, 2007 WL 2302196, at *6 (M.D. Fla. Aug. 8, 2007); *RFT Mgmt. Co., LLC v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015).

Nevertheless, Plaintiffs have adequately alleged that "Roblox (as well as the casinos) caused their economic loss." ECF No. 65 at 5. Plaintiffs plead that they lost money and Robux through illegal gambling facilitated by Roblox and purchases they would not have made if Roblox had provided honest disclosures about the Robux gambling available through Roblox's platform. *Id.*; *see also id.* ¶¶ 274-81, 290-97, 305-12, 324-33, 342-51. Under each of the statutes that require a showing of causation, this pleading is satisfactory. *Keegan v. Am. Honda Motor Co., Inc.*, 838 F.Supp.2d 929, 960-61 (C.D. Cal. 2012) (causation adequately pled under state FTC Act analogues where omission was material); *Bowe v. Public Storage*, 318 F.R.D. 160, 182 (S.D. Fla. 2015) (causation can be inferred under FDUTPA based on customer behavior); *In re Arby's*, 317 F.Supp.3d at 1228; *Rodriguez v. It's Just Lunch, Intern.*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014) ("to satisfy the causation requirement [of GBL § 349], nothing more is

1   required than that a plaintiff suffer a loss because of defendants' deceptive act") (cleaned up); *Wilson*,

2   777 S.E.2d at 189 (SCUTPA merely requires "causal connection between the injury-in-fact" and the

3   deceptive practice); *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005).

4   **III. California Public Policy Does Not Bar Plaintiffs' Claims for Monetary Relief.**

5       Roblox next incorrectly claims that California public policy bars Plaintiffs' California claims for

6   monetary relief, including their UCL claim for restitution.[7] This common-law policy is inapplicable to

7   this case, which focuses on a gambling scheme that ensnares children who cannot meaningfully consent

8   to gambling in the first place. *See* ECF No. 31 at 20 (advancing same argument).

9       This policy argument does not apply to a gambling scheme targeting children. California's mid-

10   nineteenth century "public policy against gambling has been substantially eroded." *Metropolitan*

11   *Creditors Service v. Sadri*, 19 Cal.Rptr.2d 646, 650 (Cal. Ct. App. 1993); *see also Crockford's Club Ltd.*

12   *v. Si-Ahmed*, 250 Cal.Rptr. 728, 730 (Cal. Ct. App. 1988) (noting erosion of public policy against

13   enforcing casino's action against patron who passed bad checks due to "the introduction of the California

14   lottery and other innovations"). What remains is the general proposition that "the judiciary should not

15   encourage gambling *on credit* by enforcing gambling debts" or ex-ante actions. *See Sadri*, 19 Cal.Rptr.2d

16   at 651. In the modern context, courts refuse involvement in gambling cases where they "cannot

17   distinguish between degrees of turpitude of persons knowingly engaged in illegal gambling." *Bradley v.*

18   *Doherty*, 106 Cal.Rptr. 725, 727 (Cal. Ct. App. 1973); *see also Kelly v. First Astri Corp.*, 84 Cal.Rptr.2d

19   810, 828 (Cal. Ct. App. 1999). That is not the case here, because children are not *in pari delicto* with the

20   casinos that entrap them or the corporate giant that runs the scheme's books.

---

[7] Further, Roblox incorrectly asserts that Plaintiffs' California claims exclusively seek to recoup "gambling losses." Plaintiffs' unjust enrichment claim seeks the illicit profits Roblox has realized from its facilitation of the illegal gambling scheme, as the Court previously recognized. *See* ECF No. 66 at 1.

At bottom, this public policy and Roblox's cases presume adult parties who are able to understand the ramifications of their actions and knowingly consent to illegal gambling.[8] Plaintiffs here are not attempting to recover for jilted adult gamblers, but rather for victims of an illegal, predatory gambling enterprise that successfully targets children. Roblox may insist that minor Plaintiffs got what they bargained for, but the Court has already explained why this argument fails:

> [T]hese are children we're talking about. There is a reason that children are not allowed to gamble, even if they think it will be entertaining: they cannot meaningfully consent to such games, or to the losses that occur as a result. Thus, in the context of this case, it misses the point to say that the children got what they bargained for.

ECF No. 65 at 4. The Court should not allow Roblox to shield their predation upon children behind an eroded, inapplicable policy regarding consenting adult gamblers.

## IV. Plaintiffs Have Standing to Seek Injunctive Relief

Plaintiffs have sufficiently alleged a real and immediate threat of continuing harm and therefore have standing under both the UCL and Article III. Indeed, as the Court previously explained when allowing Plaintiffs' claims for injunctive relief to proceed, "the plaintiffs are not only seeking compensation for past wrongs but also an end to the conduct in the future." ECF No. 66 at 1.

"Standing to sue under the UCL is expansive." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). The "primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction," which can be sought "*by any person acting for the interests of itself, its members or the general public*." *In re Tobacco II*, 207 P.3d 20, 34 (Cal. 2009). To that end, private as well as "public injunctive relief," which "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public," is "a remedy [available] to

---

[8] Every case cited by Roblox on pp. 12-13 of its brief involves competent adult gamblers. Roblox identifies no case in which its common-law policy regarding enforcement of gambling debts incurred by adults required the judiciary to abstain from protecting children ensnared by an illegal gambling ring.

private plaintiffs under the UCL." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018) (quoting *McGill v. Citibank, N.A.*, 216 Cal.Rptr.3d 627, 633 (2017).

Plaintiffs have sufficiently pled entitlement to both private and public injunctive relief. *First*, Plaintiffs allege that there is "continuing misconduct" because Roblox still allows the Gambling Website Defendants "to use the Roblox website to accept online bets using Robux," despite Roblox's ability to shut down this activity. CCAC ¶¶ 14, 26, 109-42. Thus, though Plaintiffs can instruct their children not to use the Robux for improper purposes, "Plaintiffs' minor children—like hundreds of thousands of others across the United States," can still "f[a]ll prey to this illegal scheme," which Roblox continues to facilitate and profit from. *Id.* ¶¶ 29, 245, 259. The "sufficient likelihood" of this "real or immediate threat of repeated injury" provides Plaintiffs with Article III standing, and the threat is unchanged by Plaintiffs' awareness of the danger. *See Vasquez v. Cebridge Telecom CA, LLC*, 569 F.Supp.3d 1016, 1022-1024 (N.D. Cal. 2021); *see also Eiess v. USAA Fed. Savings Bank¸* 404 F.Supp.3d 1240, 1258 (N.D. Cal. 2019) (public injunctive relief authorized where plaintiff "remains a USAA customer and nothing indicates that she wants to stop being a customer" and "thus [she] has standing under *Davidson*."). There is continuing harm to thousands of minor Roblox users, as well as Plaintiffs themselves, who are harmed because they can no longer trust Roblox, even though their children remain Roblox users, and are at risk of being retargeted by the virtual casinos. "[T]o prevent [plaintiffs] from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws," *Kimberly-Clark*, 889 F.3d at 970-71. Thus, Roblox's second bite at the standing apple should be denied.

## V.  Plaintiffs' Claims are Viable Under the CLRA.

Roblox moves to dismiss the CLRA claim, arguing that Plaintiffs did not transact for a "good" or "service" within the CLRA's scope. Not so—the Plaintiffs have transacted for a service. As this Court has already recognized, the purchase of Robux for use on the Roblox platform is "akin to purchasing

cinema or amusement park tickets, in that consumers of such services pay for the pleasure of entertainment *per se*." ECF No. 65 at 3 (internal quotation marks and citation omitted); *see also Doe v. Roblox Corp.*, 602 F.Supp.3d 1243, 1263 (N.D. Cal. 2022) (Roblox's "metaverse . . . is comfortably classified as an online entertainment service").

Roblox relies on this Court's distinguishable decision in *Reeves v. Niantic, Inc.*, 2022 WL 1769119 (N.D. Cal. May 31, 2022). The plaintiff there claimed that the purchase of PokeCoins in a Pokemon virtual world violated the CLRA because the coins were not refundable. *Id.* at *2. This Court found that the suit concerned an intangible good that is not covered under the CLRA. *Id.* Here, by contrast, Plaintiffs are suing because Roblox does not disclose that its gaming service and currency facilitate illegal gambling. CCAC ¶¶ 250-53.  Indeed, this Court previously rejected Roblox's argument about Plaintiffs' lack of injury precisely "because [users] can exchange Robux for in-game experiences" on Roblox's platform, recognizing that the Roblox service—not any intangible good—lies at the heart of this case. ECF No. 65 at 4. There is no reason to reach a different result here.

**VI. Plaintiffs' Negligence Claims Are Well-Pled.**

This Court has held that "Roblox had a duty to use reasonable care in its conduct, the creation and management of its platform, to avoid creating an unreasonable risk of harm to others." ECF No. 65 at 7. Roblox's motion ignores this ruling, again insisting that it has no cognizable duty. Mot. at 16-20. Even if this argument were not barred by Rule 12(g)(2), *see supra* I, Roblox provides no reason for this court to reconsider an argument that it has already rejected.

"Under California law, everyone has a baseline duty to exercise reasonable care in conducting their activities to prevent causing harm that can be reasonably anticipated."[9] ECF No. 65 at 6 (citing *Social*

---

[9] Roblox's motion does not substantively analyze the negligence law of any other jurisdiction, thereby waiving those arguments.

1
2
3
4
5
6
7

*Media Cases*, 2023 WL 6847378, at \*23-24 (Cal. Super. Ct. Oct. 13, 2023), and *Hughes v. Apple, Inc.*, 2024 WL 1141751, at \*4-9 (N.D. Cal. Mar. 15, 2024)). In rare circumstances, courts apply the *Rowland* factors to limit a defendant's general duty of ordinary care. ECF No. 65 at 6; *see also Hughes*, 2024 WL 1141751, at \*5. Here, there is no exception that should relieve Roblox of its duty of care to its minor users. *See Social Media Cases*, 2023 WL 6847378, at \*23-24 (social media platforms owe duty "not to harm" their minor users "through the design and/or operation" of their platforms).

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Roblox's "no duty" argument attempts to recast the allegations as involving nonfeasance—i.e., Roblox's failure to protect the plaintiffs from third parties. But this misreads the complaint, which focuses on Roblox's *misfeasance*—specifically, that it is aware of and plays a central role in the gambling scheme at issue. *E.g.*, CCAC ¶ 28, 117-21, 123-33, 147-49. Nonfeasance only applies where the defendant "did not contribute to the risk that the plaintiff would suffer the harm alleged" at the hands of third parties. *Brown v. USA Taekwondo*, 483 P.3d 159, 441 (Cal. 2021). "The relevant legal question is whether the defendant has engaged in activities that created or increased the plaintiff's risk of harm." *Id.* at 441 n.5. Here, Roblox's conduct has created or increased the risk of harm to its minor users from illegal gambling that it allows to take place on its platform with its proprietary currency. Roblox allows the Gambling Website Defendants to operate on the platform, use its technology, and transact with minors in exchange for Robux as DevEx developers. CCAC ¶¶ 62-63, 71, 88, 105, 109, 116. Roblox vets each DevEx member for approval and monitors, records, and takes a cut of each DevEx transaction with users. *Id.* ¶¶ 20, 62-63, 88, 105, 109, 124-27, 132-33. Roblox permits DevEx members or their agents to take control of minor users' Robux wallets, holding Robux while users wager their equivalent on the VCs. *Id.* ¶¶ 20, 89, 105, 109. And after the VCs have acquired Robux from their child victims, Roblox cashes them out, taking its own 30% cut. *Id.* ¶¶ 57, 124-27. Roblox's central role in this scheme is not mere nonfeasance.

27
28

As a last-ditch effort, Roblox argues that the *Rowland* factors justify an exception to its duty of care, but it misapplies those factors. California courts have found that an exception is justified "only when foreseeability and policy considerations justify a categorical no-duty rule." *Social Media Cases*, 2023 WL 6847378, at *24 (internal quotation omitted). Roblox contends that the harm to children here was unforeseeable and attenuated from its role in managing its platform, and that preventing illegal gambling using Roblox would be too burdensome. Mot. at 19-20. These arguments are unavailing. "[T]he fact that one can fashion a multi-step description of the causal chain does not mean that the injurious conduct and the injury alleged are insufficiently connected." *New York v. Arm or Ally, LLC*, 2024 WL 756474, at *12 (S.D.N.Y. 2024) (quoting *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511, 534 (1st Cir. 2024)). "Instead, the relevant question is whether the harm was a 'foreseeable and direct consequence' of the alleged violations." *Id.*; *see also Social Media Cases*, 2023 WL 6847378, at *25 (foreseeability factor "weighs heavily in favor" of duty where web platform is aware that its technology is being used to facilitate harm to users for profit). The CCAC plausibly pleads that Roblox's knowledge of and central role in the illegal gambling scheme foreseeably caused Plaintiffs' injuries. CCAC ¶¶ 14, 24-29, 66-69, 80, 109-42, 147, 385. Furthermore, Roblox has identified no extraordinary burden in preventing illegal gambling using its platform and proprietary currency. The complaint explains Roblox's ability to stop illegal Roblox gambling, including by identifying, tracking, and disabling accounts engaged in illegal activity (which Roblox admits it can do, CCAC ¶¶ 134-37), or by ceasing its own involvement in facilitating these transactions. CCAC ¶¶ 14, 24-27, 116-18, 131-136, 140, 149. Accordingly, Roblox's arguments against the imposition of a duty here should again be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court deny Roblox's motion in its entirety. If any claim is dismissed, Plaintiffs request leave to amend.

1   Dated: May 28, 2024                           Respectfully submitted,

2

3                                                 */s/ Andre M. Mura*

4                                                 **GIBBS LAW GROUP LLP**
                                                  Andre M. Mura (SBN 298541)
5                                                 Jake M. Seidman (SBN 347953)
                                                  Hanne Jensen (SBN 336045)
6                                                 Ezekiel S. Wald (SBN 341490)
                                                  1111 Broadway, Suite 2100
7                                                 Oakland, California 94607
                                                  Telephone: (510) 350-9700
8                                                 Facsimile: (510) 350-9701
                                                  amm@classlawgroup.com
9                                                 jms@classlawgroup.com
                                                  hj@classlawgroup.com
10                                                zsw@classlawgroup.com
11

12                                                **WEITZ & LUXENBERG, PC**
                                                  James J. Bilsborrow (*pro hac vice*)
13                                                Aaron Freedman (*pro hac vice*)
                                                  700 Broadway
14                                                New York, New York 10003
                                                  Tel: (212) 558-5500
15                                                jbilsborrow@weitzlux.com
                                                  afreedman@weitzlux.com
16
17

18                                                **JENNINGS PLLC**
                                                  Christopher Jennings (p*ro hac vice*)
19                                                Tyler B. Ewigleben (p*ro hac vice*)
                                                  Winston Hudson*
20                                                P.O. Box 25972
                                                  Little Rock, Arkansas 722211
21                                                Telephone: (501) 247-6267
                                                  chris@jenningspll.com
22                                                tyler@jenningspllc.com
                                                  winston@jenningspllc.com
23

24                                                **AUDET & PARTNERS LLP**
                                                  Michael McShane, Esq. (SBN 127944)
25                                                Ling Y. Kuang, Esq. (SBN 296873)
                                                  711 Van Ness Avenue, Suite 500
26                                                San Francisco, CA 94102
                                                  Telephone: (415) 568-2555
27                                                mmcshane@audetlaw.com
28

---

PLAINTIFFS' OPPOSITION TO DEFENDANT ROBLOX'S MOTION TO DISMISS
Case No.: 3:23-cv-04146-VC
21

lkuang@audetlaw.com

**LEVIN SEDRAN & BERMAN**
Daniel C. Levin, Esq.*
Charles E. Schaffer, Esq. (*pro hac vice*)
Nicholas J. Elia, Esq.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
cschaffer@lfsblaw.com
dlevin@lfsblaw.com
nelia@lfsblaw.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.*
Brett R. Cohen, Esq. (SBN 337543)
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

**SULTZER & LIPARI, PLLC**
Jason P. Sultzer, Esq.*
Jeremy Francis, Esq.*
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

* to be admitted *pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class*