UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHELLE COLVIN, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>ROBLOX CORPORATION, et al.,<br><br>       Defendants. | Case No. 23-cv-04146-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART ROBLOX'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 87 |

       The motion to dismiss is granted with respect to the fraud-based state-law claims (Counts 3–8) and the request for injunctive relief. The motion to dismiss is denied with respect to the negligence claims and the request for monetary relief. This ruling assumes that the reader is familiar with the facts, the applicable legal standards, and the arguments made by both parties. This ruling also assumes that the reader is familiar with the Court's order addressing Roblox's prior motion to dismiss. Dkt. No. 65.

       1. *Fraud-based claims.* The prior iteration of the complaint alleged affirmative misrepresentations by Roblox. The current iteration pivots to an omissions theory: that Roblox failed to disclose to parents that their kids could be lured into gambling away their Robux. The complaint alleges that the parents "would have taken different actions" with respect to their minor children's use of the platform if they'd known about the online casinos.

       But the complaint fails to allege that the parents saw any communications from Roblox at all. The plaintiffs describe various ways that Roblox can communicate with minor users and their parents: marketing materials, website FAQs, information in the account creation process, and a Parental Controls hub on minor users' accounts. But the complaint never alleges that the parents looked at or interacted with any of those channels. The plaintiffs respond that "Plaintiffs

communicated with Roblox when they purchased Robux and necessarily would have seen disclosures through that channel." Dkt. No. 92 at 14. But that is only true of the minor users. The parents were never alleged to be involved in the purchase of Robux. In fact, the complaint carefully alleges that only the minor plaintiffs—and not their parents—purchased Robux from Roblox, generally through gift cards or with their parents' credit cards. The plaintiffs even note that those payment methods were entirely within the minor users' control.[1] So while the complaint alleges that the parents would have acted differently in response to disclosures, it fails to allege that Roblox communicated with the parents in a way that would have necessitated a disclosure, or that the parents would have seen any disclosures that Roblox should have made.[2]

This warrants dismissal of all the state law omission claims (Counts 3–8). And dismissal is with prejudice. At the hearing, counsel for the plaintiffs attempted to articulate yet another theory—namely, a theory that Roblox should have disclosed the risk of being drawn into online gambling to the kids (rather than to the parents) and that the kids would then have acted differently. But counsel's seat-of-the-pants comments were both implausible and contradicted by the theory underlying the current iteration of the complaint, which is that the minor plaintiffs were legally and practically incapable of making a decision about whether to gamble. Moreover, the plaintiffs have been given plenty of opportunity to state claims for fraud, yet they made virtually no effort to beef up their allegations since the prior iteration of the complaint was dismissed. Accordingly, there will be no leave to amend the fraud-based claims.

---

[1] Roblox asserts that this pleading decision was an effort to evade an arbitration agreement that Roblox has with its users. Regardless of what motivated the drafting of the complaint, the plaintiffs are bound by its allegations.

[2] The complaint also alleges that Roblox "solicit[s] [ ] parents' email addresses and credit card information to enable various features and take various actions on minors' accounts, including the purchase of Robux." This allegation comes the closest to establishing a channel of communication between Roblox and the parent plaintiffs—it could be read to suggest that Roblox has email addresses of parents for all minor users who purchase Robux. But it is still too uncertain to save the omissions claims. For one, "solicit" is not the same as "require." And the complaint doesn't allege that Roblox ever uses those email addresses to communicate with the parents, or that Roblox even has permission to email the parents directly. Most importantly, like with the other alleged channels of communication, the complaint never alleges that the parents opened, reviewed, or engaged with communications from Roblox—through this medium, or through any other.

The complaint's California UCL unlawful claim and unjust enrichment claims are not dismissed to the extent they rely on allegations that Roblox facilitated illegal gambling, as opposed to allegations that Roblox made fraudulent misrepresentations or omissions. *See* First Amended Complaint ¶ 228-h (California UCL claim based on the CLRA); ¶ 377 (unjust enrichment based on defendants' "misrepresentations and omissions").

2. *Negligence*. In its second motion to dismiss, Roblox attempts to relitigate the negligence claims. The Court continues to find that the plaintiffs have adequately pled negligence.

*Misfeasance versus nonfeasance.* The parties again dispute whether Roblox's alleged conduct in this case is properly characterized as misfeasance or nonfeasance.

The California Supreme Court has explained that the distinction between misfeasance and nonfeasance lies in whether the defendant "'created a risk' of harm to the plaintiff, including when 'the defendant is responsible for making the plaintiff's position worse.'" *Brown v. USA Taekwondo*, 11 Cal. 5th 204, 214 (Cal. 2021) (quoting *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (Cal. 2001)). Put another way, the defendant's conduct is nonfeasance if the defendant "did not contribute to the risk that the plaintiff would suffer the harm alleged." *Id.* For instance, in *Lugtu*, a California Highway Patrol officer pulled plaintiffs over to the center median of a roadway, and plaintiffs were subsequently hit by a truck. 26 Cal. 4th at 707. The California Supreme Court held that the officer's decision to pull them over to the median could be misfeasance because that conduct "placed plaintiffs in a dangerous position and created a serious risk of harm to which they otherwise would not have been exposed." *Id.* at 717.

The complaint here similarly alleges misfeasance. The plaintiffs allege that Roblox created a virtual currency, paired it with an online platform that caters to minor users, and processes transactions that allow users to exchange the virtual currency for actual money, while taking a cut off the top of each transaction. In essence, the plaintiffs allege that Roblox has created a clearinghouse for illegal transactions within the virtual playground, and that Roblox facilitates those transactions and profits from them. True, the complaint uses language about

Roblox's failure to act and failure to prevent harm, which sounds more like nonfeasance. But the plaintiffs allege more than that—they allege that these deliberate design decisions by Roblox *created* the risk of harm to the minor plaintiffs who otherwise would not have been exposed to the virtual casinos.

The *Social Media Cases* support the notion that, while merely operating a website or platform that is used by malicious third parties may be nonfeasance, the design and operation of a platform in a manner that creates or increases the risk of harm can be misfeasance. 2023 WL 6847378 (Cal. Super. Ct. Oct. 13, 2023). Roblox's alleged conduct is not easily distinguishable from the conduct at issue in the *Social Media Cases*, in which the defendant platforms were alleged to have designed social media platforms to be addictive for minors, increasing their risk of harm. The alleged misconduct there was more intentional—which suggests that breach would have been easier to prove—but the conduct was not necessarily more affirmative than what the complaint alleges Roblox did here. But this is a difficult question, one that gets at the very core of how to apply tort law to these virtual worlds.[3]

Roblox also argues for nonfeasance because the virtual casinos are not a "necessary component" of Roblox's platform, citing *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 419 (Cal. Ct. App. 2022). But the Ninth Circuit's recent decision in *Doe v. Uber Technologies, Inc.*, No. 22-16562, 2024 WL 3717483, at *4 (9th Cir. Aug. 8, 2024) (unpublished op.), persuasively explains why *Jane Doe No. 1* and the "necessary component" test are now irreconcilable with the California Supreme Court's decision in *Kuciemba v. Victory Woodworks, Inc.*, 14 Cal. 5th 993 (Cal. 2023). Without the necessary component limitation, the Ninth Circuit

---

[3] The approach taken by the *Social Media Cases* was to treat the operation of a platform as conduct, and apply standard negligence law. Another approach is to treat a platform as a product and apply products liability doctrine. *See In re Social Media Adolescent Addiction*, 702 F. Supp. 3d 809, 849 (N.D. Cal. 2023). Another analogy might be to the law governing landowners. Owners of physical land have certain heightened duties to take affirmative action to make that that land safe for visitors or to warn visitors of hidden dangers. Perhaps creators and operators of virtual land—like a digital platform—have similar obligations, at least so long as the platform creator continues to affirmatively operate and exercise control over the platform, as Roblox allegedly does here.

4

then held that the *Doe* plaintiffs adequately alleged misfeasance by pointing to Uber's conduct in creating its novel business model, encouraging vulnerable users to use its app through marketing, and designing certain app features. 2024 WL 3717483, at *5. That conduct is similar Roblox's conduct here.

*Rowland Factors.* Given that the conduct constitutes misfeasance which normally confers the general duty of reasonable care, Roblox next argues that the Court should narrow that duty for public policy reasons under the *Rowland v. Christian* factors. These factors do not support narrowing the duty here.

The first, and most important, set of factors—foreseeability, certainty, and the connection between the plaintiff and defendant—all concern the foreseeability of the injury. *See Kesner v. Superior Court*, 1 Cal. 5th 1132, 1145 (Cal. 2016). The complaint adequately alleges that it was foreseeable that minor users would navigate to virtual casinos and gamble away their Robux. For one, the complaint alleges that the incentive structure of Roblox is that developers create 3D experiences which users pay Robux to play, and the developers profit by exchanging those Robux for real money via the Developer Exchange Program. Roblox in turn allegedly makes money by selling the Robux to users and by taking a commission fee for all user-to-user transactions, which it monitors via the Developer Exchange Program. Given that structure, it seems entirely foreseeable that developers would want to create highly addictive experiences, such as gambling games, that entice users to spend a lot of Robux. What's more, according to the complaint, the virtual casinos were well known to both users and Roblox itself. The three virtual casinos launched widespread marketing campaigns, prominent Roblox social medial influencers discussed or endorsed the virtual casinos, and Bloxflip had over 5.7 million monthly visitors in 2022. Given that context, it is a reasonable inference to draw that Roblox knew how these virtual casinos operated and could foresee the probability that minors would navigate to these sites and gamble their Robux away. *See Doe*, 2024 WL 3717483, at *6 (finding that plaintiffs' sexual assault in an Uber was foreseeable because Uber was aware of similar prior incidents).

The other *Rowland* policy factors—the extent of burden on the defendant and

5

consequences to the community of imposing a duty, moral blame, and the overall policy of preventing future harm—do not warrant narrowing the duty. There is some degree of moral blame for a social media platform's negligence in encouraging minor users to gamble. The overall policy of preventing future harm is also served by imposing the costs of negligent conduct on those responsible. *See Regents of University of California v. Superior Court*, 4 Cal. 5th 607, 632 (2018). Roblox argues that the burden is too great because it would require Roblox to police millions of user accounts for illegal conduct that happens off Roblox's platform. But the complaint alleges that Roblox already can and does monitor transactions on its Developer Exchange as well as identify, track, and disable accounts that are using Roblox for illegal purposes. For instance, Roblox can identify and label when a user buys the same item from the same seller over and over, which is the exact type of transaction record that the virtual casinos would have.

*Special relationship.* The Court previously ruled that Roblox—like other persons and entities—was subject to a standard duty to use reasonable care in conducting its affairs. Despite language in the plaintiffs' complaint and opposition papers about Roblox catering to children, the negligence theory that the plaintiffs have been permitted to proceed under is not predicated on the users' status as minors. Further, plaintiffs did not put forth any argument that a heightened standard of care should apply and did not respond to Roblox's argument that such a heightened standard should not apply. Therefore, the duty at issue in this case is the duty of reasonable care.

*Breach*. This ruling does not determine what constitutes "reasonable care" in this context. Roblox argues that these online casinos are difficult to detect and that it would be nearly impossible to ban them without engaging in incredibly onerous tracking. The plaintiffs allege that it would be relatively easy for Roblox to find parties engaged in these dummy transactions and that Roblox is not making a reasonable attempt to do so. At the motion to dismiss stage, the Court must look to the allegations, and the plaintiffs have adequately pled a negligence claim.[4]

---

[4] To be fair to Roblox, there are some indications in the materials incorporated by reference that Roblox is in fact trying to interfere with the operation of the online casinos and that the online

3. *Injunctive relief.* The requests for injunctive relief are dismissed for lack of Article III standing. The complaint never alleges that the minor users are still using the Roblox platform or are likely to use the Roblox platform in the future. So, there is no injury alleged that can support injunctive relief.

4. *Monetary relief.* The California public policy against enforcing gambling contracts does not bar monetary relief in this case. That policy stems from the general rule against enforcing contracts founded on illegal consideration, which is "intended to prevent the guilty party from reaping the benefit of his wrongful conduct, or to protect the public from the future consequences of an illegal contract." *Kyablue v. Watkins*, 210 Cal. App. 4th 1288, 1292 (Cal. Ct. App. 2012) (quoting *Tri-Q, Inc. v. Sta-Hi Corp.*, 63 Cal. 2d 199, 218–19 (Cal. 1965)). The rule should be applied flexibly, and courts should weigh the "relative moral fault of the plaintiff and the defendant" as well as "the degree of moral turpitude involved." *Id.* at 1293. Roblox is correct that California courts have often applied this rule to bar recovery when adults voluntarily gambled and then sought to sue for their winnings or losses. *See Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 490 (Cal. Ct. App. 1999). In those situations, one can easily understand why enforcing such contracts would be detrimental to public policy because it would encourage gambling. But in this context, there is no reason to believe that the doctrine would extend to bar the recovery of losses inflicted by casinos on children (who, after all, are not legally capable of consenting to illegal gambling).

**IT IS SO ORDERED.**

Dated: September 19, 2024

VINCE CHHABRIA
United States District Judge

---

casinos are engaged in a "cat and mouse game" of hiding from Roblox. And Roblox argues for the first time in this motion to dismiss that it is taking reasonable care. But there is not enough to justify a ruling on this issue at the pleading stage.