1     UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA

3  Before The Honorable Robert M. Illman, Magistrate Judge

4

5 COLVIN, et al.,     )
            )
6    Plaintiffs,  )
            )
7 vs.          ) Case No. C 23-04146-VC
            )
8 ROBLOX CORPORATION, et al., )
            )
9    Defendants.  )
 _____)

10

11         San Francisco, California
          Tuesday, September 17, 2024
12

13 TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
    RECORDING 11:05 - 11:50 = 45 MINUTES
14

15 APPEARANCES:

16 For Plaintiffs:
         Weitz & Luxenberg
17         700 Broadway
         New York, New York 10003
18       BY: AARON FREEDMAN, ESQ.

19         Gibbs Law Group, LLP
         1111 Broadway, Suite 2100
20         Oakland, California 94607
       BY: JAKE M. SEIDMAN, ESQ.
21

22         One Old Country Road
         Suite 347
         Carle Place, New York 11514
23       BY: BRETT R. COHEN, ESQ.

24

     (APPEARANCES CONTINUED ON NEXT PAGE)
25

2

```
 1  For Defendants:
 2                              Cooley, LLP
                                110 North Wacker Drive
                                Suite 4200
 3                              Chicago, Illinois 60606
                           BY:  TIANA A. DEMAS, ESQ.
 4
                                Cooley, LLP
 5                              1299 Pennsylvania Avenue NW
                                Suite 700
 6                              Washington, D.C. 20004
                           BY:  ROBBY L.R. SALDANA, ESQ.
 7
 8  Transcribed by:            Echo Reporting, Inc.
                                Contracted Court Reporter/
 9                              Transcriber
                                echoreporting@yahoo.com
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

1 Tuesday, September 17, 2024                    11:05 a.m.

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4          THE CLERK:  The first matter on this morning's

5  docket, the Court calls 3:23-CV-4146-VC-RNI, Colvin, et al.

6  versus Roblox Corporation, et al.

7      Parties, please state their appearances for the record,

8  beginning with Plaintiffs.

9          MR. FREEDMAN (via Zoom):  Good morning, your

10 Honor.  Aaron Freedman representing the Plaintiffs in the

11 Colvin v. Roblox matter.

12         MR. SEIDMAN (via Zoom):  Good morning, your Honor.

13 Jake Seidman, Gibbs Law Group, also representing the

14 Plaintiffs Colvin.

15         MR. COHEN (via Zoom):  Good morning, your Honor.

16 Brett Cohen from Leeds Brown, also with the Plaintiffs.

17         THE COURT:  Good morning.

18         MS. DEMAS (via Zoom):  Good morning, your Honor.

19 On behalf of Roblox Corporation, Tiana Demas from Cooley,

20 LLP.

21         MR. SALDANA (via Zoom):  Good morning, your Honor.

22 Robby Saldana from Cooley, LLP, representing Defendant

23 Roblox Corporation.

24         THE COURT:  All right.  And that's it.  Okay.  All

25 right.  Good morning everyone.

4

1      All right.  So, we're here on the parties' joint letter
2  brief, Document 103, which is essentially a motion to compel
3  by Plaintiffs.
4      So, let me hear from Plaintiffs first.  Who wants to
5  take the lead on this one?
6          MR. FREEDMAN:  That would be me today, your Honor.
7          THE COURT:  All right.
8          MR. FREEDMAN:  By way of brief background, this
9  case is about Roblox's awareness and facilitation in a
10 growing ecosystem of illegal gambling websites that operate
11 on the Roblox platform targeting Roblox's minor users for
12 use of Roblox's technology and which relies on Roblox's
13 proprietary currency, Robux.
14     Now, Plaintiffs' core claim against Roblox is that of
15 negligence in that Roblox failed to use reasonable care in
16 designing and managing its technology and platform,
17 especially after learning about the virtual casino websites.
18 And, to that end, Plaintiffs have served an initial set of
19 RFP's which we did in March in an attempt to answer three
20 core questions which speak to the core issue in this case,
21 Roblox's negligence.
22     Those questions are, one, what did Roblox know about
23 the virtual casino's use of its technology and platform,
24 two, when did they know it, and, three, why haven't they
25 stopped these websites from preying on their minor users.

5

1     Accordingly, Plaintiffs chose a relevant time period
2  that captures context necessary to answer these questions
3  and have sought discovery about Roblox's use of third party
4  services to review the safety and appropriateness of its
5  platform as well as the ways that it can be exploited by
6  virtual casino websites and any bad actor over the relevant
7  time period.
8     And, your Honor, I'd like to take each one of those
9  issues one at a time.
10          THE COURT:  All right.
11          MR. FREEDMAN:  So, starting with the relevant time
12  period, Plaintiffs' proposed start date logically advances a
13  material aspect of our case, and evidence about Roblox's
14  awareness of websites existing in 2017 and 2018 tend to show
15  Roblox's knowledge, awareness, and response to an emerging
16  problem with its platform, which is obviously relevant to
17  Roblox's negligence and whether they exercised reasonable
18  care in attempting to prevent this growing ecosystem of bad
19  actors.
20     Now, while Roblox continues to argue that there are no
21  relevant documents prior to 2019, Plaintiffs have discovered
22  in the public record evidence that third party Robux
23  gambling websites existed as far back as June 2016.  Your
24  Honor, we discussed it at length in the brief.  The evidence
25  that we found of a website called RBXWild.com.  Now, this

6

1  website used Roblox's technology, platform, virtual content,

2  and proprietary currency in the exact same ways as Roblox's

3  Co-Defendants later would starting in 2019.

4      Roblox ignores all of this in the brief.  They claim it

5  does not matter, that the only similarity is the similarity

6  in the name.  But, your Honor, that's -- that's just not

7  true.  These -- this 2016 website offers the same game as

8  its -- as those that would later follow it.  It connects to

9  the Roblox platform in the same way.  It preys on children

10 in the same way through social media like Discord.

11     I have a whole host of factors, your Honor, I could go

12 through, but the important thing here is that while Roblox

13 claims that all of this evidence is categorically

14 irrelevant, it's just not supported by the public record.

15 And it shows their awareness, knowledge, and potential

16 investigations into this emerging problem before 2019.

17     Now, we've repeatedly asked Roblox about when they

18 first learned about the existence of virtual casino websites

19 that use their technology, platform and currency in the same

20 way as its Co-Defendants.  They have stonewalled us at every

21 point.

22     Typically the response we get, your Honor, is, I

23 personally haven't seen any documents before 2019.  But to

24 that exact point, your Honor, I think there's a perfect

25 example of the way in which they've tried to dodge this

7

1 question in the joint letter brief.

2     On page five, they -- they talk about the Plaintiffs

3 may not have used it, but they do not say at any point in

4 their section that they were either, one, not aware of this

5 website in 2016 or, two, not aware of virtual casino

6 websites before 2019.

7     Further, your Honor, Plaintiffs' allegations clearly

8 state that the named Defendants are merely primary players

9 in this growing and changing ecosystem of virtual casino

10 websites that all use Roblox's technology, platform, and

11 currency to prey on minors in the same way.  And in this

12 way, Roblox's response to the first virtual casinos are

13 relevant to provide context.  It speaks to the notice they

14 have of the security flaws in their platform and goes

15 directly to whether or not Roblox acted reasonably after

16 learning about these websites.

17     Our start date is reasonably calculated to lead to the

18 discovery of admissible evidence about what Roblox knew

19 about the emergence of these websites, when they knew it,

20 and the reasonableness of their policies, procedures and

21 investigations after they started emerging.

22         THE COURT:  Let me from -- let me hear from Roblox

23 on the -- the issue of the burden of an expense of adding

24 those two years.  I mean, from your own admissions, there

25 are probably very little to none and very little to no

8

1    activity on those sites.  What would be the burden and the

2    expense for you guys to -- to modify that date to January

3    1st as opposed to 2019?

4              MS. DEMAS:  your Honor --

5              THE COURT:  (Zoom glitch.)

6              MS. DEMAS:  Sorry.  I did not mean to speak over

7    the Court, and I would like to address Mr. Freedman's other

8    statements, but I'll -- I'll start with your Honor's

9    question.  The -- the burden would be extensive, and the

10   reason is this.  For every -- for every, you know, terabyte

11   of data that we add, right, and -- and that needs to be

12   taken off of Roblox's systems, stored with the -- the third

13   party provider, the discovery platform provider, those

14   storage costs alone which we would have to do to -- to go

15   back to 26 -- or, sorry, 2017, are in the hundreds of

16   thousands of dollars, and -- and we've seen this with other

17   custodians where, you know, for -- for one platform alone,

18   for one of the communication methods alone, we have gotten

19   estimates to that length, just for single custodians.

20       So, the problem is that when we're pulling documents

21   and when we're going back for a time period, we're doing it

22   on a custodian basis, and when you increase the level of

23   storage, like just getting it to the review platform so that

24   we can -- so that attorneys can review it as a significant

25   cost.

9

1      But, so -- so, it is not a matter of, Okay, well,

2  there's nothing there, and, so, we're adding nothing, and,

3  so, there's no burden.  There's a whole front loading step

4  of getting the universe of potential documents to the review

5  platform so attorneys can run searches and determine there's

6  nothing there.

7      Now, but I -- but I would like to take issue with a

8  number of statements that Mr. Freedman made because, you

9  know, irrelevant discovery, as the Court is aware, is

10  necessarily burdensome.  And contrary to Mr. Freedman's

11  statements before the Court, the claims in this case are

12  quite specific, and they target three specific virtual

13  casino websites.  Those sites are RBXFlip, Bloxflip, and

14  RBLXWild, with an L.  These sites are not on Roblox.  These

15  are third party sites that Roblox does not own, control, or

16  operate, and Plaintiffs know this.  They know from the

17  discovery they've received so far that Roblox has repeatedly

18  taken steps to try to get the hosting providers of these

19  sites to take them down.

20      The complaint even incorporates an interview with the

21  founder of RBXFlip, one of the three named VCW's, describing

22  Roblox's efforts to detect and block the unidentified bot

23  accounts that RBXFlip was using.

24      And I also want to take a step back and just level set

25  about the -- the "proprietary technology" that -- that

10

1 Plaintiffs claim that are being used.  These sites tell

2 users to give over their Roblox credentials.  So, you can do

3 this in one of two ways.  If you have a Roblox account, you

4 can give your username and password.  You give it to these

5 third party sites, and they log in on your behalf or you can

6 cut and paste what's known as a Roblox security cookie,

7 which is just another way of getting access to one's

8 account.

9       And -- and Judge Chhabria, in dismissing the RICO

10 claim, rejected the theory that this was, you know, some

11 sort of special technology.  This is just third party sites

12 asking users to hand over their credentials.

13       Now, Plaintiffs have sued Roblox and these three

14 entities only.  The VCWs -- and that's what I'm just going

15 to call them, the Virtual Casino Websites, these three

16 sites, they've not appeared.  The clerk entered a default

17 against one of them for the original complaint, and the

18 complaint itself makes clear that this case is about Roblox

19 and those three VCWs and not, as Plaintiffs argue in the

20 joint letter, other VCWs, plural.

21       The very first paragraph of the complaint says that

22 this case is about Roblox and it's "coconspirators", even

23 though Judge Chhabria dismissed the conspiracy claim, and it

24 names the three coconspirators as Satozuki, Studs, and

25 RBLXWild.  Those are the three corporate entities behind

11

1  RBXFlip, Bloxflip, and RBLXWild.  The citations in

2  Plaintiffs' part of the joint letter confirm that this case

3  is about those three VCWs.

4       THE COURT:  Okay.  But -- but -- I understand

5  that, but isn't your conduct with regards to those VCWs what

6  you knew, what you should have known, what you may have

7  learned in your dealings with other VCWs in 2016, 2017,

8  2018, aren't those things that are important for them to

9  show what you could or should have known when in 2019 these

10 three came online?  And what were your actions?  What --

11 what did you guys talk about?  What were your -- you know,

12 what were you doing about those VCWs in 2018?  Doesn't that

13 inform their case as to -- as to your responsibilities?

14      MS. DEMAS:  No, your Honor, because their -- their

15 theory rests on a false premise, and -- and the complaint

16 makes this quite clear in terms of what they actually do

17 allege.  The complaint alleges that the first VCW came into

18 existence in 2019, and -- and if you look at the record that

19 the Plaintiffs have proffered as their supposed evidence of

20 another VCW, this Internet archive record from the Wayback

21 Machine from 2016.  That -- that shows a site with a

22 different name, RBXFlip, that, contrary to what Mr. Freedman

23 has -- has just said, is nothing like the three named in the

24 complaint.  It has a similar name.  It appears to have been

25 used by four people in its entire history.  It was indexed

1  on a single day in 2016 when it had any content to speak of.

2  The next index record after that the site was for sale, but

3  there's no indication whatsoever about how that site works

4  except for Plaintiffs' counsel's say so.  On the day that it

5  was indexed, it had zero games, zero users, zero wins, and

6  the summary shows a grand total of four historical users

7  which were probably the site's developers and maybe some of

8  their friends, but -- but the idea that just because having

9  a similar name and -- and using the -- the word RBLX and

10 mentioning Roblox means that the site is anything like the

11 VCWs is simply not supported by the evidence that they've

12 put before the Court.

13         THE COURT:  Let me ask -- let me ask Mr. Freedman

14 a question.  You -- you heard the arguments regarding the

15 unduly burdensome with regard to costs and expenses with

16 this.  Is there not a more cost-effective way for you to

17 find out what they knew prior to 2019 that could come about

18 through other means in this case without having to have them

19 indexed prior to your knowing that they knew about these

20 sites?  So, in other words, if you were to find out at a

21 later date through other discovery that -- that they knew

22 about those sites, then you could, you know, move for -- for

23 what that would look like and may even be more targeted.

24     In this case, where they're doing a -- an entire sweep

25 during those years, isn't that -- wouldn't it be correct

13

1  that it would be over burdensome for them to do that?

2         MR. FREEDMAN:  Respectfully, your Honor, I -- I

3  don't agree with that proposition, and -- and I -- I just

4  want to clarify we have a -- attempted a number of times in

5  a number of different ways to get this answer.  I think it's

6  important to note also that my co-counsel -- or opposing

7  counsel did not answer the question of whether or not they

8  were aware of casinos prior to 2019 in her response.

9      We have served RFAs.  We've asked that multiple

10 conferrals for a list of casinos.  We have that memorialized

11 in a letter, even though they claim those requests did not

12 happen.  Your Honor, we are attempting time and time again

13 not just to understand the full scope of the universe of

14 these virtual casino websites, but what's important, again,

15 to the core claim in this case is what Roblox knew, when

16 they knew it and what they did based on that information.

17     And I do want to clear up what Ms. Demas said about the

18 complaint.  She either misread or misinterpreted allegation

19 14, which goes specifically to this issue, right.  Roblox

20 repeatedly tries to argue that -- that the complaint itself

21 only is about three virtual casino websites.  And, while

22 it's true that those are the three Co-Defendants of Roblox,

23 allegation 14 states Roblox allows third party gambling

24 websites, including Defendants' highly popular casinos.

25     Allegation 74, which they cite, we say that RBXFlip was

14

1 the first major third party gambling website.

2    The -- the law supports a proposed start date of 2017.

3 And in terms, returning to the question about burden, your

4 Honor, that is Defendants' burden to -- to prove, and they

5 haven't.  Besides kind of vague illusions to cost and today

6 Ms. Dimas saying, We've received some estimates and it will

7 be in the hundreds of thousands, they did not submit an

8 affidavit.  I understand that we weren't able to attach

9 exhibits, but they've -- they've never represented that to

10 us.  They've never given us any affidavit or any

11 information.  And Federal Rule of Civil Procedure 6(b)(1)

12 has a number of factors which are instructive here in

13 considering whether or not Defendants have met their burden

14 in determining based on the manifest weight of those factors

15 whether or not a proportionality argument exists.

16    Roblox is unable to satisfy any of those individual

17 factors, let alone carry the manifest weight.  Roblox solely

18 has information about what they knew about the emergence of

19 this growing problem.  We are trying to understand when they

20 knew it, what they learned about it, and what they did or

21 should have done with that information.

22    And Ms. Demas is -- is just flat wrong, unfortunately,

23 about what that evidence that we found that we gave to

24 Roblox shows.

25    Your Honor, we would be happy to submit that to you if

15

1  you would require it.  However, I think that what Roblox is

2  attempting to do is attempting to make this about the

3  existence of -- of individual casinos that may have existed

4  at certain points before 2019.  Again, returning to the core

5  claim in this case, it's Roblox's negligence in failing to

6  stop these.  So, what they knew, when they knew it is

7  important, relevant, and justifies a time period that

8  provides Plaintiffs with, as your Honor noted, the necessary

9  context to understand whether or not they were or were not

10  reasonable in failing to stop the proliferation of these

11  gambling websites.

12         THE COURT:  All right.  Ms. Demas, I'll give you

13  the last word on this issue.

14         MS. DEMAS:  Your Honor, I'd like to first take

15  issue with Mr. Freedman's assertion that they -- they've

16  sought this evidence in other ways.  We are here on a

17  dispute about RFPs.  Mr. Freedman mentioned RFAs, which we

18  received literally last week.  Our deadline to respond to

19  those RFAs is not until about three weeks from now.  So,

20  it's -- it's a bit misleading to say that they could have --

21  that they are trying to seek it in different ways and that

22  we've somehow stonewalled them when our deadline to respond

23  has not yet come.

24     I'd also say that with respect to, you know, the

25  definition of these virtual casino websites, both in the

1  RFPs and -- and in the complaint itself, they've always been

2  defined as these three.  The first time we've ever seen --

3  the first time the Plaintiffs have ever talked about the

4  existence of another site was when they told us at a

5  discovery conference back in -- or at the meet and confer

6  back in August, months after we'd been meeting and

7  conferring on this issue for sometime, and Roblox had even

8  offered for specific RFPs to go back to a further time

9  period when we were talking about things that -- you know,

10  that we could do targeted searches for such as the

11  ROBLOSECURITY cookie, and we offered to go back to 2017 for

12  that.

13      But for this, to conduct broad ranging searches of --

14  you know, for -- for documents going back two years earlier

15  is incredibly burdensome, particularly when it's not based

16  on the evidence that Plaintiffs claimed it was.  When --

17  when they referenced this other site to me, Mr. Freedman

18  said, with a very happy grin on his face, We found evidence

19  that Rblxwild existed as of 2016.  Well, when I said, Okay,

20  give us this evidence, same day he sent an email.  It

21  contained a totally different site, and he said, We're still

22  looking for a connection between RBLXWild and RBLXWild.  But

23  the problem is that there just is none.  And -- and given

24  the limited nature of the claims in this case and given the

25  fact that these virtual casino websites have always been

17

1  defined as three sites, it's -- it's patently irrelevant to

2  point to a site that apparently had four users to take the

3  entire relevant time period back to 2017, which is what

4  Plaintiffs seek to do.  This is -- this dispute is about a

5  rule of construction.  It's not about an individual RFP.

6  It's about all of them, and -- and it would effectively

7  require Roblox to go back and -- and pull two full years

8  worth of documents for the custodians that we eventually

9  agreed to, which there -- there isn't yet agreement on

10 anyway.

11        THE COURT:  Let's move to the second issue and the

12 question, which is RFP Number 61.  I'll hear from Mr.

13 Freedman on that.

14        MR. FREEDMAN:  Yes, your Honor.  So, with respect

15 to RFP 61, Plaintiffs seek documents about the reviews that

16 Roblox commissioned to identify any risks and security flaws

17 with its platform.  In the public record, Roblox's Senior

18 Director of Moderation has talked about these reviews, say

19 that they are conducted to help Roblox address issues and

20 assure parents that the platform is safe and appropriate for

21 children.

22    However, now, you know, six months after the RFP

23 negotiations began, Roblox claimed for the first time that

24 these documents aren't relevant because they won't -- and

25 this is the quote they used "concern" gambling.  And I think

18

1  that's really where the crux of this dispute is.

2       Your Honor, this is a misrepresentation and, honestly,

3  just flatly wrong.  What they've attempted to do is make a

4  semantic argument that unless these reviews say the word

5  "gambling" or they were specifically commissioned to address

6  gambling, they're not relevant.

7       Trying to -- to bound relevance here by the existence

8  of that word or that -- that designed purpose is misleading

9  because it ignores the entire process that these virtual

10 casinos go through to, one, access Roblox's website, two, to

11 operate bot accounts, three, to connect Roblox's accounts

12 belonging to minors to their websites, four, accessing the

13 -- the minor's account to initiate transactions and -- and

14 the ways in which they solicit these transactions on

15 Roblox's website.

16      The ways in which the virtual casinos use and exploit

17 Roblox's technology and platform are -- are not bound by

18 mere mention of gambling in these reviews, and -- and we

19 anticipate that these security reviews are going to discuss

20 each step and each security flaw that these websites

21 explore.

22          THE COURT:  Hang on just one second.

23          MR. FREEDMAN:  Yes, your Honor.

24      (Pause.)

25          THE COURT:  All right.  Sorry.  Continue.

1          MR. FREEDMAN:  No problem, your Honor.  Kind of

2    tie a -- to tie a bow on the -- on the relevance of it,

3    understanding the recommendations made to Roblox to address

4    these issues, things like a minor's ability to connect their

5    Roblox account to third party bad actor websites or Roblox's

6    deficient age verification software, which merely requires a

7    child to self-report their age, regardless of whether or not

8    they lie or not, deviations from industry standards in child

9    safety and the sufficiency of Roblox's tools and procedures,

10   which are designed to eliminate suspicious or harmful

11   activity which they discuss in some detail in their terms of

12   service and community standards, all of that is relevant

13   regardless of whether or not it is specifically tied to a

14   specific virtual casino or whether the report was

15   specifically made to address virtual casinos as compared to

16   any bad actor that uses the same process, tools and exploits

17   the same flaws as the virtual casinos in this case.

18          THE COURT:  All right.  Ms. Demas or whoever's

19   going to take the lead on this one.

20          MR. SALDANA:  Thank you, your Honor.  I'm going to

21   argue for Defendant Roblox on this issue.  I -- I think as a

22   -- as a short of threshold matter, I am somewhat surprised

23   by the focus on semantics by my opposing counsel because I

24   -- I think the issue here for us is that there is a

25   fundamental lack of relevance looking at the claims that are

20

1  alleged in the complaint.  That's not semantics.  It's
2  what's alleged in the complaint, and what's alleged in the
3  complaint concerns alleged offsite gambling.  This is
4  something that Judge Chhabria pointed out in his first
5  motion to dismiss order.  This is ECF 65, and Judge Chhabria
6  noted on page eight in his order that the Plaintiffs do not
7  allege that there is any gambling like experiences on
8  Roblox's site itself.  The only thing they allege is that
9  there is offsite gambling on these third party off-platform
10 websites.
11      So, in our view, you know, we -- when we look at RFP
12 61, I just want to be clear, RFP 61 does not reference
13 reports or concrete or discrete reviews.  It's actually all
14 documents related to your use of third party organizations
15 to review websites and apps, to evaluate their safety and
16 appropriateness for child and teen users that a parent can
17 use when deciding whether a site or platform is safe for
18 your kids.  That is the RFP.  It doesn't reference security
19 flaws.  It doesn't reference gambling at all, whether that's
20 on platform or off platform.
21      So, in our view, when we saw this RFP, we objected on
22 the basis of lack of relevance, and we think that this RFP
23 is inherently burdensome because it is not connected to the
24 claims in this case.
25      I did want to point out that we have objected to

21

1  burden, to -- we've objected to this RFP as -- as burdensome
2  since we served our RNOs to Plaintiffs on May 3rd, 2024, and
3  I just wanted to point that out because Plaintiffs claim
4  that we have never pushed back on this RFP as -- as
5  burdensome.  But, you know, we -- we do think the request
6  for production is burdensome in a number of ways, and I
7  think the threshold way is that it doesn't have any
8  connection with offsite gambling.
9      What I've heard today from opposing counsel is that
10 this is about security reviews, this is about security
11 flaws.  But if you go and look at the Web page that they are
12 now claiming as really the basis for this request for
13 production and it's a Kenzo interview -- this is a separate
14 third party that did an interview of one Roblox employee in
15 December of 2021.  There's no reference to security reviews.
16 There's no reference to a security report.  It's a
17 generalized statement about Roblox partnering with third
18 party organizations to ensure the safety and appropriateness
19 of the platform for -- for children and teens.
20     That safety is about the content on the platform, and
21 you can gather that from actually looking at the web page at
22 the beginning where that employee is discussing what his job
23 entails.  It's not about processing or reviewing -- excuse
24 me -- the processing of transactions on the platform.
25 Everything you've heard today from Plaintiffs about what

22

1   happens on the Roblox platform, you know, the -- the bot
2   accounts, the -- the use -- excuse me -- the PCWs, using bot
3   accounts on the Roblox platform in order to exchange Roblox,
4   that's just a transaction, and we've made clear to
5   Plaintiffs, and we've pointed this out in our portion of the
6   letter brief, that these third party organizations do not
7   review on platform transactions.
8       And, so, even under their purported theory, you know,
9   we don't see how this discovery is relevant to their claims.
10  And I -- and I want to be clear, not only from what counsel
11  has said today but also in their letter brief, they don't
12  think any of this has to deal with alleged gambling in order
13  for it to -- to be discoverable in this case, and I -- I
14  think that's a problem.  We need some guardrails because
15  there is a -- a slippery -- slippery line between what will
16  or will not show Roblox's purported awareness, but I think
17  Plaintiffs are really pushing the line on here.  You know,
18  our -- our view, it's not semantic.  It's that their claims
19  concern offsite gambling.
20      We've already confirmed to them that none of these
21  third party organizations review websites and apps for --
22  for gambling or just generally.  We're not using these
23  organizations to review websites and apps off of the Roblox
24  platform.  And -- and, so, you know, we thought that that
25  would have been the end of this -- this matter, and we

23

1 confirmed that to Plaintiffs over a month ago, before we

2 filed this letter brief.  And Plaintiffs sort of -- we

3 thought they were going to narrow this RFP.  They asked us

4 to investigate this issue.  We investigated the issue.  We

5 confirmed this in discovery correspondence, and then

6 Plaintiff came back and said, Well, you know what?  We want

7 all of these reviews that have to do with safety whatsoever.

8      And here I think what we hear is a shift from safety to

9 security, and these are fundamental -- it can be easy to --

10 to conflate or to confuse these things, but they are not the

11 same, and I think that's sort of clear when you look at the

12 website that we've included in our portion of the letter

13 brief about safety and civility on the Roblox platform.

14 It's -- it's a different issue.  These aren't about -- these

15 aren't organizations that are -- are -- are focused on the

16 issues that Plaintiffs think that they are focused on and

17 certainly not anything that's connected to the claims in

18 this case.

19          THE COURT:  Have you turned over anything -- you

20 said you agreed to respond to the RFPs about off-platform

21 gambling.  Has that already been done?

22          MR. SALDANA:  To clarify, your Honor, and thank

23 you, Plaintiffs had asked us to investigate whether these

24 third party organizations review off-platform websites and

25 apps for alleged gambling, and we confirmed that they do

24

1  not, and that was in written discovery correspondence.  It

2  wasn't formalized in responses and objections to the

3  requests for production.

4          THE COURT:  All right.  Mr. Freedman?

5          MR. FREEDMAN:  Yeah, it -- your Honor, there is a

6  lot wrong with -- with what Mr. Saldana just said.  You

7  know, I think it's interesting that -- that they know --

8  they said that this was just "one Roblox employee".  This

9  was their Senior Director of Moderation who they've actually

10  put up as the 26(a) witness.  And six months ago, when --

11  when we drafted this request and we sent it to them, all of

12  those arguments that Mr. Saldana just gave you, none of

13  those have appeared up until this letter brief.  I think we

14  even noted it in our portion of the letter brief.

15  Everything they've said about CSAM or foreign organizations,

16  it was news to us even though we've been trying.  And, while

17  Mr. Saldana tried to describe this negotiation process as a

18  back and forth between two willing participants, they just

19  flatly denied our request to -- to understand what exists,

20  and while Mr. Saldana says that, you know, that this is just

21  some offhand statement, you know, Footnote 13 in the joint

22  letter brief from their own website talks about their

23  partnerships with over 20 leading global organizations that

24  focus on child safety and Internet safety.

25      Your Honor, the argument that Roblox is making that it

1  has to specifically be an assessment of gambling, either off

2  platform or on platform, is a gross oversimplification of

3  how this process works.  There are security flaws that allow

4  this growing enterprise of casinos to exist.  For example,

5  if a child lies about their age and says they're above the

6  age of 13, Roblox allows them to connect their Roblox bank

7  account to third party websites.  Now, the only age

8  verification that exists on that platform is a 12 or 11 or 5

9  year old being honest about how old they are.  Roblox does

10 not implement any way of later verifying whether that's

11 true.  Over the last seven years, gambling bot accounts have

12 proliferated.  Roblox has been a part of several litigations

13 where these bot accounts are used for nefarious purposes.

14     Now, Roblox's awareness of that, the reviews that its

15 20 leading global organization partners perform on -- on bot

16 accounts or on the policies and procedures that it has to

17 determine whether suspicious activity is occurring on its

18 platform is relevant insofar as it is the same process and

19 procedures that the virtual casinos use to prey on children

20 on their platform.  Well over a month ago we asked whether

21 or not this statement by Mr. Joel Silk, Roblox's 26(a)

22 witness, applied to off-platform gambling.  Roblox quickly

23 said, No, it does not.  These are reviews of our own

24 platform, at which point we said, Thank you.  It's been four

25 months to get that answer.  And, so, then we want the

26

1  reviews of your platform to determine whether it's safe, and

2  -- and this distinction that -- that Mr. Saldana seems to be

3  trying to draw between safety and security, right, this is

4  not anything that he has ever brought up to Plaintiffs.

5  These are safety reviews of their platform.  We are

6  attempting to understand what they knew about the security

7  issues or the safety issues that exist that allow this

8  universe of illegal gambling websites to -- to proliferate

9  and to prey on children.

10        THE COURT:  But add to that then why wouldn't it

11  be limited to things that concern gambling only?  Why would

12  it be opened up to everything?

13        MR. FREEDMAN:  It's -- it's a great question, your

14  Honor.  Now, through conferral, Roblox has stated a number

15  of times in a number of ways that they actually don't have

16  specific units, job descriptions or policies related to

17  gambling.  There's kind of this more overarching umbrella

18  term that they use that encompasses all off-platform

19  transactions.  Now, that is called real money transactions.

20  And, so, there's a -- there's a distinction between whether

21  or not a specific report or review is commissioned to

22  address gambling or whether the word "gambling" exists as

23  compared to there's a safety review conducted by one of

24  these leading global organizations that says, Hey, by the

25  way, you guys need some sort of age verification software

27

1 because children may lie about their age and then you give

2 them privileges to connect their account to third party

3 websites.

4        Now, that in the most -- you know, that wouldn't have

5 to be about gambling, but it is what occurs here.  It's what

6 allows these websites to flourish on Roblox's website or,

7 for example, they implement geofencing procedures which

8 pretty much means if I create a -- a registered session in

9 my office in Manhattan and then someone tries to access my

10 account overseas like the virtual casinos do, the system

11 should determine, hey, that's suspicious activity.  We

12 should log that out.

13       However, while they claim to have this procedure, it

14 clearly doesn't work because Plaintiffs, like thousands of

15 kids in this country, their accounts are being accessed by

16 the gambling websites overseas, and that's borne out by the

17 evidence, the -- the few hundred documents that Roblox has

18 produced in the last six months.

19       So, what we're trying to understand is whether or not

20 these leading global organizations talked about all of the

21 ways in which any bad actor, including the virtual casinos,

22 can exploit Roblox's platform to -- to conduct the

23 transactions or solicit minors to link their accounts or

24 whether or not their policies and procedures that are

25 designed to identify and stop suspicious or harmful

28

1  activity, one is sufficient, two, whether there's been

2  recommendations made that they have not heeded, and whether

3  or not their inability to -- to prevent these websites from

4  preying on children on their platform is reasonable.  And

5  it's especially relevant -- your Honor, as just kind of a

6  final point here, it's especially relevant given Roblox's

7  representations to Judge Chhabria at the most recent motion

8  to dismiss hearing where they represented time and time

9  again there's nothing that we can do besides be involved in

10  this cat and mouse game with these virtual casinos.

11  Plaintiffs disagree.  The industry disagrees, and -- and we

12  expect that the 20 leading experts that they have hired to

13  assess whether or not their platform is safe and appropriate

14  for children, we'll also disagree.

15          THE COURT:  You also -- there's talk about in your

16  -- your portion of the letter brief as well as theirs about

17  limitations on this with regard to excluding child sexual

18  abuse material, foreign organizations, things like that.

19  What are those -- what do those limits look like?

20          MR. FREEDMAN:  Your Honor, thank you for the

21  question.  I'm happy to address those.  As Roblox knows,

22  because we've been in negotiations for six months on a whole

23  host of RFP's, Plaintiffs have offered a number of times,

24  and Roblox has accepted every time a compromise on other

25  RFP's that might hint at some documents that relate to CSAM.

29

We're trying to understand whether or not the -- the processes and procedures they implemented are reasonable. And, so, if there's a process or procedure that only addresses CSAM on the platform and it can only address CSAM, such as recommendations from NCMEC or the way in which they report CSAM specifically to local law enforcement, then we've said, Look, we get it, we're not looking for that information and we don't think that that's relevant.

With respect to foreign organizations, your Honor, this is a multinational company that exists online.  I'm not exactly sure why somebody -- four organizations analysis of the safety risks inherent in Roblox's platform would not be relevant if it's the same safety issues that exist in the United States or with U.S. users.

You know, again, their -- their attempts to kind of bring CSAM into this at the eleventh hour is just that. They have never tried to -- to negotiate on this, and when we've -- we've tried to push them, understanding is this about off-platform game or is this about on-platform, they just flatly say, We will not provide documents.  They don't know anything about the burden inherentness request because, again, your Honor, they have never searched, and they've never agreed to search for these documents.

So -- so, Plaintiffs are -- are willing, as we've been willing on a number of requests, to accept reasonable

30

1   limitations for processes, procedures, tools that have

2   nothing to do with the process by which these virtual

3   casinos exploit the platform if those cannot and can never

4   be used to -- if remedying them would never fix or address

5   this issue in any way.

6          THE COURT:  All right.  Here are my rulings on the

7   two requests.

8       As to Plaintiffs' request for production to go back to

9   2017, I'm going to grant in part and deny in part.  I'm

10  going to let you go back to January 1st of 2018.  And the

11  reason why I'm doing that is because I do find that you have

12  met your relevancy burden.  However, I do find that

13  Defendants have put forth sufficient argument with regard to

14  the burdensome and whether or not the -- the results of such

15  a search would justify the burden -- the burdensomeness of

16  such a search.

17      So, if you do that search in 2018 and you find a lot

18  that justifies the burden and you want to come back to me,

19  you can do so after a meet and confer with the other party,

20  but I'm only going to do it for one year, and we'll see how

21  that comes out.

22      With regard to your second request, RFP Number 61, I

23  also find -- I will grant that request.  I do find that you

24  have met your relevancy burden in that case.  I think that

25  -- so, I overrule the objection based on irrelevance, and I

31

1  don't find that Defendants have met the burden of

2  disproportionality standard in objections either.  I do

3  think that the reasonable limitations is appropriate in this

4  case, and I'll have you guys meet and confer on that and to

5  hopefully exclude CSAM in those -- in those productions.

6      What's the timeline, Ms. Demas, for you guys being able

7  to get that stuff done, and when is discovery closed in this

8  matter?

9          MS. DEMAS:  Your Honor, there -- there is no set

10  date for closing of discovery.  We currently have a schedule

11  that goes through class cert.  The parties have amongst

12  themselves agreed to submit a joint stipulation to the Court

13  extending the discovery period for three months.

14          THE COURT:  Okay.

15          MS. DEMAS:  We have not yet done that, and -- and

16  with respect to the Court's question of when can the parties

17  get that done, I think -- I think there are a couple of

18  questions baked into that.  One is that there's going to be

19  an additional meet and confer on RFP 61 --

20          THE COURT:  Right.

21          MS. DEMAS:  -- in terms of imposing reasonable

22  limits.

23          THE COURT:  Right.

24          MS. DEMAS:  Which we -- I would assume that we can

25  get done -- I mean, we have another meet and confer on

32

1  search terms and custodians this Friday.  If the -- if the

2  parties are available to extend that, we can do it as soon

3  as this Friday.

4      I can't promise when the parties are going to -- you

5  know, a date certain by which the parties actually reach

6  agreement on those limits, but -- but I'm hopeful that that

7  would be, you know, within short order, and -- and I don't

8  -- with respect to the relevant time periods, for that one,

9  I don't think there's anything left to meet on.  It's -- the

10 Court has met in the middle and put it at January 1, 2018.

11          THE COURT:  Yeah.  Okay.  So, then what I'm going

12 to do is I'll just issue the order requiring the meet and

13 confer.  The other option I could have is let you guys meet

14 and confer and then file a joint proposed order.  I don't

15 know if that's necessary in this case.  It seems like you

16 guys would be able to work that out pretty smoothly, but

17 it's up to you.

18     What do you guys -- what would you guys rather do, just

19 have a -- a short granted in part, denied in part 2018 and

20 then granted with a meet and confer requirement or do you

21 guys want to prepare a proposed joint order on this one?

22          MS. DEMAS:  Whatever is more convenient for the

23 Court.  I mean, I think functionally, we're going to need to

24 take some of the same steps.  It's just a question of

25 whether the court would rather wait to -- to issue a

33

1  decision until there's, you know, a concrete proposal with

2  respect to RFP 61.

3          THE COURT:  Yeah, let's do that.  Why don't I give

4  you guys time to meet and confer and then get me a -- a

5  proposed -- a joint proposed order and get it to me by the

6  beginning of next week, send it to my proposed order email

7  box.

8      Mr. Freedman, since you won most of this, I putting it

9  on you.  It's your responsibility to get it to me, but you

10 guys work that out.  There's a --

11          MR. FREEDMAN:  Sounds good, your Honor.

12          THE COURT:  -- proposed order -- there's a

13 proposed order email box on my website.  And since there's

14 no -- there's no rush on getting the order in but you guys

15 understand that that's just a written format of my oral

16 rulings today.

17     So, all right.  If there's nothing further from the

18 parties, then I will dismiss you guys, and we'll move on to

19 the next one.  Thank you very much for your efforts today.

20          MR. FREEDMAN:  Thanks for your time, your Honor.

21     (Proceedings adjourned at 11:50 a.m.)

22

23

24

25

34

<u>CERTIFICATE OF TRANSCRIBER</u>

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber
Saturday, October 19, 2024