KEKER VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
JACQUIE P. ANDREANO - # 338354
jandreano@keker.com
SONJA N. RILEY-SWANBECK - # 356281
SRiley-Swanbeck@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Cross-Defendant
BASED PLATE STUDIOS LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARACELY SOUCEK, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ROBLOX CORPORATION, SATOZUKI LIMITED B.V., STUDS ENTERTAINMENT LTD., and RBLXWILD ENTERTAINMENT LLC,<br><br>                    Defendants. | Case No. 3:23-cv-04146-VC<br><br>**BASED PLATE STUDIOS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS ROBLOX'S CROSS-CLAIMS; MEMORANUDM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        April 10, 2025<br>Time:        10:00 a.m.<br>Dept.:        Courtroom 4 – 17th Floor<br>Judge:       Hon. Vince Chhabria |
| ROBLOX CORPORATION,<br><br>                    Cross-Plaintiff,<br><br>          v.<br><br>SATOZUKI LIMITED B.V., RBLXWILD ENTERTAINMENT LLC, STUDS ENTERTAINMENT LTD., BASED PLATE STUDIO LLC, and JOHN DOE #1,<br><br>                    Cross-Defendants. | Date Filed: August 15, 2023<br>Trial Date:  None Set |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 10, 2025, at 10 a.m. in Courtroom 4, 17th floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Vince Chhabria, Cross-Defendant Based Plate Studios, LLC ("Based Plate") will and hereby does move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for an order dismissing Roblox Corporation ("Roblox")'s Cross-Claims.

The issues to be decided are as follows:

1. Whether Roblox has failed to allege facts sufficient to support personal jurisdiction over Based Plate;

2. Whether all of Roblox's cross-claims are time-barred;

3. Whether Roblox has failed to state a claim for relief on each of its claims under Fed. R. Civ. P. 12(b)(6).

This motion is based upon this Notice; the following Memorandum of Points and Authorities; Based Plate's request for judicial notice and the supporting declaration of Jacquie P. Andreano with the exhibits attached thereto, the complete files and records in this action; the argument of counsel; and such other matters as the Court may consider.

Dated:  March 10, 2025

KEKER, VAN NEST & PETERS LLP

By:  /s/ *Cody S. Harris*
STEVEN P. RAGLAND
CODY S. HARRIS
JACQUIE P. ANDREANO
SONJA N. RILEY-SWANBECK

Attorneys for Cross-Defendant
BASED PLATE STUDIOS LLC

1

# TABLE OF CONTENTS

2

**Page**

INTRODUCTION ..................................................................................................................1

I.    BACKGROUND .......................................................................................................2

      A.    Procedural History ........................................................................................2

      B.    Allegations in the Cross-Complaint.............................................................2

II.   LEGAL STANDARDS ............................................................................................3

III.  ARGUMENT ...........................................................................................................4

      A.    Roblox fails to allege facts sufficient to establish personal jurisdiction.................4

      B.    Based on Roblox's own liability theory, Roblox's claims are time-barred.............6

      C.    The Cross-Complaint fails to state a claim for relief. ................................8

            1.    Roblox fails to state a claim for violation of the Lanham Act...................8

            2.    Roblox fails to state a claim for violation of the CFAA. ..........................10

            3.    Roblox fails to state a claim for violation of the CDAFA. ......................13

            4.    Roblox fails to plead trespass to chattels or tortious interference. ...........14

            5.    Roblox fails to state a claim for breach of contract or
                  indemnification. ........................................................................................15

IV.   CONCLUSION........................................................................................................15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BASED PLATE STUDIOS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:23-cv-04146-VC

2882954

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
    486 F.3d 629 (9th Cir. 2007) ...................................................................8

*AMA Multimedia, LLC. v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) ..............................................................5, 6

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
    551 F.2d 784 (9th Cir. 1977) ...................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................4

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) .................................................................5

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................5

*Carroll v. J.M. Smucker Co.*,
    2023 WL 4053796 (N.D. Cal. June 15, 2023) .........................................6

*Daimler v. Bauman*,
    571 U.S. 117 (2014) ................................................................................5

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024) ..................................................14

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) .................................................................5

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ...............................................................12

*In re Google Android Consumer Priv. Litig.*,
    2013 WL 1283236 (N.D. Cal. 2013) ......................................................11

*Han v. Mobil Oil Corp.*,
    73 F. 3d 872 (9th Cir. 1995) ....................................................................6

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
    571 U.S. 99 (2013) ..................................................................................6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F. 4th 1180 (9th Cir. 2022) ...............................................................10

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
  2015 WL 476287 (C.D. Cal. Feb. 5, 2015)...................................................................10

*Johnson v. Mazza*,
  2016 WL 11505399 (C.D. Cal. Jan. 29, 2016) ..............................................................4

*Kuhn v. L'Oreal USA S/D, Inc.*,
  2020 WL 1307004 (N.D. Cal. Mar. 19, 2020)...............................................................11

*Left Field Holdings v. Google LLC*,
  2022 WL 17072948 (N.D. Cal. Nov. 18, 2022) .....................................................2, 8, 9

*Levi Strauss & Co. v. Blue Bell, Inc.*,
  778 F.2d 1352 (9th Cir. 1985) .......................................................................................8

*Miller v. HFN, Inc.*,
  2023 WL 5266035 (N.D. Cal. Aug. 16, 2023) ...............................................................4

*Miller v. Travel Guard Grp., Inc.*,
  2022 WL 2712507 (N.D. Cal. July 13, 2022).................................................................4

*Moonlight Mountain Recovery, Inc. v. McCoy*,
  2024 WL 4027972 (D. Idaho Sept. 3, 2024)................................................................12

*Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. Guild*,
  334 F. Supp. 3d 1057 (E.D. Cal. 2018).........................................................................9

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 954 (N.D. Cal. 2014) .........................................................................11

*Oracle Am., Inc. v. TERiX Comput. Co., Inc.*,
  2014 WL 31344 (N.D. Cal. Jan. 3, 2014).....................................................................13

*Roblox Corp. v. WowWee Grp. Ltd.*,
  2023 WL 4108191 (N.D. Cal. June 20, 2023) ...............................................................7

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .........................................................................................4

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) .....................................................................................10

*State Analysis, Inc. v. Am. Fin. Servs. Assoc.*,
  621 F. Supp. 2d 309 (E.D. Va. 2009) ..........................................................................13

*Sylabs, Inc. v. Rose*,
  2024 WL 4312719 (N.D. Cal. Sept. 26, 2024) ......................................................11, 12

*Toyota Motor Sales U.S.A., Inc. v. Tabari*,
  610 F.3d 1171 (9th Cir. 2010) ...................................................................................2, 9

iv

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) .................................................................................4

*Van Buren v. United States*,
  593 U.S. 374 (2021) ...............................................................................................11

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................................................5

*X Corp. v. Ctr. for Countering Digit. Hate, Inc.*,
  724 F. Supp. 3d 948 (N.D. Cal. 2024) .............................................................11, 12

**State Cases**

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*,
  116 Cal. App. 4th 1375 (2004) ..............................................................................15

*Intel Corp. v. Hamidi*,
  30 Cal. 4th 1342 (2003) ....................................................................................14, 15

*Pac. Gas & Elec. Co. v. Bear Steams & Co.*,
  50 Cal. 3d 1118 (1990) ..........................................................................................15

**Federal Statutes**

15 U.S.C. § 1114.......................................................................................................8

15 U.S.C. § 1125(a)(1)(A).........................................................................................9

15 U.S.C. § 1125(a)(1)(B).......................................................................................10

18 U.S.C. § 1030(a) ...........................................................................................12, 13

18 U.S.C. § 1030(c)(4)(A)(i)(I)..............................................................................10

18 U.S.C. § 1030(g) ................................................................................................10

**State Statutes**

Cal. Penal Code § 502(e)(1)...............................................................................13, 14

**Rules**

Fed. R. Civ. P. 11 ..................................................................................................2, 9

Fed. R. Civ. P. 12(b)(2)..........................................................................................1, 3

Fed. R. Civ. P. 12(b)(6)..........................................................................................4, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

**INTRODUCTION** [1]

Cross-Defendant Based Plate Studios LLC ("Based Plate") is a foreign company based in St. Vincent and the Grenadines that, Roblox alleges, operated a website called Bloxflip that facilitated Roblox users exchanging Robux with each other after playing games of chance, generating 30% commissions for Roblox on every such transaction.[2] Far from being harmed by this alleged conduct, Roblox's own allegations show that it knew about the conduct, profited from it, and failed to take action to stop it until after its own contractually imposed limitations period had long since expired. When Roblox found itself sued in a class action, it ignored its own Terms of Use ("ToU") and filed a sprawling cross-complaint alleging claims for trademark infringement, federal Computer Fraud and Abuse Act ("CFAA") violations, violations of California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), trespass to chattels, breach of contract, tortious interference with contractual relations, and express indemnification. Roblox's Cross-Complaint should be dismissed for several reasons.

*First*, Roblox's Cross-Complaint contains zero allegations supporting personal jurisdiction over an admittedly foreign entity. That manifest failure suffices to dismiss the cross-claims against Based Plate under Rule 12(b)(2).

*Second*, even though Roblox nowhere expressly alleges that Based Plate is bound by Roblox's ToU, that is the basis for many of its causes of action. That position, however, defeats Roblox's claims because, pursuant to the ToU, "any cause of action arising out of or related to [Roblox's] Services must commence within one (1) year after the cause of action arises or it is permanently barred." Decl. of Jacquie P. Andreano ("Andreano Decl.") ¶ 2, Ex. A ("Roblox 2024 ToU") at 21. By any calculation, Roblox sued too late.

*Third*, even if the Court were to allow Roblox's claims to proceed despite the lack of jurisdictional allegations and in the face of contractual language that bars the claims, each cause

---

[1] In all quotations appearing in this brief, all internal quotation marks, citations, and alterations have been removed, and all emphases added, unless otherwise noted.

[2] Although the Cross-Complaint alleges that Bloxflip is still operating, Roblox has admitted in a submission to this Court that Bloxflip shut down in December 2024. Dkt. 129, ¶ 3.

2882954

of action suffers fatal flaws and pleading deficiencies.

The Lanham Act claims fail because Roblox cannot establish a likelihood of consumer confusion. Indeed, Roblox misleadingly truncated the website screenshots it included in its Cross-Complaint to omit a disclaimer that clearly warned users that Bloxflip was in no way affiliated with, endorsed by, or otherwise connected to Roblox. That is a rather important fact to omit, and "in a complaint alleging misleading design choices, cropping out such an important part of the page raises serious Rule 11 concerns." *Left Field Holdings v. Google LLC*, 2022 WL 17072948, at *1 (N.D. Cal. Nov. 18, 2022). The nominative fair use doctrine protects a party's right to truthfully refer to a trademark, as Bloxflip is alleged to have done here, and when a disclaimer appears on the challenged website, consumer confusion is unlikely. *See Toyota Motor Sales U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182 (9th Cir. 2010).

The CFAA and CDAFA claims fail because Roblox has failed to allege any cognizable injury or damages, and because Roblox fails to allege password "trafficking" under the CFAA. Roblox's trespass-to-chattels and tortious interference claims fail because Roblox fails to allege any cognizable damages that it suffered. And Roblox's contract-based claims fail because Roblox nowhere alleges that the ToU bound Based Plate and, even if it did, then those terms render Roblox's claims time-barred. The Court should grant Based Plate's motion.

## I.     BACKGROUND

### A.     Procedural History

On August 15, 2023, Plaintiffs filed their original complaint against Roblox and other entities alleging various state law claims and amended their complaint on September 30, 2024. Dkt. 1, 115. On October 30, 2024, Roblox answered the amended Complaint, Dkt. 117, followed by an amended Answer and Cross-Complaint on November 20, 2024 that, for the first time, named Based Plate and other cross-defendants. Dkt. 119 ("CC").

### B.     Allegations in the Cross-Complaint

As alleged in the Cross-Complaint, Based Plate is a "foreign company registered to do business in St. Vincent and the Grenadines." CC ¶ 19. Roblox asserts that Based Plate has owned

and operated Bloxflip "since approximately August 2023." *Id.*; *see also id.* ¶ 83. Roblox alleges that it knew about Bloxflip and its functionality since at least March 2022. *Id.* ¶ 100.

Roblox alleges that "Bloxflip requires users to enter their Roblox credentials to create an account." *Id.* ¶ 90. It further alleges that Based Plate used those credentials to fulfill deposit requests by accessing the user's account and transferring the user's Robux into Roblox accounts that were "controlled by or accessible to Based Plate." *Id.* ¶ 92. According to the Cross-Complaint, when the user sought to withdraw their Robux from the Bloxflip website, "Bloxflip again takes over the user's Roblox account, using it to create and sell Virtual Content to Roblox accounts controlled by Based Plate . . . generating Robux for the user." *Id.* ¶ 96.

Roblox also alleges that Based Plate infringed Roblox's trademarks by "creat[ing] a false association between Bloxflip and Roblox" by using the terms "Roblox" and "Robux" in ads, Google search results, and the Bloxflip website, as well as by using a hexagon to denote currency. *Id.* ¶¶ 107–13. Roblox claims that "[u]sers mistakenly believe[d] that Bloxflip is sanctioned by Roblox," pointing to a single example of a Bloxflip user who submitted a customer service ticket to Roblox. *Id.* ¶ 115. To support its trademark allegations, Roblox includes truncated screenshots of Bloxflip's website, but nowhere attaches the complete website pages at issue. *Id.* ¶¶ 88, 90, 95.

Roblox alleges that it has "tried to disrupt Bloxflip's activities," but it largely fails to describe any such efforts. *Id.* ¶ 99. The only direct efforts that Roblox describes are sending a takedown request to an unidentified hosting provider in March 2022 and sending a cease-and-desist letter to Based Plate on November 14, 2024, just six days before it filed its Cross-Complaint. *Id.* ¶¶ 100, 102. Roblox further alleges that it generally "employs multiple methods to detect and disrupt bot accounts, to detect and moderate accounts that violate Roblox's policies, including Roblox's prohibition against using, acquiring, or distributing Robux or Virtual Content except through the Services, and to detect and moderate accounts that may have used Bloxflip," but it does not explain what these methods are, or whether they specifically targeted Bloxflip's alleged use of the Roblox services as opposed to generic efforts at platform moderation. *Id.* ¶ 101.

## II.    LEGAL STANDARDS

Under Rule 12(b)(2), a claimant bears the burden of demonstrating that the court's

exercise of personal jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), and must "come forward with facts . . . supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679.

## III.   ARGUMENT

### A.   Roblox fails to allege facts sufficient to establish personal jurisdiction.

Roblox's Cross-Complaint should be dismissed because Roblox has failed to meet its burden to establish that the Court has personal jurisdiction over Based Plate. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006). Plaintiffs must, at minimum, allege facts that support a finding of personal jurisdiction. *See Johnson v. Mazza*, 2016 WL 11505399, at *4 (C.D. Cal. Jan. 29, 2016) ("[A] majority of courts hold that [plaintiff] must first set forth sufficient facts in the *complaint* to support a reasonable inference that the defendant can be subjected to in personam jurisdiction within the state.") (emphasis in original); *Miller v. HFN, Inc.*, 2023 WL 5266035, at *1 (N.D. Cal. Aug. 16, 2023) (dismissing claim and declining to consider jurisdictional discovery request where complaint "came nowhere close to alleging [defendant's] minimum contacts with California"); *Miller v. Travel Guard Grp., Inc.*, 2022 WL 2712507, *1 (N.D. Cal. July 13, 2022) (dismissing because "[t]he complaint ha[d] not alleged that the Court has general jurisdiction" or "that [defendant] took any action in or directed any action to the state of California relating to the plaintiffs' claims").

Here, the Cross-Complaint makes *zero* allegations directly supporting personal jurisdiction. Unlike the Plaintiffs' Amended Complaint, which at least made a conclusory (albeit inadequate) effort to allege general jurisdiction over foreign third parties, Roblox has made no effort to explain why the Court has personal jurisdiction over Based Plate, or upon which theory.[3]

Roblox has asserted no facts that would support general jurisdiction, which applies only

---

[3] Pursuant to the Court's Order, Based Plate continues to meet and confer with Roblox regarding its theories of personal jurisdiction and the potential need for jurisdictional discovery.

where the defendant is "essentially at home in the forum State." *Daimler v. Bauman*, 571 U.S. 117, 137 (2014). Absent exceptional circumstances, a corporation is subject to general jurisdiction only in its state of incorporation and the state of its principal place of business. *Id.* Based Plate is incorporated in St. Vincent and the Grenadines. CC ¶ 19. Roblox has failed to allege any exceptional circumstances that would give rise to general jurisdiction.

Nor has Roblox alleged facts sufficient to invoke specific jurisdiction. For a court to exercise specific jurisdiction over a non-resident defendant, (1) the defendant must have "purposefully direct[ed] his activities" toward the forum; (2) "the claim must be one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Analysis of the third element is only necessary if the first two are satisfied. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

To allege purposeful direction, a plaintiff must allege that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *AMA Multimedia, LLC. v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020). Nothing in the Cross-Complaint alleges that Based Plate conducted activities "expressly aimed" at California or that Based Plate knew that the alleged injuries would be suffered in California. Nor does Roblox allege that its purported injuries arose from any California-related actions Based Plate took; indeed, it nowhere alleges that Based Plate took any action in, or directed at, California at all.

Roblox may contend that its own residence in California suffices to confer specific jurisdiction, but that is incorrect. The "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (overturning Ninth Circuit decision that had concluded "knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts"). Indeed, the Supreme Court has specifically rejected the exercise of personal jurisdiction where the plaintiff's residence was the primary link between the defendant and the forum state. *Id*; *see also Axiom Foods, Inc. v.*

5

2882954

1    *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017) (rejecting specific jurisdiction based

2    on plaintiffs' forum connection and defendant's knowledge of those connections).

3         Roblox may also argue that many of Bloxflip's *users* resided in California, but such

4    facts—even if alleged—would also fail to confer personal jurisdiction. *AMA Multimedia*, 970

5    F.3d at 1210–12 (rejecting specific jurisdiction where nearly 20% of defendant's website traffic

6    came from users in the forum because the site did not target the forum); *see also Carroll v. J.M.*

7    *Smucker Co.*, 2023 WL 4053796, at *4 (N.D. Cal. June 15, 2023) ("If the defendant merely

8    operates a website, even a 'highly interactive' website, that is accessible from, but does not target,

9    the forum state, then the defendant may not be haled into court in that state.").

10         **B.    Based on Roblox's own liability theory, Roblox's claims are time-barred.**

11         Even if this Court finds that personal jurisdiction is proper, Roblox's claims still fail

12    according to its own theory of the case. As explained below, Roblox fails to expressly allege that

13    Based Plate is a party to the ToU. But that is the main thrust of its claims. In alleging that Based

14    Plate breached the ToU, Roblox assumes that Based Plate is bound by that agreement. CC ¶¶

15    247–53. That agreement, however, establishes that, to the extent the ToU is applicable, all of

16    Roblox's claims are contractually time-barred.

17         Roblox's ToU, which it incorporates by reference as Exhibit 5 to its Cross-Complaint,

18    states, in bold, all-capital letters, that "User and Roblox agree that any cause of action arising out

19    of or related to the Services must commence within one (1) year after the cause of action arises or

20    it is permanently barred." Roblox 2024 ToU § 11(c).[4] Courts routinely hold parties to their own

21    contractually agreed upon limitations periods. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*,

22    571 U.S. 99, 107 (2013)  ("[A] provision in a contract may validly limit . . . the time for bringing

23    an action on such contract to a period less than that prescribed in the general statute of

24    limitations."); *Han v. Mobil Oil Corp.*, 73 F. 3d 872, 878 (9th Cir. 1995) (affirming application of

25

26    ─────────────────────
      [4] Because Roblox fails to expressly allege that Based Plate is a party to its ToU, it is unclear
27    which version of the ToU should apply. Because Roblox alleges that the 2024 version attached as
      Exhibit 5 to its Cross-Complaint is the "operative" one, CC ¶ 43, Based Plate uses that version for
28    purposes of this motion. Previous versions of the ToU, dating back to at least January 1, 2022,
      contain substantially similar time-bar provisions. *See* Andreano Decl. ¶¶ 3–4, Ex. B–C.

1-year contractual limitations period to bar plaintiff's claims).

Roblox admittedly knew about Bloxflip in March 2022. CC ¶ 100. Thus, Roblox's claims regarding Bloxflip arose at least as of that date. Nonetheless, Roblox failed to bring any claims within one year as required by its own ToU. Even if the date that each cause of action "arises" is calculated from the time that *Based Plate* is alleged to have begun operating the Bloxflip site, Roblox has alleged that this occurred on August 5, 2023. CC ¶ 83 (alleging "'Baseplate Games' assumed ownership and operation of Bloxflip" on August 5, 2023 and alleging that "Baseplate Games is the predecessor name of Based Plate"); *id.* ¶ 19 ("Based Plate . . . has owned and operated Bloxflip since approximately August 2023."). That is more than a year before Roblox sued on November 20, 2024. And even if Roblox argued that its claims arose only when Plaintiffs sued Roblox, that occurred on August 8, 2023. By any calculation, Roblox waited too long to sue.

The one-year time bar applies expansively to "*any* cause of action *arising out of or related to* the Services." Roblox 2024 ToU § 11(c). As Roblox has previously argued regarding its ToU, and as courts have repeatedly held, the phrase "arising out of or related to" is interpreted broadly. For example, in *Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 4108191, at * (N.D. Cal. June 20, 2023), the court held, in Roblox's favor and in the context of an arbitration provision, that "the phrase 'arising out of or relating to' is interpreted more broadly" and that "in this case [it] is even broader because it covers disputes arising under and relating to not only the 'Terms,' but also the 'Services.'" The term "Services" is defined broadly to include "the Roblox website and its related platform . . . and various other features and services, including websites, applications, forums, content, functionality, products, and services." Roblox 2024 ToU § 11(c).

The same terms appear in the contractual time-bar provision. And each of Roblox's claims plainly arise out of or relate to the "Services": they relate to Based Plate's alleged use of the Services (CFAA, CDAFA, Breach of Contract, Express Indemnification, Trespass to Chattels), its alleged inducement of others to use the Services in a particular way (Tortious Interference with Contractual Relations), or its alleged misuse of Roblox content, which is defined as part of the Services (Lanham Act). Thus, to the extent the Court credits Roblox's claim that Based Plate is a party to the ToU, all of Roblox's claims are untimely and should be dismissed.

1    **C.    The Cross-Complaint fails to state a claim for relief.**

2        The Court should dismiss the Cross-Complaint either for lack of personal jurisdiction or

3    because, under Roblox's own theory, its claims are time-barred. But even if the Court were to

4    analyze Roblox's claims under Rule 12(b)(6), they would fail for the following reasons.

5        **1.    Roblox fails to state a claim for violation of the Lanham Act.**

6            **a.    Trademark Infringement**

7        Roblox fails to state a claim for trademark infringement because Roblox has failed to

8    plausibly allege consumer confusion and, relatedly, the nominative fair use doctrine covers

9    Bloxflip's alleged conduct. Section 1114 requires Roblox to show that (1) it has a trademark

10   right; (2) that Based Plate used; (3) in a way that is likely to cause consumer confusion and thus

11   infringe upon the trademark right. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th

12   Cir. 1985). The third element, a likelihood of confusion, is "the core element of trademark

13   infringement." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).

14   To satisfy this element, a complaint must allege "similarity of the marks is likely to confuse

15   customers about the source of the products." *Id.* No alleged facts support such a finding.

16       First, the Cross-Complaint supports an opposite finding—*i.e.*, that its users perfectly

17   understood that Bloxflip was in no way affiliated with Roblox. Specifically, the complaint alleges

18   that "several of [Bloxflip's] users kn[ew] their conduct violates Roblox's ToU." CC ¶ 97.

19   (quoting users as saying, "we all signed up to risk this by knowingly breaking Roblox's ToS.").[5]

20       Second, whether intentionally or inadvertently, the Cross-Complaint misleadingly depicts

21   Based Plate's website to omit a robust disclaimer that appeared on Bloxflip's homepage.

22   *Compare* CC ¶ 90 *with* Andreano Decl. ¶ 7, Ex. F.[6] Bloxflip's disclaimer stated: "Baseplate

23   GAMES is not affiliated, associated, or partnered with Roblox Corporation in any way. We are

24   not authorized, endorsed, or sponsored by Roblox. We are an independent skins betting site." *Id.*

25

---

26   [5] Roblox only points to a single user whom Roblox claims "appeared" to think Bloxflip was
     affiliated with Roblox. CC ¶ 115. Roblox provides no additional facts, e.g., by quoting the user's
27   message. But even taken as true, alleging a single user's confusion is insufficient.

28   [6] The complete website is incorporated by reference in the Cross-Complaint. *See Left Field*, 2022
     WL 17072948, at *1 n.2.

BASED PLATE STUDIOS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:23-CV-04146-VC

2882954

The image that Roblox calls Bloxflip's "Homepage" is actually the site's login window. Andreano Decl. ¶¶ 6, 8, Ex. E, G. The true Bloxflip homepage contained the prominent disclaimer, visible every time a user visited the site. Roblox has also cropped the login window to omit the disclaimer. CC ¶ 90. The pop-up login window appears *in front of* the homepage, with the disclaimer still clearly visible in the bottom right of the screen. Andreano Decl. ¶ 8, Ex. G.

This Court has previously found such conduct to be improper and potentially sanctionable. In *Left Field*, plaintiffs used cropped screenshots of an allegedly infringing website that omitted Google's logo, which appeared on the webpage's footer. 2022 WL 17072948, at *1. Concluding that the footer "undercut[] the theory that the page is misleading," the Court warned that, "in a complaint alleging misleading design choices, cropping out such an important part of the page raises serious Rule 11 concerns." *Id.* Roblox's conduct here is even worse. It omitted a clear and unambiguous disclaimer telling visitors that Bloxflip is in no way endorsed by or affiliated with Roblox. Indeed, upon arriving at Bloxflip's site, users would "immediately see the disclaimer and would promptly be disabused of any notion" that Roblox endorsed it. *Toyota*, 610 F.3d at 1182.

A disclaimer "is relevant to the nominative fair use analysis." *Id*. And in fact, Based Plate meets all three nominative fair use factors. **First**, Roblox and Robux are "readily identifiable" only through use of the marks. *Id.* at 1175–76. **Second**, Based Plate used no "more of the mark than necessary." *Id.* Bloxflip's use of Roblox's marks looked nothing like Roblox's. Roblox uses a distinct, white, block-letter font, with a crooked square in the center. *See* Roblox 2024 ToU at 1. None of this appeared on Bloxflip's pages, which used its own logo, color scheme, and font. Roblox alleges that Bloxflip used a hexagonal icon that evoked Roblox's mark, but even the shapes look different. *See* CC ¶¶ 93, 95. **Third**, Based Plate never "falsely suggested [it] was sponsored or endorsed by" Roblox. *Toyota*, 610 F.3d at 1176. On the contrary, Based Plate expressly *disclaimed* any affiliation with Roblox. Roblox's trademark infringement claim fails.[7]

---

[7] Roblox's false designation claim under Lanham Act § 1125(a)(1)(A) fails for the same reasons. Roblox nowhere alleges that Bloxflip used its marks in a way that was "likely to cause confusion" or that "misrepresent[ed] the characteristics of" Roblox's "goods or services." *Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. Guild*, 334 F. Supp. 3d 1057, 1065 (E.D. Cal. 2018).

9

2882954

### b.    False Advertising

It is unclear if the Cross-Complaint attempts to state a claim for false advertising under § 1125(a)(1)(B), but to the extent that it does, it also fails. Roblox's allegations fail to meet at least two factors of a false advertising claim: (1) a tendency to deceive a substantial segment of the audience and (2) a likelihood of the plaintiff suffering injury as a result of the statement at issue. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Roblox alleges facts suggesting that only a single user was confused, without providing even the most basic details. CC ¶ 115. Nothing in the Cross-Complaint supports a conclusion that Bloxflip's site or promotions had a tendency to deceive a substantial segment of the audience. On the contrary, Roblox alleges that Bloxflip users well knew that Bloxflip was not affiliated with Roblox, CC ¶ 98, and the disclaimer that Roblox cropped out would have confirmed that understanding. Roblox also fails adequately to allege an injury to itself with sufficient particularity. It alleges, without any factual underpinning, a "loss of consumer trust and damage to the Roblox brand." CC ¶ 203. This conclusory allegation is insufficient to state a § 1125 claim. *See Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2015 WL 476287 at *2 & n.2 (C.D. Cal. Feb. 5, 2015) (rejecting § 1125 cause of action because the "generic claims were too vague" and lacked "sufficient allegations of underlying facts"). Claim Two should be dismissed.

### 2.    Roblox fails to state a claim for violation of the CFAA.

#### a.    Roblox fails to allege "loss" as required by the CFAA.

The CFAA permits civil actions only "if the conduct involves 1 of the factors set forth" in the statute. 18 U.S.C. § 1030(g). The only subclause that is even potentially applicable to Roblox's claims in this case requires "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." *Id.* at § 1030(c)(4)(A)(i)(I). But Roblox has failed to plausibly allege that it suffered such a loss within the meaning of the statute.

Recent Supreme Court and Ninth Circuit precedent make clear that the "loss" contemplated by the CFAA must be "a showing of 'technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data.'" *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F. 4th 1180, 1195 n.12 (9th Cir. 2022) (quoting *Van Buren v. United States*,

10

593 U.S. 374, 392 (2021)); *see also X Corp. v. Ctr. for Countering Digit. Hate, Inc.*, 724 F. Supp. 3d 948, 983 (N.D. Cal. 2024) (holding that losses from technological harms "is indeed a requirement under the CFAA, as the Supreme Court held in" *Van Buren*). "Technological harms" as contemplated by *Van Buren* are a "narrow conception of loss" that relate primarily to "impairment of data or interruption of service." *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 964 (N.D. Cal. 2014).

Roblox has failed to allege any losses from technological harms suffered due to Based Plate's alleged conduct. Roblox summarily claims that all Cross-Defendants, without distinction,[8] have "caused loss to Roblox during a 1-year period aggregating at least $5,000" that "includes but is not limited to changes to information on the Roblox accounts that Cross-Defendants and their agents take over[,]" CC ¶ 215, and that Roblox's loss is therefore "the expenditure of resources to investigate and remediate Cross-Defendants' fraud and unauthorized access." *Id.* ¶ 219. But Based Plate's mere access and alleged changes to a user's account information with the user's express permission does not, by itself, constitute a "loss" as defined by the statute. *See Sylabs, Inc. v. Rose*, 2024 WL 4312719 at *3 (N.D. Cal. Sept. 26, 2024) (alleged deletion of files "at best . . . constitutes 'damage' under the CFAA, not loss, and the statute distinguishes between the two concepts."). And Roblox never alleges any actions it actually took to investigate or remediate Bloxflip's alleged access. In *Sylabs*, the court dismissed a CFAA claim where the plaintiff failed to describe the costs it "incurred to respond to and assess the harm caused by the hacking with specificity," "how exactly it remedied the harm caused by the hacking," and how those costs totaled $5,000 or more within a one-year period. *Id.* So too here. Roblox "set[s] forth only a bare legal conclusion, couched as fact, that [it] incurred costs." *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236 at *7 (N.D. Cal. 2013).

Nor can Roblox assert that its alleged takedown request and cease-and-desist letter constitute cognizable losses under the CFAA: "[I]t is impossible to see how attorneys' fees could

---

[8] Roblox's claims should be dismissed for the additional reason that they fail to differentiate among any of the Cross-Defendants. "Courts in this [d]istrict have concluded that 'undifferentiated pleading against multiple defendants is improper.'" *Kuhn v. L'Oreal USA S/D, Inc.*, 2020 WL 1307004, at *3 (N.D. Cal. Mar. 19, 2020) (citing cases).

BASED PLATE STUDIOS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:23-CV-04146-VC

2882954

1    amount to technological harm." *See X Corp.*, 724 F. Supp. at 984. Roblox also makes a vague

2    allegation regarding its general practice of employing undescribed "methods to detect and disrupt

3    bot accounts" or accounts that violate Roblox's policies including by using Bloxflip, but

4    generally employing platform moderation measures is not a cognizable loss. At the outset, "[t]o

5    the extent these costs concern forensic analysis, they do not fall within the scope of loss." *Sylabs*,

6    2024 WL 4312719 at *3. Roblox makes no effort to explain whether or what costs could be

7    associated with this general policy, which portion of them, if any, are specifically responsive to

8    Based Plate's alleged actions, and whether they were incurred in a one-year period. *See id*.

9    Roblox's failure to provide any specificity beyond bare legal conclusions is fatal to its claims.[9]

10    Even if Roblox could allege some losses from technological harm caused by Based Plate's

11    access to the Roblox services (it cannot), the vast majority of Based Plate's alleged access was

12    not "without authorization" as required by 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), and 1030(a)(6).

13    Because Roblox's users voluntarily provided Based Plate with access to their accounts, its access

14    was not without authorization until Roblox explicitly informed Based Plate that its access was

15    unauthorized by sending a cease-and-desist letter on November 14, 2024. *See Facebook, Inc. v.*

16    *Power Ventures, Inc.*, 844 F.3d 1058, 1066–67 (9th Cir. 2016) ("Power users arguably gave

17    Power permission to use Facebook's computers to disseminate messages" by permitting Power to

18    access their accounts, such that the defendant "did not initially access Facebook's computers

19    'without authorization' within the meaning of the CFAA."). After receiving the letter, Based Plate

20    quickly began shutting down the Bloxflip website and "shut down in December 2024." Dkt. 129 ¶

21    3. Thus, any potentially cognizable technological harms would have needed to occur in the month

22    between Roblox's cease and desist and Bloxflip's shutdown. Roblox has alleged no technological

23    harms that occurred during that brief timeframe, let alone harms that amount to a loss greater than

24    $5,000. *See Moonlight Mountain Recovery, Inc. v. McCoy*, 2024 WL 4027972 at *5 (D. Idaho

25    Sept. 3, 2024) ("[E]ven taking into account that [plaintiff] has alleged some recoverable costs, it

26    has not plausibly alleged that those recoverable costs exceed $5,000.").

27    _____

28    [9] Roblox's claim that Based Plate "obtained money, customers, and unauthorized use of Roblox's Services the value of which exceeds $5000," CC ¶ 216, is even further afield from the technological harms contemplated by the CFAA, because it involves no harm *to Roblox* at all.

### b.    Roblox fails to allege that Based Plate "trafficked" passwords.

Even if Roblox could allege damage or loss as required by CFAA (it cannot), Roblox's claim under Section 1030(a)(6) fails for the additional reason that Roblox has failed to allege that Based Plate engaged in "trafficking" of passwords as defined by the statute. Section 1030(a)(6) requires that a defendant "knowingly and with intent to defraud traffics . . . in any password or similar information through which a computer may be accessed without authorization." 18 U.S.C. § 1030(a)(6). The statute defines "traffic" as "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of." *Id.* § 1029. But here, Roblox nowhere alleges that Based Plate transferred or otherwise disposed of the passwords it received from users. Instead, Roblox asserts only that Based Plate received and used the passwords to gain access to users' accounts, with their permission. *See* CC ¶¶ 90, 92. That is insufficient under the statute. *See State Analysis, Inc. v. Am. Fin. Servs. Assoc.*, 621 F. Supp. 2d 309, 317 (E.D. Va. 2009) (granting motion to dismiss § 1030(a)(6) claims where "the Complaint does not allege that [defendant] transferred, or otherwise disposed of, [plaintiff's] passwords; rather, it alleges that [defendant] received them from [plaintiff] and used them without authorization. Such conduct does not constitute 'trafficking' under § 1029."); *Oracle Am., Inc. v. TERiX Comput. Co., Inc.*, 2014 WL 31344 at *6 (N.D. Cal. Jan. 3, 2014) (dismissing CFAA trafficking claim where "Defendants are alleged only to have received the login credentials from their customer and used the credentials themselves.").

### 3.    Roblox fails to state a claim for violation of the CDAFA.

The CDAFA is another penal statute that permits civil actions only in certain specific situations. A private party may sue under CDAFA only if it has suffered "damage or loss by reason of a violation" of the statute. Cal. Penal Code § 502(e)(1). The statute specifies what damages or loss qualify under the law: "any expenditure reasonably and necessarily incurred . . . to verify that a computer system . . . or data was or was not altered, damaged, or deleted" due to the improper access. *Id.* Roblox has failed to allege any such damage or loss.

Roblox alleges, again in conclusory and undifferentiated fashion, that it suffered damages, "including the reasonably and necessarily incurred expenditure of resources to investigate and

1    remediate Cross-Defendants' fraud and unauthorized access." CC ¶ 232. But that is not the

2    statutory standard. The statute requires that any such expenditures be incurred to verify that a

3    computer system or data "was not altered, damaged, or deleted" due to the improper access. Cal.

4    Penal Code § 502(e)(1). This Court recently ruled that allegations of harm that failed to meet the

5    statutory standard are insufficient and support dismissing a CDAFA claim. In *Doe I v. Google*

6    *LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024), the plaintiffs alleged that Google source code and

7    cookies contaminated their devices and that its placement on their computers allowed Google to

8    "tak[e] and use [] plaintiffs' data in violation of" the CDAFA." *Id.* at 846. The plaintiffs' alleged

9    damage included the "expenditure of time and resources to investigate Google's conduct." *Id.*

10   Finding those allegations inadequate, this Court concluded that the plaintiffs had made "only a

11   conclusory allegation that they expended time and resources to investigate Google's conduct" and

12   that, "there is no allegation that the investigation was undertaken to verify that their 'data was or

13   was not altered, damaged, or deleted,'" as the statute requires. *Id.* at 847.

14         So too here. None of Roblox's loss-related allegations meet the statutory requirements.

15   CC ¶¶ 100–02 (alleging a takedown request, unidentified methods to detect and disrupt bots, and

16   a cease-and-desist letter). None of these alleged harms suggests that Roblox incurred any damage

17   or loss in an effort "to verify that their 'data was or was not altered, damaged, or deleted.'" *Doe I*,

18   2024 WL 3490744, at 847. Rather, Roblox alleges steps taken to police a possible breach of the

19   ToU, prepare for litigation, or both. Count Four should be dismissed.

20              **4.    Roblox fails to plead trespass to chattels or tortious interference.**

21         Roblox fails to state a claim for trespass to chattels or tortious interference with

22   contractual relations. Trespass to chattels is an intentional interference with the possession of

23   personal property that has proximately caused injury. *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342,

24   1351 (2003). "Short of dispossession, personal injury, or physical damage . . . intermeddling is

25   actionable only if 'the chattel is impaired as to its condition, quality, or value, or . . . the possessor

26   is deprived of the use of the chattel for a substantial time.'" *Id*. Roblox's only stated injuries are

27   conclusory and undifferentiated allegations that Cross-Defendants "depriv[ed] Roblox of the use

28   of its property and impair[ed] the condition and quality of the property." CC ¶ 238. But this bare

recitation fails to allege how Based Plate's actions deprived Roblox of use of its property or impaired the property's condition and quality. Digital trespass claims fail where the defendant's actions caused "no actual or threatened damage" to the plaintiff's hardware or software and caused "no interference with its ordinary and intended operation." *Intel*, 30 Cal. 4th at 1353.

Both trespass to chattels and Roblox's intentional interference claim require adequate allegations of damage. *See Pac. Gas & Elec. Co. v. Bear Steams & Co.*, 50 Cal. 3d 1118, 1126 (1990) (listing elements for intentional interference claim). In alleging both claims, Roblox asserts that its injury is the cost incurred by it to prevent Cross-Defendants from using the Roblox platform. CC ¶¶ 244, 260. But Roblox has alleged no specific costs related to preventing Based Plate from using its platform, as opposed to generic efforts at platform moderation. Roblox's failure to allege any legitimate injury is no surprise, because, if anything, Roblox has *benefited* from Bloxflip's alleged activity. As Roblox has admitted, "Roblox takes at least 30% of Robux exchanged in all user-to-creator transactions[.]" Amended Answer at ¶ 53. Moreover, even if Roblox had incurred some costs in seeking to prevent Based Plate from accessing the Roblox site, "[i]njury can only be established by the completed tort's consequences, not by the cost of the steps taken to avoid the injury and prevent the tort." *Intel Corp.*, 30 Cal. 4th at 1353.

### 5. Roblox fails to state a claim for breach of contract or indemnification.

To allege a breach-of-contract claim, the plaintiff must allege a contract. *See Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004). But Roblox nowhere alleges that Based Plate contracted with Roblox. While Roblox alleges that users assent to the ToU, it makes no allegation that *Based Plate*, as a separate entity, did so. Thus, Roblox's breach of contract and indemnification claims must fail.[10]

## IV.    CONCLUSION

For the foregoing reasons, Based Plate's Motion to Dismiss should be granted.

---

[10] As argued above, if Roblox is correct that Based Plate is, in fact, bound by the TOU, then the one-year contractual time-bar applies, and these claims must be dismissed anyway.

1    Dated:  March 10, 2025                    KEKER, VAN NEST & PETERS LLP

2

3                                    By:    /s/ *Cody S. Harris*
                                            STEVEN P. RAGLAND
4                                           CODY S. HARRIS
                                            JACQUIE P. ANDREANO
5                                           SONJA N. RILEY-SWANBECK

6                                           Attorneys for Cross-Defendant
                                            BASED PLATE STUDIOS LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BASED PLATE STUDIOS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS
Case No. 3:23-CV-04146-VC

2882954