May 9, 2025

<u>Via ECF</u>

The Honorable Robert M. Illman
United States District Court for the Northern District of California
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

Re: *Soucek v. Roblox Corp.*, No. 23-cv-4146-VC (N.D. Cal.)
Joint Letter Re: Roblox's RFP 37, Roblox's Fourth ROGs, and Plaintiffs' ROG 2

Dear Judge Illman:

Pursuant to the Court's standing order, the parties submit this joint letter brief concerning three discovery disputes arising out of Roblox's Request for Production ("RFP") 37, Roblox's Fourth Interrogatories ("ROGs") to Plaintiffs, and Plaintiffs' ROG 2 to Roblox. The parties have met and conferred in good faith to resolve their disputes, but have been unable to reach agreement.

The following Exhibits accompany this letter brief:

Exhibit 1: Roblox's Second RFPs to Plaintiffs.

Exhibit 2: Plaintiffs' Responses & Objections ("R&Os") to Roblox's Second RFPs.

Exhibit 3: Soucek Plaintiffs' R&Os to Roblox's Second ROGs.

Exhibit 4: Soucek Plaintiffs' R&Os to Roblox's Third ROGs.

Exhibit 5: Soucek Plaintiffs' R&Os to Roblox's Fourth ROGs.

Exhibit 6: Roblox's First Supp. R&Os to Plaintiffs' ROG 2.

Exhibit 7: Roblox's Amended Second Suppl. R&Os to ROG 2.


The following abbreviations are used in this letter brief:


PFI: partial forensic image.

PCC: possession, custody, and control.

VCW: virtual casino website.

**Roblox's Statement**
**1) Partial Forensic Images of Plaintiffs' Devices Are Relevant and Proportionate**

*The PFIs Are Highly Relevant.* RFP 37 seeks *partial*—not full—forensic images of the devices in Plaintiffs' PCC, which they used to engage in the very conduct for which they seek to hold Roblox liable: "gambling" in the VCWs. The PFIs are thus *limited to* portions of the images relating to (i) any VCW, (ii) Roblox, and (iii) any other defendant. The PFIs are clearly relevant. Plaintiffs' claims concern their alleged use of Roblox and the VCWs. ECF No. 115, ¶¶ 145-66. These sites can *only* be accessed from *electronic devices*. *Id.* ¶¶ 2, 69, 89, 102. As Plaintiffs "actively put their devices at issue," they cannot "limit the defendant's discovery that is targeted at the subject matter of the plaintiff's claims." *In re Apple Inc. Device Perf. Litig.*, 2019 WL 3973752, at *1 (N.D. Cal. Aug. 2, 2019) (affirming discovery order to produce forensic images).

PFIs are proper where, as here, a party has *repeatedly* but *unsuccessfully* sought this discovery via other RFPs and ROGs. Roblox notified Plaintiffs in November 2024 that their productions lacked highly relevant information that a PFI would reveal: (1) metadata, (2) social media communications (*e.g.*, Discord chats) about the VCWs, (3) browser history showing visits to the VCWs, and (4) deleted files about the VCWs. Roblox deferred a final conferral on RFP 37 to allow Plaintiffs to correct these deficiencies. Six months later, Plaintiffs' productions are *still defective* and are missing highly relevant documents. For example, Sass has not produced any text or chat messages. L.C., a 13 year-old with multiple devices, has produced only *two* text messages: screenshots of Bloxflip webpages from July 2024, well after the case was filed. The dearth of text messages defies common sense in this day and age. Many Plaintiffs allegedly used RBXFlip, a VCW that shuttered in July 2023, weeks before the case was filed. No Plaintiff has produced any document showing they used this site, including their browser histories, which a PFI would reveal. No Plaintiff has produced browser history showing they used any VCW. Nor have Plaintiffs produced documents about parental controls some claim they used, which a PFI would show. As discussed below, Plaintiffs have produced facially relevant Discord chats in a way that strips them of all context, making them impossible to understand. A PFI would remedy these issues. *E.g.*, *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 2012 WL 70428, at *3 (N.D. Cal. Jan. 9, 2012) (permitting forensic image of hard drive where party could not obtain discovery through RFPs).

*The PFIs Are Proportionate.* RFP 37 is narrowly tailored. It seeks *partial* forensic images of the devices Plaintiffs identified as most likely to contain discovery about Roblox and/or the VCWs, not a "blanket production." *In re Social Media Adol. Addiction/ Pers. Injury Prods. Liab. Litig. ("IRSM")*, 2024 WL 3498235, at *3 (N.D. Cal. July 19, 2024) (ordering production of targeted portions of device image). Plaintiffs' argument that Roblox seeks to "rifle through" full forensic images is wrong. RFP 37 does not seek full forensic images. Courts routinely compel production of PFIs. *E.g.*, *IRSM*, 2024 WL 3498235, at *3-4 (ordering parties "to determine which data sets are to be produced from" devices, including "application usage data, browser history data, location data, communication logs, media files, metadata, application settings, and other data files"); *T.J. v. City & Cnty. of San Francisco*, 2024 WL 3834200, at *4-5 (N.D. Cal. Aug. 14, 2024) (similar).

If, as Plaintiffs claim, they already imaged their priority devices, there is no burden to producing. The Protective Order resolves any privacy concerns. Alternatively, the Court should order that a neutral expert forensically image the priority devices and produce responsive discovery. *E.g.*, *Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams*, 2013 WL 11235928, at *2 (N.D. Cal. Oct. 15, 2013). This approach is especially appropriate here. Whatever Plaintiffs believe they have done with respect to a PFI, they have produced documents where the metadata, format, and content (and lack thereof) *contradict* that the documents came from a PFI. For example, N.S.

produced Discord chats that did not come from a PFI, and were exported using Discord's Download My Data feature. Those chats contain *only* the messages N.S. sent to other users, not their responses, stripping the chats of context. Had Plaintiffs done PFIs of the device(s) with their Discord chats, the full chats would be visible.[1] L.C. produced documents showing Discord was installed on his computer, but produced no Discord chats. De Ridder produced a chat asking if there was a way to block Discord from T.D.'s computer, and T.D. produced documents suggesting he used Discord, but produced no Discord chats. ***Notably, Plaintiffs will not represent that documents obviously missing from their productions do not exist.*** A proper PFI would remedy these issues.

**2) Plaintiffs Must Respond to ROGs 12 and 13, Which are Within the Default ROG Limit.**

*Plaintiffs' Miscounting*. The Court should limit ROGs 12-13 to "principal bases" and compel answers. Plaintiffs cannot dispute relevance or proportionality; they served nearly-identical ROGs. Their refusal to answer is based on the false premise that 1+1=76, and flagrantly miscounts ROGS 9-11. Plaintiffs' position is purely tactical, as evidenced by their offer to answer ROGs 12-13 *only if* Roblox agreed that it had served 25 ROGs and Plaintiffs had served 10 ROGs, depriving Roblox of its 12 remaining ROGs and gifting Plaintiffs 15 extra ROGs, as they already had served compound ROGs past the default limit. The Court should reject these stratagems. **First,** Plaintiffs' faulty math counts each subpart of ROGs 9-11 as a ROG. This is wrong. The subparts are part of *one* ROG as they "are logically or factually subsumed within…the primary question." *IRSM*, 2024 WL 5190206, at *1. ROG 9 concerns "gambling" accounts to which Plaintiffs lost access. Ex. 3 at 10-11. ROG 10 concerns Plaintiffs' devices. *Id.* at 11. ROG 11 concerns websites Plaintiffs contend can be used to "gamble" Robux or Virtual Content. *Id.* at 8-9. Unlike Plaintiffs' cases, the subparts "[seek] information related to the same subjects." *Int'l Petrol. Prods. & Additives Co., Inc. v. Black Gold S.A.R.L.*, 2020 WL 4673947, at *5 (N.D. Cal. Aug. 12, 2020) (Illman, J.).[2] **Second**, ROGs 12 and 13 do not exceed the default limit. ROG 12 concerns *one* contention (not two): Plaintiffs' negligence claims. Ex. 5 at 12. The bases for an alleged breach subsume the contention that Roblox owed a duty. ROG 13 concerns a ***single*** inquiry about why a class should be certified. *Id.* at 14. Plaintiffs make the ***same*** contentions for each class, ECF No. 115, ¶¶ 181-91, rendering their cases inapposite. **Third**, the Court should alternatively grant leave to exceed the limit because it is consistent with Rule 26(b)(1) and (2). F.R.C.P. 33(a)(1); *In re Google RTB Consumer Priv. Litig.*, 2024 WL 3407069, at *3 (N.D. Cal. July 11, 2024). Plaintiffs' shifting theories necessitate ROG 12. The Parent Plaintiffs seek actual damages despite ***never*** using Roblox or any "gambling" website. Roblox needs to understand what duty Plaintiffs contend Roblox owed and how Roblox purportedly breached it. ROG 13 seeks relevant discovery about the basis for Plaintiffs' allegations. Plaintiffs' complaints about participating discovery does not show undue burden, nor have they "fully" responded to Roblox's discovery, as Roblox has explained in detail.

**3) Plaintiffs Cannot Rewrite ROG 2 to Force Roblox to Provide a Different Response.**

*Roblox Answered.* ROG 2 seeks "the total amount of dollars and Robux, per year and for each year, that [Roblox] ha[s] received as a result of any fees that Roblox has imposed on transactions involving" a VCW. Citing its Terms of Use, "Roblox object[ed] … to 'total dollars received' because Robux are a virtual currency that have no monetary value." Ex. 7 at 28. Roblox answered that "total dollars received" is $0 because "[w]hen a Roblox user purchases virtual content from

---

[1] Roblox's undersigned counsel has seen forensic images of phones and computers containing full Discord chats, with all portions of the conversations present.

[2] If seeking facts, documents, and persons are each one ROG, that does not help Plaintiffs: ROGs 9-10 would be 3 ROGs each; ROG 11 (facts only) would be 1. That is 15 ROGs total, ***not*** 29.

another user on the Roblox platform … Roblox does not receive dollars[.]" Ex. 7 at 32. Plaintiffs merely disagree with this by citing the average price to purchase Robux. As to "total Robux received," Roblox answered it cannot "identify all such transactions that may have occurred" on the off-platform VCWs that Roblox does not own or operate. *Id*. 33. Plaintiffs conceded this, and asked for estimates of "total Robux" using content moderation data Roblox produced. Roblox gave the estimates. *Id.* 34. Plaintiffs "cannot compel [Roblox] to provide different responses … simply because" they were "hoping to receive a different answer." *FootBalance Sys. Inc. v. Zero Gravity Inside, Inc*., 2018 WL 722834, at *4. (S.D. Cal. Feb. 5, 2018); *Yellow Rose Prods., Inc. v. Pandora Media, LLC*, 2024 WL 3221741, at *3 (C.D. Cal. Apr. 29, 2024) (similar).

  *Plaintiffs' Improper Rewriting.* Plaintiffs cannot force Roblox to assign a USD value to Robux obtained from its marketplace fee, which is measured in ***Robux***. ROG 2 does ***not*** request this. It asks for "dollars … received." Roblox could not "waive" ROG 2's plain language. Plaintiffs' view that the Court made a "finding" that Robux have "economic value" is wrong (there are no factual findings in the dismissal order). ECF No. 165, at 3-5. Nor does it change the ROG's text. There is nothing to compel because "[t]he Court cannot rewrite [a ROG]." *Frieri v. Sysco Corp.*, 2017 WL 3387713, at*4 (S.D. Cal. Aug. 4, 2017); *Gutierrez v. Converse Inc.*, 2024 WL 2106952 at *16 (C.D. Cal. May 2, 2024) (same). Nor can Plaintiffs shift their Rule 26(a) obligations to Roblox. ***Plaintiffs*** theorize in their recent Rule 26(a) disclosures that Robux have "value" as "measured in dollars." Certain Plaintiffs have disclosed damages for lost Robux measured in USD and thus assigned a "value" to Robux (which they have not disclosed). Plaintiffs cannot shift to Roblox their Rule 26 burden to calculate or construct their damages. *Silver State Broad., LLC v. Beasley FM Acquisition*, 2016 WL 320110, at *4 (D. Nev. Jan. 25, 2016) ("Defendants are not required to compute damages, Rule 26 requires plaintiffs to do so."); *Gentz v. Twenty-First Cent. Fox, Inc*., No. 20-cv-10100-ODW(PLAX), 2021 WL 6104411, at *5 (C.D. Cal. Oct. 13, 2021) (rejecting ROG "ask[ing] defendant to perform plaintiff's damages calculation for him").

**Plaintiffs' Statement**

**1) <u>Roblox Cannot Justify its Request for Forensic Images of Plaintiffs' Devices</u>**

  Courts in this district do not regularly order plaintiffs to produce digital copies of their personal devices. *In re Soc. Media Adol. Addiction/Pers. Inj. Prods. Liab. Litig.* ("*Soc. Media*"), 2024 WL 3498235, at *3 (N.D. Cal. July 19, 2024) (collecting cases). But Roblox's demand for "digital duplicate[s]" of parents and kids' devices is exactly that. Ex. 2, at 5, 7-9. Roblox's invasive request is based on its misunderstanding of caselaw and mischaracterization of discovery here, in which Plaintiffs have forensically collected and searched multiple devices from each parent-child Plaintiff using Roblox's search terms, and have produced thousands of documents from them.[3] Even though the search terms include "Roblox" and the name of each virtual casino website, Roblox now demands forensic copies of Plaintiffs' devices so that they can search for any evidence related to Roblox and each virtual casino. Just as courts would not allow Plaintiffs carte-blanche access to Roblox's computer systems, there is no basis to force Plaintiffs to turn over their images for what Roblox euphemistically calls "partial" forensics.[4] Roblox's request is intrusive, lacks good cause, and serves no purpose beyond harassment and intimidation of children and parents who had the temerity to sue the company.

---

[3] Roblox's statement that Plaintiffs "retracted their representation" that they forensically collected devices is false.

[4] Roblox declined to consent to the attachment of a declaration from Plaintiffs' vendor which explains that it is neither technologically possible to provide a "partial" forensic image limited to specific information, nor necessary given the use of the parties' agreed-upon search terms.

Roblox's burdensome demand to rifle through Plaintiffs' devices in an expansive hunt for kids' online activity is "not proportional to the needs of the case because any benefit the data might provide is outweighed by Plaintiffs' significant privacy and confidentiality interests." *Henson v. Turn*, 2018 WL 5281629, at *6 (N.D. Cal. Oct. 22, 2018), at *6 (citation omitted). Requests for forensic images of devices, especially children's, are improper due to "the strong privacy interests implicated by accessing individuals' cellphones," as providing forensic images "for free inspection by Defendants' counsel and experts imposes a significant privacy intrusion without a clear demonstration" of the need for "such extensive discovery." *Soc. Media*, 2024 WL 3498235, at *3. That is especially true where, as here, Plaintiffs have already provided "data and files culled from the forensic images." *Id.*

Roblox cites *no case* compelling production of Plaintiffs' forensic images here. In *Social Media* and *J.T.*, courts *declined* to compel such production and agreed with Plaintiffs that "provid[ing] data and files culled from [existing] forensic images" in Plaintiffs' possession sufficed. *Id.* at *3; see also J.T. v. City & Cnty. of San Francisco*, 2024 WL 3834200, at *5 ("the Court will not order production of complete forensic records of Plaintiffs' devices) (citing *id.*). Their only other case is inapposite. The *In re Apple Inc. Device Performance Litig.* plaintiffs "actively put their devices at issue" by alleging Apple's "intrusion and trespass to the[ir] devices." 2019 WL 3973752, at *2 (N.D. Cal. Aug. 2, 2019). Here, the information that Roblox seeks has nothing to do with the devices themselves. *See J.T.*, 2024 WL 3834200, at *5 (noting that the *Soc. Media* court did not order "wholesale production" even "where, unlike here," device use was "directly at issue").

Roblox's claim of relevance ignores that RFP No. 37's overbroad sweep lacks *proportionality*. Roblox has never justified its demand for Plaintiffs' devices, as it cannot "demonstrat[e] that" its intrusive and excessive request "has satisfied proportionality and other requirements of Rule 26." *Shared P'ship v. Meta Platforms, Inc.*, 2023 WL 2526645, at *3 (N.D. Cal. Mar. 14, 2023) (Illman, J.). Prior to its service of RFP 37, Roblox never identified a need for any forensic image among "sources of relevant ESI." ECF No. 96 § 5. Today, Roblox is even less able to support its "extraordinary" request to "directly *access*" Plaintiffs' images after months of discovery. *Henson*, 2018 WL 5281629, at *6 (denying motion to compel where Plaintiffs had "forensically imaged their devices and [were] producing information from those images").

Roblox admits that Plaintiffs produced thousands of documents responsive to Roblox's search terms. Nor has Roblox proposed new search terms before demanding images, effectively seeking images "as a form of discovery sanction" instead of "simply requesting production . . . through the normal discovery process." *J.T.*, 2024 WL 3834200 at *3. Roblox's demand for a "partial" forensic image is thus not only technologically infeasible, but still disproportionate. *See Soc. Media*, 2024 WL 3498235, at *3 (noting impropriety of producing forensic image even where defendants seek access to "one database or one file within" it). Roblox elides that *Plaintiffs have produced* items that it sought in November 2024 (before the parties' January 10 priority production deadline). Its speculation that a "dearth of chats defies common sense for a teenager" cannot conjure the documents it wants, and its "mere skepticism" that Plaintiffs "have not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *Est. of Mario Solis, et al. v. Cnty. of Riverside, et al.*, 2025 WL 1090945, at *2 (C.D. Cal. Mar. 11, 2025) (citation omitted). Roblox's speculation also ignores that RBXFlip shut down over a year before the Plaintiffs who used it entered this case, that Plaintiffs have produced Discord messages as kept, and that browser history is ephemeral and need not be preserved under the ESI Order. ECF No. 96 § 6(d). The Court should deny Roblox's motion. Plaintiffs reserve the right to seek costs, including for Roblox's failure to confer fully before bringing this motion.

**2) Roblox's Excessive Interrogatories ("ROGs") Violate Rule 33**

Roblox has served approximately 80 RFPs and 50 RFAs for each child and their parent – 289 of which Plaintiffs have answered. Now Roblox demands answers to compound ROGs that exceed Rule 33's presumptive limits. Roblox's counting "evade[s] [these limits] through the device of joining as 'subparts' questions that seek information about discrete separate subjects." *Int'l Petroleum Prods. & Adds. Co., Inc. v. Black Gold S.A.R.L.*, 2020 WL 4673947, at *5 (N.D. Cal. Aug. 12, 2020) (Illman, J.) (cleaned up). Its request to serve even more ROGs should be denied.[5]

"ROGs 9-11," which Plaintiffs have answered, should count as Roblox's **9th-29th ROGs.** Each discrete subpart can be "fully answered without addressing the other subparts." *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, 2020 WL 8996760, at *2 (N.D. Cal. July 9, 2020). "[D]iscrete or separate questions should be counted as separate interrogatories," even if "they are joined by a conjunctive word and may be related." *Sonista, Inc. v. Hsieh*, 2005 WL 8177499, at *1 (N.D. Cal. Nov. 7, 2005); *see also In re Soc. Media Litig.*, 2024 WL 5190206, at *2 (N.D. Cal. Dec. 20, 2024). Each further "involves at least four discrete inquiries that count separately: facts, persons, documents, and the 'manner and method' by which [Plaintiffs] came by such information." *Johnson v. Cate*, 2014 WL 6978324, at *5 (E.D. Cal. Dec. 9, 2014).

"ROG 12" should count as Roblox's **30th and 31st** as it asks for "ALL bases" supporting two separate legal contentions: 1) Roblox's duty, and 2) its breach thereof. Ex. 5, at 10. Because each contention is "supported by different facts," it constitutes a distinct ROG. *MCC Controls v. Hal Hays Constr.*, 2020 WL 6034321, at *4 (C.D. Cal. July 23, 2020). "ROG 13" comprises, at least, Roblox's **32nd-36th** because it asks for "all bases" on multiple claims in the case**.** *See Bovarie v. Schwarzenegger*, 2011 WL 719206, at *2 (S.D. Cal. Feb. 22, 2011); *see also Philips N. Am. LLC v. PKI Healthcare, Inc.*, 2020 WL 3031614, at *3 (C.D. Cal. Mar. 10, 2020). With two subclasses for each of the five causes of action, *see* ECF No. 115 at pp. 43-47, this comprises at least five ROGs. *Bovarie*, 2011 WL 719206, at *2; *see MCC Controls*, 2020 WL 6034321, at *4.

**3) Roblox Must Fully Respond to Plaintiffs' ROG 2**

Roblox initially understood that ROG 2 asked it to "take the amount of Robux purportedly received by Roblox" in fees taken from VCW transactions "and convert it to a monetary amount." Ex. 6, at 32-33. Months later, Roblox belatedly objected that its "plain language" doesn't ask for any such conversion. Ex. 6, at 31. Roblox now refuses to provide this conversion because it refuses to admit that its virtual currency has any economic value, despite Judge Chhabria's ruling to the contrary, ECF No. 65 at 3-5, and the company's representations that Robux have a corresponding value in USD, ECF No. 163 at 67 & n.63. Contrary to Roblox's new position, the plain text of ROG 2 asks Roblox to provide a description of the amount of "dollars . . . received . . . as a result of" fees imposed on transactions, consistent with the parties' awareness that Roblox does not collect fees on Robux transactions in dollars. Ex. 7 at 27. An answer requires no sophisticated "analyses and computations," but simply a conversion rate that *Roblox would use* to convert Robux to dollars, which is exclusively within Roblox's possession, custody, and control. *Fine v. Kan. City Life Ins. Co.*, 2024 WL 4351612, at *5 (C.D. Cal. Mar. 22, 2024) (compelling ROG response for "calculations . . . based on" defendants' own "terms and formulas" and data). Accordingly, the Court should order an answer to this Interrogatory that converts the Robux figures that Roblox has provided into dollars, or the conversion rate that it would use to do so. *See Gentz v. Twenty-First Century Fox, Inc.*, 2021 WL 6104411, at *5 (C.D. Cal. Oct. 13, 2021) (contemplating production of "information solely within the [Defendant's] possession" required for calculations.).

---

[5] Contrary to Roblox's statement that the "relevance or proportionality" of these ROGs are not contested, the parties have not agreed to brief these issues at this time.

   */s/ Tiana Demas*

**COOLEY LLP**
TIANA DEMAS*
(tdemas@cooley.com)
KEVIN T. CARLSON*
(ktcarlson@cooley.com)
MARIAH YOUNG*
(mayoung@cooley.com)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone: (312) 881-6500

KRISTINE FORDERER (278745)
(kforderer@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
3 Embarcadero Ctr., 20th Fl.
San Francisco, California 94111-4004
Telephone: (415) 693-2000

**COOLEY LLP**
ROBBY L.R. SALDAÑA (356226)
(rsaldana@cooley.com)
CAITLIN MUNLEY*
(cmunley@cooley.com)
1299 Pennsylvania Ave., NW, Suite 700
Washington D.C. 20004-2400
Telephone: (202) 842-7800

*Attorneys for Defendant and Cross-Claimant Roblox Corporation*
(*Admitted *Pro Hac Vice*)

   */s/ Andre M. Mura*

**GIBBS MURA LLP**
ANDRE M. MURA (SBN 298541)
JAKE M. SEIDMAN (SBN 347953)
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9717
Email:  amm@classlawgroup.com
        jms@classlawgroup.com

**JENNINGS PLLC**
CHRISTOPHER D. JENNINGS (*phv*)
TYLER B. EWIGLEBEN (*phv*)
WINSTON S. HUDSON*
P.O. Box 25972
Little Rock, Arkansas 722211
Telephone: (501) 247-6267
Email:  chris@jenningspll.com
       tyler@jenningspllc.com
       winston@jenningspllc.com

**WEITZ & LUXENBERG, PC**
JAMES J. BILSBORROW
AARON FREEDMAN (*pro hac vice*)
700 Broadway
New York, New York 10003
Telephone: (212) 558-5500
Email:  jbilsborrow@weitzlux.com
       afreedman@weitzlux.com

| | |
|---|---|
| **LEVIN SEDRAN & BERMAN**<br>CHARLES E. SCHAFFER<br>510 Walnut Street, Suite 500<br>Philadelphia, Pennsylvania 19106<br>Telephone: (214) 592-1500<br>Email: cschaffer@lfsblaw.com | **LEEDS BROWN LAW, P.C.**<br>BRETT R. COHEN<br>One Old Country Road, Suite 347<br>Carle Place, New York 11514<br>Telephone: (516) 873-9550<br>Email: bcohen@leedsbrownlaw.com |

*\*Admitted pro hac vice*

*Counsel for Plaintiff and the Proposed Class*