James Bilsborrow (*pro hac vice*)
  jbilsborrow@weitzlux.com
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Phone: (212) 558-5500
Fax:    (212) 344-5461

[Additional Attorneys for Plaintiff Listed on Back Cover]

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARACELY SOUCEK, individually and as next friend of minor Plaintiff, N.S., YANIV DE RIDDER, individually and as next friend of minor Plaintiff T.D., DANIELLE SASS, individually and as next friend of minor plaintiff, L.C., and on behalf of all others similarly situated, | Civil Action No.: 3:23-cv-04146-VC-RMI |
| | **SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES** |
| Plaintiffs, | |
| v. | |
| ROBLOX CORPORATION, SATOZUKI LIMITED B.V., PAUL CLISH, JULIAN DURAK, PATRICK DIETZ, ADUR1TE LIMITED, STUDS ENTERTAINMENT LTD., BASED PLATE STUDIO LLC, SHANE SELINGER, SPATIC LLC, ARISTEIDIS STATHOULOPOULOS, RBLXWILD ENTERTAINMENT LLC, RBLX WILD ENTERTAINMENT, BORIS SAID JR., NICHOLAS CARLO, and JOHN DOE #1 | **DEMAND FOR JURY TRIAL** |
| Defendants, | |
| ROBLOX CORPORATION, | |
| Cross-Plaintiff, | |
| v. | |
| SATOZUKI LIMITED B.V., RBLXWILD ENTERTAINMENT LLC, STUDS ENTERTAINMENT LTD., BASED PLATE STUDIO LLC, and JOHN DOE #1 | |
| Cross-Defendants. | |

Plaintiffs Aracely Soucek, individually and as next friend of minor Plaintiff, N.S, Yaniv De Ridder, individually and as next friend of minor Plaintiff, T.D., and Danielle Sass, individually and as next friend of minor Plaintiff, L.C., bring this Class Action Complaint against Defendants Roblox Corporation ("Roblox"), Satozuki Limited B.V. ("Satozuki"), Paul Clish, Julian Durak, Patrick Dietz, Adur1te Limited ("Adurite"), Studs Entertainment Ltd. ("Studs"), Based Plate Studio LLC ("Based Plate"), Shane Selinger, Spatic LLC ("Spatic"), Aristeidis Stathoulopoulos, RBLXWild Entertainment LLC ("RBLXWild"), RBLX Wild Entertainment ("RBLXWild 2"), Boris Said Jr., Nicholas Carlo, and John Doe #1, and make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a case concerning an illegal gambling operation that is preying on children nationwide. As described herein, Plaintiffs bring this action on behalf of themselves, their minor children, and proposed classes of all those similarly situated against Roblox and its co-conspirators, Satozuki, Studs, and RBLXWild. Together, these entities maintain and facilitate an illegal gambling ecosystem, targeted at children, through Roblox's online gaming platform and digital currency.

2.      Defendant Roblox is one of the largest and fastest growing gaming platforms in the world, designed to bring users together in a virtual universe, or "metaverse." It is a free online gaming platform that allows users to interact with one another, play games, and purchase items inside the Roblox virtual universe.

3.      Indeed, Roblox is the largest entertainment website in the world for kids, with over 60 million daily active users. The vast majority of Roblox's users are children under the age of 18. In fact, at least 70% of Roblox's users are under the age of 18, with more than half of all users being under the age of 13.

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES

4.      Roblox's market dominance in the children's video game sector is so large that Roblox itself claims that more than 75% of the kids aged 9-12 in the United States use Roblox on a monthly basis.[1]

5.      These children spend an enormous amount of time and money exploring the Roblox world day in and day out.

6.      However, even though these children have made Roblox extremely successful, Roblox systematically takes advantage of them.

7.      In its relatively short existence, Roblox has been surrounded by a deluge of negative attention as a dangerous space for children. Multiple child advocacy agencies and consumer protection groups have spoken out about Roblox's targeting of children with deceptive commercial advertising and addictive content.[2]

8.      Roblox has also been the subject of countless press articles describing how Roblox's child users are exposed to predatory conduct from other—primarily adult—users on the platform, including "simulated violence, simulated sex, [and] simulated rape."[3]

9.      Roblox, along with its co-Defendants, is behind another growing problem that has ensnared hundreds of thousands of its adolescent and teenage users, causing substantial financial loss—illegal online gambling.

10.     Roblox allows users to make purchases of virtual items to be used in games or apps within the Roblox ecosystem. These purchases can be made with Roblox's digital currency, called Robux, which are exclusively created by and "only sold by the Roblox company."[4]

11.     Robux are purchased using a credit card or digital payment service and users then use this digital currency to buy items within the various games hosted in the Roblox universe.

---

[1] Roblox, YOUTUBE (July 31, 2020, 3:45), https://www.youtube.com/watch?v=G00GlCJc0mU.

[2] *See, e.g.*, https://www.newsnationnow.com/investigation/roblox-advertising-practices/.

[3] James Crummel, *Roblox risks: hidden dangers in your child's favorite games*, ABC27.COM (Feb. 25, 2020), https://www.abc27.com/local-news/roblox-risks-hidden-dangers-in-your-childs-favorite-games/.

[4] https://en.help.roblox.com/hc/en-us/articles/203313200-Ways-to-Get-Robux

12.    Because most of Roblox's users are minors, Roblox allows adults, such as a user's parents, to purchase Robux for their children to use on the Roblox ecosystem. Roblox also sells gift cards that permit the user—often a minor child—to make purchases of Robux.

13.    In its Terms of Service, Roblox misleadingly represents to parents and other users that its platform and digital currency are safe. Further, Roblox explicitly represents that "*experiences that include simulated gambling, including playing with virtual chips, simulated betting, or exchanging real money, Robux, or in-experience items of value are not allowed*."[5]

14.    But this representation is false, or misleading at best. In fact, Roblox allows third-party gambling websites, including the highly popular online casinos purportedly operated by Defendants Satozuki, Studs, Based Plate, Spatic, RBLXWild, and RBLXWild 2 (collectively, the "Gambling Website Defendants"), to use the Roblox website to accept online bets using Robux, to be placed on games at the Gambling Website Defendants' virtual casinos. Roblox also facilitates the Gambling Website Defendants' efforts to track bets, complete transactions, wager Robux, and satisfy wagers in their digital casinos.

15.    In addition to its Terms of Service, Roblox maintains other channels of communication with its users and the parents of minor users, including but not limited to its advertising, promotional and marketing materials, FAQs on its website, the account creation and sign-up process, its Parental Controls hub on minors' accounts, and its solicitation of parents' email addresses and credit card information to enable various features and take various actions on minors' accounts, including the purchase of Robux.

16.    Roblox nowhere discloses to its users or the parents of minor users that its platform facilitates illegal child gambling using Robux.

17.    All of the gambling transactions take place on Roblox's website under Roblox's virtual roof and are monitored by Roblox.

---

[5] https://en.help.roblox.com/hc/en-us/articles/203313410-Roblox-Community-Standards (emphasis added)

1    18.    Roblox maintains an internal ledger or other recording system whereby it tracks both

2  the flow and/or exchange of Robux on its platform, as well as the individuals and organizations

3  involved in such transactions.

4    19.    Roblox registers each and every exchange of Robux for gambling credits and allows

5  illicit gambling, by minors, using the Roblox website. All of the gambling transactions require

6  Roblox's affirmative support to continue. Roblox profits from these transactions to the detriment of

7  its users, including its minor, adolescent, and teenage users.

8    20.    Here is how the process works: Roblox's minor users first purchase Robux through

9  the Roblox website, using either their own money, a parent's credit card, or gift cards they possess.

10  Next, the minor user navigates to one of the Gambling Website Defendants' virtual casinos that

11  exist outside the Roblox ecosystem. Then, the user links their Robux wallet on Roblox's website to

12  the gambling website. And finally, once the minor-user's wallet is linked, the gambling website

13  converts the minor user's Robux into credits that can only be wagered in their virtual casinos.

14  Throughout this process, Roblox keeps track of all of these electronic transfers and has knowledge

15  of each transfer that occurs in its ecosystem.

16    21.    Importantly, while a minor user must navigate off Roblox's website to access the

17  online casino and their new digital gambling credits, in reality, the minor user's Robux have not

18  been converted to another currency and they never leave Roblox's website. Instead, the Gambling

19  Website Defendant merely take control of the Robux, while providing a corresponding number of

20  "credits" (which are also called Robux) on their third-party gambling websites.

21    22.    Further, because the exchange of Robux must occur within the Roblox website,

22  Roblox allows the Gambling Website Defendants to establish a Robux exchange within the Roblox

23  ecosystem.

24    23.    If a user happens to win at Defendants' casino games, thereby increasing their total

25  credits, the Gambling Website Defendants transfer back to the user the additional value in Robux.

26  If, as is more likely and common, a minor user loses their credits in the Gambling Website

27  Defendants' virtual casino, those Defendants retain the user's Robux. The gambling credits function

28  just like chips in a brick and mortar casino; users "buy in" using their Robux, obtain chips, gamble

until they lose their money or wish to cash out, and, if they increase their credits, they cash those credits out in exchange for Robux.

24.    This entire exchange of Robux occurs on the Roblox platform with Roblox's knowledge and support, and Robux never leave the Roblox ecosystem unless and until they are cashed out for fiat currency.

25.    Roblox facilitates the Gambling Website Defendants' use of its website to offer illegal gambling opportunities to minor users.

26.    Roblox could, of course, prohibit and/or stop the Gambling Website Defendants from utilizing the Roblox ecosystem and digital currency to facilitate illegal gambling but it does not.

27.    This is because Roblox is significantly enriched by this illegal scheme. After the Gambling Website Defendants take Robux from adolescent and teenage users and ultimately convert the Robux into cash, Roblox charges a 30% fee on this transaction, which amounts to millions in annual cash fees.

28.    Roblox and the Gambling Website Defendants have concocted an illegal gambling ring to target the adolescents and teenagers who comprise the majority of Roblox's users. Roblox knows its Robux are being used to place bets in illegal virtual casinos, directly facilitates this transfer within the Roblox ecosystem, then imposes a fee on the ill-gotten gains accrued by the Gambling Website Defendants when they seek to convert Robux to cash.

29.    Plaintiffs' minor children—like hundreds of thousands of others across the United States—fell prey to this illegal scheme and were victimized out of real money. As a result, the Gambling Website Defendants have earned millions off the backs of those too young to legally gamble, all the while providing Roblox with a sizable cut of the money they've illegally obtained.

30.    Accordingly, this is a civil action seeking to put an end to this illegal scheme. Through this class action lawsuit, Plaintiffs seek monetary damages, restitution, and declaratory relief on behalf of proposed Classes of minor victims.

**PARTIES**

31.    Minor Plaintiff N.S. and his mother and next friend, ARACELY SOUCEK, are citizens and residents of the State of CALIFORNIA.

1      32.     Minor Plaintiff T.D. is a former resident of the state of CALIFORNIA and a current

2  resident of Belgium, and his father YANIV DE RIDDER is a resident of the State of CALIFORNIA.

3      33.     Minor Plaintiff L.C. and his mother and next friend, DANIELLE SASS, are citizens

4  and residents of the State of NEW YORK.

5      34.     Defendant Roblox Corporation is a corporation existing under the laws of the State

6  of Delaware, with its principal place of business located at 970 Park Place, San Mateo, California

7  94403. Roblox regularly conducts and transacts business in this District and throughout the United

8  States.

9      35.     Defendant Satozuki Limited B.V. ("Satozuki") is a foreign company registered in

10  accordance with the laws of Curaçao, with its principal office at Abraham de Veerstraat 9,

11  Willemstad, Curaçao. Satozuki was the purported owner and operator of the popular gambling

12  website RBXFlip.

13      36.     Defendant Paul Milan Clish is an American citizen and co-owner and operator of the

14  Defendant Satozuki Limited B.V.. Based upon information and belief, Defendant Clish created,

15  owned, and operated the popular Roblox gambling website RBXFlip under the online moniker "ST"

16  or "Str4t" and currently lives in San Antonio, Texas.

17      37.     Defendant Julian Durak is the managing director of Defendant Satozuki Limited

18  B.V. Upon information and belief, Mr. Durak resides in Spain.

19      38.     Defendant Patrick Dietz was a co-owner and operator of the popular Roblox

20  gambling website RBXFlip. Defendant Dietz also founded, owns, and operates Defendant

21  ADUR1TE LIM1TED. Upon information and belief, Defendant Dietz goes by the online moniker

22  "PD" and resides in Henderson, Colorado.

23      39.     Defendant ADUR1TE LIMITED ("Adurite") is a foreign company with its principal

24  office in the British Virgin Islands. Defendant Adurite purportedly operates the popular Roblox

25  virtual content marketplace Adurite.com, which can purportedly be reached by email at

26  business@adurite.com.

27

28

1    40.    Defendant Studs Entertainment Ltd. ("Studs") is a foreign company purportedly

2  registered to do business in Cyprus. Studs purportedly owned and operated the popular gambling

3  website Bloxflip and regularly conducts and transacts business throughout the United States

4    41.    Defendant and Cross-Defendant Based Plate Studio LLC ("Based Plate") is a foreign

5  company registered to do business in St. Vincent and the Grenadines. Upon information and belief,

6  Based Plate was created as a successor entity to Studs and regularly conducts and transacts business

7  throughout the United States. As of mid-2024, Based Plate was the purported owner of Bloxflip.com

8  on that website.

9    42.    Defendant SPATIC LLC ("Spatic") is a domestic business, registered in accordance

10  with the laws of the state of Delaware, with its principal office in Cummaquid, Massachusetts.[6]

11  Upon information and belief, Ms. Carolyn Selinger is a "manager" of Spatic LLC, and Defendant

12  Selinger is its "registered agent."[7] Upon information and belief, Spatic is a purported co-owner and

13  operator of the popular gambling website Bloxflip.com and regularly conducts and transacts

14  business throughout the United States. *See* ECF No. 139, at 2.

15    43.    Defendant Shane Selinger is an American citizen who co-owns and operates Studs,

16  Spatic, Based Plate, and Bloxflip.com. Upon information and belief, Defendant Selinger uses the

17  online moniker "Psy" and resides in either Massachusetts or Texas. *See* ECF No. 139, at 2.

18    44.    Defendant Aristeidis Stathoulopoulos is a foreign citizen who co-owns and operates

19  Studs, Based Plate, and Bloxflip.com. *See* ECF No. 139, at 2. Upon information and belief,

20  Defendant Stathoulopoulos resides in Greece and uses the online monikers "Aris," "Erys," and

21  "Aris_ByteG."

22

23

24
_____

[6] *See* https://www.bizapedia.com/ma/spatic-llc.html, last visited June 1, 2025.

25
[7] At some point after Spatic was formed, Defendant Selinger registered another entity called "Spatic, LLC"

26  as a "Texas Foreign-Limited-Liability Company" (File Number 0805078226) with a registered agent named
Evan Stafford, who is located at 1900 Barton Springs Rd., Austin, TX 78704. *See* Bizapedia,

27  https://www.bizapedia.com/tx/spatic-llc.html (last visited May 31, 2025).However, this company also has a
"domestic state" of Massachusetts, the same  "principal address" in Cummquid, Massachusetts  and has

28  Shane Selinger listed as the "Governing Person." *Id.*

45.     Defendant RBLXWild Entertainment LLC ("RBLXWild") is a domestic corporation that existed under the laws of Delaware. RBLXWild purportedly owned and operated the popular gambling website, rblxwild.com. RBLXWild regularly conducted and transacted business throughout the United States. [8]

46.     Defendant RBLX Wild Entertainment ("RBLXWild 2") is a domestic corporation, existing under the laws of Wyoming, that purportedly owned and operated the popular gambling website rblxwild.com. RBLXWild 2's principal office is purportedly located in Sheridan, Wyoming. RBLXWild 2 regularly conducts and transacts business throughout the United States.

47.     Defendant Boris Said Jr. is an American citizen who owned and operated rblxwild.com, and served as the President, Secretary, and Treasurer of RBLXWild and RBLXWild 2. Upon information and belief, Defendant Said Jr resides in Escondido, California and uses the online moniker "Dogs" and "DogsPlayingPoker."

48.     Defendant Nicholas Carlo is an American citizen who owned and operated RBLXWild, RBLXWild 2, and rblxwild.com. Upon information and belief, Defendant Carlo uses the online moniker "Aspire" and resides in San Diego, CA.

49.     Defendant and Cross-Defendant John Doe #1 is an unknown individual who owned and operated the gambling website Bloxmoon.com ("Bloxmoon"). Upon information and belief, John Doe #1 owns and operates the entity that acquired RBLXWild, which has owned and operated the website RBLXWild.com ("RBLXWild") since at least July 2024.

**JURISDICTION AND VENUE**

50.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and Plaintiffs and members of the putative Classes are citizens of a state that is different from the states in which Defendants are citizens.

---

[8] Over one year after Defendant RBLXWild Entertainment LLC accepted service and failed to appear, Defendant Said Jr.'s personal counsel informed Plaintiffs' counsel that Defendant dissolved Defendant RBLXWild Entertainment LLC and that he had another company called RBLX Wild Entertainment in Wyoming.

1    51.    This Court has personal jurisdiction over Defendants because they have their

2 principal place of business in California, and/or because they have contacts with California that are

3 so continuous and systematic that they are essentially at home in this state. All Defendants regularly

4 conduct and solicit business in California, provide products and/or services by or to persons in the

5 State of California, and derive substantial revenue from the same.

6    52.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial

7 part of the events or omissions giving rise to Plaintiffs' and the Class Members' claims occurred in

8 this District, and Defendants are subject to the Court's personal jurisdiction.

9                                      **BACKGROUND FACTS**

10    53.    Rampant fraud and predatory behavior have been reported on Roblox for years.

11 According to multiple reports and investigations, Roblox has failed to properly deal with fraud on

12 the platform, wage disputes, sexual content, and abusive and predatory behavior displayed by some

13 users and developers.[9]

14    54.    Unfortunately, the users most often victimized by these practices are those that are

15 the most vulnerable. Younger users, many of whom are under the age of 16, and who make up the

16 majority of the users on the Roblox platform, are more likely to be targets of predatory or sexual

17 behavior and more likely to be tricked, scammed, or defrauded out of their money or items.

18    55.    Furthermore, these users are most at risk in the illegal gambling enterprise facilitated

19 by Roblox. In 2022, between 60% and 80% of high school students reported that they had gambled

20

21

22

23

24

25

———————————————

26 [9] Simon Parkin, *The trouble with Roblox, the video game empire built on child labour*, The Guardian
27 (Jan. 9, 2022), https://www.theguardian.com/games/2022/jan/09/the-trouble-with-roblox-the-video-game-empire-built-on-child-labour; Burt Helm, *Sex, lies, and video games: Inside Roblox's*
28 *war on porn*, FASTCOMPANY (Aug. 19, 2021), https://www.fastcompany.com/90539906/sex-lies-and-video-games-inside-roblox-war-on-porn.

1  for money in the past year.[10] According to the Massachusetts Department of Public Health, problem

2  gambling impacts 4-8% of youth, compared to just 1% of adults.[11]

3    56.    Roblox and the Gambling Website Defendants act in concert to profit from gambling

4  games meant to attract kids. The interface of these websites is more like a mix between a video

5  game and a casino, and as a result, is more attractive to underage users.

6    57.    And further, because of the creation of Robux, a digital currency with real-world

7  value in a children's game, the child users on Roblox have become targets of sophisticated gambling

8  operations without their parents' knowledge of such dangers.

9    58.    As a result of the illegal gambling enterprise, Roblox has made substantial revenue

10  via its transaction fees and Robux sales to the tune of tens of millions of dollars, seeking to turn its

11  minor customers' gambling struggles into revenue. The Gambling Website Defendants, in turn, have

12  unlawfully enticed Roblox's minor users to wager Robux in their online casinos, manipulating

13  adolescents and teenagers out of digital currency worth tens of millions of dollars.

14    ***I.   The Roblox Platform***

15  **A. Overview**

16    59.    Roblox was created in 2004 by David Baszucki and Erik Cassel, and it was released

17  in 2006. Roblox is a 3D digital world that is entirely user generated, built by a community of nearly

18  7 million developers. Most of the users on Roblox are kids, with estimates showing that more than

19  half of all U.S. kids under the age of 16 are active on Roblox.[12]

20

21  _____

22

23  [10] Allie Weintraub et al., *Online gambling among youth worries experts, one teen says sports betting was an 'escape,'* ABC News (Dec. 8, 2022), *available at* https://abcnews.go.com/US/online-gambling-youth-worries-experts-teen-sports-betting/story?id=94577595 (last visited June 13, 2023).

24

25  [11] *See* Dept. of Public Health, *Teens gambling. It's a risk.* Mass.gov (visited on May 1, 2023), https://www.mass.gov/service-details/teens-gambling-its-a-risk.

26

27  [12] Taylor Lyles, "Over half of US kids are playing Roblox, and it's about to host Fortnite-esque virtual parties too", The Verge (July 21, 2020), https://www.theverge.com/2020/7/21/21333431/roblox-over-half-of-us-kids-playing-virtual-parties-fortnite.

28

60.    The Roblox platform consists of two primary layers: the Roblox Client and the Roblox Studio. The Roblox Client is the application that allows users to explore 3D digital worlds through the eyes of an avatar, which each user customizes with clothing, gear, animations, simulated gestures, emotes, and other objects. The Roblox Studio is the toolkit developers and creators use to build, publish, and operate 3D experiences and content for the Roblox Client. These developers build games and objects that can be sold to users on the platform. Purchases can be made in the Avatar Shop using Robux, the digital currency created for the platform.

61.    Underlying everything on the Roblox platform is its digital currency—Robux. Although the platform is free, nearly all experiences require the user to spend Robux in order to participate in the activities on the platform.

62.    As set forth in more detail below, Robux is sold on the Roblox platform in various quantities. Robux can then be spent on the platform to purchase various items and/or pay for in-game experiences. Robux can also be converted back into real-world currency via the Developer Exchange Program.

63.    Roblox earns revenue by, *inter alia*, selling Robux to users so that they can make in game purchases. Additionally, Roblox benefits financially from every transaction made on its platform by taking a 30% commission fee on all user-to-user transactions.

**B.   Roblox's In-Game Currency—Robux.**

64.    Robux are the foundation of the entire Roblox platform. Roblox states in its March 2022 Quarterly Report that "[w]e generate substantially all of our revenue through the sales of our virtual currency, 'Robux,' which players can use to purchase virtual items sold by our developer and creator community on the platform."[13]

65.    The Robux currency is not a cryptocurrency, but a digital currency. This means transactions are not publicly recorded on a blockchain and Robux are not transferrable off platform.

---

[13]   *See* Roblox Corporation, Form 10-Q, March 31, 2022, *available at* https://d18rn0p25nwr6d.cloudfront.net/CIK-0001315098/ea0f0408-7ea4-48f8-a127-fef1fdb69aa3.pdf, at 59.

1  Roblox, however, knows and keeps track of the acquisition and transfer of its digital currency on its
2  platform.

3      66.    Although it is a digital currency, Robux have actual monetary value. One Robux is
4  currently equal to $0.0125. Users can purchase Robux on Roblox at any time using a credit or debit
5  card. For instance, Roblox sells 400 Robux for $4.99 and 800 Robux for $9.99. Additionally, users
6  may subscribe to Robux Premium and receive a monthly allowance of Robux.

7      67.    All transactions on Roblox are executed using Robux. Robux can also be exchanged
8  for real dollars.

9      68.    Until 2013, Roblox did not allow Robux to be exchanged for real dollars. Then in
10 2013, Roblox implemented the Developer Exchange Program, through which developers on the
11 platform may exchange Robux for real world currencies.

12     69.    Roblox requires developers that wish to exchange Robux for cash to join the
13 Developer Exchange Program so that Roblox can control the manner in which those developers
14 utilize and interact with the Roblox ecosystem, and so Roblox can more easily monitor Robux
15 exchanges.

16     70.    The advent of the Developer Exchange Program has attracted an enormous amount
17 of users to the platform in search of riches in exchange for developing experiences or items on
18 Roblox. The yearly payout to developers on the platform has continued to increase year over year,
19 with Roblox paying out $500 million to developers in 2021.

20     71.    With that kind of money being exchanged for Robux, it's no surprise the platform
21 has also been overrun with predatory behavior, fraud, and gambling.

22           **II. *Roblox's Illegal Gambling Enterprise***

23     72.    Roblox, in conjunction with the Gambling Website Defendants, has directly assisted
24 in creating the unregulated market of virtual casino games that run adjacent to and rely on the Roblox
25 platform.

26     73.    The extreme pace of growth of Roblox use among children has opened up a whole
27 new market to online gambling enterprises. Children, who previously could not access the funds to
28 participate in online gambling, now have, collectively, billions of Robux at their disposal.

74.    Many times, children are able to gamble money on these virtual casinos without their parents' knowledge because they use Robux to facilitate the gambling transactions. Parents unwittingly provide the gambling funds to their children under the mistaken belief that their children are using Robux to purchase items that will enhance or accessorize a legitimate and/or harmless gaming experience.

75.    As set forth herein, however, Roblox and the Gambling Website Defendants work together to divert adolescent and teenage users to third-party gambling websites where Robux can be gambled away on virtual games of chance, enriching both Roblox and the Gambling Website Defendants.

### A. The Illegal Gambling Websites

76.    A growing secondary market for gambling is present on Roblox. This system has included four primary third-party gambling websites (the "Illegal Gambling Websites") that featured games of chance such as coin flips, roulette, slot machines, treasure chests, as well as other pure gambling games like blackjack and dice.

77.    The four primary Illegal Gambling Websites were Rbxflip.com, which was owned and operated by Defendants Clish, Dietz, and Durak, who created, owned, and operated Satozuki with the sole purpose of serving as a corporate shield for their illegal gambling enterprise; Bloxflip.com, which was owned and operated by Defendants Selinger and Stathoulopoulos, who created, owned, and operated Studs and Based Plate with the sole purpose of serving as corporate shield for their illegal gambling enterprise; and RBLXWild.com, which was owned and operated by Defendants Said Jr. and Carlo, who created, owned, and operated RBLXWild and RBLXWild 2 with the sole purpose of serving as corporate shields for their illegal gambling enterprise before purportedly selling the website to Defendant Doe # 1, who operated the fourth primary Illegal Gambling Website, bloxmoon.com.

78.    The Illegal Gambling Websites are each part of Roblox's Developer Exchange Program, allowing them to exchange Robux acquired from Roblox's minor users for real-world currency.

1    79.    Additionally, each Illegal Gambling Website laundered their ill-gotten Robux and

2  Roblox items through Defendant Adurite's Roblox marketplace, which was created, owned, and

3  operated by Rbxflip.com co-owner, Defendant Dietz.

4    80.    To date, Adurite allows minor Roblox users to repurchase their lost Robux and

5  Roblox items for real money from bot accounts on the Roblox Platform.

6    81.    Each Illegal Gambling Website used Adurite and sold Roblox items collected from

7  their underage gambling enterprise on the website for Robux and real money.

8    82.    Each of the Illegal Gambling Websites operated on or in concert with Roblox and

9  the Gambling Website Defendants, facilitating an exchange of Robux for gambling credits that

10  occurs on the Roblox platform. Indeed, Robux never leave the Roblox platform until they are

11  exchanged for cash. Once a minor user's credits are exhausted, the Gambling Website Defendants

12  cashed out their newly-acquired Robux and provided Roblox with its 30% transaction fee.

13    83.    These websites all had substantially similar interfaces, which made it easy for a

14  Roblox user to sign up, link their Roblox account, and begin gambling. The interface from RBXFlip

15  and Bloxflip are set forth below:



1
2
3
4
5
6
7
8
9
10



11

84.    The Illegal Gambling Websites were never registered with any state or licensed to operate a casino or online gambling operation.

85.    Users of the Illegal Gambling Websites could deposit funds onto the website by linking their Roblox account and depositing Robux.

86.    Prior to Roblox attaining popularity, these types of gambling websites did not have access to a vast underage online audience with funds to gamble.

87.    However, because of the Roblox ecosystem, millions of children now have transferrable funds in the form of Robux that they can gamble with.

88.    As a result, most of the Illegal Gambling Websites' audience have been children who use Roblox. The Illegal Gambling Websites did not engage in any kind of age verification or identification processes to prevent underage users from participating.

89.    Furthermore, although many of the games on the Illegal Gambling Websites were traditional gambling games, some were newer betting games such as "flip," cases, and "crash," which were more like video games where bets are made or lootboxes involving Roblox items, making them more appealing to a younger audience of Roblox users.

90.    Each of the Illegal Gambling Websites intentionally exploited children in California to obtain those Californian children's property for its own profit.

1    91.    Each of the Illegal Gambling Websites has conducted regular business in California,

2  by soliciting and using children's Roblox security cookies and login credentials, including those of

3  users in California, and has extracted property from users in California through its underage

4  gambling scheme.

5    92.    In the regular course of its business, each of the Illegal Gambling Websites cultivated

6  an audience of children by enticing Roblox's largely minor userbase with gambling games that

7  appeal to children, including Californian children.

8    93.    Each Illegal Gambling Website collected information from Roblox users who linked

9  their Roblox accounts to that Illegal Gambling Website, including geolocation information.

10    94.    Each of the Illegal Gambling Websites appealed to, ensnared, and profited

11  handsomely from its exploitation of children in California, including Minor Plaintiffs in this case.

12    95.    Because the exchange of Robux for gambling credits occurs on the Roblox platform,

13  using Roblox's technology and digital currency, Roblox had knowledge of these exchanges and

14  facilitates them. When the Gambling Website Defendants cashed out their ill-gotten gains, Roblox

15  also earned money on the cash-out fees. In short, all Defendants have worked together to enrich

16  themselves and each other at the expense of their adolescent and teenage users.

17    ***1.    RBXFlip***

18    96.    Launched in April 2019 by Defendant Clish, Rbxflip.com was the first major third-

19  party gambling website to operate with Roblox. As its name suggests—"RBX" is short for Robux—

20  the site was designed for and dependent upon Roblox's legions of minor users gambling away

21  Robux purchased through Roblox's ecosystem.

22    97.    RBXFlip described itself as "the leading peer 2 peer marketplace with fun & fair

23  games" where users can bet Robux to play casino-style games.[14]

24

25

26

27  _____

28  [14] https://rbxflip.com/coinflip?modal=FAQ

98.    RBXFlip expressly acknowledged that it operated as a gambling website, stating in section 1.6 of its terms of service that the "games" contained on its website "shall mean Casino, Live Casino, Sportsbook, cards, and other games."[15]

99.    Before even signing in, RBXFlip prominently displayed two casino "games" on its homepage: Coinflip and Roulette. Both "games" allowed players to bet Robux and/or Roblox items:



100.    RBXFlip's homepage further acknowledged, "Gambling means for the majority of our Users, entertainment, fun and excitement. But we also know that for some of our Users gambling has negative side effects."[16]

101.    But yet, RBXFlip incentivized problematic gambling by offering "bonuses, coupons, loyalty points [and] prizes."[17] To obtain these benefits, users were required to satisfy RBXFlip's "wagering requirements," which were "the total amount of bets you must stake before the bonus and any accrued winnings are transferred into your cash balance and can be withdrawn."[18]

102.    Although RBXFlip's terms of service stated that "Persons who are under age of 18 years are not allowed to use the Website and/or any services available on it," the site's own

---

[15] *Id.*
[16] https://rbxflip.com/coinflip?modal=responsible-gambling
[17] https://rbxflip.com/coinflip?modal=ToS, at 16.7
[18] https://rbxflip.com/coinflip?modal=ToS, at 16.10.2.11.

1    promotional material contradicted its claim. In a video entitled, "RBXFlip Login Tutorial And How

2    to Win Roblox Gambling," Defendant Clish stated that the first "Requirement to Gamble" on "our"

3    website was that the Roblox user had an "Account age 13+."[19]

4        103.    Defendant Clish continued by demonstrating how any user could connect their

5    Roblox account to RBXFlip and how, when gambling on its website, the user's Robux were "sent

6    to one of our storage bots for it to hold for the duration of the game." This storage bot was located

7    on Roblox's website and used Roblox's technology to exchange Robux for gambling credits, with

8    Roblox's knowledge. The storage bots, or other accounts controlled or used by RBXFlip, were also

9    part of Roblox's Developer Exchange, allowing RBXFlip to cash out its ill-gotten Robux for real-

10   world currency.

11       104.    All participants in the Developer Exchange must register with Roblox, meaning

12   Roblox has a full understanding of the entities that participate through its Developer Exchange.

13       105.    Minor users were easily able to create an account by copy and pasting their Roblox

14   "cookie"—their unique security code—when prompted.

15       106.    This "cookie" is information Roblox generates on its website and tracks, thus

16   providing it with knowledge of when a Roblox user's "cookie" is linked to another website such as

17   RBXFlip and facilitating the transfer of Robux to this illegal online casino.

18       107.    RBXFlip also failed to utilize age verification measures, meaning that any user,

19   regardless of their actual age, could access the site and place bets using their Robux.

20       108.    While RBXFlip stated that its casino games were not accessible "from the United

21   States," this warning did not actually prohibit users in the United States from gambling on the

---

[19] Unknown PERSON, RBXFlip Login Tutorial and How to Win Roblox Gambling,
YouTube.com, (May 11, 2021) at 0:05-0:18, https://www.youtube.com/watch?v=2jwhcFgmB6Q
(last accessed Jun. 1, 2025).

website and was easily bypassed by pressing a bright blue "continue" button that appeared on the website's entry screen, as shown below:



109.    Roblox failed to prevent RBXFlip from operating its online casino using Robux. Indeed, between April 2019 and July 2023, Roblox only tried to curtail RBXFlip's conduct by demanding that RBXFlip stop using its copyrights on the RBXFlip website. Roblox did not, at this time or any other, demand that RBXFlip cease operating a gambling operation dependent upon the Roblox ecosystem and the Robux digital currency.

110.    Shortly after RBXFlip's launch, Defendant Clish brought on two other individuals to develop and support RBXFlip, including "Ly," who upon information and belief is Julian Durak, and another individual with the online moniker, "PD," who upon information and belief is Defendant Dietz.[20] In the YouTube interview, Defendant Clish stated that Ly was the developer of RBXFlip, while PD provided support, including "getting a lot of the bots" used by RBXFlip to facilitate trades on the Roblox platform.[21] Defendant Clish apparently gave Ly a "long-term"

---

[20] *See RoZone, Interviewing The FOUNDER Of RBXFlip!, YouTub.com (Dec. 29, 2020), https://www.youtube.com/watch?v=J88I7Y3JF-s* (last accessed Jun. 1, 2025)
[21] *Id.* at 5:30-54.

1   ownership interest in Defendant Satozuki so that Ly could "always have this income coming in."[22]

2   Defendant Clish also stated that he sold Defendant Dietz "lifetime ownership shares in RBXFlip.[23]

3          111.    Upon information and belief, Defendant Satozuki was created solely for the purpose

4   of acting as a corporate shield for Defendants Clish, Dietz, and Durak's illegal gambling enterprise.

5   and did not have any assets besides its purported ownership of Rbxflip.com.

6          112.    Upon information and belief, Defendant Satozuki never had any assets besides its

7   purported ownership of Rbxflip.com and was never affiliated with any business ventures besides

8   Defendants' illegal gambling website, Rbxflip.com.

9          113.    Upon information and belief, while Satozuki was registered to do business in

10  Curacao, it did not actually exist, had no offices, website, emails, bank accounts, nor employees

11  (besides Defendants Clish, Dietz, and Durak), and did not follow any corporate formalities (such as

12  board meetings, record keeping, filed taxes etc.).[24]

13         114.    In fact, RBXFlip did not have any employees besides Defendants Clish, Durak, and

14  Dietz until 2021.[25]

15         115.    Upon information and belief, Rbxflip.com was actually run out of Defendant Clish's

16  house in San Antonio, and all developers, bot creators, and support staff were paid out from accounts

17  under Clish's personal control, which he funded with proceeds from his, Defendant Dietz', and

18  Defendant Durak's illegal gambling enterprise.

19         116.    Upon information and belief, Defendants Clish, Durak, and Dietz personally

20  managed and controlled all proceeds and assets of Satozuki, a corporation set up for the sole purpose

21  of operating an illegal gambling enterprise, as their own, including by transferring its funds and

22  assets to themselves.

23

24  _____

25  [22] See RoZone, Interviewing The FOUNDER Of RBXFlip | 2021, YouTube.com, (Dec. 5, 2021) at
    7:39-45, https://www.youtube.com/watch?v=ELeXsMr2wco&t=46s (last accessed Jun. 1, 2025).

26  [23] Id. at 6:44-54
    [24] At a deposition taken in connection with this case, Defendant Clish refused to answer any questions related

27  to Satozuki Limited, and whether the company had any assets, liabilities, or followed corporate formalities.
    [25] See RoZone, Interviewing The FOUNDER Of RBXFlip! YouTube.com (Decmber 28, 2020) at 4:50-5:00,

28  https://www.youtube.com/watch?v=J88I7Y3JF-s&t=221s (last accessed Jun. 1, 2025).

1    117.    To that end, Defendants Clish, Dietz, and Durak's illegal gambling enterprise was

2    hugely successful; by the end of 2021 (two years before the website was taken offline), RBXFlip

3    had over 43,810 active users and Defendants had generated over 1,322,000,000 Robux in fees—

4    approximately $14,000,000.[26] Defendant Clish stated that this number represented approximately

5    3.5% of the total value wagered on RBXflip—approximately $400,000,000.[27]

6    118.    In or around August 2023, after years of running their illegal gambling website,

7    Defendants Clish, Dietz, and Durak took Rbxflip.com offline.

8    119.    Upon information and belief, Defendant Satozuki was dissolved shortly after

9    Plaintiffs attempted to serve them.

10    ### 2. Bloxflip

11    120.    Bloxflip, like RBXFlip, was an online casino catering to Roblox's adolescent and

12    teenage users. As of 2022, it was one of the most visited websites in the world with over 5.7 million

13    monthly visitors.

14    121.    Bloxflip described itself as a "betting service that allows users to play a variety of

15    chance-based games ('Games') using . . . the virtual in-game currency used by players of Roblox

16    ('Robux')."[28]

17    122.    The site further declared that it was "the #1 social casino for wagering ROBUX!"[29]

18    123.    When a user navigated to Bloxflip's page, they were encouraged to "Deposit . . .

19    ROBUX . . . to receive a balance on the site to start playing!"[30]

20

21

22

23
_____

24    [26] *See* Grrt, *RBXFlip The $450 Million Child Gambling Website*, https://www.youtube.com/watch?v=fcKGx-k5rtk, 2:20-30 (Dec. 2, 2021), (last visited Jun. 1, 2025).

25    [27] *See* RoZone, Interviewing The FOUNDER Of RBXFlip! YouTube.com (Decmber 28, 2020) at 6:25-35, https://www.youtube.com/watch?v=J88I7Y3JF-s&t=221s (last accessed Jun. 1, 2025).

26    [28] https://bloxflip.com/terms

27    [29] https://bloxflip.com/, at FAQ

28    [30] https://bloxflip.com/, at FAQ



124.    Bloxflip's homepage featured several ways to gamble a user's Robux, with games like "Crash," "Blackjack," "Slots," "Plinko," and "Slide (Roulette)," and included a live feed of each "bet" and the current "payout" from each of these casino games.[31]

---

[31] A tutorial for how to play each game can be found on YouTube in the video entitled, "A Beginners Guide to BloxFlip." *See* https://www.youtube.com/watch?v=35Lkf3SBwJU&t=7s.

125.    Although Bloxflip claimed that users must be over eighteen to gamble, the website did not use any age verification software and users under the age of eighteen were freely able to access the website and gamble. All that was needed to log in to Bloxflip was a "Roblox username."

126.    Further, Bloxflip encouraged minor users to promote its illegal gambling website by offering free Robux to users who promoted Bloxflip on the popular social media product TikTok.

127.    For example, Bloxflip entered into a paid partnership with TikTok influencer RizJhadan_roblox, who has over 250,000 followers, to advertise its illegal gambling website to children. One video, entitled, "Finding Roblox Games, So you Don't Have Too!!! Check Our BloxFlip in Bio!!!" is marked as a "paid partnership," and has been viewed over 1.7 million times and "liked" over 113,000 times.[32] In this sponsored post, the TikTok influencer tells his adolescent audience that in just "10 minutes" he was able to win "over 100k plus" worth of Robux, and states that "you guys can too."

128.    As the above example demonstrates, Bloxflip was designed to attract Roblox's minor users who could illegally gamble on the site using their Robux. For this reason, Bloxflip entered a paid partnership with an influencer whose name incorporates the word "roblox," and the illegal gambling website's name itself is a reference to the Roblox gaming platform.

---

[32] https://www.tiktok.com/@rizjhadn_roblox/video/7144340043300097281?lang=en

129.    Although Bloxflip's website stated that "Robux have no cash value and are for entertainment purposes only," its terms of service describe the process by which a user can "Cashout your ROBUX into your account."[33]

130.    When a user attempted to withdraw Robux from Bloxflip's casino website, Bloxflip notified the user that "ROBLOX imposes a **30% marketplace fee** on all withdraws and the ROBUX will go into your pending balance for 3-7 days."[34]



131.    Bloxflip, like RBXFlip, used storage bots to accept and hold minor users' Robux on the Roblox platform. These storage bots were located on Roblox's website and used Roblox's technology to exchange Robux for gambling credits, with Roblox's knowledge. The storage bot, or other accounts controlled or used by Bloxflip itself, was also part of Roblox's Developer Exchange, allowing Bloxflip to cash out its ill-gotten Robux for real-world currency. All participants in the Developer Exchange must register with Roblox, meaning Roblox has a full understanding of the entities that participate through its Developer Exchange.

---

[33] https://bloxflip.com/terms

[34] *Id.* (emphasis in original)

132.    In a 2022 interview, Bloxflip's founder stated that he was "inspired" to create Bloxflip when he "saw the success of RBXFlip."[35] He further claimed that he designed the website to offer "PvP gambling" that focused on betting with Robux, which "open[ed] [the site] to more people." The Bloxflip founder also proclaimed that Bloxflip was the "#1 Roblox gambling site." Again, Bloxflip, like RBXFlip, was intended to capture Roblox's audience of minors, all while enriching both the operators of the website and their collaborators at Roblox.

133.    While Bloxflip's website stated that it was purportedly owned and operated by Defendant Studs Entertainment (and eventually Defendant Based Plate), this was merely an attempt to protect Defendants Selinger and Stathouloupoulos from liability for running an illegal gambling website.

134.    For example, Defendant Studs was listed as the purported owner of Bloxflip.com when Plaintiffs filed their initial complaint. However, shortly after Plaintiffs filed their lawsuit and attempted to serve Studs in Cyprus, the company dissolved, and the website reported that Defendant Based Plate, a company purportedly registered to do business in Saint Vincent, was the new owner of the website.

135.    However, in reality, both Defendant Studs and Defendant Based Plate were owned by Defendant Selinger and Defendant Stathouloupoulos, who go by the online monikers "Psy" and "Aris," and are operated out of the United States.

136.    In a 2022 interview discussing the meteoric rise to success of Bloxflip in its first few months, "Psy," or Defendant Selinger, stated that he was "really happy to see that Aris and I, our work has paid off of this."[36]

137.    Bloxflip's early success was due, in part, to its partnership with Adurite, which is owned by Defendant Dietz. In a 2022 YouTube interview, Defendant Selinger stated that "we're good friends with the owners of Adurite, we've known them for quite some time now, and in terms

---

[35] https://www.youtube.com/watch?v=yFaR33G5yhQ

[36] *See* RoZone, Interviewing the Founder of Bloxflip, YouTube (Apr. 21, 2022), https://www.youtube.com/watch?v=yFaR33G5yhQ&t=11s, at 3:25-3:38, (last visited Jun 1, 2025).

of partnering with them instead of creating our own marketplace, we just wanted to get" the Roblox item withdrawal feature out "as soon as possible, and Adurite does have quite a large amount of sellers, and we wanted to tap into that, and provide our users with as many Limiteds as possible. Although users can deposit limiters into Bloxflip and sell them for a balance, we didn't see that feature being used widespread so we just integrated Adurite as well so we could provide as much as possible as fast as possible."[37]

138.    To continue growing, Defendants Selinger and Stathoulopoulos hired several others to run Bloxflip's social media accounts. These individuals were paid from Defendants' personal bank accounts and reported directly them. These employees included individuals with the online monikers "Libra," "RedVesa," "Zara," "Weiss"/weitss_0x" and "Alfonso," who frequently referred to themselves as the "Bloxflip team."

139.    Upon information and belief, Defendants Studs and Based Plate were created solely for the purpose of acting as a corporate shield and did not have any assets besides their purported ownership of Bloxflip.com.

140.    Upon information and belief, Defendants Studs and Based Plate never conducted any business besides their purported affiliation with the illegal gambling website, Bloxflip.com.

141.    Upon information and belief, while Studs was registered to do business in Cyprus, it did not actually exist, had no offices, website, emails, nor employees (besides Defendants Selinger and Stathoulopoulos), and did not follow any corporate formalities (such as board meetings, record keeping, filed taxes etc.).

142.    Defendants Selinger and Stathoulopoulos used Studs and Based Plate as personal piggy banks, and in turn, profited handsomely from their operation of an underage gambling website.

143.    Upon information and belief, Defendants Selinger and Stathoulopoulos personally managed and controlled all proceeds and assets of Studs and Based Plate, corporations set up for

[37] *Id.* at 8:50-9:50.

1  the sole purpose of operating an illegal gambling enterprise, as their own, including by transferring
2  its funds and assets to themselves.

3      144.    In or around December 2024, after years of running their illegal gambling website,
4  Defendants Selinger and Stathoulpoulos took bloxflip.com offline.

5      ***3.    RBLXWild***

6      145.    RBLXWild.com was an illegal gambling website that preyed on minor Roblox users.

7      146.    RBLXWild.com was created by Defendant Said Jr, who profited from illegal
8  underage gambling.

9      147.    Defendant Carlo—who started as a minority owner of rblxwild.com and eventually
10 became the sole owner of RBLXWild 2 and rblxwild.com—joined two months after Said Jr. created
11 Rblxwild.

12     148.    Shortly after creating RBLXWild.com, Defendant Said Jr. registered RBLXWild and
13 RBLXWild 2, along with Defendant Carlo, as corporate shields for their illegal gambling enterprise.

14     149.    While RBLXWild and RBLXWild 2 were registered under the laws of Delaware and
15 Wyoming, respectively, neither were actual, functioning companies.

16     150.    Neither RBLXWild nor RBLXWild 2 had an actual office, phones, websites, office
17 supplies, accounting departments, email accounts, employees that were paid out through the
18 companies' bank accounts, regular meetings, nor a functioning board, and neither observed
19 corporate formalities, such as maintaining records.

20     151.    Rather, these companies were formed and existed solely to shield Defendants Said
21 Jr. and Carlo from liability.

22     152.    Upon information and belief, Defendants Said Jr. and Carlo personally managed and
23 controlled all proceeds and assets of RBLXWild and RBLXWild 2, corporations set up for the sole
24 purpose of operating an illegal gambling enterprise, as their own, including by transferring its funds
25 and assets to themselves.

26

27

28

153.    While it was still active, rblxwild.com opened to a homepage that featured many games in which minors may gamble, including "BlackJack," "Coinflip," "Plinko," and more:



154.    RBLXWild's homepage was designed to appeal to children and resemble a virtual arcade, with the website featuring cartoonish images to advertise each casino game.

155.    RBLXWild exchanged Robux for gambling credits on the Roblox platform using a storage bot, just like the other Gambling Website Defendants. This storage bot was located on Roblox's website and used Roblox's technology to exchange Robux for gambling credits, with Roblox's knowledge. The storage bot, or other accounts operated or used by RBLXWild itself, was also part of Roblox's Developer Exchange, allowing RBLXWild to cash out its ill-gotten Robux for real-world currency. All participants in the Developer Exchange must register with Roblox, meaning Roblox has a full understanding of the entities that participate through its Developer Exchange.

156.    The site explained that users could increase their "site balance," and thereby continue to gamble, "by depositing more . . . Robux."[38]

---

[38] https://rblxwild.com/?modal=general-tos

157.    RBLXWild, like the other Illegal Gambling Websites, also allowed users to withdraw Robux from their accounts, explaining that any amount withdrawn will be reduced by the "30% fee that Roblox charges."

158.    Although RBLXWild claimed that users must be over eighteen to access the site, it employed no age verification mechanisms to prohibit those under the age of eighteen from accessing the website and placing bets.

159.    Further, RBLXWild paid social media influencers to advertise and promote RBLXWild to children.[39] Several videos available on YouTube, for example, suggest that minor users can make enormous profits by gambling on RBLXWild. These videos have titles such as "I won over 5 million R$ In this Battle! (RBLXWild),"[40] and "I Won R$50,000 On RBLXWild! (Real Balance)."[41] The use of "R$" in these titles and others is a reference to Robux.

160.    Indeed, the name RBLXWild was, itself, a reference to Roblox and its digital currency, Robux, and the site is designed to attract Roblox's minor uses who would wager the ecosystem's digital currency, all while RBLXWild and Roblox share the profits.

161.    And their illegal gambling scheme worked; through the beginning of 2023, rblxwild.com generated "five figures" in revenue every day. In a May 2024 interview, Defendant Carlo stated that "at that time, I think you could saw we was like the second biggest site in the industry. We didn't have much competition, like, we weren't really stressing because we knew that people would always choose us . . . I think we was making about five figures a day."[42]

162.    Shortly after Plaintiffs filed their initial complaint, Defendant Carlo, who was the majority owner and operator of RBLXWild 2 and rblxwild.com at that point, sold rblxwild.com to the owner of bloxmoon.com.

---

[39] https://www.youtube.com/watch?v=2OPF9PWvi8A (stating that this video, with over 60,000 views, is sponsored by "Wild").

[40] https://www.youtube.com/watch?v=LzVi8Rd-99E

[41] https://www.youtube.com/watch?v=Odf3I9X3nZM

[42] *See* RoZone, *Interviewing the FOunder of RBLXWild!*, https://www.youtube.com/watch?v=nHiTIX1M9_c (May 18, 2024), at 3:32-3:45, (last visited Jun. 1, 2025).

163.    In a May 2024 interview, Defendant Carlo stated that that "the lawsuit came, I think it was like it came one week before we shut down . . . when we got that lawsuit we just kind of panicked.[43] He continued, stating "I don't really have any regrets because **we was going to be doomed anyways because of the lawsuit, we kind of had to close down, you know? Like all our other sites, people we spoke with and stuff they all closed down as well. So I wouldn't say I have any regrets because we couldn't ignore lawsuit. We couldn't just keep operating.**"[44] He further stated that "bloxmoon owns 100% of rblxwild and that's their side now, so 100% they own it all."

**4.  Bloxmoon**

164.    Launched in or around November 2022, Bloxmoon.com was another illegal gambling website that referred to itself as a "Premium Roblox Gambling" website.

165.     Bloxmoon required users to enter their Roblox credentials or Roblosecurity cookie to create an account, make deposits of Robux and/or Roblox items, and gamble.

166.    On or around August 30, 2023, Bloxmoon acquired RBLXWild.com from Defendant Carlo.

167.    Both before and after the purported acquisition, Bloxmoon offered nearly identical games to RBLXWild and the other Illegal Gambling Websites, such as cases, case battles, dice, roulette, blackjack, crash, mines, plinko, slots, coinflip, hilo, and keno.

168.    The Bloxmoon website did not identify any owning or operating entity. On information and belief, Defendant John Doe #1, owns and operates Bloxmoon. Upon information and belief, Doe #1 goes by the online moniker "Brown" on Discord. The Bloxmoon.com domain was registered in September 2022. The website registration records for Bloxmoon.com include a mailing address of Almatinskaya, KZ.

169.    Bloxmoon.com was functionally identical to RBLXWild.com. The sites had the exact same deposit and withdrawal methods, and users who "deposit" Robux on RBLXWild.com saw the same "deposit" amount available for use on Bloxmoon, and vice versa. This is consistent

---

[43] *Id*. at 0:45-1:16,.

[44] *Id*. at 4:36-5:09,.

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES

with Defendant Carlo, a.k.a "Aspire's" statement that he sold RBLXWild to Bloxmoon's owners in mid-2023 and that Bloxmoon's owner (Doe #1) owned both sites.

170.    Until 2024, Bloxmoon only permitted users to create accounts by providing their Roblox credentials or "Roblosecurity" cookie.

171.    Bloxmoon exchanged Robux for gambling credits on the Roblox platform using a storage bot, just like the other Gambling Website Defendants. This storage bot was located on Roblox's website and used Roblox's technology to exchange Robux for gambling credits, with Roblox's knowledge. The storage bot, or other accounts operated or used by Bloxmoon itself, was also part of Roblox's Developer Exchange, allowing Bloxmoon to cash out its ill-gotten Robux for real-world currency. All participants in the Developer Exchange must register with Roblox, meaning Roblox has a full understanding of the entities that participate through its Developer Exchange.

172.    However, while user could technically win and withdraw Robux, the vast majority lost. In fact, "users lost a total of $11.4 m[illion] on the website since it launched in late 2022."[45]

***B. Roblox's Facilitation, Control, and Profit Sharing with the Illegal Gambling Websites***

173.    As set forth herein, each of the Illegal Gambling Websites worked closely with Roblox and was intended to attract Roblox's minor users, who can freely wager their Robux.

174.    Roblox knowingly and intentionally allowed the Illegal Gambling Websites to operate in the Roblox ecosystem, access the Roblox platform, and facilitated the accessibility of illegal online casinos to its minor users. Further, because each of the Gambling Website Defendants were required to register themselves, or through a proxy, in Roblox's Developer Exchange Program, Roblox knew and understood that these entities move large quantities of Robux through the Roblox platform and in exchange for real-world currency.

175.    Because Robux is not a cryptocurrency, but merely a digital currency, it cannot be removed from the Roblox platform. This means that when a user "deposits" Robux onto an Illegal

---

[45]Van Der Merwe, B., *Illegal casinos are using Roblox to draw children into online gambling* (Dec. 17, 2024), SkyNews https://news.sky.com/story/illegal-casinos-are-using-roblox-to-draw-children-into-online-gambling-13273519 (last visited Jun. 1, 2025).

1  Gambling Website, something else is really going on. The user's Robux do not leave the Roblox

2  platform, but instead are transferred to another Roblox account controlled by a Gambling Website

3  Defendant. Meanwhile, the user's Illegal Gambling Website account showed that it holds the

4  equivalent amount of gambling credits, which are also called "Robux" by each of the Gambling

5  Website Defendants.

6      176.    Roblox monitored and recorded each of these illegal transactions yet did nothing to

7  prevent them from happening.

8      177.    Here is how the practice worked. When a Roblox user visited an Illegal Gambling

9  Website, the user linked their Roblox account to the gambling website by providing their login

10  credentials or Roblox Security Token. Once the Illegal Gambling Website had this information, the

11  user entered the amount of Robux they wish to deposit. The Illegal Gambling Website, now having

12  control of the user's account, automatically initiated a removal of Robux from the user's account

13  without any additional input from the user and then credits the user's gambling account with the

14  equal amount of Robux.

15      178.    However, the Illegal Gambling Website was not actually transferring Robux from

16  the Roblox platform to the Illegal Gambling Website. Instead, the Gambling Website initiated a

17  transaction on Roblox between the user and a "stock" Roblox account (the "Stock Account")

18  controlled by the Illegal Gambling Website. Because Roblox did not allow users to gift Robux to

19  each other, the Illegal Gambling Website initiates a sale of a worthless item or experience from the

20  Stock Account to the user for the amount of Robux the user wishes to deposit on the gambling

21  website.

22      179.    The Illegal Gambling Website now held the user's Robux in their Stock Account on

23  the Roblox system, and the user's account on the Illegal Gambling Website was credited with a

24  digital credit also labeled "Robux," with which the user can now gamble.

25      180.    Upon conclusion of gambling, a user may wish to withdraw their Robux from the

26  Illegal Gambling Website. Just like the initial deposit process, the withdrawal process was not an

27  actual withdrawal, but merely a subtraction of the "Robux" on the gambling account and transfer of

28

1   actual Robux back to the user's Roblox account by one of the Illegal Gambling Website's Stock
2   Accounts.

3       181.    For instance, after the withdrawal of Robux, a user could see that their account now
4   contained the Robux withdrawn from the Illegal Gambling Website. If the user reviewed their "Sale
5   of Items" page on their Roblox account, they could  see that they received those Robux in exchange
6   for the sale of a useless, or dummy, item, or experience.

7       182.    However, after the withdrawal, the user's balance of Robux would be less than the
8   amount they had on the Illegal Gambling Website. This is because Roblox takes a 30% fee on all
9   transactions on the platform.

10      183.    For example, if the user withdrew 1000 Robux from an Illegal Gambling Website,
11  they would only receive 700 Robux after the transfer from the Stock Account and Roblox will take
12  the other 300 as a transaction fee.

13      184.    Roblox also takes a 30% fee on the original "deposit" transaction that occurs as a
14  result of the user "depositing" Robux onto the Gambling Website.

15      185.    Therefore, Roblox collected a 30% fee off every transaction that deposits or
16  withdraws funds on the Illegal Gambling Websites, earning Roblox millions in real-world revenue.

17      186.    As described above, Roblox earned nearly all of its $2 billion in annual revenue from
18  selling users Robux and charging transaction fees on all transactions on the platform.

19      187.    Robux are an item of value equal to real-world currency. As described above, they
20  have an exchange rate with the dollar and Roblox regularly pays out hundreds of millions of dollars
21  to developers on its Robux exchange.

22      188.    As a result, Roblox profited from the gambling losses incurred by its users on the
23  Illegal Gambling Websites and even charges fees on the transactions that facilitate the gambling.

24      189.    Furthermore, Roblox monitors and facilitates these exchanges of Robux, and tacitly
25  approves the Illegal Gambling Websites' use of Stock Accounts to "hold" Robux in exchange for
26  gambling credits that Roblox's minor users can utilize to place bets on the Illegal Gambling
27  Websites.

28

1   **C. Roblox Knows These Transactions are Facilitating Illegal Gambling but Continues to Allow the Transactions and Collect Fees Anyway.**

2   

3   190.    Roblox knows that the Gambling Website Defendants use these Stock Accounts to

4   facilitate transactions on the platform and that they are accessing Roblox servers in order to facilitate

5   Illegal Gambling Website user transactions. Indeed, all such Accounts are required to register with

6   Roblox through its Developer Exchange Program.

7   191.    Indeed, Roblox monitors each and every transaction for Robux on its website.

8   192.    Roblox has acknowledged in court filings that it can identify, track, and disable

9   accounts using the Roblox platform for illegal purposes. For example, in a March 28, 2023, filing

10  in the Northern District Court of California, Roblox and the plaintiffs filed a Notice of Motion and

11  Motion in Support of Class Settlement as part of *Jane Doe v. Roblox Corporation*, Case 3:21-cv-

12  03943-WHO (N.D. Cal. March 28, 2023). The filings stated that as part of the settlement terms,

13  Roblox and the plaintiff had identified 311 accounts on its platform that spent over 80,000 Robux

14  (equaling over $1000) engaging in suspicious behavior like purchasing the same virtual item from

15  the same seller multiple times and creating and purchasing their own virtual item, which is exactly

16  the procedure the Gambling Website Defendants utilize to exchange Robux for gambling credits.

17  Roblox excluded these accounts from the settlement class and named them the "laundering

18  exclusion" because it suspected they were engaged in money laundering or other suspicious

19  activities.

20  193.    The "laundering exclusion" class in Roblox's settlement statements describes the

21  type of transactions that the owners of the Illegal Gambling Websites use to facilitate the transfer of

22  Robux on and off of the gambling platforms.

23  194.    Roblox admits that it can identify such suspicious activity and even labels it as so but

24  refuses to ban these accounts. Furthermore, Roblox continues to earn a 30% commission on each of

25  these suspicious transactions, reaping extraordinary profits.

26  195.    Roblox can also monitor and identify third-party websites, such as the Illegal

27  Gambling Websites, that access its computers and servers in order to facilitate the gambling

28

1  transactions. Indeed, Roblox actively monitors these websites and keeps track of their exchange of
2  Robux for gambling credits.

3      196.    Many of the Illegal Gambling Websites claimed to have had millions of dollars'
4  worth of Robux wagered on their platforms. For example, RBXFlip's owner shared a screenshot in
5  a 2020 interview showing that over 7 billion Robux (equal to over $70 million) had been wagered
6  on the platform:[46]



19      197.    Further, the owner stated in 2021, that RBXFlip made ten times as much revenue
20  that year as it had previously, indicating the amount of Robux bet on that one platform is likely in
21  the hundreds of millions.[47]

22

23

---

24  [46] RoZone,"Interviewing The FOUNDER Of RBXFlip!," YouTube (Dec. 28, 2020, at 1:08),
25  https://www.youtube.com/watch?v=J88I7Y3JF-s.

26  [47] RoZone, "Interviewing The FOUNDER Of RBXFlip | 2021," YouTube (Dec. 5. 2021),
27  https://www.google.com/search?q=Interviewing+The+FOUNDER+Of+RBXFlip+%7C+2021&oq
    =Interviewing+The+FOUNDER+Of+RBXFlip+%7C+2021&aqs=chrome..69i57j69i61.453j0j7&s
28  ourceid=chrome&ie=UTF-8#fpstate=ive&vld=cid:88c7b884,vid:ELeXsMr2wco.

198.  Roblox cannot credibly claim it is unaware of the Illegal Gambling Websites since numerous Roblox-affiliated social media influencers have gone public about their concerns that the site is permitting children to be preyed upon.

199.  As far back as at least 2019, Roblox social media celebrity "KreekCraft" (@KreekCraft), who has 1.7 million followers, tweeted that he "Heard a lot about rbxflip today. For the people unaware it's a Roblox robux gambling site. 1. It is ILLEGAL for anyone not an adult to gamble. 2. Don't use it. You'll be banned." Roblox frequently interacts with "KreekCraft" on social media and monitors his Twitter account. As but one example:



200.  Accordingly, Roblox knew or should have known that one of its primary social media personalities was raising alarms about RBXFlip. But Roblox did nothing because, unbeknownst to

1  "KreekCraft" and his followers, Roblox was making significant profit off RBXFlip's gambling
2  operation.

3      201.    Further, in a January 2019 tweet sent to its more than 95,000 followers, the popular
4  Twitter account "Roblox Trading News" tweeted that it "Got into an argument with the owner of
5  the Roblox gambling site @rbxflip in which he bragged about how he was a 'multi-millionaire' off
6  his site only to edit that portion out after I replied, 'You made all your money off the backs of
7  children losing thousands of dollars.'"[48] "Roblox Trading News" is a social media personality
8  followed and monitored by Roblox.

9      202.    Another popular Roblox social media personality, "SharkBlox" (@SharkBloxYT),
10  with over 264,900 followers, replied to this tweet and stated that these sites [the Illegal Gambling
11  Websites] were "Also probably gonna get kids addicted to gambling. Sites like these suck. No body
12  wins at gambling except the website owners, I just wish more people realized that."[49]

13      203.    Additionally, both BloxFlip and RBLXWild have mounted social media ad
14  campaigns with several videos totaling over one million views:

15
16
17
18
19  
20
21
22
23
24
25
26
_____

27  [48] https://twitter.com/SharkBloxYT/status/1616172836736876552
28  [49] *Id.*



204.    Roblox is well aware of these highly visible campaigns to entice Roblox's minor users to gamble and, although certain social media personalities may not know it, Roblox has been greatly enriched by these campaigns.

205.    Roblox is complicit in this illegal gambling scheme because it worked in concert with and continues to allow the Illegal Gambling Websites to operate on its platform and assesses a 30% fee on all transactions of Robux to and from the Illegal Gambling Websites. This means Roblox has likely earned hundreds of millions in fees charged on transactions related to illegal gambling.

206.    Furthermore, Roblox executives are personally aware of the Illegal Gambling Websites' existence and Roblox knows that the Websites do nothing to prevent its minor users from gambling on the Websites with Robux.

207.    Roblox understands the ease with which minor users are able to link their Robux wallet to the Illegal Gambling Websites and begin illegally gambling but has failed for years to prevent such transactions.

1

### III. Plaintiffs' Experiences

2

#### A. Aracely Soucek and Minor Plaintiff N.S.

3      208.    Plaintiff Aracely Soucek is the parent and next friend of N.S. N.S. is a minor who

4    plays Roblox using his own user-created account. Minor Plaintiff N.S. is a resident of California

5    and is represented in this action by his mother and next friend, Plaintiff Aracely Soucek.

6      209.    Minor Plaintiff N.S. has purchased thousands of Robux and gift cards that were under

7    his complete ownership and control. Minor Plaintiff also purchased thousands of Robux through the

8    use of his mother's credit card.

9      210.    Minor Plaintiff N.S. utilized his in game currency to gamble on the Illegal Gambling

10    Websites.

11      211.    Specifically, Minor Plaintiff N.S. has paid money to RBLXWild, Bloxflip, RBXFlip,

12    and other Illegal Gambling Websites through Defendant Roblox.

13      212.    Minor Plaintiff N.S. has gambled tens of thousands on Robux playing gambling

14    games on RBLXWild, Bloxflip, RBXFlip, and other Illegal Gambling Websites.

15      213.    At the time that Minor Plaintiff N.S. began wagering Robux on RBLXWild, Bloxflip,

16    RBXFlip, and other Illegal Gambling Websites, Plaintiff Aracely Soucek was not aware that her son

17    was using his Roblox to engage in gambling activities.

18      214.    After discovering Minor Plaintiff N.S.'s use of his Roblox account, credentials, and

19    currency to gamble, Plaintiff Aracely Soucek spent time and money to prevent Minor Plaintiff N.S.'s

20    access to Roblox and the Illegal Gambling Websites and redress harms caused by said access.

21      215.    Roblox's facilitation of the Illegal Gambling Websites, and Minor Plaintiff's N.S.'s

22    subsequent use of them, has caused Plaintiff Aracely Soucek pain and suffering.

23      216.    If Roblox had made Plaintiff Aracely Soucek aware, through its myriad channels of

24    communications, that its platform facilitates an illegal gambling enterprise, Plaintiff Aracely Soucek

25    would have taken different actions with respect to Minor Plaintiff N.S.'s use of the platform.

26

#### B. Yaniv De Ridder and Minor Plaintiff T.D.

27      217.    Plaintiff Yaniv De Ridder is the parent and next friend of T.D.. T.D. is a minor who

28    plays Roblox using his own user-created account. Minor Plaintiff T.D. is a former resident of

1  California and current resident of Belgium. T.D. is represented in this action by his father and next

2  friend, Plaintiff Yaniv De Ridder, who is a resident of California, where he intends to remain.

3      218.    Minor Plaintiff T.D. created and used his Roblox accounts while residing in

4  California.

5      219.    Minor Plaintiff T.D. has purchased thousands of Robux through the use of his

6  father's credit card, which was linked to his Roblox account, and gift cards that were under his

7  complete ownership and control.

8      220.    Minor Plaintiff T.D. utilized his in game currency to gamble on the Illegal Gambling

9  Websites from his home in California.

10     221.    Specifically, Minor Plaintiff T.D. has used and paid money to RBLXWild, Bloxflip,

11  RBXFlip, Bloxmoon, and other Illegal Gambling Websites, through Defendant Roblox and through

12  use of his Roblox account and credentials.

13     222.    Minor Plaintiff T.D. gambled on RBXFlip, RBLXWild, Bloxflip, Bloxmoon, and

14  other Illegal Gambling Websites in California.

15     223.    Minor Plaintiff T.D. has lost tens of thousands in Robux playing gambling games on

16  RBLXWild, Bloxflip, Bloxmoon, RBXFlip, and other Illegal Gambling Websites.

17     224.    At the time that Minor Plaintiff T.D. started wagering Robux on RBLXWild,

18  Bloxflip, RBXFlip, Bloxmoon, and other Illegal Gambling Websites, Plaintiff Yaniv De Ridder was

19  not aware that his son was using Robux to engage in gambling activities.

20     225.    After discovering Minor Plaintiff T.D.'s use of his Roblox account, credentials, and

21  currency to gamble, Plaintiff De Ridder spent time and money to prevent Minor Plaintiff T.D.'s

22  access to Roblox and the Illegal Gambling Websites and redress harms caused by said access.

23     226.    Roblox's facilitation of the Illegal Gambling Websites, and Minor Plaintiff's T.D.'s

24  subsequent use of them, has caused Plaintiff De Ridder pain and suffering.

25     227.    If Roblox had made Plaintiff Yaniv De Ridder aware, through its myriad channels of

26  communications, that its platform facilitates an illegal gambling enterprise, he would have taken

27  different actions with respect to Minor Plaintiff T.D.'s use of the platform.

28

1    *C. Danielle Sass and Minor Plaintiff L.C.*

2    228.    Plaintiff Danielle Sass is the parent and next friend of L.C. L.C. is a minor who plays

3    Roblox using his own user-created account. Minor Plaintiff L.C. is a resident of New York and is

4    represented by his mother and next friend, Plaintiff Danielle Sass.

5    229.    Minor Plaintiff L.C. has purchased thousands of Robux through the use of his

6    mother's credit card and gift cards that were under his complete ownership and control. Minor

7    Plaintiff L.C. utilized his in-game currency to gamble on Bloxflip.

8    230.    Specifically, Minor Plaintiff T.D. has paid money to Bloxflip through Defendant

9    Roblox and through use of his Roblox account and credentials.

10    231.    Minor Plaintiff L.C. has gambled thousands of Robux playing gambling games on

11    Bloxflip.

12    232.    At the time that Minor Plaintiff L.C. was wagering Robux on Bloxflip, Plaintiff

13    Danielle Sass was not aware that her son was using Robux to engage in gambling activities.

14    233.    If Roblox had made Plaintiff Danielle Sass aware, through its myriad channels of

15    communications, that its platform facilitates the illegal gambling of Robux by children, Plaintiff

16    Danielle Sass would have taken different actions with respect to Minor Plaintiff L.C.'s use of the

17    platform.

18    **CLASS ALLEGATIONS**

19    234.    Plaintiffs bring this action individually and on behalf of all others similarly situated.

20    The proposed classes are defined as:

21    **Nationwide Class:**

22    All adult persons in the United States who, during the applicable limitations period,

23    are or were the parent and/or legal guardian of a minor who acquired Robux through

24    the Roblox platform and subsequently wagered and lost some or all of those Robux

25    on any of the Illegal Gambling Websites.

26

27    **California Class:**

28    All adult persons residing in the State of California who, during the applicable

1   limitations period, are or were the parent and/or legal guardian of a minor who
2   acquired Robux through the Roblox platform and subsequently wagered and lost
3   some or all of those Robux on any of the Illegal Gambling Websites.

4

5   **New York Class:**

6   All adult persons residing in the State of New York who, during the applicable
7   limitations period, are or were the parent and/or legal guardian of a minor who
8   acquired Robux through the Roblox platform and subsequently wagered and lost
9   some or all of those Robux on any of the Illegal Gambling Websites.

10

11   235.   The Nationwide Class, California Class, and New York Class, are collectively
12   referred to herein as the "Classes."

13   236.   Excluded from the Classes are Defendants, their subsidiaries, officers, directors, the
14   members of their immediate families, and any entity in which any Defendant has a controlling
15   interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party.
16   Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their
17   immediate families.

18   237.   Plaintiffs reserve the right to modify or amend the definition of the proposed Classes
19   if necessary, before this Court determines whether certification is appropriate.

20   238.   This case is properly brought as a class action under Fed. R. Civ. P. 23(b)(2) and
21   (b)(3) and all requirements are met for the reasons set forth in the following paragraphs.

22   239.   *Numerosity*. The members of the Classes are so numerous that separate joinder of
23   each member is impracticable. Upon information and belief, and subject to discovery, the Classes
24   consist of many thousands of members, the identity of whom are within the exclusive knowledge of
25   Defendants and can be ascertained only by resorting to Defendants' records, discovery, and other
26   third-party sources.

27   240.   *Commonality*. There are numerous questions of law and fact common to the Classes
28   relating to Defendants' business practices challenged herein, and those common questions

predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

- o Whether one or more Defendants engaged in unlawful or unfair conduct prohibited by the California UCL;

- o Whether Defendants, individually or collectively, maintained, owned, operated, or managed gambling websites prohibited by California Penal Code §§ 330a, 330b, and 330.1 *et seq*.;

- o Whether Defendants, individually or collectively, violated 18 U.S.C. § 1955 by operating the gambling businesses described herein;

- o Whether Defendant Roblox accepted payments in connection with unlawful internet gambling in violation of 31 U.S.C. § 5633;

- o Whether Defendants' actions, individually or collectively, constitute negligence per se;

- o Whether Defendants unjustly enriched themselves to the detriment of Plaintiffs and members of the Class;

- o the proper measure of damages; and

- o the declaratory relief to which the Class is entitled.

241.    *Typicality.* Plaintiffs' claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practices engaged in by Defendants, as described herein.

242.    *Adequacy of Representation.* Plaintiffs are adequate representatives of the Classes because Plaintiffs, both individually and on behalf of their minor children, have sustained damage as a result of Defendants' uniform conduct. In addition:

- o Plaintiffs are committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

1    o   There is no hostility of interest between Plaintiffs and the unnamed Class

2        members;

3    o   Plaintiffs anticipate no difficulty in the management of this litigation as a class

4        action; and

5    o   Plaintiffs' legal counsel has the financial and legal resources to meet the

6        substantial costs and legal work associated with this type of litigation.

7    243.   *Predominance.* The questions of law and fact common to the Classes as set forth in

8    the "commonality" allegation above predominate over any individual issues. As such, the

9    "commonality" allegations are restated and incorporated herein by reference.

10   244.   *Superiority.* A class action is superior to other available methods and highly desirable

11   for the fair and efficient adjudication of this controversy. Since the amount of each individual Class

12   member's claim is very small relative to the complexity of the litigation and since the financial

13   resources of Defendants are significant, no Class member could afford to seek legal redress

14   individually for the claims alleged herein. Therefore, absent a class action, the Class members will

15   continue to suffer losses and Defendants' misconduct will proceed without remedy. In addition,

16   even if Class members themselves could afford such individual litigation, the court system could

17   not. Given the complex legal and factual issues involved, individualized litigation would

18   significantly increase the delay and expense to all parties and to the Court. Individualized litigation

19   would also create the potential for inconsistent or contradictory rulings. By contrast, a class action

20   presents far fewer management difficulties, allows claims to be heard which might otherwise go

21   unheard because of the relative expense of bringing individual lawsuits, and provides the benefits

22   of adjudication, economies of scale and comprehensive supervision by a single court.

23   245.   All conditions precedent to bringing this action have been satisfied and/or waived.

24   **FIRST CAUSE OF ACTION**

25   **VIOLATION OF THE "UNLAWFUL PRONG" OF CALIFORNIA'S UNFAIR**

26

27

28

COMPETITION LAW ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)[50]

246.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

247.    This Claim is brought on behalf of the Nationwide Class and the California Class, referred to in this section collectively as the "Class."

248.    Plaintiffs and Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

249.    As a result of engaging in the conduct alleged in this Complaint, Defendants have violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the following laws:

      a.    **California Penal Code § 330a**: Section 330a states that "[e]very person, who has in his or her possession or under his or her control . . . or who permits to be placed, maintained, or kept in any room, space, inclosure, or building owned, leased, or occupied by him or her, or under his or her management or control, any slot or card machine, contrivance, appliance or mechanical device, upon the result of action of which money or other valuable thing is staked or hazarded, and which is operated, or played, by placing or depositing therein any coins, checks, slugs, balls, or other articles or device, or in any other manner and by mean whereof, or as a result of the operation of which any merchandise, money, representative or articles of value, checks, or tokens, redeemable in or exchangeable for money or any other thing of value, is won or lost, or taken from or obtained from the machine, when the result of action or operation of the machine, contrivance, appliance, or mechanical device is dependent upon hazard or chance . . . is

---

[50] Pursuant to this Court's Orders on Defendant's Motion to Dismiss, (Dkt. Nos. 65, 66), Plaintiffs reserve the right to seek leave to reassert their respective claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, (Dkt. No. 1 at ¶¶ 165-82 under this docket and Dkt. No. 1 at ¶¶ 203-22 under the *Gentry* caption prior to consolidation), and their claims for civil conspiracy, (Dkt. No. 1 at ¶¶ 264-72 under this docket and Dkt. No. 1 at ¶¶ 321-28 under the *Gentry* caption prior to consolidation), if and when "discovery on the surviving claims reveals a good-faith basis to reassert" them. (Dkt. No. 65 at 9).

guilty of a misdemeanor." Defendants, individually and collectively, violate section 330a because they operate illegal gambling websites upon which minors are able to, and do, gamble Robux, which have real-world cash value, in virtual games of chance.

b.      **California Penal Code § 330b**: Section 330b states that "[i]t is unlawful for any persons to manufacture, repair, own, store, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to repair, sell, rent, lease, let on shares, lend or give away, or permit the operation, placement, maintenance, or keeping of, in any place, room, space, or building owned, leased, or occupied, managed, or controlled by that person, any slot machine or device, as defined in this section." Defendants, individually and collectively, violate section 330b because they operate illegal gambling websites upon which minors are able to, and do, gamble Robux, which have real-world cash value, in virtual games of chance, including virtual slot machines and other gambling devices defined as illegal under this section.

c.      **California Penal Code § 330.1** *et seq*.: Section 330.1(a) states that "[e]very person who manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends or gives away, transports, or exposes for sale or lease, or offers to sell, rent, lease, let on shares, lend or give away or who permits the operation of or permits to be placed, maintained, used, or kept in any room, space, or building owned, leased, or occupied by him or her or under his or her management or control, any slot machine or device as hereinafter defined, and every person who makes or permits to be made with any person any agreement with reference to any slot machine or device as hereinafter defined, pursuant to which agreement the user thereof, as a result of any element of hazard or chance, may become entitled to receive anything of value or additional chance or right to use that slot machine or device, or to receive any check, slug, token, or memorandum, whether of value or otherwise, entitling the holder to receive anything of value, is guilty of a misdemeanor." Defendants, individually and collectively, violate section 330.1 because they operate illegal gambling websites upon which minors are able to, and do, gamble Robux, which have real-world cash value, in virtual games of chance,

1    including virtual slot machines and other gambling games defined as illegal under this

2    section.

3        d.    **California Penal Code § 337j(a)(1)**: By "operat[ing], carry[ing] on,

4    conduct[ing], maintain[ing], or expos[ing] for play" unlicensed gambling in the state,

5    Defendants, individually and collectively, violate section 337j(a)(1).

6        e.    **California Penal Code § 337j(a)(2)**: By "receiv[ing], directly or indirectly,

7    any compensation or reward or any percentage or share of the revenue, for keeping,

8    running, or carrying on any controlled game," Defendants, individually and collectively,

9    violate section 337j(a)(2).

10       f.    **The Illegal Gambling Business Act of 1970 (18 U.S.C. § 1955) (the**

11   **"IGBA")**: The IGBA makes it a crime to "conduct, finance, manage, supervise, direct,

12   or own all or part" of an illegal gambling business. Defendants, both individually and

13   collectively, violate the IGBA because their respective businesses involve five or more

14   persons, have been in continuous operation for more than thirty days, and violate

15   California's gambling laws as alleged herein.

16       g.    **The Unlawful Internet Gambling Enforcement Act of 2006 (31 U.S.C. §§**

17   **5361-5367) (the "UIGEA")**: The UIGEA makes it illegal for a "person engaged in the

18   business of betting or wagering" to knowingly accept payments "in connection with the

19   participation of another person in unlawful Internet gambling." 31 U.S.C. § 5633.

20   "Unlawful Internet Gambling" is placing, receiving, or transmitting a bet or wager

21   through, at least in part, the Internet where such bet or wager "is unlawful under any

22   applicable Federal or State law in the State or Tribal lands in which the bet or wager is

23   initiated, received, or otherwise made." 15 U.S.C. § 5362(10)(a). Defendants,

24   individually and collectively, violate the UIGEA because they operate the illegal

25   gambling websites upon which minors are able to, and do, gamble Robux, which have

26   real-world cash value, in virtual games of chance.

27       250.   Plaintiffs reserve the right to allege other violations of law, which constitute other

28   unlawful business acts or practices. Such conduct is ongoing and continues to this date.

251.    Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the Class. As described herein, Defendants facilitate and profit from the Robux acquired through the Illegal Gambling Websites. Roblox not only hosts and facilitates the exchange of Robux for gambling credits, but it takes a fee each time the Gambling Website Defendants cash out Robux acquired from Roblox's minor users. But for Defendants' unlawful and unfair conduct, Plaintiffs and Class members would not and could not have lost Robux, which were purchased with real-world currency, and could not have engaged in illegal gambling on the Illegal Gambling Websites. Plaintiffs have suffered injury in fact and have lost money and property as a result of Defendants' conduct.

252.    Accordingly, Plaintiffs, individually and on behalf of N.S., T.D., and L.C., as well as all others similarly situated, seek restitution from Defendants of all money obtained from Plaintiffs and the Class as a result of Defendants' unfair competition.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE "UNFAIR" PRONG OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

253.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

254.    This Claim is brought on behalf of the Nationwide Class and the California Class, referred to in this section collectively as the "Class."

255.    Plaintiffs and Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

256.    The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

257.    As a result of engaging in the conduct alleged herein, Defendants, both individually and collectively, have violated the UCL's proscription against "unfair" business practices.

258.    Defendants' unfair conduct alleged in the Complaint is illegal, immoral and unscrupulous. Under federal and state law, as well as under prevailing ethical principles, establishing a website on which adolescents and teenagers are able to gamble digital currency with

real-world value violates the UCL. The conduct is illegal not only because it deprives children of money and property, but also because it fosters highly addictive behavior in a population that is ill-equipped to deal with the psychological and cognitive impacts. However, because Defendants prioritized profits over legality and morality, they have constructed an ecosystem in which Roblox's adolescent and teenage users can easily and manipulatively fall prey to the Illegal Gambling Websites' harms.

259. This conduct also violates legislatively declared policies articulated in, *inter alia*, California and federal statutory provisions, as set forth above.

260. Indeed, California's legislature has declared that "[g]ambling can become addictive and is not an activity to be promoted or legitimized as entertainment for children or families." Cal. Bus. & Prof. Code § 19801(c). In violation of this public policy, Defendants' conduct promotes, facilitates, and profits from addictive gambling websites that are marketed, sold, and made available to children.

261. California's legislature has also declared that "[u]nregulated gambling enterprises are inimical to the public health, safety, welfare, and good order. Accordingly, no person in this state has a right to operate a gambling enterprise except as may be expressly permitted by the laws of this state and by the ordinances of local governmental bodies." Cal. Bus. & Prof. Code § 19801(d). In violation of this public policy, Defendants, individually and collectively, operate unregulated gambling enterprises that are inimical to the public health, safety, and welfare, and that prey on adolescents and teenagers. Defendants have not been permitted by the State of California or any local governmental bodies to engage and operate the gambling enterprise as described herein.

262. California's legislature has also found and declared that "[p]ublic trust that permissible gambling will not endanger public health, safety, or welfare requires that comprehensive measures be enacted to ensure that gambling is free from criminal and corruptive elements, that it is conducted honestly and competitively, and that it is conducted in suitable locations." Cal. Bus. & Prof. Code § 19801(g). In violation of this public policy, and in contravention of the "public trust," Defendants, individually and collectively, have brought unregulated gambling into the homes of millions of underage consumers, often without their parents' knowledge or consent.

263.    Defendants' unfair conduct also includes and arises from their operation of the gambling operation as described herein, which is designed to exploit addictive and/or compulsive tendencies in vulnerable youth to thereby ensure that these addictive and compulsive behaviors will continue.

264.    There is, simply put, no societal benefit to Defendants' conduct, which is illegal and violates the public policy of the State of California. Defendants' conduct causes only harm, which enriches Defendants at the expense of Roblox's minor users.

265.    Defendants' violations of the UCL, both individually and collectively, continue to this day.

266.    Defendants' conduct caused and continues to cause substantial injury to Plaintiffs, both individually and on behalf of N.S., T.D., and L.C., as well as the Class members. As described herein, Defendants facilitate and profit from the Robux acquired through the Illegal Gambling Websites, which are cashed out for real-world currency. Roblox not only hosts and facilitates the exchange of Robux for gambling credits, but it takes a fee each time the Gambling Website Defendants cash out Robux acquired from Roblox's minor users. But for Defendants' unlawful and unfair conduct, Plaintiffs and Class members would not and could not have lost Robux, which were purchased with real-world currency, and could not have engaged in illegal gambling on the Illegal Gambling Websites. Plaintiffs have suffered injury in fact and have lost money and property as a result of Defendants' conduct.

267.    Accordingly, Plaintiffs and the Class seek restitution from Defendants of all money obtained from Plaintiffs and the Class members as a result of Defendants' unfair competition.

**THIRD CAUSE OF ACTION**

**NEGLIGENCE PER SE**

268.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

269.    This Claim is brought on behalf of the California and New York Class, respectively, referred to in this section collectively as the "Class."

270. Under federal law, California law, and New York law, it is illegal for those under the age of 18 to patronize a gambling business of any kind.

271. At all times relevant hereto, Defendants had a duty to comply with federal law, as well as the laws of California and New York.

272. Pursuant to the IGBA (18 U.S.C. § 1955), Defendants are prohibited by federal law from conducting, financing, managing, supervising, directing, or owning all or part of an illegal gambling business.

273. Pursuant to the UIGEA (31 U.S.C. § 5363), Defendants are prohibited by federal law from knowingly accepting payments in connection with unlawful Internet gambling.

274. Pursuant to the following laws of California and New York, Defendants are prohibited from operating, managing, financing, directing, facilitating, and/or profiting from illegal gambling websites that cater to and permit those under the age of eighteen to place wagers on games of chance:

   a. California Penal Code § 330a;

   b. California Penal Code § 330b;

   c. California Penal Code § 330.1;

   d. California Penal Code § 337j(a)(1);

   e. California Penal Code § 337j(a)(2);

   f. New York Penal Law § 225.05;

   g. New York Penal Law § 225.10;

   h. New York Penal Law § 225.30; and

   i. New York Penal Law § 225.95.

275. Further, the New York State Constitution prohibits gambling unless expressly permitted by law. California and New York prohibit gambling by those under the age of eighteen.

276. The above-referenced laws and legal prohibitions imposed a duty upon Defendants to ensure Plaintiffs and Class members were not able to engage in illegal gambling activities using the Roblox platform, as well as a duty not to promote and provide access to the Illegal Gambling Websites through the Roblox platform, using Robux digital currency.

277.     Defendants breached their duties to Plaintiffs and Class members under the aforementioned statutes and laws by providing Roblox's minor users with access to—and facilitating—illegal gambling through the Illegal Gambling Websites.

278.     Defendants further breached their duties by representing that minor users could not use the Roblox platform or Robux digital currency to engage in illegal gambling activities when, in fact, Defendants had constructed an illegal gambling scheme to accomplish just such a purpose.

279.     Defendants' failure to comply with applicable laws constitutes negligence per se.

280.     But for Defendants' wrongful and negligent breach of their duties owed to Plaintiffs and Class members, Plaintiffs and Class members would not have been injured.

281.     The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties, either knowingly or negligently, and that Defendants' breach would cause Plaintiffs and Class members to experience the foreseeable harms the above-referenced statutes were enacted to prevent.

282.     Further, not only does Defendants' conduct constitute negligence per se, Defendants have also participated in a civil conspiracy under New York law to engage in negligence per se. To accomplish their objectives, Defendants agreed to create an illegal gambling environment that would cater to Roblox's minor users. The Gambling Website Defendants created gambling websites that would accept Robux in exchange for gambling credits, Robux facilitated the exchange of Robux for gambling credits on the Roblox platform, and Roblox charged a 30% fee when the Gambling Website Defendants cashed out the Robux obtained from minor users like L.C. and other minor members of the Class. These actions, collectively, violated New York's constitutional and statutory prohibitions on underage gambling.

283.     As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

1      284.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding

2  paragraphs of this Complaint.

3      285.    This Claim is brought on behalf of the California and New York Class under the

4  respective state law of each Class.

5      286.    Plaintiffs and Class members conferred a monetary benefit on Defendants when they

6  purchased Robux from Defendant Roblox, then wagered those Robux in the virtual casinos operated

7  by the Gambling Website Defendants.

8      287.    Defendants appreciated or had knowledge of the benefits conferred upon them by

9  Plaintiffs and Class members.

10      288.    As a result of Defendants' conduct, Plaintiffs and Class members suffered actual

11  damages in an amount equal to the monies paid to obtain Robux that were subsequently wagered

12  and lost on the Gambling Website Defendants' virtual casinos.

13      289.    Under principles of equity and good conscience, Defendants should not be permitted

14  to retain the money belonging to Plaintiffs and Class members because Defendants have obtained

15  that money through misrepresentations and omissions, and by facilitating illegal gambling by

16  Roblox's minor users, which is illegal in both California and New York.

17      290.    Defendants should be compelled to disgorge into a common fund for the benefit of

18  Plaintiffs and Class members all unlawful or inequitable proceeds received through the illegal

19  gambling scheme described herein.

20                             **FIFTH CAUSE OF ACTION**

21                                   **NEGLIGENCE**

22      291.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding

23  paragraphs of the Complaint.

24      292.    This Claim is brought on behalf of the California and New York Class under the

25  respective state law of each Class.

26      293.    Under California and New York law, Defendant Roblox undertook a duty of care

27  when it provided a gaming platform that catered to, and was designed for, children and teenagers.

28

1    294.    This duty included, at a minimum, a responsibility not to allow minors on its platform

2  to engage in illegal behaviors, including gambling, that Roblox was actively facilitating.

3    295.    Roblox also had a duty not to misrepresent, both to parents and to children

4  themselves, the dangers faced by children on its platform, including the dangers of illegal gambling

5  schemes in which Roblox was actively participating.

6    296.    Roblox breached its duties to Plaintiffs, their minor children, and members of the

7  Class, by permitting its minor users to wager Robux on the Illegal Gambling Websites, exchanging

8  Robux for gambling credits on the Roblox platform.

9    297.    Roblox's breach of its duties caused harm to its minor users, including N.S., T.D.,

10  L.C., who lost Robux participating in the illegal gambling scheme perpetrated by the Gambling

11  Website Defendants with Roblox's active participation.

12    298.    As a result of this misconduct, Plaintiffs and Class members have been injured and

13  seek damages in an amount to be proven at trial.

14                                **REQUEST FOR RELIEF**

15    WHEREFORE, Plaintiffs, individually and on behalf of the minor children and members of

16  the Classes, respectfully request that the Court:

17    a.  Certify this case as a class action, designating Plaintiffs as class representatives and

18        designating the undersigned as Class Counsel;

19    b.  Declare that Defendants' conduct violates the statutes set forth above;

20    c.  Award Plaintiffs and the Classes actual damages in amount according to proof;

21    d.  Award Plaintiffs and the Classes restitution in an amount to be proven at trial;

22    e.  Award Plaintiffs and the Classes pre-judgment interest in the amount permitted by

23        law;

24    f.  Award Plaintiffs and their attorneys fees and costs as permitted by law;

25    g.  Declare Defendants' practices outlined herein to be unlawful;

26    h.  Grant Plaintiffs and the Classes a trial by jury;

27    i.  Grant leave to amend these pleadings to conform to evidence produced at trial; and

28

1    j.    Grant such other relief as the Court deems just and proper, including all forms of

2         relief provided for under the UCL.

3                              **JURY DEMAND**

4    Plaintiffs, by counsel, demand trial by jury.

5

6    Dated: June 2, 2025                Respectfully submitted,

7

8                                       */s/ James Bilsborrow*
                                        James Bilsborrow (*pro hac vice*)
9                                       Aaron Freedman (*pro hac vice*)
                                        Devin Bolton (SBN 290037)
10                                      **WEITZ & LUXENBERG, PC**
                                        700 Broadway
11                                      New York, New York 10003
                                        Telephone: (212) 558-5500
12                                      jbilsborrow@weitzlux.com
                                        afreedman@weitzlux.com
13                                      dbolton@weitzlux.com

14
                                        **JENNINGS PLLC**
15                                      CHRISTOPHER D. JENNINGS (*pro hac vice*)
                                        TYLER B. EWIGLEBEN (*pro hac vice*)
16                                      WINSTON S. HUDSON (*pro hac vice*)
                                        P.O. Box 25972
17                                      Little Rock, Arkansas 722211
                                        Telephone: (501) 247-6267
18                                      chris@jenningspll.com
                                        tyler@jenningspllc.com
19                                      winston@jenningspllc.com

20
                                        **GIBBS MURA LLP**
21                                      ANDRE M. MURA (SBN 298541)
                                        JAKE M. SEIDMAN (SBN 347953)
22                                      HANNE JENSEN (SBN 336045)
                                        EZEKIEL S. WALD (SBN 341490)
23                                      1111 Broadway, Suite 2100
                                        Oakland, CA 94607
24                                      Telephone: (510) 350-9700
                                        Fax: (510) 350-9701
25                                      amm@classlawgroup.com
                                        jms@classlawgroup.com
26                                      hj@classlawgroup.com
                                        zsw@classlawgroup.com
27

28

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES

**AUDET & PARTNERS LLP**
Michael McShane, Esq. (SBN 127944)
Ling Y. Kuang, Esq. (SBN 296873)
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
mmcshane@audetlaw.com
lkuang@audetlaw.com

**LEVIN SEDRAN & BERMAN**
Daniel C. Levin, Esq.*
Charles E. Schaffer, Esq. (*pro hac vice*)
Nicholas J. Elia, Esq.*
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
cschaffer@lfsblaw.com
dlevin@lfsblaw.com
nelia@lfsblaw.com

**LEEDS BROWN LAW, P.C.**
Jeffrey K. Brown, Esq.*
Brett R. Cohen, Esq. (SBN 337543)
One Old Country Road, Suite 347
Carle Place, NY 11514
Telephone: (516) 873-9550
jbrown@leedsbrownlaw.com
bcohen@leedsbrownlaw.com

**SULTZER & LIPARI, PLLC**
Jason P. Sultzer, Esq.*
Jeremy Francis, Esq.*
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com


*Counsel for Plaintiffs and the Proposed Class*


*\*Pro Hac Vice forthcoming*

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES