Andre M. Mura (SBN 298541)
Jake M. Seidman (SBN 347953)
**GIBBS MURA LLP**
1111 Broadway, Ste 2100
Oakland, CA 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
amm@classlawgroup.com
jms@classlawgroup.com

James J. Bilsborrow (admitted *pro hac vice*)
Aaron Freedman (admitted *pro hac vice*)
**WEITZ & LUXENBERG PC**
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
jbilsborrow@weitzlux.com
afreedman@weitzlux.com

Christopher D. Jennings (admitted *pro hac vice*)
Tyler B. Ewigleben (admitted *pro hac vice*)
Winston Hudson (admitted *pro hac vice*)
**JENNINGS & EARLEY PLLC**
500 President Clinton Ave, Suite 110
Little Rock, Arkansas 72201
Phone: (501) 225-8569
chris@jefirm.com
tyler@jefirm.com
winston@jefirm.com

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ARACELY SOUCEK, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>ROBLOX CORPORATION, *et al.*,<br><br>    Defendants.<br><br>ROBLOX CORPORATION,<br><br>    Cross-Plaintiff<br><br>v.<br><br>SATOZUKI LIMITED B.V., *et al.*,<br><br>    Cross-Defendants | Case No. 3:23-cv-04146-VC (RMI)<br><br>**PLAINTIFFS' OPPOSITION TO BORIS SAID, JR.'S MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, TO DISMISS**<br><br>Date: September 18, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria |

**TABLE OF CONTENTS**

Page

INTRODUCTION AND BACKGROUND ...............................................................................................1

LEGAL STANDARD..............................................................................................................................2

ARGUMENT ...........................................................................................................................................2

    I.    Said fails to show any agreement to arbitrate with him. .........................................................2

    II.   Said's Rule 12(b)(6) arguments are meritless. .........................................................................6

        A.    Plaintiffs adequately plead alter ego. ............................................................................6

        B.    The Court should disregard Said's remaining arguments because it has already resolved them in Plaintiffs' favor. ...................................................................................9

        C.    The Court may disregard the arguments in Said's excess pages, which address issues already resolved in Plaintiffs' favor. ..................................................................10

CONCLUSION......................................................................................................................................14

# TABLE OF AUTHORITIES

Cases                                                                                                          Page(s)

*Alves v. Players Edge, Inc.*,
  2007 WL 6004919 (S.D. Cal. Aug. 8 2007) ............................................................................... 9

*Berman v. Freedom Fin. Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ..................................................................................................... 5

*Bradstreet v. Wong*,
  161 Cal. App. 4th 1440 (2008) ............................................................................................ 8, 9

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .................................................................................................. 6

*Brill v. Postle*,
  2020 WL 2936688 (E.D. Cal. June 3, 2020) ......................................................................... 10

*Caremark, LLC v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022) ............................................................................................ 3, 6

*Cooper v. Agrify Corp.*,
  2022 WL 2374587 (W.D. Wash. June 2, 2022) ...................................................................... 6

*Covillo v. Specialty's Café*,
  2012 WL 4953085 (N.D. Cal. Oct. 17, 2012) .......................................................................... 5

*Doe v. Roblox Corp.*,
  602 F. Supp. 3d 1243 (N.D. Cal. 2022) ................................................................................... 5

*Dzyuba v. United States*,
  2016 WL 4367247 (D. Or. Aug. 15, 2016) ............................................................................ 11

*Fleming v. Cnty. of Kane*,
  855 F.2d 496 (7th Cir. 1988) ................................................................................................. 11

*Freitas v. Cricket Wireless, LLC*,
  2022 WL 1082014 (N.D. Cal. Apr. 11, 2022) ......................................................................... 5

*Fressadi v. Glover*,
  2019 WL 7562345 (D. Ariz. July 23, 2019) .......................................................................... 11

*Hadley v. Kellogg Sales Co.*,
  243 F Supp. 3d 1074 (N.D. Cal. 2017) .................................................................................. 13

*Hammond v. Monarch Investors LLC*,
  2010 WL 2674401 (S.D. Cal. July 2, 2010) ............................................................................ 7

*Hong Kong Cont'l Trade Co. Ltd. v. Nat. Balance Pet Foods, Inc.*,
  2023 WL 2664246 (C.D. Cal. Mar. 28, 2023) ........................................................................ 6

*Jamgotchian v. Sci Games Corp.*,
  2008 WL 11411612 (C.D. Cal. Oct. 22, 2008) ....................................................................... 9

*Kelly v. First Astri Corp.*,
  72 Cal. App. 4th 462 (1999) .................................................................................................. 9

*Kyablue v. Watkins*,
  210 Cal. App. 4th 1288 (2012) ............................................................................................ 10

*LaComba v. Eagle Home Loans & Inv., LLC*,
  2023 WL 6201597 (E.D. Cal. Sept. 22, 2023) ..................................................................... 11

*Lam v. Hawaiian Gardens Casino*,
  2020 WL 806655 (C.D. Cal. Jan. 8, 2020) ............................................................................ 9

*Legal Additions LLC v. Kowalski*,
  2010 WL 335789 (N.D. Cal. Jan. 22, 2010) ...................................................................... 7, 8

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) ............................................................................................... 2

*Lopez v. Dave Inc.*,
  2022 WL 17089824 (N.D. Cal. Nov. 21, 2022) .................................................................. 2, 5

*Maddox v. Adler*,
  2024 WL 4349481 (D. Nev. Sept. 29, 2024) ......................................................................... 6

*Mai v. Supercell Oy*,
  648 F. Supp. 3d 1130 (N.D. Cal. 2023), *vacated and remanded*, 2024 WL 2077500 (9th Cir. May 9, 2024) ................................................................................................................................. 12

*Martinez v. Combs*,
  49 Cal. 4th 35 (2010) ............................................................................................................. 8

*Meadows v. Dickey's Barbecue Restaurants Inc.*,
  144 F. Supp. 3d 1069 (N.D. Cal. 2015) ................................................................................. 6

*Nava v. Kobe Steel, Ltd.*,
  2019 WL 5173767 (N.D. Cal. Oct. 8, 2019) ........................................................................ 13

*Ochoa v. Zeroo Gravity Games LLC*,
  2023 WL 4291650 (C.D. Cal. May 24, 2023) ....................................................................... 9

*Potts v. United States*,
  853 Fed. Appx 174 (9th Cir. 2021) ............................................................................................ 13

*Pristine Jewelers NY, Inc. v. Broner*,
  2023 WL 4629144 (N.D. Cal. July 18, 2023) ................................................................................ 4

*Reynolds v. Bement*,
  36 Cal.4th 1075 (2005) ................................................................................................................ 9

*Rollins v. Wink Labs, Inc.*,
  2022 WL 326736 (D. Or. Feb. 3, 2022) ....................................................................................... 6

*RRX, Inc. v. Lab-Con, Inc.*,
  772 F.2d 543 (9th Cir. 1985) ....................................................................................................... 7

*Snyder v. HSBC Bank, USA, N.A.*,
  913 F. Supp. 2d 755 (D. Ariz. 2012) ......................................................................................... 11

*Soto v. Sky Union, LLC*,
  159 F. Supp. 3d 871 (N.D. Ill. 2016) ......................................................................................... 12

*Tak Chun Gaming Promotion Co. Ltd. v. Long*,
  96 Cal. App. 5th 1027 (2023), *as modified on denial of reh'*g (Nov. 17, 2023) .................... 10

*Tompkins v. 23andMe, Inc.*,
  840 F.3d 1016 (9th Cir. 2016) ................................................................................................... 10

*Vargas v. Delivery Outsourcing, LLC*,
  2016 WL 946112 (N.D. Cal. Mar. 14, 2016) ............................................................................... 6

*ZB, N.A. v. Superior Ct.*,
  8 Cal. 5th 175, (2019) .................................................................................................................. 8

*Zoran Corp. v. Chen*,
  185 Cal. App. 4th 799 (2010) ..................................................................................................... 7

Rules

Fed. R. Civ. P. 15(a)(2) ..................................................................................................................... 14

# MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION AND BACKGROUND

Alongside his 13-page motion to sever or dismiss Plaintiffs' claims against him, ECF No. 245, Defendant Boris Said Jr. ("Said") also asks this Court to consider this 21-page motion to compel arbitration or, in the alternative, to dismiss under Rule 12(b)(6). The Court should reject both motions. In particular, it should reject this motion because Said fails to demonstrate the existence of any Terms of Service for his website RBLXWild, let alone one in which Plaintiffs agreed to arbitrate with Said. And his motion to dismiss merely reiterates arguments that this Court has already considered and rejected, and flouts this Court's rules on page limits in the process.

*First*, Said's motion to compel arbitration should be denied because Said cannot show that Plaintiffs formed any agreement to arbitrate with RBLXWild, let alone with him. Said does not cite to or identify any Terms of Service for RBLXWild. Rather, he produces Terms of Service from *Discord*, a third-party company that is not owned by or affiliated with Said or RBLXWild or implicated in Plaintiffs' use of RBLXWild's gambling site. But even if these terms were relevant, they would not bind Plaintiffs because Said provides no evidence that any Plaintiff ever saw them, let alone agreed to them, and they are insufficient to provide inquiry notice to minors like Plaintiffs (who, in any case, have since disaffirmed). And just like his co-defendant Selinger, even if Said had presented an agreement to arbitrate with RBLXWild, he could not claim its protection while stridently denying his connection to RBLXWild in an action that does not arise from any RBLXWild Terms of Service. Thus, his motion should also be denied for the same reasons set forth in Plaintiffs' Opposition to Selinger's Motion to Compel Arbitration. ECF No. 242 ("Selinger Opp.").

*Second*, there is no reason for this Court to consider Said's Rule 12(b)(6) arguments, which mirror those made (unsuccessfully) by Roblox. It is unclear whether Said has raised these arguments strictly for

preservation purposes, but the Court has already rejected them at the pleadings stage. Recall that Roblox, just like Said, argued that California public policy bars Plaintiffs' claims because they arise from gambling transactions; that Plaintiffs cannot recover for the loss of Robux because they are not a thing of value; and that Plaintiffs cannot state a claim for unjust enrichment because California law does not provide for it. This Court considered and rejected every single one of those arguments. ECF Nos. 65, 66, 108. Said has submitted an oversized brief of 21 pages without permission, but still it offers no reason to reconsider those prior decisions.

For these reasons and more, Plaintiffs respectfully request that the Court deny Said's motion to compel arbitration in its entirety, and his motion to dismiss as to remaining Plaintiffs N.S. and T.D.

**LEGAL STANDARD**

The party seeking to compel arbitration under the Federal Arbitration Act ("FAA") must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Lopez v. Dave Inc.*, 2022 WL 17089824, at *1 (N.D. Cal. Nov. 21, 2022) (Chhabria, J.). In a Rule 12(b)(6) challenge, the complaint's factual allegations must be construed in the light most favorable to the plaintiff and need only "suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

**ARGUMENT**

**I.    Said fails to show any agreement to arbitrate with him.**

Said insists that this Court must shunt all claims against him to arbitration because plaintiffs "expressly agreed to arbitrate any and all claims relating to [RBLXWild's] services." Mot. 2. In fact, he he argues "the only issue for this Court to decide is whether the arbitration provisions in the terms of service cited in the SAC exist." *Id.*

Plaintiffs agree that the "issue" of "whether a written arbitration agreement exists . . . is indisputable" and that it is for the Court to decide. *See* Mot. 9; *see also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (court decides formation issues, even in the presence of a delegation clause). But what is indisputable is that Said has submitted no evidence showing any agreement binding Plaintiffs to arbitration with RBLXWild (let alone with him personally).

Said's cited Terms of Service *are not* RBLXWild's. In a footnote, Said asserts that his exhibits show the Terms of Service linked on "RBLXWild's Discord-hosted homepage . . . where the rblxwild.com platform exists and the Terms of Service are located." Mot. 6 n.5. But even a cursory glance at the first page of these terms (which Said neglected to file alongside his motion but submitted a day later, *see* ECF No. 247) shows that these are *Discord's* Terms of Service, *not* RBLXWild's. ECF No. 247-1 (Ex. 1) at 1 (bold letters reading "DISCORD'S TERMS OF SERVICE"). And the website that Said calls "RBLXWild's Discord-hosted homepage," which he claims links to RBLXWild's Terms of Service, is (and does) no such thing. Rather, it is a Discord channel called "RBLXWild – News" that links to "Discord's Terms of Service." ECF No. 247-2 (Ex. 2).

There are a number of problems here. For one, Said's belated filing of these exhibits did not include a sworn declaration authenticating them in violation of Civil Local Rule 7-5 (or request judicial notice of them), so it is not entirely clear what Said would claim that they represent, or whether they were in effect at relevant times, or how minor Plaintiffs would have encountered them. His motion first says that Exhibit 1 shows the RBLXWild Terms of Service "cited in" footnote 38 of the SAC at the URL "https://rblxwild.com/?modal=general-tos," but he acknowledges in a footnote that his exhibit actually shows Terms of Service at a different, Discord-hosted URL:

"https://discord.com/invite/rblxwild?modal=general-tos." Mot. 6 & n.5.[1] Furthermore, his representation that these are the same terms cited in the SAC is belied by the fact that Exhibit 1 (in addition to obviously showing Discord's Terms of Service) does not contain the language that the SAC quotes about "depositing . . . Robux." SAC ¶ 156. Said's claim that Exhibit 2 shows "RBLXWild's Discord-hosted homepage . . . where the RBLXWild platform exists" is even more inexplicable, since (as Said should know) RBLXWild existed on its own platform, not Discord, and because RBLXWild's actual homepage is depicted on *the very same page of the SAC* that Said cites—and it is not the website in Exhibit 2. *See* SAC ¶ 153.[2]

The Court should deny Said's motion because his citation to Discord's Terms of Service fails to show any agreement to arbitrate between RBLXWild and Plaintiffs, let alone one with Said. Said's insistence that his cited terms govern because Plaintiffs used RBLXWild misses the key point that these are the Terms of Service for Discord, a site that no Plaintiff alleges using, and which Said has no claim to enforce. Neither Said nor RBLXWild nor Plaintiffs have done anything evincing agreement to Discord's Terms of Service or its arbitration clause and are not bound by it. *See* Ex. 1 at 3 ("When we say 'Discord,' 'we,' 'us,' and 'our' in these terms, we mean *Discord Inc.*, its subsidiaries, and its related companies."); *see also id.* (arbitration clause "applies to all U.S.-based *Discord* users") (emphases

---

[1] RBLXWild appears to have engineered the URL cited by Plaintiffs to redirect to an affiliated Discord channel after the site shut down in 2024. Plaintiffs have cited the same URL since the inception of this case in August 2023, *see* ECF No. 1 n.25, and Internet Archive records show that that URL resolved to RBLXWild's site as recently as April 2024. Seidman Decl., Ex. A. As Said acknowledges, this link now "forwards" to the distinct Discord page he cites, Mot. 6 n.5, and reporting contemporaneous with RBLXWild's closure confirms this: after RBLXWild "ceased operations" in late 2024, its webpages began "redirecting users to Discord channels for discussions regarding refunds." Seidman Decl., Ex. B. The Court may consider the webpages submitted as exhibits to the Seidman Declaration because Plaintiffs have provided sufficient indicia of their authenticity. *Pristine Jewelers NY, Inc. v. Broner*, 2023 WL 4629144, at *3 (N.D. Cal. July 18, 2023).

[2] Plaintiffs notified Said's counsel of this apparent error prior to filing this Opposition, but Said declined to take any remedial action. Seidman Decl. ¶ 12.

added). Because Plaintiffs do not allege taking any action on websites governed by the Terms of Service that Said cites, Said has offered no evidence that Plaintiffs entered into an agreement to arbitrate anything, and the Court can and should deny his motion outright. *See, e.g.*, *Freitas v. Cricket Wireless, LLC*, 2022 WL 1082014, at *4 (N.D. Cal. Apr. 11, 2022) (denying motion to compel arbitration where defendant "has not met its burden of production to show the existence" of an arbitration agreement); *Covillo v. Specialty's Café*, 2012 WL 4953085, at *2 (N.D. Cal. Oct. 17, 2012) (same, where "Defendant did not present any purported arbitration agreement" signed by plaintiff).

In any case, even if they were relevant here, Said's cited terms would be unenforceable for the same reasons as the Bloxflip Terms of Service cited by his co-defendant Selinger, since the sites' disclaimers are nearly identical and he mounts the same arguments. Plaintiffs thus incorporate all arguments against Selinger's motion to compel arbitration here, where 1) Said has adduced no evidence that Plaintiffs saw his cited disclaimer of Discord's Terms of Service, which looks just like the one that Judge Orrick found insufficient to provide inquiry notice to a minor in *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1256 (N.D. Cal. 2022) (and much like the one that this Court found could not be the basis for compelled arbitration, even against adults, in *Lopez*, 2022 WL 17089824, at *2);[3] 2) Plaintiffs have disaffirmed any arbitration agreement by suing; 3) allowing Said to enforce the arbitration agreement as a nonparty who disputes his alter ego status would be inequitable; and 4) equitable estoppel does not apply. Selinger Opp. 2-8. If anything differs here, it is that, given Said's failure to even identify RBLXWild Terms of Service containing an arbitration clause, he is even less entitled to a trial or evidentiary hearing on the issue of formation than Selinger is. Mot. 8 n.6; Selinger Opp. 5 n.5; *see also*

---

[3] Both the Ninth Circuit and this Court have held that the burden is on "the website operator [to] show that a consumer has actual knowledge of the agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *Lopez*, 2022 WL 17089824, at *1 ("Dave has not established that Lopez had actual notice of the arbitration agreement").

*Rollins v. Wink Labs, Inc.*, 2022 WL 326736, at *2 (D. Or. Feb. 3, 2022) (denying compelled arbitration without a hearing where "Defendant failed to establish the existence of an agreement to arbitrate through competent, admissible evidence"). Furthermore, because Said does not just avoid admitting that he is an alter ego of RBLXWild's corporate shells like Selinger, but stridently denies it, *see* Mot. 11, allowing him to force Plaintiffs' claims into arbitration on the basis of somebody else's arbitration agreement would be even more inequitable than in Selinger's case. *See* Selinger Opp. 6-7.[4]

## II. Said's Rule 12(b)(6) arguments are meritless.

Because Said fails to demonstrate the existence of an arbitration agreement binding Plaintiffs to resolve their disputes with him outside of court, he must rely on his arguments that Plaintiffs have failed to state a claim to avoid the case against him. *See* Mot. 10. But they are unavailing. Plaintiffs' alter ego allegations are well-pled, and the remainder of Said's arguments have already been heard and rejected by this Court.

### A. Plaintiffs adequately plead alter ego.

Said plucks two paragraphs from the SAC to contend that it "improperly alleges mere

---

[4] Said's insistence that "Plaintiffs also agreed that . . . arbitrability [] must be decided by the arbitrator" because Discord's terms incorporate the AAA Rules and their delegation clause by reference is of no moment: even if Discord's terms applied here, Said concedes that the existence of an arbitration agreement would still be an "issue for the Court to decide." Mot. 9. Indeed, Ninth Circuit and Supreme Court precedent require this. *Caremark*, 43 F.4th 1021 at 1030. In any case, the delegation clause would be invalid here: many courts in the Ninth Circuit have found that a form contract incorporating a delegation clause by reference to the AAA Rules does not show "clear and unmistakable evidence" of agreement to arbitrate arbitrability by unsophisticated parties (like child Plaintiffs here). *See, e.g.*, *Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *7 (N.D. Cal. Mar. 14, 2016) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015)); *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078-79 (N.D. Cal. 2015) (same); *Maddox v. Adler*, 2024 WL 4349481, at *6 (D. Nev. Sept. 29, 2024) (same); *Cooper v. Agrify Corp.*, 2022 WL 2374587, at *3 (W.D. Wash. June 2, 2022) (same); *but see Hong Kong Cont'l Trade Co. Ltd. v. Nat. Balance Pet Foods, Inc.*, 2023 WL 2664246, at *9 (C.D. Cal. Mar. 28, 2023) (noting that "[d]istrict courts have reached different conclusions on the matter").

conclusions" that he is the alter ego of RBLXWild's corporate shells. Mot. 11 (citing SAC ¶¶ 150-51).[5] But these paragraphs do not resemble those in Said's cited authority that merely restated the legal standard verbatim by alleging "a unity of interest in the ownership between" defendant and his corporations. *Legal Additions LLC v. Kowalski*, 2010 WL 335789, at *6 (N.D. Cal. Jan. 22, 2010). To the contrary, Plaintiffs' allegations include the "specific facts demonstrating that Defendants have failed to observe the corporate separateness" that Said demands. Mot. 11 (quoting *Hammond v. Monarch Investors LLC*, 2010 WL 2674401, at *5 (S.D. Cal. July 2, 2010)).

Here, Plaintiffs allege that the RBLXWild corporate shells created by Said lack "an actual office, phones, websites, office supplies, accounting departments, email accounts, employees that were paid out through the companies' bank accounts, regular meetings, nor a functioning board," and did not observe "corporate formalities, such as maintaining records," but instead existed "solely to shield" Said and his co-owner "from liability" for their illegal gambling enterprise. SAC ¶¶ 150-51. Moreover, Said completely ignores specific facts in surrounding paragraphs, which allege that neither shell was an "actual, functioning compan[y]," that Said and his co-owner "personally managed and controlled all proceeds and assets" of each shell company "as their own, including by transferring its funds and assets to themselves," and that Said freely dissolved at least one of these shells when he needed to evade liability. *Id.* ¶¶ 45 & n.8, 148, 152.

Plaintiffs have thus adequately pled many of the "host of factors" that show alter ego liability under California law. *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811-12 (2010) (non-exhaustive list of factors including commingling of funds and assets, unauthorized diversion of corporate funds to other

---

[5] Said does not dispute that Plaintiffs have adequately pled the second element of an alter ego liability claim: that "an inequitable result will follow if the acts are treated as those of the corporation alone," *RRX, Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 545 (9th Cir. 1985), perhaps because shielding oneself from liability for illegal child gambling by abandoning and dissolving shell corporations that ostensibly owned the gambling operation is an indisputably inequitable result. *See* SAC ¶¶ 45 & n.8, 77, 162-63.

than corporate uses, the treatment by an individual of the assets of the corporation as his own, the failure to maintain minutes or adequate corporate records, the use of a corporation as a mere shell, instrumentality, or conduit for a single venture or the business of an individual, the concealment and misrepresentation of the identity of the responsible ownership, and the use of a corporation as a subterfuge of illegal transactions) (citation omitted). Indeed, Plaintiffs' claims mirror the "specific factual allegations supporting an alter ego claim" that the *Kowalski* court distinguished from "conclusory allegations" presented by plaintiffs in that case. 2010 WL 335789, at *6 (noting that, in another case, "*Twombly* and *Iqbal* standards were met where petitioner has alleged specific facts that indicate that separate personalities of the corporation and the individual no longer exist—including that Gillam has commingled his assets with those of the corporations and that he has failed to observe corporate formalities" (cleaned up)).

The Court should also reject Said's tagalong argument that he cannot be "personally liable for restitution under the UCL" because Plaintiffs do not "plausibly allege" that he "actively and directly participated" in RBLXWild's illegal and unfair practices, or that he "personally misappropriated" anything from Plaintiffs. Mot. 11. This argument again rests on a misreading of the complaint, citing one paragraph alleging that Said "owned and operated RBXLWild," *id.* (quoting SAC ¶ 47), while ignoring allegations that he also created the site and "profited from illegal underage gambling" by its child users since he appropriated the funds they gambled (on the order of "five figures a day") for himself. SAC ¶¶ 145-48, 152, 161.

As a result, Said's reliance on *Bradstreet v. Wong* is misplaced. 161 Cal. App. 4th 1440 (2008), *disapproved of by ZB, N.A. v. Superior Ct.*, 8 Cal. 5th 175, (2019), *and abrogated by Martinez v. Combs*, 49 Cal. 4th 35 (2010). First, that case says nothing about the sufficiency of pleadings (it's an appeal from a judgment following trial). *Id.* at 1444. Second, in light of the facts alleged by Plaintiffs, it is

distinguishable: *Bradstreet* arose in the employment context, where the court found that corporate officer defendants could not be required to "pay unpaid wages as restitution" because the labor "performed was not for defendants personally, but for the" employer corporations, such that "Defendants did not personally obtain the benefit of the services." *Id.* at 1460. That is not the case here, where Said *did* personally benefit from the property unfairly and illegally taken from child gambling Plaintiffs and class members because RBLXWild's corporate entities were merely shells that passed their ill-gotten gains on to him—and because he "misappropriated" Plaintiffs' property to himself and his co-owner "as individuals for their individual advantage," an independently sufficient ground for compelling restitution from officer defendants. *Id.* (quoting *Reynolds v. Bement*, 36 Cal.4th 1075, 1090 (2005)).

### B. The Court should disregard Said's remaining arguments because it has already resolved them in Plaintiffs' favor.

Said's remaining arguments need not be credited. First, he argues that because "California public policy bars civil claims for such gambling losses," Plaintiffs' claims cannot proceed. Mot. 12. But Roblox has already raised this same argument twice, relying on Said's same authorities, and failed to persuade this Court. *See* ECF No. 31 at 20 (citing *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462 (1999) and *Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650 (C.D. Cal. May 24, 2023)); ECF No. 87 at 12-13 (citing same, plus *Jamgotchian v. Sci Games Corp.*, 2008 WL 11411612 (C.D. Cal. Oct. 22, 2008), *Lam v. Hawaiian Gardens Casino*, 2020 WL 806655 (C.D. Cal. Jan. 8, 2020), and *Alves v. Players Edge, Inc.*, 2007 WL 6004919 (S.D. Cal. Aug. 8 2007)); *see also* ECF No. 93 at 8-9 (insisting in reply that *Kelly* governs because "[a] federal court must follow California Supreme Court decisions and, when no

such decision exists, 'predict how the highest state court would decide the issue using intermediate appellate court decisions'" (quoting *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016))).[6]

Notably missing from Said's flurry of citations is the case that matters most: this one, in which the Court first implicitly rejected Roblox's arguments founded on *Kelly* by allowing all of Plaintiffs' claims to proceed, *see* ECF No. 65, and subsequently affirmed that "California public policy against enforcing gambling contracts does not bar monetary relief in this case" because it "should be applied flexibly" on a case-by-case basis to "weigh the 'relative moral fault of the plaintiff and the defendant' as well as 'the degree of moral turpitude involved.'" ECF No. 108 at 7 (quoting *Kyablue*, 210 Cal. App. 4th at 1293). In the circumstances of this case, which involves children preyed upon by sophisticated gambling sites, the Court held that California public policy does not "bar the recovery of losses inflicted by casinos on children (who, after all, are not legally capable of consenting to illegal gambling.)" *Id.* Said does not acknowledge these decisions, let alone provide a reason to deviate from them. Accordingly, the Court should decline to reconsider its well-reasoned judgment on this issue and reject Said's argument, as it did Roblox's.

**C. The Court may disregard the arguments in Said's excess pages, which address issues already resolved in Plaintiffs' favor.**

At this point, the Court may stop reading Said's brief. His California public policy argument takes

---

[6] The only cases cited by Said but not Roblox do him no favors: in *Brill v. Postle*, the court held that California public policy *does not* comprehensively bar all actions arising from gambling, including actions for "recovery of the monies paid to administer the games fairly." 2020 WL 2936688, at *3 (E.D. Cal. June 3, 2020). So too with *Kyablue*, which held (as Said concedes) that "courts recognize varying forms and degrees of illegality, and that the particular facts of the case must be considered before remedy is refused" while declining to find that California public policy barred plaintiff's action for breach of contract for gambling funds. *Kyablue v. Watkins*, 210 Cal. App. 4th 1288, 1292-93 (2012). And *Tak Chun* merely repeats the same arguments founded on *Kelly* that this Court has rejected. *Tak Chun Gaming Promotion Co. Ltd. v. Long*, 96 Cal. App. 5th 1027, 1032-33 (2023), *as modified on denial of reh'g* (Nov. 17, 2023).

him through page 15, which is all the space this Court allows. *See* Standing Order for Civil Cases Before Judge Vince Chhabria ¶ 35 ("Unless expressly permitted by the Court, briefs in support of and in opposition to all substantive motions (except for preliminary injunction motions, summary judgment motions, class certification motions, motions for approval of class settlements, and motions in patent cases, as discussed below) may not exceed 15 pages[.]").[7] Said has not sought permission for his extra pages, as Plaintiffs and Roblox have done previously, ECF Nos. 27, 84, or attempted to show good cause why "additional pages are necessary." *LaComba v. Eagle Home Loans & Inv., LLC*, 2023 WL 6201597, at *1 (E.D. Cal. Sept. 22, 2023). In such circumstances, a court may take various remedial measures, including striking the portions of the brief that exceed the page limits. *Id.* at *2. That makes good sense here, where Plaintiffs have complied with the Court's rules, to "assure[] one party does not have a briefing advantage over an adversary party who complies with the page limitation." *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 766-67 (D. Ariz. 2012).

It also makes good sense because Said's excess pages (like the preceding section) repeat arguments that this Court has already considered and rejected. His additional pages are thus anything but necessary, and disregarding them serves the practical purposes of page limits, which "are not mere formalities," but tools to "promote judicial economy" and "encourage litigants to hone their arguments." *LaComba*, 2023 WL 6201597, at *1 (quoting *Fleming v. Cnty. of Kane*, 855 F.2d 496, 497 (7th Cir. 1988)); *see also Fressadi v. Glover*, 2019 WL 7562345, at *2 (D. Ariz. July 23, 2019) (denying additional pages for brief that "reiterates legal arguments . . . made to this Court many times before"); *Dzyuba v.*

---

[7] The same paragraph of the Standing Order also requires that briefs "must be double spaced." Plaintiffs believe their brief (and the formatting of the Standing Order itself) demonstrate proper double spacing. Said, however, appears to use 22.75 point spacing to squeeze 28 lines per page into his brief, thereby obtaining even more unwarranted argument.

*United States*, 2016 WL 4367247, at *1 (D. Or. Aug. 15, 2016) (addressing only arguments in overlong briefing "to the extent they do not simply reiterate arguments already resolved in my earlier ruling").

Said spends almost all of his five and a half extra pages reiterating arguments resolved in this Court's earlier rulings. He first argues that he did not violate Plaintiffs' cited gambling laws because the Robux that RBLXWild dealt in are not "things of value." Mot. 16. But he doesn't challenge the Court's previous ruling on this issue, which was definitive: the cases relied upon by Roblox (and now Said) "cannot be understood to stand for the general principle that non-redeemable virtual currency is never of economic value, and thus that its loss never amounts to lost money or property." ECF No. 65 at 3. Rather, since Robux can be purchased for real money and exchanged, like movie or amusement park tickets, "for in-game experiences" that are of value to users, they have "economic value, even if they cannot be exchanged for cash." *Id.* at 3-4. Thus, because "Robux are things of value," Plaintiffs adequately allege that a gambling operation dealing in them violates Plaintiffs' "eight" cited gambling laws, including California penal statutes and the federal laws that Said specifically contests for borrowing violations of state law. *Id.* at 5, 6. Said fails to grapple with this decision (or even question it), instead opting to "raise points and authorities not previously cited as well as to preserve his rights generally." Mot. 16 n.7.[8] But again, he provides no reason for this Court to revisit its prior ruling based on arguments that have already failed to persuade it (let alone excuse a violation of its rules on page limits in order to do so).

Said's next argument (at 19) is wholly derivative of the preceding one, so it fails for the same reasons. He argues that Plaintiffs' UCL "unfair" claims fail because the alleged unfair conduct

---

[8] Said cites just two cases that Roblox's motions to dismiss did not, but they simply rehash arguments that this Court has already rejected. *See Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 879 (N.D. Ill. 2016) (virtual currency not "thing of value" where it cannot be redeemed or sold for "real money"); *Mai v. Supercell Oy*, 648 F. Supp. 3d 1130, 1138 (N.D. Cal. 2023), *vacated and remanded*, No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024)) (adopting reasoning from court's prior order that "virtual loot box items are not 'things of value'" under CA gambling statutes because they cannot be bought or sold under terms of service).

"overlap[s] entirely" with the conduct violating Plaintiffs' cited UCL "unlawful" predicates. *Id.* But this rests on the (incorrect) premise that Plaintiffs have not stated a UCL unlawful claim because Robux are not a thing of value and therefore may be gambled with impunity. Since the Court has already rejected that premise, Said's argument (and cited authority) is inapposite. *See id.* (citing *Hadley v. Kellogg Sales Co.*, 243 F Supp. 3d 1074, 1104-05 (N.D. Cal. 2017)).

Said's claim that "[t]he same is also true of the SAC's allegations for negligence and unjust enrichment" has even less support. Mot. 20. First, he cites no authority applying his UCL unfair argument to negligence or unjust enrichment (or any authority at all for his conclusory statements). *See Potts v. United States*, 853 Fed. Appx 174, 175 n.1 (9th Cir. 2021) (declining to consider arguments "supported by only conclusory statements with no legal analysis or citations"). In any case, as this Court has already held, Plaintiffs' negligence per se claims based on the violation of cited gambling laws may proceed because Robux are a thing of value. ECF No. 65 at 8. The same is true for unjust enrichment, as Defendants have deprived Plaintiffs and class members of valuable property (including Robux appropriated by the "Gambling Website Defendants' virtual casinos") through illegal gambling. SAC ¶¶ 286-289.

Said's last substantive defenses oppose unjust enrichment but return to the well of arguments that Roblox has already made and this Court has already rejected. Mot. 20. Roblox similarly argued that California law does not provide a cause of action for unjust enrichment and that a claim for unjust enrichment would be duplicative of New York consumer protection and negligence claims. ECF No. 31 at 20 n.16. The Court, however, allowed Plaintiffs' unjust enrichment claim to proceed, ECF No. 66, and has elsewhere held that it is "an independent cause of action in California." *Nava v. Kobe Steel, Ltd.*, 2019 WL 5173767, at *1 (N.D. Cal. Oct. 8, 2019) (Chhabria, J.). Said makes no argument that Plaintiffs' unjust enrichment claim is duplicative of their other claims under California law, or any other argument

founded in California law, apparently choosing to rest on his (incorrect) assertion that no unjust enrichment claim is available in California.[9] In any case, this Court should disregard these sparse and duplicative arguments that push Said's motion into its twenty-first page.

Finally, Said makes a last-ditch attempt to "join[] in, and incorporate[] by reference herein, all arguments, points and authorities raised in each and every pending motion to dismiss filed by any and all Defendants in this case." Mot. 21. Said's purported incorporation of 60-odd pages of other parties' briefs should be disregarded, not only because it would be inequitable for him to benefit from lengthy arguments that he failed to make in his already overlong brief, but because his attempt to adopt arguments that are completely inapplicable to his position fails for the same reasons as Selinger's attempt to do the same. *See* Selinger Opp. 14.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court deny Said's motion to compel arbitration in its entirety and deny his request for a trial or evidentiary hearing. Plaintiffs further request that the Court deny Said's Rule 12(b)(6) motion as to the claims of N.S. and T.D. Should the Court dismiss any claim for failure to state a claim, Plaintiffs request leave to amend to address Said's claimed deficiencies. Fed. R. Civ. P. 15(a)(2).

DATED: August 28, 2025                                                   Respectfully submitted,


  */s/ Andre M. Mura*
  **GIBBS MURA LLP**

---

[9] The Sass Plaintiffs have dismissed their claims, ECF No. 252, so Plaintiffs need not address Said's argument that under New York (but not California) law, unjust enrichment claims are barred because "the Terms of Service governs the parties' relationship." Mot. 20. Plaintiffs will note, however, that Said has presented no Terms of Service binding the parties, *see supra* Part I, let alone one that Plaintiffs are suing under. *See* Selinger Opp. 7-8.

Andre M. Mura (SBN 298541)
Jake M. Seidman (SBN 347953)
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
amm@classlawgroup.com
jms@classlawgroup.com

James J. Bilsborrow (admitted *pro hac vice*)
Aaron Freedman (admitted *pro hac vice*)
**WEITZ & LUXENBERG PC**
700 Broadway
New York, New York 10003
Phone: (212) 558-5500
jbilsborrow@weitzlux.com
afreedman@weitzlux.com

Christopher D. Jennings (admitted *pro hac vice*)
Tyler B. Ewigleben (admitted *pro hac vice*)
Winston Hudson (admitted *pro hac vice*)
**JENNINGS & EARLEY PLLC**
500 President Clinton Ave, Suite 110
Little Rock, Arkansas 72201
Phone: (501) 255-5869
chris@jefirm.com
tyler@jefirm.com
winston@jefirm.com