UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANIV DE RIDDER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ROBLOX CORPORATION, et al.,<br><br>    Defendants. | Case No. 23-cv-04146-VC<br><br>**ORDER DENYING DEFENDANT SAID'S MOTION TO DISMISS PLAINTIFFS' UCL AND COMMON LAW CLAIMS**<br><br>Re: Dkt. No. 246 |

    The California Penal Code contains several provisions that prohibit operating a game of chance in which the player can win or lose a "thing of value." These provisions were drafted a long time ago, and they are very difficult to understand. The question presented here is whether a website that enables people to gamble away their Robux—the virtual currency that kids spend to play games on the Roblox platform—is operating games of chance in which players can win or lose a thing of value.

    The answer is yes. Although the meaning of "thing of value" under the relevant provisions is more difficult to discern than it should be, Robux must be considered things of value because they are akin to arcade tokens. Roblox users spend money to purchase Robux, which, like tokens, can be used to acquire a desired product: gameplay. If you're playing a game in an arcade and someone reaches into your pocket and steals your tokens, they have stolen something of value. Similarly, if someone steals your Robux, they have stolen something of value. A website that entices children to gamble away their Robux on games of chance is therefore enticing them to part with something of value.

    Because Robux are "things of value" under any reasonable understanding of that phrase,

it does not matter for purposes of this case that the language and structure of the California Penal Code make it nearly impossible to figure out a definition of "thing of value." But this case shines a light on the need to clean up these old gambling provisions to be clearer about what they cover, especially as online games played for various forms of virtual tokens and currencies become increasingly common. Indeed, as discussed below, there is a serious possibility that the Penal Code provisions at issue here would be unconstitutionally vague as applied to a different defendant.

## I

The following facts, taken from the plaintiffs' complaint, are accepted as true for purposes of this motion to dismiss.

Roblox is an online gaming platform that is used primarily by children. The games on the platform are user-generated, meaning that they are created by third-party developers. The Roblox platform is free to use, but users pay to play games using "Robux," the platform's digital currency.

Roblox users can buy Robux in various quantities on the Roblox website. For example, a user can get 400 Robux for $4.99 or 800 Robux for $9.99. This is one of the ways Roblox makes money from its platform. And game developers can make money by charging users Robux to play their games and purchase in-game items. Game developers who participate in Roblox's Developer Exchange Program can cash out their Robux in exchange for real money (although Roblox takes a cut). The Developer Exchange Program is the only way to exchange Robux for cash on the Roblox platform.

Boris Said, Jr., is the creator of the now-defunct RBLXWild.com. RBLXWild was a third-party website outside the Roblox platform that hosted gambling games, such as coin flips, blackjack, and plinko. As the name suggests, RBLXWild targeted Roblox users. Roblox users could link their Roblox accounts to the RBLXWild website to spend their Robux on RBLXWild's games. And because RBLXWild participated in Roblox's Developer Exchange Program, it could exchange its Robux for cash. RBLXWild made up to "five figures a day" in

revenue before it shut down in response to the filing of this lawsuit.

The plaintiffs are children who gambled away their Robux on RBLXWild. They filed this proposed class action lawsuit in August 2023 against Roblox and later added Said as a defendant (along with two other defendants who allegedly ran other Robux gambling websites). The plaintiffs assert statutory claims based on the California Unfair Competition Law as well as common law negligence and unjust enrichment claims.

Said has moved to dismiss the claims against him. He argues, in part, that his conduct was not unlawful and therefore cannot support the plaintiffs' claims against him under the "unlawful" and "unfair" prongs of the UCL. And he argues that the plaintiffs' negligence and unjust enrichment claims against him should be dismissed for the same reason. This ruling addresses those arguments. The other arguments raised in Said's motion to dismiss will be addressed in a separate, unpublished ruling.

## II

California's Unfair Competition Law prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A business practice is "unlawful" under the UCL if it violates another state or federal law. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). That means that any violation of the UCL's "unlawful" prong must be predicated on some other legal violation.

The plaintiffs allege that Said's conduct—providing gambling games on RBLXWild— violated four provisions in the California Penal Code. The first three, Penal Code Sections 330a, 330b, and 330.1, prohibit operating slot machines and other gambling devices. A game is considered a slot machine or gambling device under those statutes if it allows users to win or lose a "thing of value." The fourth provision, Section 337j, prohibits operating a "controlled game" without the required licenses. A "controlled game" includes (with several exceptions not relevant here) any "game of chance" that is played for a "thing of value."[1]

---

[1] The plaintiffs also allege that Said violated two federal statutes, the Illegal Gambling Business Act, 18 U.S.C. § 1955, and the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. § 5363.

In his motion to dismiss, Said argues that Robux are not "things of value" within the meaning of those four Penal Code provisions because they are virtual items that the plaintiffs cannot convert into real-world currency. This means, according to Said, that the games on RBLXWild do not count as gambling and that his alleged conduct therefore did not violate the Penal Code.

At first glance, it seems easy to conclude that Robux count as things of value, regardless of whether they can be exchanged for cash. Robux are akin to arcade tokens. Once purchased, they can be exchanged for something a user values: playing games, either in a physical arcade or on a website. If someone steals an arcade customer's tokens, they are stealing something of value, because the customer would need to spend more money to restore their ability to play games at the arcade. Similarly, if someone hacks into a Roblox user's account and steals their Robux, they are stealing something of value, and the user could sue them for theft. That's why this Court had no trouble concluding in an earlier ruling that the plaintiffs suffered an economic injury (for purposes of establishing statutory standing) when they lost their Robux on gambling websites. *See* Dkt. No. 65, at 3-4.

But the question presented here is trickier. It is not simply whether Robux are "things of value" as that phrase would ordinarily be understood. The question is whether Robux are "things of value" as that phrase is used by the California Penal Code's gambling provisions. And after sifting through these provisions, it becomes nearly impossible to come up with a definition of "thing of value."

As noted above, each of the relevant Penal Code provisions—Sections 330a, 330b, 330.1, and 337j—uses the phrase "thing of value" to delineate which games count as gambling. As explained in a previous ruling, the first three of those provisions—Sections 330a, 330b, and 330.1—apply to physical gambling devices and not to games that exist purely online, such as

---

But because the plaintiffs agreed at the Motion to Dismiss Hearing that those federal laws apply only to conduct that is already illegal under state law, their applicability depends on whether any of the California Penal Code statutes covers Said's conduct.

4

those on RBLXWild. Dkt. No. 294, at 2. Thus, Section 337j is the only remaining Penal Code provision that could apply to Said. But because "thing of value" appears in all the provisions, they must all be considered when attempting to discern the meaning of the phrase. *Gund v. County of Trinity*, 10 Cal. 5th 503, 518 (2020) ("When a phrase appears in two statutes dealing with the same subject matter, we usually interpret the phrase to have the same meaning across the provisions.").

Start with Section 330a. That provision (which applies to slot machines) covers devices that allow someone to win or lose "merchandise, money, representative or articles of value," or "checks, or tokens, redeemable in or exchangeable for money or any other thing of value." Cal. Penal Code § 330a(a). Taking Section 330a on its own, it would be reasonable to conclude that it covers games played for anything that would colloquially be considered a thing of value, including things like arcade tokens and Robux.

However, Sections 330b and 330.1 (which also apply to slot machines) each specify that a covered device is one that allows a user to win either "money, credit, allowance, or other thing of value," or an "additional chance or right to use the slot machine or device, " or any "check, slug, token, or memorandum entitling the holder to receive money, credit, allowance, or other thing of value." Cal. Penal Code § 330b(a), (d); *id.* § 330.1(a), (f). In other words, Sections 330b and 330.1 cover slot machines that allow users to win either a thing of value, something that can be redeemed for a thing of value, or an additional chance to use the slot machine. That the Legislature separated each of those series of nouns suggests that an additional chance to use the slot machine is separate from a thing of value (and therefore is not itself a thing of value). It even appears to suggest that a check or token that can be redeemed for money is not itself a thing of value.

And then there is Section 337j. Because this applies more generally to games of chance and is not limited to physical games, it is the only provision that could apply to Said and his online Robux casino. Section 337j covers games that are "played for currency, check, credit, or any other thing of value." Cal. Penal Code § 337j(e)(1). Given Sections 330b and 330.1's

5

implication that rewards of additional gameplay and tokens redeemable for money are not themselves things of value, it might follow that Section 337j does not cover games played for those things. This would mean that 337j does not even cover games of chance where you can win chips redeemable for cash. If that were true, it would mean that games played for arcade tokens or Robux would not be covered.

On the other hand, a separate Penal Code provision, Section 330.2, purports to define a "thing of value" as "any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value." Cal. Penal Code § 330.2. Putting aside the rather unhelpful final phrase, this provision seems to adopt a more ordinary understanding of "thing of value"—one that would include something like arcade tokens or Robux. But Section 330.2 states that its definition applies only to Sections 330.1 to 330.5. Although this may well be a drafting error caused by the adoption of different provisions at different times, it at least implies that it should not be used to interpret Section 337j.

In short, the Penal Code provisions, considered together, leave the reader totally confused about the meaning of the phrase "thing of value." In particular, it's difficult to discern whether simple rewards of extended gameplay, or even tokens that can be exchanged for cash, fall within the ambit of this phrase.[2] In attempting to make the different provisions operate consistently with one another, a reader might conclude that Section 337j, which covers only games that are played for a "thing of value" and says nothing about games played for exchangeable tokens or rewards of extended gameplay, covers only games that are played for real currency. But that overly

---

[2] It's too bad the California Legislature didn't adopt Washington State's definition of "thing of value," which is at least somewhat easier to understand. Washington defines "thing of value" to include:

> [A]ny money or property, any token, object or article exchangeable for money or property, or any form of credit or promise, directly or indirectly, contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.

Wash. Rev. Code § 9.46.0285.

6

narrow interpretation would be in tension with the broad and general language that the Penal Code provisions use to describe the types of games that are covered, which suggests an intent by the California Legislature to define "thing of value" more broadly. *See, e.g.*, Cal. Penal Code § 330.2.

The California Court of Appeal has interpreted "thing of value" on two occasions, and its interpretation points toward a broader reading of the phrase. In *Score Family Fun Center, Inc. v. County of San Diego*, 225 Cal. App. 3d 1217 (1990), the court stated that a "reward of extended play by a video game for winning *is* a 'thing of value' within the meaning of the Penal Code definition." *Id.* at 1220 (emphasis added). In other words, *Score Family* did not interpret Sections 330b and 330.1 as suggesting that extended gameplay is separate from a "thing of value." But in support of this interpretation, *Score Family* cited an earlier case, *Merandette v. City and County of San Francisco*, 88 Cal. App. 3d 105 (1979). In *Merandette*, the court held that Sections 330b and 330.1, which were enacted after Section 330a, were intended to enlarge Section 330a's definition of covered slot machines to include machines that "reward the winner with additional use of the machine." *Id.* at 113-14. The implication of *Merandette*'s holding seems to be that rewards of extended gameplay were not already included in the phrase "thing of value" as used in Section 330a. Nevertheless, *Score Family* viewed *Merandette* as holding that rewards of extended gameplay are themselves things of value. *See also Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871 (N.D. Ill. 2016) ("California courts have indeed held that a 'reward of extended play by a video game for winning is a "thing of value" within the meaning of the Penal Code definition.'" (quoting *Score Family Fun Center*, 225 Cal. App. 3d at 1220)). Although these California Court of Appeal opinions mostly just add another layer of confusion, they tend to support the notion that "thing of value" should not be given so cramped a reading as to exclude things like arcade tokens or Robux.

Ultimately, despite all the problems with the California Penal Code provisions and the case law interpreting them, there is no plausible interpretation of the phrase "thing of value" that would not cover Robux.

First, adopting the narrow interpretation discussed above would create absurd results because it would exclude tokens exchangeable for cash from being a "thing of value." *See Horwich v. Superior Court*, 21 Cal. 4th 272, 280 (1999) (explaining that statutory interpretations that produce an absurd result should be avoided). Specifically, it would mean that games played at a casino for chips that can be exchanged for cash do not count as gambling, and that cannot possibly be what the California Legislature intended.

Second, it would be difficult to conclude that Robux are not things of value in the face of California case law holding that rewards of extended gameplay are things of value. From a commonsense standpoint, it is far clearer that Robux are things of value compared to rewards of extended gameplay. Robux can be taken out of the game in which they're won and banked for later use on any game or experience on the Roblox platform (or even on third-party websites like RBLXWild). By contrast, extended gameplay just makes the same game last longer. Take, for example, video poker, which everyone agrees is a game of chance. If you purchase tokens to play a video poker game that allows you to win more tokens that can be used to pay for a variety of activities any time in the future, the tokens you win are obviously things of value. On the other hand, if you pay to play a video poker game that merely gives you credits to play more hands when you draw good cards, it's not as clear, at least as a matter of common sense, that those credits should be considered things of value. But California case law has nevertheless held that extended gameplay is a thing of value, so it would be unreasonable to conclude that Robux are not.

Finally, even though the plaintiffs do not allege that they could have readily exchanged their Robux for cash, Robux can in many circumstances be exchanged for real currency. Game developers who participate in Roblox's Developer Exchange Program can cash out any Robux they earn from users playing their games. Indeed, as alleged in the complaint, RBLXWild and other third-party casinos were participants in that program and thus were able to trade in the Robux they won from the plaintiffs. It would be strange, to say the least, to conclude that RBLXWild was not operating a game involving a thing of value when it was able to convert that

"thing"—the Robux—to cash. Moreover, it is reasonable to infer from the complaint that Roblox users can be game developers as well, so it seems possible that the people who wager their Robux on sites like RBLXWild may also be able to exchange any winnings for cash.

Said points out that several federal district courts have concluded in other contexts that virtual items in online games are not things of value. He cites a string of cases that deal with "loot boxes"—virtual mystery boxes containing items that can be used within a given game to enhance play (such as weapons or costumes). *See Coffee v. Google, LLC*, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022); *Taylor v. Apple*, 2021 WL 11559513 (N.D. Cal. Mar. 19, 2021); *Mason v. Machine Zone, Inc.*, 140 F. Supp. 3d 457 (D. Md. 2015). The cases that have addressed the legality of loot boxes under the Penal Code have concluded that they do not offer the chance to win a "thing of value." *See, e.g., Coffee*, 2022 WL 94986, at *13; *Taylor*, 2021 WL 11559513, at *6. But loot boxes are straightforwardly distinguishable from Robux because they contain items that can be used only within a game to enhance the experience of playing that game. They do not enable a player to play other games or even to extend gameplay within the same game. The loot box cases therefore do not bear on the interpretation of "thing of value" as applied to Robux.

To be sure, there is some tension between the federal district court cases holding that a loot box is not a thing of value and the California Court of Appeal cases holding that extended gameplay is a thing of value. Perhaps there is some sliver of a distinction between the two. *See Taylor*, 2021 WL 11559513, at *5 n.2; *Soto v. Sky Union, LLC*, 159 F. Supp. 3d 871, 880 (N.D. Ill. 2016). Or perhaps the California Court of Appeal cases are simply wrong. But the point for purposes of this ruling is that even though loot boxes and extended gameplay are quite similar, both differ from Robux.

## III

The ambiguity of the phrase "thing of value" as used in the California Penal Code is a serious problem because criminal liability hinges on the meaning of this ill-defined phrase. Indeed, there is a strong argument that these Penal Code provisions are unconstitutionally vague because they do not "provide a person of ordinary intelligence fair notice of what is prohibited."

*United States v. Williams*, 553 U.S. 285, 304 (2008).[3] And given the growth in online games played using various forms of virtual tokens and currencies, it is important for game providers to be able to determine whether their games are considered gambling under the terms of the Penal Code. The California Legislature should modernize this cluster of Penal Code provisions governing gambling. And until it does so, courts should construe ambiguous phrases like "thing of value" as narrowly as reasonably possible. *See Doe v. Eating Recovery Center LLC*, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025) (citing *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001)). A reasonably narrow construction of the provisions at issue here may well support a finding that things like loot boxes and extended gameplay are not "things of value" within the meaning of the Penal Code. But that phrase includes Robux under any reasonable construction.

## IV

Accordingly, the plaintiffs have adequately alleged that Said violated Penal Code Section 337j by operating a controlled game without first procuring the required licenses.[4] Said's motion to dismiss with respect to claims brought under the UCL's "unlawful" prong is therefore denied. Because Said also relied on the lawfulness of his conduct in arguing for dismissal of the claims arising under the "unfair" prong, as well as the negligence and unjust enrichment claims, the motion is denied with respect to those claims as well.

**IT IS SO ORDERED.**

Dated: December 10, 2025

_____
VINCE CHHABRIA
United States District Judge

---

[3] The California Court of Appeal in *Merandette* rejected an unconstitutional-vagueness challenge to Sections 330a, 330b, and 330.1 because it concluded that a person of ordinary intelligence, reading those provisions together, could figure out that Sections 330b and 330.1 prohibit games that are played only for extended gameplay. 88 Cal. App. 3d 105, 112-14 (1979). Whether that's right or wrong, *Merandette* did not squarely consider whether the meaning of "thing of value" in the Penal Code is sufficiently clear.

[4] Because the plaintiffs have stated a claim under California Penal Code Section 337j, they can also use the federal statutes, 18 U.S.C. § 1955 and 31 U.S.C. § 5363, as predicates for their claims under the "unlawful" prong of the UCL.